IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


DANIEL HUMAN,                      )
                                   )
        Plaintiff,                 )
                                   )  No. 4:24-cv-01177-MTS
vs.                                )
                                   )
FISHER INVESTMENTS, INC.,          )
                                   )
        Defendant.                 )

MOTION HEARING

BEFORE THE HONORABLE MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

March 28, 2025

APPEARANCES:
For Plaintiff:          Edwin V. Butler, II, Esq.
                        BUTLER LAW GROUP LLC
                        1650 Des Peres Road, Suite 220
                        St. Louis, MO 63131

For Defendant:          Alexander D. Terepka, Esq.
                        WATSTEIN TEREPKA LLP
                        1055 Howell Mill Road, 8th Floor
                        Atlanta, GA 30318
                                AND
                        Matthew D. Guletz, Esq.
                        THOMPSON COBURN LLP
                        One US Bank Plaza, 28th Floor
                        St. Louis, MO 63101

Also Present:           Chris Prosser

Reported by:            PAMELA HARRISON, RMR, CRR, CRC, CCR, CSR
                        Official Court Reporter
                        United States District Court
                        111 South Tenth Street, Third Floor
                        St. Louis, MO 63102
                        (314) 244-7987

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

I N D E X

                                                              Page

WITNESS DANIEL HUMAN:
  Questions by The Court                                        19
  Questions by Mr. Terepka                                      20
  Questions by The Court                                        23

Motion Hearing - March 28, 2025

1                           March 28, 2025

2               (The proceedings commenced at 1:20 p.m.)

3               (The following proceedings were held in open court:)

4          THE COURT:  We're here on the record in the case of

5     Daniel Human, Individually and on behalf of others similarly

6     situated, Plaintiff, v. Fisher Investments, Inc., and Smart

7     Asset Advisors, LLC.

8               I'd ask counsel for the plaintiff please make an

9     appearance for the record.

10         MR. BUTLER:  Good morning, Judge.  I'm Edwin Butler

11    representing Mr. Human, the plaintiff.  Sitting alongside with

12    me is my lead paralegal Christopher Prosser.  Mr. Human is in

13    the back.

14         THE COURT:  Okay.  All right.  Good afternoon,

15    y'all.

16              Here on behalf of the defendants and

17    counterclaimants?

18         MR. TEREPKA:  Good afternoon.  Alex Terepka for

19    Fisher.

20         MR. GULETZ:  Good afternoon, Judge.  Matt Guletz

21    from Thompson Coburn on behalf of Fisher.

22         THE COURT:  All right.  Thank you, all.

23              All right.  We're here today on a couple of motions

24    filed by the defendants in this case.  One is Document 65,

25    their motion to compel, and Document 67, their motion for

1    sanctions.  I've reviewed the papers and responses.

2            I'll go ahead and let you make argument on this.

3            MR. TEREPKA:  Yes, Your Honor.  Would you like me at

4    the podium?

5            THE COURT:  Please.

6            MR. TEREPKA:  Understood.

7            MR. BUTLER:  Judge, may I address the Court before

8    we begin?

9            THE COURT:  Sure.

10           MR. BUTLER:  The motion for sanctions, we have about

11   five or six days to answer.  We just agreed with opposing

12   counsel that we would take a 10-day extension.

13           Does that affect whether we're going to take that up

14   today?

15           THE COURT:  Let me see here.  They still have time

16   to respond to the motion for sanctions?

17           MR. TEREPKA:  That's correct, Your Honor.  They have

18   not responded, and Mr. Butler asked for a 10-day extension

19   before the hearing today, and Fisher agreed to that.

20           THE COURT:  10-day extension to respond?

21           MR. TEREPKA:  To the motions for sanctions.

22           THE COURT:  But that hasn't been asked of me.

23           MR. TEREPKA:  Correct, Your Honor.

24           THE COURT:  So you're just saying that's what you

25   want to do?

1          MR. TEREPKA:  That is what Mr. Butler wants to do,

2    and Fisher does not oppose it.  Nothing is pending before Your

3    Honor yet on that extension request from Mr. Human.

4          THE COURT:  So you're making an oral motion for an

5    extension of time to respond to the motion for sanctions right

6    now; is that right?

7          MR. BUTLER:  I am, Judge.  Thank you.

8          THE COURT:  Okay.  Well, I'll take that up in a

9    second after we go through the motion to compel.

10         Why don't you start with the motion to compel.

11         MR. TEREPKA:  Yes, Your Honor.

12         We are here today because Fisher is seeking justice

13   and accountability for Human's fraud, massive fraud, that he's

14   using the courts to perpetrate; and would like an opportunity

15   to explain that briefly.  It will only take a few minutes

16   because it's easier to discuss verbally, especially if the

17   Court has questions, and it gives crucial context to the

18   discovery Mr. Human has refused to produce.

19         Mr. Human has filed about 70 TCPA lawsuits in just a

20   few years and sent countless other demand letters, alleging

21   that various companies, small, large, and everything in

22   between, called his number without his consent.  Except he did

23   consent, on purpose, to set up a fraudulent lawsuit through

24   various websites that invite consumers to provide their names

25   and contact information if they are legitimately interested in

1    hearing about a company's services.  He did so using a variety

2    of aliases, like Veronica Moreno, the alias he used here, and

3    the same number, phone number, ending in digits 1355.  Dozens

4    of unrelated defendants called his number because they received

5    it on consent forms, just like Fisher did here.  June 17, 2024,

6    long after Mr. Human got the 1355 number, someone submitted

7    that number with the name Veronica Moreno.  Less than a month

8    later, he sues Fisher.  We know from public records, like

9    Policy Scouts lawsuit against Mr. Human, and speaking to other

10   targets of Mr. Human's scheme that he set up many other

11   lawsuits the same way he did here.

12              This is a massive abuse of the justice system.

13   Mr. Human is counting on the fact that the expense of defending

14   his claims and exposing his fraud will be more than just paying

15   him off.  And it works.  Very few companies will undertake the

16   massive expense required to expose a sophisticated fraud, so

17   they paid him off.  Mr. Human knowingly continues to take

18   advantage of that, costing innocent defendants hundreds of

19   thousands of dollars and likely millions if you count the legal

20   fees.

21              My client is fortunate enough to have the resources

22   to stand up to this, but we've been met with nothing but a

23   cover-up that has multiplied my client's expenses dramatically.

24   Mr. Human refuses to produce the most basic documents that will

25   expose his fraud, even though he waived all objections to

1   Fisher's document requests.  As the Court already held, he has

2   not even produced his cell phone bill showing the name on the

3   account.  So easy to produce.  We have asked again and again,

4   but all he does is produce and reproduce redacted credit card

5   bills showing he may pay for the bill, but that's not the same

6   as producing the bill.  And it's so important because the bill

7   has the name on the account.  The name could very well be one

8   of his aliases that he uses to perpetrate the fraud instead of

9   his name.  So his cell bill could be a smoking gun and he's

10  refused to produce it, and it's the simplest, easiest to

11  produce document.

12          He has not produced a single communication with

13  other defendants responding to his claims.  This discovery is

14  crucial and easy to produce.  It will show a pattern of

15  unrelated defendants responding to his demands with evidence

16  that he consented using a variety of aliases, crucial

17  discovery.  Worst of all, Mr. Human has destroyed a key device,

18  his computer he uses to email defendants about his claims the

19  day or two before the court-ordered device inspection deadline

20  on January 27.  This intentional spoliation of crucial evidence

21  immediately before a court-ordered deadline that Mr. Human

22  admitted in writing is alone enough to impose the most severe

23  sanctions.

24          THE COURT:  Okay.  So, I mean, I'm not disagreeing

25  with anything you said, but I want to make sure.  Why did you

1   agree to let them have time to respond to that?

2              Why are we taking that up today?

3              MR. TEREPKA:  To the additional sanctions motion?

4              Frankly, as a courtesy, Your Honor.

5              THE COURT:  A courtesy?  Why would they deserve a

6   courtesy?

7              Their deadline is passed, correct?

8              MR. TEREPKA:  Their deadline to respond to the

9   sanctions motion, not the motion to compel, has not passed, if

10  I understand correctly.

11             THE COURT:  You're giving them 10 days.  Are we

12  taking up -- I want to make sure that I have a full opportunity

13  to address these sanctions, okay?  I do believe there's

14  significant sanctionable conduct in this case.  But if I'm

15  saying they have time to respond still and you have time to

16  respond, then we're just here on a motion to compel, right?

17             MR. TEREPKA:  That's correct.  But a few additional

18  comments to that if I may, Your Honor.

19             THE COURT:  Okay.

20             MR. TEREPKA:  The motion for sanctions is related

21  solely to sanctions leading up to the Court's January 2022 --

22  excuse me -- January 22 hearing.  That motion may very well be

23  able to be ruled on the papers.  This motion to compel seeks

24  more substantial sanctions, including involuntary dismissal,

25  and would like --

```
 1                 THE COURT:  Is that what you're wanting them to

 2      respond to?

 3                 MR. TEREPKA:  That is already responded to.  The

 4      motion to compel seeking involuntary -- one way to think of it

 5      is this:  The motion to compel seeks sanctions for everything

 6      after January 22.  It's the more substantial motion.  It is

 7      fully ripe, fully briefed, and it is what the Court set for

 8      hearing today.

 9                 THE COURT:  Got you.  I just want to make sure I'm

10      on the same page, right?  Okay.

11                 MR. TEREPKA:  Yes.

12                 THE COURT:  So we are now.  You've clarified that.

13      Go ahead.

14                 MR. TEREPKA:  Thank you, Your Honor.

15                 One additional point to clarify.  So in -- the

16      standard for involuntary dismissal and striking pleadings is

17      largely the same.  Fisher moved for involuntary dismissal but

18      also cited case law, including Your Honor's decisions, about

19      striking pleadings.  Given what has happened here and

20      Mr. Human's effective failure to respond to the unequivocal

21      evidence that he destroyed a device right before the

22      court-ordered device inspection, the Court should strike

23      Mr. Human's pleadings responding to Fisher's counterclaim so

24      Fisher could seek a default judgment in addition to the

25      involuntary dismissal.
```

Motion Hearing - March 28, 2025

1          Comparing the Court's Pasch v. OnDoc decision which

2  we cited in our papers, there the Court struck Defendant

3  Wilson's pleadings, similar relief as we're requesting here,

4  for repeatedly violating the Court's orders to attend hearings,

5  for violating a commitment to obtain counsel and participate in

6  discovery.  We are way past that here.  That case didn't

7  involve an intentional destruction of a device, refusal to

8  produce basic documents despite waiving all objections, and a

9  frivolous appeal in addition to many other violations of the

10  Court's orders.  So that would simplify things further, because

11  instead of the massive additional expense of compelling

12  Mr. Human to produce the discovery he has thus far refused to

13  produce, the case would be effectively over, involuntary

14  dismissal of his claim and striking his pleadings and default

15  on Fisher's counterclaim.  And given what's happened

16  particularly with the device destruction, we are past that

17  point, and it would dramatically simplify the proceedings.

18          THE COURT:  So then you're -- so you're saying

19  you're agreeing to extension on Doc 67, the motion for

20  sanctions for the unnecessary hearing?  That's what you're

21  giving them additional time for?

22          MR. TEREPKA:  And only that.

23          THE COURT:  Got you.  Okay.  I wanted to make sure.

24  All right.

25          MR. TEREPKA:  And, Your Honor, respectfully, Fisher

1  would say that that motion can be ruled on the papers, but that

2  is, of course, the Court's decision.

3              THE COURT:  All right.  And so how much time are you

4  asking for on Doc 67?  What do you want?  10 more days?  What

5  would that deadline be?

6              MR. BUTLER:  Yes, sir.  10 more days.  Do you have

7  that in your head?

8              MR. PROSSER:  Yeah.

9              MR. BUTLER:  What date would it be?

10              MR. PROSSER:  10 days from the 12 days.  So it would

11  be -- I don't have that date in my head.

12              MR. BUTLER:  Well, it's five or six.  So we're

13  talking about --

14              THE COURT:  Just say the date.  I'll give you the

15  date to respond to 67.  What date do you want?

16              MR. PROSSER:  12th of April.

17              MR. BUTLER:  Yeah.  April 12.

18              THE COURT:  Okay.  You have until April 12 to

19  respond to Doc 67.

20              Do you have anything else you want to say as to Doc

21  65?  That's what I'm hearing right now.

22              MR. TEREPKA:  Understood, Your Honor.

23              Very briefly, Fisher requests monetary sanctions in

24  the motion we're discussing today.

25              THE COURT:  $7,000, right?

Motion Hearing - March 28, 2025

1          MR. TEREPKA:  That is the motion for which --

2          THE COURT:  What are you asking for monetarily here?

3          MR. TEREPKA:  For monetarily here, we are requesting

4    the expense of the motion to compel, the expense of the device

5    inspection where Mr. Human produced a decoy, and a few other

6    items in our papers.  We would propose that we submit,

7    effectively, a bill of expenses, a short motion explaining our

8    bills and attaching them and -- in the event that the court

9    grants those monetary sanctions.

10          If the Court does grant those monetary sanctions,

11   they should be joint and severable against Mr. Human and his

12   counsel under Eighth Circuit authority affirming that.

13          If I may explain --

14          THE COURT:  What's that case?  I can do that under

15   37?  I don't have to have that under Rule 11?

16          MR. TEREPKA:  That case is Arnold v. ADT.  And in

17   that case, in less egregious circumstances, where the litigant

18   and counsel repeatedly violated court orders, the Court

19   affirmed a joint and severable fee award.

20          And if I may explain the basis for that here, the

21   role of counsel as the officer of the court is to tell the

22   client no when the client wants to do something frivolous.

23   That has not happened with Mr. Human's counsel here.  There was

24   no good faith basis to refuse to participate in the

25   Court-ordered joint report process at the beginning of the

```
1   case.  There was no good faith basis to refuse five requests to
2   meet and confer even though Fisher's counsel expressly reminded
3   Mr. Human's counsel that that is a court-ordered requirement.
4   There was also no good faith basis to sign a second notice of
5   dismissal after this Court expressly ordered that's improper.
6   There was also no good faith basis to sign a frivolous notice
7   of appeal to the Eighth Circuit.
8           For those reasons, the Court should award a joint
9   and severable fee award, including under the Eighth Circuit's
10  Arnold v. ADT --
11          THE COURT:  How much are you asking for?
12          MR. TEREPKA:  It will be tens of thousands of
13  dollars, Your Honor.
14          THE COURT:  You think you need to submit additional
15  evidence to the Court to establish those amounts?
16          MR. TEREPKA:  Yes, including the bills.
17          THE COURT:  Okay.
18          MR. TEREPKA:  That is all, Your Honor.
19          THE COURT:  What do you-all have to say?
20          MR. BUTLER:  Good morning, Judge.  Good afternoon.
21          Judge, you know, what we have to say is that we
22  would disagree with counsel and that we would tell, you know,
23  the judge that --
24          THE COURT:  You're telling me.  What do you disagree
25  with?
```

1          MR. BUTLER:  We would go so far as to say

2    disingenuous.  I would say, you know, a theory was brought up,

3    you know, the -- the motion to compel, the desktop and the --

4    and the telephone, that was preceded by Mr. Human's, you know,

5    filings for the appeal of your motion.  The thing is that

6    Mr. Human did in fact appear for the examination, and he

7    brought with him the only laptop that he owned during the

8    periods that you had specified.

9          THE COURT:  What about the email they have in their

10   papers where he says about his other computer?  What about

11   that?

12         Do you want to bring him up and put him under oath?

13         Let's do that.  Come on up, sir.  I'll put you under

14   oath and you can answer the question.

15         MR. BUTLER:  If I can finish before that, Judge.

16         THE COURT:  We'll swear him in and sit him there.

17   Then you can finish and then we can ask him.

18         Come on up.  Be sworn in under oath in this court,

19   please, sir.

20         (Witness sworn in by the deputy clerk.)

21         THE CLERK:  Please state and spell your first and

22   last name for the record.

23         THE WITNESS:  Daniel Human, H-U-M-A-N.

24         THE COURT:  Okay.  Have a seat in the witness booth.

25   When your counsel is done speaking, you'll answer some

1    questions under oath.

2            Go ahead, sir.

3            MR. BUTLER:  The computer that is the subject of --

4            THE COURT:  The allegation, just to be very clear,

5    because you're kind of dancing around it, it seems to be

6    supported by the email that the defendants have put forward.

7    The allegation is the day before the inspection, the computer

8    was destroyed.  That's the allegation.

9            So the question, really -- one of the questions for

10   the Court is whether that's true or not and how you're going to

11   explain the email sent in another case that seems to support

12   that.  So if you want to address that point, I want to hear it.

13   Then we can ask the witness.

14           MR. BUTLER:  The computer that was destroyed was --

15           THE COURT:  So you do acknowledge there was a

16   computer destroyed?

17           MR. BUTLER:  No.  It's not to my knowledge.  But

18   the -- as I understand from Mr. Human, the computer was very

19   old and had not been used in many years and was broken.

20           The other computer that he did produce, he told the

21   inspector there, the forensic inspector, that he doesn't surf

22   the net on it, he's never used it.  He uses his phone

23   primarily.  He brought that; he brought his phone.  They, in

24   fact, did a forensic analysis of everything on his phone.  They

25   have said about 185 times, I counted in their filings, that

1  they do have evidence of written consent and that they do have

2  evidence of fraud on the telephone.  However, they have never,

3  even in response to a formal inquiry through the

4  interrogatories and requests to produce, shown that they in

5  fact have written consent.  In fact --

6          THE COURT:  Did you file anything with the Court in

7  response to them purportedly not answering your discovery?  You

8  haven't done anything, have you?

9          I'm looking.  There's no discovery dispute that's

10 ever been raised by the plaintiffs in this case.  Is that true?

11         MR. BUTLER:  Well, Judge, it's coming.

12         THE COURT:  It's coming?

13         MR. BUTLER:  The motion to compel, yeah.

14         THE COURT:  Okay.

15         MR. BUTLER:  Yeah.

16         THE COURT:  So to date, your answer is you haven't

17 right now, correct?

18         MR. BUTLER:  Correct.

19         THE COURT:  Let's try to be a little more direct

20 with our answers, okay?

21         MR. BUTLER:  Yes, sir.

22         THE COURT:  Okay.

23         MR. BUTLER:  All right.

24         THE COURT:  I don't even know what you're saying in

25 response to this.  Can you address the email where your client

1   in an unrelated lawsuit references another computer?  Can you

2   address that?

3            MR. BUTLER:  Is that the --

4            THE COURT:  You don't know what I'm talking about?

5   That's what you're saying?

6            MR. BUTLER:  No.  I think I do.

7            THE COURT:  I can direct you to make sure we're on

8   the same page here.

9            MR. BUTLER:  I'm thinking that that was the one

10  where --

11           MR. PROSSER:  They never replied.

12           MR. BUTLER:  -- you know, the counsel for Fisher had

13  actually represented that party and knew all about that.

14           THE COURT:  What?  I don't understand what you're

15  saying.

16           MR. BUTLER:  You've been through this.

17           THE COURT:  You're the attorney.  You speak.

18           MR. BUTLER:  Judge, the computer that he produced is

19  the computer that he owned, and it was in his possession during

20  that period of time that was specified in the order for

21  examination.

22           THE COURT:  How do you come to that conclusion?

23           MR. BUTLER:  In the order --

24           THE COURT:  And does that really change anything?

25           MR. BUTLER:  -- it specifies those days in June.

1  This computer was purchased, I think, maybe, you know, in

2  August.  Maybe it was before that.  But the only devices that

3  he used of any kind were the telephone and the laptop that he

4  produced.  Each of them was forensically analyzed.  Supposedly

5  there's evidence of fraud and aliases and things like that on

6  that.  We've asked for that report.  They said --

7          THE COURT:  Hold on.  This isn't -- that's all

8  you're saying.  This all this "what about-ism," these are your

9  devices.  You know what they should say, okay?  Plus you

10  haven't even properly addressed these issues in discovery,

11  okay?  So that has nothing to do with anything here.  We're

12  here on their motion to compel.

13          Why haven't you and your client produced the items

14  that were lawfully through the civil process requested of you?

15  And how do you address Document 70, page 2, the email from your

16  client?

17          MR. BUTLER:  Page 2?

18          MR. PROSSER:  He's talking about these two right

19  here.

20          MR. BUTLER:  The only answer that I have is that the

21  computer in question didn't fit inside the guidelines.  I

22  really can't speak further to the Court about, you know, what's

23  contained here.  The ones that -- to my understanding what was

24  brought to the forensic examiner was all the documents that --

25  I'm sorry -- all the devices that he had in his possession or

1  he used.

2                          EXAMINATION

3  QUESTIONS BY THE COURT:

4  Q.     Okay.  You're under oath.  What did you do with the

5  computer?

6  A.     Thank you, Your Honor.

7          That computer, I didn't own that desktop at the time

8  that these illegal calls were made, okay?  I acquired it

9  sometime later in August.

10  Q.    That's not the question at all.

11          What did you do with the computer referenced in the

12  email?

13  A.    The computer referenced in the email was the one --

14  Q.    Was it your computer?

15  A.    Yes, it was.

16  Q.    Did you produce it in response to any of the discovery in

17  this case?

18  A.    No, I did not.

19  Q.    What did you do with it?

20  A.    It didn't even turn on.

21  Q.    "What did you do with it?" is the question, sir.

22  A.    I threw it away, of course.

23  Q.    Where did you throw it away and when?

24  A.    I threw it away, I believe, that Saturday evening.

25  Q.    What was the date of that, sir?

1    A.    Saturday.  I don't have a calendar in front of me, Your

2    Honor.

3         THE COURT:  Do you want to ask him any questions

4    about this?  Go ahead.

5    A.    I probably should have thrown it away 2 weeks earlier

6    because it didn't work.

7         MR. TEREPKA:  Yes, Your Honor.  Should I --

8         THE COURT:  No.  Go ahead.  You can just go right

9    from there.  Ask him the questions.

10                      EXAMINATION

11   QUESTIONS BY MR. TEREPKA:

12   Q.    Mr. Human, that Saturday was Saturday, January 25,

13   correct?

14   A.    I believe it was.

15   Q.    That's two days before the court-ordered device

16   inspection, correct?

17   A.    I believe it is, yes.

18   Q.    You produced at that device inspection a laptop computer

19   of yours, correct?

20   A.    That's correct.

21   Q.    You hadn't used that computer in years; isn't that true?

22   A.    That's correct.  I told the examiner I didn't really use

23   the laptop at all.  I got it at an auction and -- and never

24   really used it.

25   Q.    You understood that Fisher's device inspection request

1    asked for devices you used in 2024; isn't that true?

2    A.    I -- I -- that's correct.

3    Q.    But you produced a laptop you didn't use in 2024; isn't

4    that true?

5    A.    That's true.  I couldn't produce the computer because I

6    didn't -- I didn't have it any longer.  I no longer had it.

7            THE COURT:  But you did use that computer in 2024,

8    correct?

9    A.    After August, yes, sir.

10            THE COURT:  So the computer you used in 2024 that

11    would have been responsive to the device inspection you threw

12    away 2 days before; is that correct?

13    A.    That's correct, Your Honor.

14            MR. TEREPKA:  Nothing further.

15            THE COURT:  Wait.  He has something further for you.

16    QUESTIONS BY MR. TEREPKA:

17    Q.    You agreed to -- your counsel agreed to a device

18    inspection at 10:00 a.m. on January 27, correct?

19    A.    I assume that's correct, yeah.

20    Q.    You understood that the device inspection was to occur at

21    10:00 a.m. on Monday, January 27; is that correct?

22    A.    My understanding is it was to occur that day.  I don't

23    believe there was -- the judge never allotted a time.  He said

24    "by that day."  That was my understanding, is that it had to be

25    done by that day.

1     I don't believe there was a time put on it, Your

2  Honor.  Did you put a time on that inspection date?

3          THE COURT:  The time would be whatever was arranged

4  between the parties.  I'm sure it's documented, but go ahead.

5          MR. TEREPKA:  It is, Your Honor.

6  QUESTIONS BY MR. TEREPKA:

7  Q.    Mr. Human, you attempted to voluntarily dismiss your case

8  less than 2 hours before the 10:00 a.m. scheduled device

9  inspection; isn't that true?

10 A.    Without prejudice, yes, that's correct, because we had

11 added Smart Asset at that point.  Smart Asset had now become

12 another codefendant in the case.

13 Q.    You understood that Fisher was incurring expense to

14 arrange for the device inspection, didn't you?

15 A.    Certainly.  Just as did we traveling 70 miles to produce

16 it, yeah, sure.

17 Q.    But you didn't dismiss your -- attempt to dismiss your

18 case until the morning of on the day the device inspection was

19 supposed to occur; isn't that true?

20 A.    I believe that's correct.  We asked for a dismissal

21 without prejudice because we believed that Smart Asset had

22 information that Smart Asset had supplied this alleged lead to

23 Fisher.  So, obviously, we were going to include them in the

24 lawsuit.

25         MR. TEREPKA:  Nothing further, Your Honor.

```
 1                        EXAMINATION

 2   QUESTIONS BY THE COURT:

 3   Q.    All right.  I want to be clear, then.

 4            I'll give you a chance to follow up if you like.

 5            But the bottom line for me is the computer that was

 6   in your possession at the very -- on the eve of the device

 7   inspection that was ordered by this Court, that's the computer

 8   that would have been responsive to the discovery in this case

 9   and that was ordered to be inspected.  You threw it away prior

10   to that happening, correct?

11   A.    A couple days before the inspection, Your Honor.

12   Q.    That's a yes or no.  Did you throw it away just prior to

13   the inspection?

14   A.    A few days before, yes, Your Honor.

15   Q.    That was the computer and that was the computer you used

16   during the relevant time period, correct?

17   A.    No, it is not, Your Honor.  During the relevant time

18   period, as I explained earlier, I didn't own that.

19   Q.    You owned that computer during the relevant time period,

20   correct?

21   A.    I didn't own that computer at the time these illegal

22   calls were made, Your Honor.  No, I didn't.

23   Q.    When I say "relevant time period," I'm saying the

24   relevant time period of the inspection.  You owned that

25   computer, correct?
```

1  A.     Prior to that, yes.

2  Q.     You threw it away just before, correct?

3  A.     Yes, Your Honor, I did.  It didn't work.

4  Q.     Did you tell your attorney about that?  Did you tell your

5  attorney you were throwing it away?

6  A.     I produced what I had at the time.

7  Q.     Did you tell your attorney you had -- you were planning

8  to throw that computer away?

9  A.     Your Honor, I don't know if I called Ed or not that day.

10  I don't remember.

11  Q.     How about prior to that?  Did you tell him you were

12  throwing it away?

13  A.     I didn't know prior to that.  It was just a couple days

14  before, sir.

15  Q.     Then you produced for inspection by the defendants a

16  computer that had absolutely nothing to do with anything

17  related to this case; is that correct?

18  A.     That's correct.

19         THE COURT:  Okay.  I don't have any more questions.

20  You can step down.

21         Do you want to ask him anything?

22         MR. BUTLER:  Just to make a statement, Judge, that I

23  did not know about it.  I was not involved in that.

24         THE COURT:  I hope that turns out to be true,

25  Mr. Butler, for your sake.

Motion Hearing - March 28, 2025

```
 1                    You can step down, sir.

 2               MR. BUTLER:  It is, sir.  It is.

 3               THE COURT:  I hope it does.  I hope it is.

 4               All right.  Do you have any more argument you want

 5     to make?

 6               MR. BUTLER:  Well, you know, Judge, you know they're

 7     looking for --

 8               THE COURT:  Who is "they"?

 9               MR. BUTLER:  Fisher.

10               THE COURT:  You sued them.  Do you remember that?

11     So they're responding to a lawsuit.  You sued them, correct?

12               MR. BUTLER:  Yes, sir, yes.

13               THE COURT:  So what do you mean they're looking for

14     something?

15               MR. BUTLER:  In the discovery process, they are not

16     responding to, you know, the --

17               THE COURT:  You haven't done anything about it, have

18     you?

19               MR. BUTLER:  It hasn't happened yet, no.

20               THE COURT:  So wait.  Again, I want to be a little

21     bit better on this.  When I ask a question yes or no, I'd like

22     for to you answer it correctly.

23               There's nothing before me as to any alleged

24     violations or need for them to respond to any discovery dispute

25     from your side because you haven't filed anything, nor have you
```

 1  approached the Court with the one mandate I had that we have an

 2  informal discovery resolution process, correct?

 3          You've done neither, right?

 4          MR. BUTLER:  It's correct.

 5          THE COURT:  So you don't have anything that's ripe

 6  for me to consider regarding their alleged failure to respond

 7  to discovery.  But I want to make sure.

 8          We are both in agreement on that, right?

 9          MR. BUTLER:  Yes.

10          THE COURT:  Okay.  Go ahead.

11          MR. BUTLER:  Well, flipping it to the other side of

12  the coin, the things that are alleged in the voluminous

13  writings that Fisher has put in front of you is that -- that

14  there's -- the names come back to six or seven different people

15  that these are aliases that he --

16          THE COURT:  I guess that will be part of their fraud

17  counterclaim.  I guess we'll find out.

18          MR. BUTLER:  But in, you know, their motion to

19  compel, they're saying that he has not produced evidence of his

20  fraud.  He's produced everything that he has.

21          THE COURT:  He didn't produce the computer that he

22  had.  We know that.

23          MR. BUTLER:  He did not.

24          THE COURT:  That's pretty significant, can't we

25  agree?

1    MR. BUTLER:  Yes, sir.

2    THE COURT:  Okay.  Go ahead.

3    MR. BUTLER:  And these -- you know, the allegations

4  about the not sitting for the deposition, Mr. Human --

5    THE COURT:  How can you sit for a deposition if you

6  haven't produced anything?

7    MR. BUTLER:  Mr. Human's position is that he did, in

8  fact, produce everything and that the things -- the things that

9  are being requested of him, you know, like the production of --

10    THE COURT:  Has he completed -- has he produced

11  documents and completed any interrogatory answers relative to

12  their defenses and counterclaims?  Has he done that?

13    That's one of those -- I'll just give you a hint

14  here.  That's one of those yes or no questions.

15    MR. BUTLER:  To my best information, he has.

16    THE COURT:  That's what you're going to represent to

17  the Court today?  You may want to talk to your paralegal about

18  that before you do that.  Do you want to consult with him to

19  make sure that's correct?  Yeah, I would.  I think I would.

20    (Discussion between Mr. Butler and Mr. Prosser.)

21    MR. BUTLER:  My best information is that --

22    THE COURT:  Hold on a second.  You're the attorney

23  for the case.  You're the only one that can produce discovery

24  to them and respond to interrogatories and review and sign off

25  on them.  So it's not "best information."  It's what you --

1  it's what you're representing to me right now as an officer of

2  the court.  That's where we are.

3           MR. BUTLER:  We produced 486 pages.

4           THE COURT:  You are avoiding my question, and I'm

5  getting mad.

6           MR. BUTLER:  I'm sorry.  I apologize.

7           THE COURT:  You know what the question is.  Answer

8  the question.  You're an officer of the court.

9           MR. BUTLER:  If I understand, the question is,

10  Mr. Human, has he responded --

11           THE COURT:  You've seen their motion to compel.

12           What are you asking for?  Go ahead.  Tell us,

13  counsel.

14           MR. TEREPKA:  Mr. Human has not even produced his

15  cell phone bill.

16           THE COURT:  Has he produced his cell phone bill?

17           MR. BUTLER:  There is no bill that we have.  It is a

18  pay-by-the-month kind of phone.  It is set up where --

19           THE COURT:  I really think that -- I'm really

20  getting concerned I should call the U.S. Attorney's Office here

21  to hear this proceeding.

22           So you're representing that there's no bill?

23           MR. BUTLER:  The credit card reflects that he makes

24  a payment to this company every month.  They send him --

25           THE COURT:  So he uses a burner phone for all this

1   activity?  That's what you're saying?

2           MR. BUTLER:  I don't know.  I would say I'm probably

3   approaching a description of that, yes.

4           MR. TEREPKA:  Your Honor, if I may briefly, his

5   production shows that his cell provider is Straight Talk

6   wireless, a Verizon affiliate.  He has a cell phone bill, and

7   he's been paying Straight Talk month after month.  There is a

8   bill or an account statement with someone's name on it that he

9   hasn't produced.

10          THE COURT:  What are you saying to that?  Because

11  I'm kind of in agreement with them.  What are you saying to

12  that?

13          MR. BUTLER:  I would agree that --

14          THE COURT:  Where's the bill then?  Why hasn't that

15  been produced?  And if it hasn't been produced, why haven't you

16  withdrawn?  And why have you continued -- is that because of

17  the 70 lawsuits that he's used this bill in?  I think the whole

18  thing you guys need to come to the realization of is that these

19  guys are on you and I'm on you.  So this isn't going to go away

20  with dancing and dodging.

21          Where's the bill?  You're ordered to produce the

22  bill.  You heard that, sir, right, Mr. Butler?  Did you hear

23  that?

24          MR. BUTLER:  (Attorney moved head from side to

25  side.)

1          THE COURT:  You didn't hear that I said you're

2    ordered -- it's ordered that the bill be produced?

3          MR. BUTLER:  Yes, sir.  I got that.

4          THE COURT:  Mr. Human, did you hear that?

5          MR. HUMAN:  I did, sir.

6          MR. BUTLER:  Immediately following that I didn't

7    hear.

8          THE COURT:  I said produce the bill.

9          MR. BUTLER:  Oh, I got that, Judge.

10          THE COURT:  So there is a bill, isn't there?

11          MR. BUTLER:  Not that I know of.

12          THE COURT:  Well, do you know what's going to happen

13    if they do a subpoena and get that from the provider?

14          MR. PROSSER:  They've already done that.

15          THE COURT:  What's that?  Why are you even raising

16    your voice?  You're not even allowed to talk here.

17          MR. PROSSER:  I humbly apologize.

18          THE COURT:  In fact, go sit in the back.

19          MR. PROSSER:  I humbly apologize, Your Honor.

20          THE COURT:  Go to the back.

21          You're representing to the Court, then, that through

22    your due diligence and investigation as an officer of the court

23    that there's no bill associated with the cell phone number at

24    issue with their discovery request?  That's your representation

25    to the Court?  I want you to be very careful here, Mr. Butler.

1          MR. BUTLER:  Judge, based on all --

2          THE COURT:  What's your investigation into that?

3   What have you done to -- if you're going to stick with that,

4   what have you done?

5          MR. BUTLER:  A thorough questioning of Mr. Human and

6   I think that Mr. Prosser made many calls to the organization

7   that -- looking for the bill, and nothing was produced.

8          THE COURT:  All right.  What else are you asking

9   for?

10          MR. TEREPKA:  Another crucial category of documents

11   are communications between Mr. Human and other targets of his

12   lawsuits that will show a pattern of defendants and targets

13   responding you consented, we have consent for your number.  Not

14   a single communication with another target of his scheme has

15   been produced.

16          THE COURT:  Did you inquire, Mr. Butler, with your

17   client?

18          MR. BUTLER:  Oh, I absolutely did.

19          THE COURT:  And there's nothing there either; is

20   that what you're saying?

21          MR. BUTLER:  Nothing.  And quite frankly, you know,

22   a good thorough reading of what counsel wrote, you know,

23   basically, he is saying that he believes that there's fraud

24   there.  He believes that --

25          THE COURT:  I'm not entertaining that.  I'm

1  entertaining these discovery requests.  So it's your

2  representation to this Court --

3          MR. BUTLER:  I don't have anything to produce in

4  that regard.

5          THE COURT:  Okay.  What else?

6          MR. TEREPKA:  Documents and interrogatory responses

7  that will show Mr. Human's internet service provider, which is

8  a key piece of information for subpoenas.  That's simple.

9          THE COURT:  Why haven't you provided the internet

10 service provider, Mr. Butler?

11         MR. BUTLER:  I believe that we gave the internet

12 service provider through this Straight Talk, a website, and

13 those are the people that, you know, he got the phone from.

14 Those are the people that he pays.

15         THE COURT:  That's cellular.  I'm talking about

16 internet service provider.

17         Is it your claim he doesn't have an internet service

18 provider?

19         MR. BUTLER:  Judge, that's what I've been made to

20 understand.

21         MR. TEREPKA:  Your Honor, that's not what his

22 interrogatory responses said.  They just didn't respond.

23         THE COURT:  What did his interrogatory responses

24 say?

25         MR. TEREPKA:  I can find them quickly.  But all of

1   his interrogatory responses had irrelevant information,

2   starting with sentences like "I'm a 68-year-old man on Social

3   Security."

4            THE COURT:  Yeah, I saw a lot of that.

5            So have you ever answered the question is there an

6   internet service provider?

7            MR. BUTLER:  You know, my recollection, Judge, is

8   that we said that there was not.  I -- I -- I would, you know,

9   beg the Court's indulgence.

10           THE COURT:  I'll tell you what's frustrating to me

11  as a federal judge sitting in federal court too is, in a motion

12  to compel that's directly dealing with these topics, you're

13  straining your recollection to even understand what you

14  responded to.

15           Did you prepare for this?

16           MR. BUTLER:  Yes, sir.

17           THE COURT:  And so you don't know what you said,

18  whether there's an internet provider or not?  As you stand

19  here, you don't know the answer to that question?

20           MR. BUTLER:  I can only -- what I believe is that

21  the answer was no.

22           MR. TEREPKA:  Your Honor, even his emails about his

23  desktop computer, which concede that he used it to communicate

24  with our law office about cases, shows that he has an internet

25  service provider.

1          MR. BUTLER:  I don't have any dispute with counsel's

2     representation.

3          THE COURT:  So there is an internet service

4     provider?  You're in agreement on that?

5          MR. BUTLER:  I accept what they're saying.  I have

6     not found it.

7          THE COURT:  All right.  What else is outstanding?

8          MR. TEREPKA:  Additional settlement agreements, we

9     asked for those.  Mr. Human --

10          THE COURT:  He told you to look them up on Case.net.

11     That's what he said.  Where are those settlement agreements?

12     Mr. Butler, where are the settlement agreements?  You have

13     those maybe or Mr. Human does.  There's none of those?

14          MR. BUTLER:  The joint settlement agreement --

15          THE COURT:  How many times have you represented

16     Mr. Human in these types of cases?

17          MR. BUTLER:  15 or 20.

18          THE COURT:  Okay.  So did you -- when it was

19     requested for the settlement -- did all those cases settle?

20          MR. BUTLER:  Yes, sir.

21          THE COURT:  So when you were requested, as part of

22     this litigation, as an officer of the court, to provide those

23     settlement agreements, why haven't they been provided?

24          MR. BUTLER:  Well, Judge, I delegated that to --

25          THE COURT:  You better be careful here.

1      MR. BUTLER:  Yes, sir.  And I --

2      THE COURT:  I want the answer to the question.  Who

3  did you delegate it to, then?  Another officer of the court?

4      MR. BUTLER:  No, sir.  It would be to Mr. Human and

5  Mr. Prosser.  I -- I do believe that I could come up with more

6  of those, and I will.

7      THE COURT:  What else?

8      MR. TEREPKA:  We asked for communications showing

9  anything addressed to Veronica Moreno or the email address

10  associated with that name.  We uncovered in the device

11  inspection many text messages addressed to that person and

12  other aliases.  It is very likely there are emails in

13  Mr. Human's possession addressed to this person that have not

14  been produced.

15      THE COURT:  What's your answer to that?

16      MR. BUTLER:  I know of no emails like that.

17      THE COURT:  Do you know of it in the same way you

18  just -- did you "delegate," quote, knowing about that, or did

19  you actually inquire -- did you inquire with your client about

20  it?  Did you conduct any examination or investigation of that

21  issue?

22      MR. BUTLER:  I inquired at great length, and I did

23  not investigate the actual phone.

24      THE COURT:  Okay.  Is it fair to say that everything

25  that you've represented to this Court in this matter as well as

1   to opposing counsel is strictly based on whatever Mr. Human

2   told you?  Is that it -- is that true?

3          MR. BUTLER:  Well, I would say, Judge, that a

4   significant portion of it.

5          THE COURT:  Okay.  What did you independently

6   provide to this Court, then?  I'll ask it another way.  What is

7   outside of that significant portion?

8          MR. BUTLER:  Mr. Human would bring his phone in, and

9   he would show me the texts that arrived from unsolicited

10  sources.  He would bring in his proof of being on the no call

11  list for the national registry and the no call list for

12  Missouri.  He would bring in the screenshots of the people who

13  were contacting him.  He has some recordings that indicated

14  that he had told them that he was on these lists and that they

15  should not continue.  And then he showed me where they in fact

16  continued.  Those are the kinds of things that I would have

17  probably investigated beyond just quizzing him very closely.

18         THE COURT:  What else are you looking for?

19         MR. TEREPKA:  We requested his internet search --

20  his internet history on key dates in question, key time periods

21  in question.  But that may no longer exist anymore because the

22  desktop computer has been destroyed.

23         THE COURT:  What else?

24         MR. TEREPKA:  We have hit the highlights, Your

25  Honor.

```
 1            THE COURT:  Okay.  What else do you want to say?

 2            MR. BUTLER:  May I have a minute, Judge, to look

 3   through my notes?

 4            THE COURT:  Sure.  Take your time.

 5            MR. BUTLER:  Judge, when Fisher is complaining

 6   about, you know, not getting supplemental discovery, you know,

 7   basically, Mr. Human has turned over everything that he has.

 8   In fact, some of the discovery that was just turned over within

 9   the last day would show, you know, the Smart Asset use of the

10   subpoena has uncovered six other names, one in Saskatchewan,

11   Canada, and another in northern California.  None of the six

12   would ever lead to Mr. Human.  Though, you know, when

13   questioned over and over again -- and like I said, Judge, they

14   have said 185 times -- I did take the time to count that --

15   that they have, you know, written permission to contact him.  I

16   can't get any -- any response to that.

17            THE COURT:  You're free to ask me for anything you

18   want in terms of their discovery.  You understand that, right?

19            How long have you been a lawyer?

20            MR. BUTLER:  Forever.

21            THE COURT:  Okay.

22            MR. BUTLER:  Judge, 42 years.

23            THE COURT:  Well, use that experience if you want to

24   complain about their discovery.  You can ask me.  There's a

25   mechanism for that.  But that's not what we're talking about
```

1  here today.

2          MR. BUTLER:  Thank you, Judge.  I do understand

3  that, and I am -- you know, any confusion on --

4          THE COURT:  There's no confusion here.  There's no

5  confusion on my part.  This is outrageous behavior on your

6  part.  It's outrageous behavior on Mr. Human's part.

7          But I want to make sure you're able to say whatever

8  you want to say.  Is there anything else you'd like to say?

9          MR. BUTLER:  Well, Judge, I was not in agreement

10  with, you know, several things that have happened.

11          THE COURT:  What does that mean?  What happened?

12  When, where, who, what, why, how?  What are you talking about?

13          MR. BUTLER:  Filing the dismissal, filing the

14  appeal, filing the --

15          THE COURT:  Wait.  You weren't in agreement with

16  doing that?

17          MR. BUTLER:  I -- I took a position where I would

18  argue against it, yes.

19          THE COURT:  Wait.  Are you talking about what you're

20  saying to your own client?  Is that what you mean?  You did

21  file those motions with me, right?

22          MR. BUTLER:  (Attorney moved head up and down.)

23          THE COURT:  Correct?

24          MR. BUTLER:  Yes, sir.

25          THE COURT:  And you signed those, right?

```
 1              MR. BUTLER:  Yes, sir.

 2              THE COURT:  And you appealed it to the Eighth

 3    Circuit, right?

 4              MR. BUTLER:  (Attorney moved head up and down.)

 5              THE COURT:  I can't hear you.

 6              MR. BUTLER:  Yes, sir.

 7              THE COURT:  All right.  And you -- with your

 8    42 years of experience, you understand you're responsible for

 9    anything submitted to the Court, correct?

10              MR. BUTLER:  Yes.

11              THE COURT:  Do you remember the Missouri bar?

12              MR. BUTLER:  Yes.

13              THE COURT:  Okay.  So I don't know that I want to go

14    into your attorney-client any more than you have, but there's

15    major problems here on your side, major problems, for you as an

16    attorney, for your client as a litigant.  There's major

17    problems here.  I don't know how we got here, but we're not in

18    a good place.

19              But I'll let you finish.  Go ahead if you have

20    anything else.

21              MR. BUTLER:  Judge, what I have remaining would be

22    fairly repetitious of some of the things we've already gone

23    over and you've directly responded to.  So I would leave it at

24    that.

25              THE COURT:  Okay.  All right.  Let me make sure,
```

1   then.

2          You can take your seat, sir, whenever you're

3   comfortable doing that.

4          Let me make sure, then.  I'm going to submit a

5   written order following this hearing, but I want to be -- want

6   to indicate to the parties how I'm going to rule.

7          So I want to make sure I have the listing of all the

8   things you'd like to -- let's see.  I'm on Doc 66, page 8.

9   First thing is Mr. Human should be compelled to produce

10  documents including interrogatory answers relevant to Fisher's

11  defenses and counterclaims.

12         That's request number 1, correct?

13         MR. TEREPKA:  Yes, Your Honor.  Although if I may

14  briefly address the relief requested.

15         Your Honor mentioned that Fisher has a counterclaim

16  and we may see more evidence in connection with that, but given

17  the clear record of what has been destroyed and not produced,

18  in violations of the Court's order, Fisher requests that the

19  Court strike Mr. Human's pleadings --

20         THE COURT:  I'll get to that.  I just want to make

21  sure that what you -- if you want -- if I strike their

22  pleadings, you don't want these things; is that what you're

23  saying?

24         MR. TEREPKA:  If the Court strikes the pleadings,

25  correct, that would moot the motion to compel aspect.

1      THE COURT:  Okay.  I got you.  So I am going to

2  issue an order.  I am going to strike the defendant's pleadings

3  in this case, both as to the -- his actions, Plaintiff, and as

4  to his answers and responses to your counterclaim, okay?

5  They're going to be stricken, and I'll issue a written order to

6  that effect.

7      MR. TEREPKA:  Understood, Your Honor.

8      THE COURT:  What else do you want?

9      MR. TEREPKA:  Monetary sanctions.

10     THE COURT:  And you're going to give me additional

11  evidence on that?

12     MR. TEREPKA:  Yes, Your Honor.  May we have 14 days?

13  We can be faster.

14     THE COURT:  I think -- I mean, I think we're just

15  going to be wasting more time.  I'll give you until -- I'll

16  give you 5 days to do it.

17     MR. TEREPKA:  Understood, Your Honor.

18     THE COURT:  I want 5 days.  I'll give you -- how

19  much time do you want to respond if you take any -- I intend to

20  award monetary amounts.

21     MR. BUTLER:  I would ask for the same 14 days, but

22  if 5 is what you're giving --

23     THE COURT:  5 and 5.

24     MR. BUTLER:  I'll take it.

25     THE COURT:  5 days to submit, 5 days to respond,

1  okay?

2          MR. BUTLER:  I'll take it.

3          THE COURT:  Okay.  What else?  And then you're going

4  to respond to the additional -- they're asking for -- they're

5  asking for additional money related to the hearing, right?

6          MR. TEREPKA:  For this hearing, Your Honor, and for

7  the January 22 hearing.  That's teed up in a separate motion.

8          THE COURT:  He has until April 12 to respond to

9  that, right?

10          MR. TEREPKA:  Yes, Your Honor.

11          THE COURT:  All right.  I'm also going to order you,

12  Mr. Butler, on that same date, April -- is it 12th or 11th?

13  I'm sorry.

14          MR. GULETZ:  12th.

15          THE COURT:  April 12.

16          I'm ordering you to show cause why there shouldn't

17  be further sanctions issued by this Court pursuant to Rule 11,

18  all right?  You need to show cause why given the record in this

19  case, the papers, that that's not appropriate.  You can have 5

20  days to respond to that as well.

21          MR. TEREPKA:  Understood.

22          THE COURT:  I'll schedule a hearing for that.

23          MR. BUTLER:  Is that personal to myself or is

24  that --

25          THE COURT:  It's personal to yourself and Mr. Human.

1  It's another avenue the Court has to address what it currently

2  views as unethical conduct and misrepresentations to the Court.

3  They get to go forward with their fraud case.

4          Oh, the deposition, I'm ordering the deposition.

5          MR. TEREPKA:  With respect to that, Your Honor,

6  because the Court has stricken Mr. Human's pleadings in

7  response to the counterclaim, as the Court ordered in the Pasch

8  v. OnDoc case that Your Honor ordered, Mr. Fisher can seek a

9  default judgment and proceed straight to damages.

10         THE COURT:  You don't want to depose him on damages?

11         MR. TEREPKA:  We would like to depose him on

12 damages, Your Honor.

13         THE COURT:  That's what I thought.  That's what I'm

14 saying.  So I'm going to order him to sit for a deposition

15 relative to damages.

16         Do you want to set a date now?  I'll give you that

17 date if you want to set a date.

18         MR. TEREPKA:  May I have one moment?

19         THE COURT:  Sure.

20         MR. TEREPKA:  Thank you, Your Honor.

21         MR. BUTLER:  Judge --

22         THE COURT:  Hold on a second.  I'm not cutting you

23 off in that way.  I'm just letting them answer.  Then I'll let

24 you say whatever you want, sir.

25         MR. TEREPKA:  Your Honor, I have many previous

```
 1   commitments in April including --
 2             THE COURT:  Pick your date.  You don't have to --
 3   I'm not -- it doesn't matter to me.  It's your case.
 4             MR. TEREPKA:  May 9, Your Honor.
 5             THE COURT:  Okay.  You're going to -- you're in
 6   St. Louis, right?
 7             MR. HUMAN:  Yes, Your Honor.
 8             THE COURT:  Okay.  So where do you want to do the
 9   depo?  If you want to do it in this building, you can.  If you
10   want to do it at Thompson Coburn, you can do it there.
11             What do you want to do?
12             MR. TEREPKA:  We'll do it at Thompson Coburn's
13   offices, Your Honor.
14             THE COURT:  All right.  You need to issue a notice,
15   but you're going to be ordered to appear for a deposition May 9
16   at a mutually agreeable time at Thompson Coburn law firm
17   downtown St. Louis.
18             Do you understand that, sir?
19             MR. HUMAN:  I do.
20             THE COURT:  Do you understand that, Mr. Butler?
21             MR. BUTLER:  Yes.
22             THE COURT:  Okay.  What else?
23             MR. TEREPKA:  I'm considering whether additional
24   document discovery may be relevant to damages.
25             THE COURT:  You're allowed to -- you certainly can
```

1  issue document discovery if we need to amend the case

2  management order to accommodate that.  You can work with

3  Mr. Butler on that.  If you can't come to an agreement, submit

4  a proposal to me.

5          MR. TEREPKA:  Understood, Your Honor.

6          THE COURT:  Okay.  What else?

7          MR. TEREPKA:  I think that does it.

8          THE COURT:  All right.  Mr. Butler, I cut you off.

9  Go ahead.  What were you going to say, sir?

10          MR. BUTLER:  Your Honor, in light of this particular

11  hearing, I -- you know, I would -- I think the Court has heard

12  without it being said that some of this has been a struggle,

13  and I'm not sure of my effectiveness for Mr. Human at this

14  point.  Wondering if the Court would entertain my motion to

15  withdraw.

16          THE COURT:  You can file a written motion to

17  withdraw if you'd like, but I'm not going to allow you to

18  withdraw prior to you responding to the show cause.  I'm not

19  going to allow you to withdraw prior to the May 9 deposition.

20  But so --

21          MR. BUTLER:  Yes, sir.  Okay.

22          THE COURT:  I'll take it up at some point but not

23  today.

24          MR. BUTLER:  Yes, sir.

25          THE COURT:  Okay.

1            MR. BUTLER:  Yeah.

2            THE COURT:  Anything else?

3            MR. TEREPKA:  Nothing further.  Thank you, Your

4    Honor.

5            THE COURT:  Anything else?  Do you have any

6    questions?

7            MR. BUTLER:  No, Judge.  Thanks for the opportunity.

8            THE COURT:  Okay.  We're in temporary recess.  Thank

9    you.

10           (Off the record at 2:18 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        <u>CERTIFICATE</u>

2

3       I, Pamela Harrison, Registered Professional Reporter and

4  Certified Realtime Reporter, hereby certify that I am a duly

5  appointed Official Court Reporter of the United States District

6  Court for the Eastern District of Missouri.

7

8       I further certify that the foregoing is a true and

9  accurate transcript of the proceedings held in the

10 above-entitled case and that said transcript is a true and

11 correct transcription of my stenographic notes.

12

13      I further certify that this transcript contains pages 1

14 through 46 inclusive and was delivered electronically and that

15 this reporter takes no responsibility for missing or damaged

16 pages of this transcript when same transcript is copied by any

17 party other than this reporter.

18

19      Dated at St. Louis, Missouri, 9th of April, 2025.

20

21

22           /s/  Pamela Harrison
             Pamela Harrison, RMR, CRR, CRC, CCR, CSR
23           Official Court Reporter

24

25

Motion Hearing - March 28, 2025