**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **DANIEL HUMAN**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**FISHER INVESTMENTS, INC.,** ET AL.,<br><br>Defendants. | **Case No. 4:24-cv-01177-MTS**<br><br>**JURY TRIAL DEMANDED** |

**FISHER'S NOTICE OF FILING SETTLEMENT AGREEMENTS THAT SHOW MR. HUMAN'S AND HIS COUNSEL'S STATEMENTS ABOUT HIS FINANCIAL CONDITION ARE FALSE**

On the record at the May 22 hearing, Mr. Human's counsel consented to Fisher's request to remove the confidentiality designations Mr. Human placed on settlement agreements he produced in this case such that Fisher could file them publicly. Fisher accordingly files unredacted versions of Mr. Human's fourteen produced settlement agreements. The Court previously held that six other settlement agreements should be publicly filed because "they go to the veracity of statements made by Plaintiff [Mr. Human] and his counsel in the public record." ECF No. 98.

The fourteen newly de-designated settlements are strong additional evidence showing that Mr. Human's and his counsel's representations about Mr. Human's financial condition to this Court and the bankruptcy court are knowingly false. *See* attached **Exhibit A**. In particular, Mr. Human submitted a declaration claiming that his "sole source of actual income is the $1,627.00" he receives monthly from SSI. ECF No. 87-1; *see also* ECF No. 85-1 ¶ 20; ECF Nos. 86-1 at ¶ 2, 87-1 at ¶ 2 (all containing similar statements). He also claimed to have nearly no assets. Mr. Human's bankruptcy petition makes similar statements. ECF No. 101 at 30–31.

Mr. Human's settlement agreements show these statements are knowingly false. In just *nineteen* TCPA settlement agreements out of presumably hundreds, Mr. Human received $120,250, and out of that sum, $83,750 was received within the first nine months of 2024 alone.

Moreover, Mr. Human's counsel in this matter represented him in at least a dozen of these nineteen settlement agreements, and his firm was referenced by name in each of those settlement agreements. Ex. A. Mr. Human's counsel thus knows that the statements about Mr. Human's income are false but signed a Court filing—and submitted an affidavit—containing them anyway. *See* ECF Nos. 85-1 ¶ 20, 85 at 9, 86 at 7.

Mr. Human has refused to produce still more settlements Fisher is seeking in discovery that are likely to show significant additional income. *See generally* ECF No. 70 at 8–9 (discussing Mr. Human's failure to produce responsive settlement agreements and collecting cases where Mr. Human filed notices or settlement and/or dismissal); *see also* ECF No. 66 at 10, 14.

[*signature on following page*]

Dated: May 27, 2025

Respectfully submitted,

/s/ *Alexander D. Terepka*
Alexander D. Terepka (*pro hac vice*)
James M. Ruley (*pro hac vice*)
Melanie G. Ng (*pro hac vice*)
WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, GA 30309
Tel: (213) 839-3317
alex@wtlaw.com
jruley@wtlaw.com
mng@wtlaw.com

Matthew D. Guletz, #57410(MO)
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, MO 63101
(314) 552-6311
Fax: 314-552-7000
mguletz@thompsoncoburn.com

*Attorneys for Fisher Investments, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this May 27, 2025, I caused to be electronically filed the foregoing document in the United States District Court for the Eastern District of Missouri, with notice of same being electronically served via email to Mr. Human's counsel.

*/s/ Alexander D. Terepka*
Alexander D. Terepka

# EXHIBIT A

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This **CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE** (the "Agreement") is made and entered into upon the date of full execution of this Agreement (hereafter, the "Effective Date"), by the following parties (individually, a "**Party**" and collectively, the "**Parties**"): (1) Plaintiff Daniel Human ("**Plaintiff**") on the one hand, and (2) Defendant Dillon Automotive Group, Inc., d/b/a Dennis Dillon Nissan ("**Defendant**") on the other.

### RECITALS

**WHEREAS**, Plaintiff and Defendant are in a civil legal dispute concerning allegations made by Plaintiff, on behalf of himself and a putative class or classes of similarly situated persons, in a complaint filed in the Circuit Court of the County of St. Louis, State of Missouri and subsequently removed to and currently pending in the United States District Court for the Eastern District of Missouri (the "**Court**"), styled as *Daniel Human v. Dillon Automotive Group, Inc., d/b/a Dennis Dillon Nissan,* Case No. 4:24-cv-00309-CDP, which alleges, among other things, purported violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("**TCPA**") and related state telemarketing laws (herein the "**Action**");

**WHEREAS**, the Parties have determined that it is in their mutual and individual best interests to fully, completely, and forever resolve, compromise and settle all pending claims, causes of action, and disputes pursuant to the terms of this Agreement;

**WHEREAS**, Defendant denies all of Plaintiff's allegations in the Action and maintains that, at all times, it was in full compliance with all applicable laws, statutes, and regulations.

WHEREAS, Defendant believes that it has meritorious defenses to the claims asserted in the Action, and specifically denies that it engaged in any unlawful actions;

**WHEREAS**, this Agreement does not constitute and shall not be construed as an admission of liability or wrongdoing, and Defendant expressly denies any such liability or wrongdoing whatsoever;

**WHEREAS**, it is now the intention of the Parties and the objective of this Agreement to avoid the costs and inconvenience of litigation and settle and dispose of, fully and completely and forever, the claims released below.

**NOW, THEREFORE**, in consideration of the mutual promises and covenants stated herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree to the following Terms and Conditions:

### TERMS AND CONDITIONS

1. **Defendant's Consideration.** As consideration to Plaintiff, Defendant agrees to pay Plaintiff the total amount of **Seven Thousand Five Hundred U.S. Dollars Only ($7,500.00)** (the "**Payment**"). The Payment shall be inclusive of claimed monetary damages to Plaintiff and any claimed attorneys' fees and costs. The Payment shall be in full and complete consideration to Plaintiff for the settlement and releases agreed to herein. Within five (5) business days of the Effective Date of this Agreement, or unless otherwise agreed to by the Parties in a separate writing, Defendant shall

transmit to Plaintiff's Counsel, via ACH transfer, the full amount of the Payment, with transmittal instructions to provided separately. Plaintiff's Counsel shall be solely responsible for allocating the Payment between Plaintiff and his attorneys. As a condition precedent to the aforementioned Payment, and before transmittal of same, Plaintiff's Counsel and Plaintiff shall provide fully completed and executed IRS Form W-9s to Defendant's Counsel, who is identified in Section 14 below. Neither Defendant or its counsel make any representation(s) as to the tax treatment of the Payment, and shall not be liable for any tax consequences incurred as a result of the Payment or this Agreement.

2. **Plaintiff's Consideration.** No later than **three (3) business days** after receipt of the Payment, Plaintiff will voluntarily dismiss his individual claims in the Action against Defendant with prejudice and without costs, and the class claims that Plaintiff alleged against Defendant in the Action will be dismissed without prejudice and without costs. To the extent the Action has been dismissed prior to receipt of the Payment in whole or in part, Plaintiff's Counsel will file any additional paperwork or notices with the Court as may be necessary to effectuate the foregoing dismissals and to ensure there is a dismissal with prejudice as to Plaintiff's individual claims against Defendant, including dismissal of any appellate or other legal proceedings, as necessary. Unless otherwise required by the Court, applicable rules or law, the Parties shall refrain from using the term "settlement" on the Court's docket or from filing a "notice of settlement" with the Court. If such a notice has already been filed as of the Effective Date, however, the Parties shall refrain from using the word "settlement" going forward. To the extent applicable, Plaintiff shall also withdraw any other complaints that may have been filed or made against the Released Parties, as defined in Section 3.3 below, including but not limited to any complaint made with a government or regulatory agency or office or any complaint made online. As part of his consideration to Defendant, Plaintiff agrees to provide all of his business and personal telephone numbers (landline and mobile, including but not limited to facsimile numbers) currently in existence to Defendant, via Defendant's Counsel identified in Section 14 below, so that Defendant (at its option) may add those telephone numbers to an internal Do Not Call list, which are identified below in this Section. Plaintiff also agrees not to "opt-in" to receive calls or text messages from Defendant and/or on any website/URL owned or operated by Defendant (e.g., https://www.dennisdillon.com/) or that otherwise references Defendant by name (e.g., "Dennis Dillon") from the Effective Date forward. Plaintiff hereby discloses the following phone numbers:

Plaintiff's disclosed numbers: (314) 915-2988, (208) 390-1355.

3. **Releases.**

**3.1 Ownership of Released Claims.** In consideration of the covenants and agreements stated in this Agreement, Plaintiff hereby warrants and represents that he is the owner of any and all claims, has not assigned or transferred claims to any third party, and has full capacity and authority to enter into and perform this Agreement and to compromise and release the Released Claims, as defined in Section 3.4 below.

**3.2 Releasing Parties. "Releasing Parties"** means Plaintiff and his agents, estates, heirs, executors, administrators, successors, personal representatives, assigns, any other person or entity that might succeed to his rights and responsibilities under this Agreement, any entity in which Plaintiff holds or will hold an ownership interest, and each of their respective past, present and future officers, directors, employees, partners, shareholders, investors, accountants, owners, trustees, insurers, attorneys, agents, representatives and contractors.

**3.3 Released Parties.** "**Released Parties**" is defined as Defendant and each of its respective parents, subsidiaries, divisions, predecessors, successors, assigns, related partnerships or entities and each of their respective past, present and future officers, directors, employees, partners, shareholders, investors, accountants, owners, trustees, insurers, agents, representatives and contractors. Released Party shall refer to one of the Released Parties.

**3.4 Released Claims.** The Releasing Parties hereby fully and completely, irrevocably and expressly release and forever discharge the Released Parties from all liability for any and all past and present injuries, counterclaims, causes of action, demands, losses, expenses and damages whether known or unknown, suspected or unsuspected, foreseen or unforeseen, related to the subject matter of the Action, whether at law or in equity, whether absolute or contingent, whether arising under the common law, state or federal law, or any other law, which Plaintiff ever had, now has against the Released Parties (the "**Released Claims**").

The Parties agree that if the Releasing Party is contacted by any of the agreed to Released Parties after the execution of this Agreement, the Releasing party shall notify the Released party of the first such contact ("first instance"). If the Released Parties acknowledge the fact of the First Instance in writing and further promise that there will be no further contact (the "curative actions") within sixty (60) days, then the Releasing Party will release Releasing Party for such First Instance. During such 60 day period (which may be extended by agreement), Counsel for both parties shall reasonably cooperate and provide all information and evidence in support of any claim within 7 days of a written request, which may include email communications. Such information may include, for example, call or text logs, screenshots, webpages, call recordings, telephone records, and/or any communications with Defendant or any third party regarding the claim. If the dispute cannot be resolved in the 60-day cure period, any lawsuit against a Released Party shall be initiated in the United States District Court for the Court for the Eastern District of Missouri, or in the event jurisdiction is not proper in federal court, then state court in Missouri.

By executing this Agreement, it is the full and express intent of the Parties that the Releasing Parties forever and completely discharge and release the Released Parties from any and all liability for unknown and/or unforeseen losses, costs, expenses, liabilities, claims, damages and consequences thereof. This Release expressly includes, but shall not be deemed limited to, any claims which arise from or are related to alleged legal violations and any claims which were asserted or could have been asserted in the Action, including but not limited to any TCPA claims. This Release, however, (1) does not include any claims arising out of a failure to perform the terms of this Agreement and (2) is in no way to be construed to release any claims Plaintiff has or may have against any person or entity other than the Released Parties. For any telephone numbers not reported in accordance with Section 2 above, the Releasing Parties shall be deemed to have forever waived any claim of any kind (including but not limited to TCPA claims) related to such phone numbers. The Parties agree and acknowledge that this Release is an essential and material term of this Agreement and without this Release, the Agreement would not have been accepted. The Parties agree that this Agreement may be pleaded as a full and complete defense to any and all Released Claims being released pursuant to this Agreement. Each Party acknowledges and consents that the Agreement may be used as the basis for an injunction to halt any action, suit or other proceeding based on the Released Claims (without being required to post a bond or other security).

**3.6 Subsequent Discoveries.** The Releasing Parties acknowledge that they might hereafter discover facts in addition to or different from those they know or believe to be true with respect to the subject matter of this Agreement. Notwithstanding the discovery of any such additional

or different facts that, if known, would materially affect their decision to enter into this Agreement, the releases in this Agreement shall remain in effect. The Releasing Parties waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of any statute or law which might otherwise render unenforceable a release of unknown claims contained in this Agreement. The Releasing Parties represent and warrant that no promise or inducement has been made or offered by any of the Parties, except as set forth herein, and that this Agreement is not executed in reliance upon any statement or representation of any of the Parties or their representatives, concerning, among other things, the nature and extent of the injuries, damages or legal liability.

**3.7 Effect on Legal Proceedings.** Except as otherwise provided herein, in consideration of the covenants and agreements contained in this Agreement, the Releasing Parties: (1) fully and forever release, remise, quit-claim and discharge the Released Parties from the Released Claims; and (2) shall not bring, commence, institute, maintain, prosecute any action at law, proceeding in equity or any other legal proceeding against any of the Released Parties based on any of the Released Claims. Should any proceeding be instituted by, or on behalf of, a Releasing Party against a Released Party with respect to a Released Claim, this Release shall be deemed full satisfaction of any such claim(s) and a sufficient basis for the immediate dismissal thereof and/or an injunction against suit (without being required to post a bond or other security).

**4. Representations and Warranties.** The Parties hereby make the following representations and warranties, which shall be deemed material inducements for Defendant to enter into this Agreement:

**4.1 Plaintiff's Representations and Warranties.** Plaintiff, on behalf of himself and his agents, employees, representatives and attorneys, represents and warrants that (1) all of his telephone numbers currently in existence are listed in Section 2 above; (2) he is the current subscriber and sole user of the phone number at issue in the Action; (3) he does not intend to bring any other claims against a Released Party; (4) he does not know of any claims against the Released Parties that are not hereby released; (5) he does not know of any other individual with a potential claim against a Released Party; (6) he is not aware of any attorney who intends to bring a claim against a Released Party; (7) he is not seeking any plaintiffs or potential plaintiffs for the purposes of initiating any claim or lawsuit against a Released Party; (8) he will not seek or solicit plaintiffs or potential plaintiffs for the purposes of initiating any claim or lawsuit against a Released Party; (9) he does not have, or has permanently removed any solicitations regarding a Released Party on any websites or other forums; (10) he will not communicate any information concerning the Action to any potential class members or third parties for the purposes of assisting or encouraging the filing or prosecution of any action or proceeding against a Released Party; (11) he will not disclose to any third party the existence, terms or substance of any part of the settlement negotiations between the Parties, or the existence, terms or substance of any part of this Agreement; and (12) he will provide notice to Defendant's Counsel as provided in Section 3.4 above (individually or through his counsel) if he intends to pursue any future purported violations by and against a Released Party.

**4.3 Other Representations and Warranties.** Each of the Parties to this Agreement represents and warrants that no promise or inducement has been made or offered by any of the Parties, except as set forth herein, and that this Agreement is not executed in reliance upon any statement or representation of any of the Parties or their representatives, concerning, among other things, the nature and extent of the injuries, damages or legal liability. Each of the Parties to this Agreement represents and warrants that they have read this entire Agreement, understands each and every term, and has undertaken an investigation of the facts as deemed necessary. The Parties further acknowledge that

each Party has had the opportunity to consult legal counsel in connection with entering into this Agreement and respective counsel for each Party has explained the meaning and significance of each provision of this Agreement. This Agreement is executed freely and voluntarily with full knowledge and understanding of its terms, has been negotiated at arm's length and in good faith, and has been signed without duress, coercion, or undue influence of any kind. By entering into this Agreement, the Parties represent and warrant they will assume the risk of any differences between the Parties' respective understandings of the facts and agree that this Agreement shall remain effective despite any such differences.

**4.4 Remedies for Breach.** The Parties agree that damages for each breach of the representations and warranties in Sections 4.1 and/or 4.2 shall be paid to Defendant. A court of competent jurisdiction may grant injunctive relief, in addition to monetary remedies, in the event any of the representations and warranties in this Section 4 are breached and/or a Party is required to enforce this Agreement. The Parties consent to the immediate dismissal of any litigation filed in disregard of the above representations and warranties. This provision is not intended to limit any remedies available under applicable law.

**5. <u>Non-Disparagement.</u>** The Parties agree not to disparage each other, each other's business practices, products or services, or agents, partners, employees, affiliates, managers, officers, directors, members, attorneys, insurers, parents, subsidiaries, successors, principals, assigns, shareholders and/or representatives, now or at any time in the future, in public or in private. The term "disparage" shall mean any statement which, directly or by reasonable implication, creates a negative impression about the reputation, character, practices, and/or conduct of another in the mind of any reasonable person to whom the statement is made, and includes verbal, written and/or electronic statements.

**6. <u>Confidentiality.</u>** The Parties and their Counsel agree to keep the terms of this Agreement and all documents and things exchanged during settlement negotiations leading up to this Agreement (collectively, "**Confidential Information**"), strictly confidential and agree not to disclose Confidential Information to any other person, except (1) financial or tax accountants, advisors, insurers, indemnitors, consultants, or attorneys; (2) as may be required in connection with any action to enforce the Agreement; (3) as may be required by a judicial or regulatory body; (4) as is reasonably necessary to the defense of any action to which the terms of this Agreement may apply; or (5) as otherwise required by law.

**6.1 Breach of Confidentiality.** The Parties acknowledge and agree that the disclosure of Confidential Information prohibited by this Section 6 is a material term of this Agreement, the violation of which could result in irreparable harm and make remedies for breach difficult to calculate. Accordingly, the Parties agree that damages for each breach of this provision shall be paid to the non-breaching party. The Parties also agree that injunctive relief may be sought by the non-breaching party (without being required to post a bond or other security) and that any attorneys' fees, court fees, and/or costs incurred to enforce this provision shall be paid by the non-breaching party.

**6.2 Disclosure of Confidential Information.** In the event Plaintiff is requested to reveal Confidential Information, Plaintiff shall provide Defendant fourteen (14) days' notice, or as much time as may be practical under the circumstances, in accordance with Section 14 below, prior to revealing the Confidential Information in order to provide Defendant an opportunity to object or take other legal action deemed necessary to protect its interests.

7. **Cooperation.** Plaintiff, Defendant, and their respective attorneys agree to fully cooperate with one another and to use their best efforts to affect the consummation of this Agreement and the dismissal of the Action, as provided in Section 2 above.

8. **Entire Agreement.** This Agreement embodies the entire understanding of the Parties. All prior representations and agreements, whether oral or in writing, have been merged into and replaced by this Agreement, and this Agreement otherwise supersedes any such prior representations and agreements. No other agreement, statement, amendment, or promise made by or to either Party will be binding on the Parties unless (1) it is made in writing and signed by the Parties and (2) specifically refers to this Agreement. This Agreement may be amended only by a written agreement executed and signed by the Parties.

9. **Captions and Grammar.** Paragraph titles or captions contained in this Agreement are used for convenience or reference only. The singular includes the plural, the plural includes the singular, and the use of pronouns and gender shall apply to all genders.

10. **Recitals.** The recitals set forth above are incorporated herein by reference and made a material part of this Agreement. The representations contained in the recitals shall survive any default hereunder.

11. **Benefit and Burden.** This Agreement shall be binding upon, and inure to the benefit of, the Parties and their respective heirs, executors, administrators, agents, employees, affiliates, managers, officers, directors, partners, attorneys, parents, subsidiaries, successors, principals, assigns, shareholders and/or representatives. This Agreement shall be binding, enforceable, discoverable and admissible to establish the rights, obligations and duties of the Parties in any action brought to enforce this Agreement.

12. **Choice of Law and Venue.** This Agreement shall be governed in accordance with the law of Idaho without giving effect to any conflicts of law principles. Any dispute between the Parties or proceeding to enforce this Agreement shall be filed in the United States District Court for the Court for the District of Idaho, or in the event jurisdiction is not proper in federal court, then state court in Idaho. Each Party expressly consents to jurisdiction and venue as provided herein and waives any objections to jurisdiction or venue.

13. **Severability.** If any of the provisions, terms, or clauses of this Agreement are declared illegal, unenforceable, or ineffective in a legal forum of competent jurisdiction, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

14. **Notices.** All notices, requests, demands or other communications under this Agreement shall be made in writing and shall be deemed to have been given on the date of sending. Though email communication is also encouraged, all notices, requests, demands or other communications under this Agreement shall be served personally by hand delivery or overnight courier (with receipt of delivery) and addressed as follows:

*To Plaintiff:*

James A. Marks, Atty
**25 East Frisco Ave**
**Webster Groves MO 63119**
*jmarks@willcraftlegal.com*

*To Defendant:*

John W. McGuinness
A. Paul Heeringa
**Manatt, Phelps & Phillips, LLP**
151 N. Franklin Street
Chicago, IL 60606
*jmcguinness@manatt.com*
*pheeringa@manatt.com*

**15. <u>Costs.</u>** Each Party is to bear their own costs and fees unless otherwise stated above. However, in the event that any action is taken to interpret or enforce the terms of this Agreement, the non-prevailing Party shall pay the prevailing Party's reasonable attorneys' fees and costs expended, in addition to other damages or remedies. A Party shall be entitled to injunctive relief in the event of a breach of, or in order to enforce the terms of, this Agreement (without being required to post a bond or other security).

**16. <u>Non-Admissibility.</u>** This Agreement and all negotiations and non-public correspondence leading up to its execution shall be deemed to be within the protection of Federal Rule of Evidence 408 and any analogous state or federal rules or principles. Neither this Agreement, nor its terms, conditions, contents or provisions, nor any negotiations leading up to the execution of this Agreement, shall constitute a precedent or be admissible for any purpose in any proceeding; provided, however, that this Agreement shall be admissible in any proceeding to enforce its terms.

**17. <u>Waivers.</u>** No waiver of any of the promises, obligations, terms or conditions of this Agreement shall be valid or enforceable unless it is in writing and signed by the Party against whom the waiver is sought to be enforced. The failure of any Party to insist upon compliance with any of the provisions of this Agreement, or a waiver in a particular instance, shall not be construed as a general waiver or relinquishment by such Party or a waiver of any other provision of this Agreement. Plaintiff waives any procedural requirements under applicable law that may govern, relate to, or apply to this Agreement and agrees to be bound by the terms of this Agreement as stated.

**18. <u>Joint Preparation.</u>** This Agreement shall be construed as if the Parties jointly prepared it. Any uncertainty or ambiguity in this Agreement shall be not interpreted against a Party on the basis that the Party drafted the Agreement.

**19. <u>Authority.</u>** The Parties represent to one another that they have full power and authority to sign and enter into this Agreement, provide the releases and representations identified herein, carry out their respective obligations, and to be bound by this Agreement. The Parties further represent that all necessary action has been taken to authorize the execution and delivery of this Agreement.

**20. <u>Execution and Counterparts.</u>** This Agreement may be executed by each of the Parties in counterparts with the same effect as if the Parties had signed the same copy. This Agreement may be executed by electronic means, PDF or by facsimile, and such electronic, PDF or facsimile copies shall

be treated as originals for all purposes. Each counterpart shall be deemed an original and, when taken together with other signed counterparts, shall constitute one and the same Agreement. This Agreement will be deemed "fully executed" as of the Effective Date when signed by an authorized representative for each of the Parties, as well as their respective counsel.

**[SIGNATURES FOLLOW]**

***SIGNED, AGREED TO, AND EXECUTED BY THE PARTIES AS DATED BELOW:***

**PLAINTIFF:**

*Daniel Human*

Daniel Human

Date: 4/29/2024

**FOR DEFENDANT:**

*Dillon Automotive Group, Inc., d/b/a Dennis Dillon Nissan*

By: ____________________

Printed Name: ____________________

Title: ____________________

Date: ____________________

# CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS

This Confidential Settlement Agreement and General Release of Claims (the "Agreement") is made and entered into by and between Daniel Angelo Human ("Plaintiff"), an individual residing in Missouri, and NORC at the University of Chicago ("Defendant"), a registered 501(c)(3) not-for-profit organization incorporated in Colorado and headquartered in Chicago, Illinois (individually a "Party" and collectively the "Parties").

## RECITALS

**WHEREAS,** on July 5, 2024, Plaintiff filed a complaint in the 21st Judicial Circuit Court, St. Louis County, Missouri, assigned case number 24SL-CC03278 (the "Action").

**WHEREAS,** Plaintiff alleges that communications to a telephone number ending in -1355 regarding the National Immunization Survey on behalf of the Centers for Disease Control and Prevention ("CDC") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020, *et seq.* ("MMPA").

**WHEREAS,** Plaintiff's attorney (James A. Marks of Will Craft Legal Services in Webster Groves, Missouri) ("Plaintiff's Attorney") has represented to counsel for Defendant that Plaintiff's full telephone number is (208) 390-1355.

**WHEREAS,** Plaintiff's Attorney has represented to counsel for Defendant that he has not been contacted by any other person or entity about the Action, does not presently represent any other person or entity with claims against the Defendant, is not pursuing any other actions against the Defendant, and does not intend to pursue any other actions against the Defendant.

**WHEREAS,** Defendant denies Plaintiff's allegations and denies any wrongdoing or liability to Plaintiff or anyone else based on the facts alleged in the Action or otherwise.

**WHEREAS,** Defendant has nevertheless voluntarily placed Plaintiff's telephone number on its internal Do-Not-Call list.

**WHEREAS,** the Parties, without admitting or determining liability, fault or wrongdoing, and to avoid the uncertainties, time and expense inherent in further litigation of their dispute, desire to settle and compromise the Action in accordance with the following terms and conditions.

**NOW, THEREFORE,** the Parties, for the good and valuable consideration of the mutual covenants and promises in this Agreement, and for other good and valuable consideration, agree as follows:

## TERMS AND CONDITIONS

### I. Performance

A. **Dismissal of the Action Without Prejudice.** Within four (4) days of the Effective Date of this Agreement, Plaintiff shall cause the Action and all claims asserted therein to be dismissed without prejudice, with the Parties bearing their own costs and attorneys' fees, by filing a Notice of Voluntary Dismissal that is substantially similar to the Notice that is attached to this Agreement as Exhibit A. This Agreement is conditioned upon dismissal of the Action with prejudice.

B. **Settlement Payment.** Within ten (10) days of the later of the dismissal of the Action with prejudice or Defendant's receipt of a properly formatted and fully executed W-9 from each of Plaintiff and Plaintiff's Attorney, Defendant shall make one (1) payment to Plaintiff totaling five thousand dollars ($5,000.00) (the "Settlement Payment"). The Settlement Payment shall be made by automated clearing house transfer to Plaintiff's Attorney and shall be allocable between Plaintiff and Plaintiff's Attorney as separately agreed to among themselves.

### II. Release

A. **Releasing Parties.** "Releasing Parties" means Plaintiff; his spouses; his children; his estates; his heirs; his executors; his agents; his administrators; his successors; his representatives; his assigns; any other person who resides with Plaintiff; any person or entity that might succeed to Plaintiff's rights and responsibilities under this Agreement; any entity in which Plaintiff holds or will hold an ownership interest; and each of the foregoing's past, present, and future officers, directors, employees, partners, shareholders, investors, accountants, owners, trustees, insurers, underwriters, attorneys, agents, representatives, vendors, and contractors.

B. **Released Claims.** "Released Claims" means any and all past, present, or future claims, costs, compensations, expenses, liabilities, damages, demands, accounts, debts, obligations, liens, suits, rights, actions, and causes of action of any kind or nature, whether based in tort, contract, statute or other theory of recovery, whether known or unknown, whether latent or patent, whether suspected or unsuspected, which any of the Releasing Parties has had, now has, or may have against any of the Released Parties by reason of any matter, event, thing, act, or transaction occurring or arising before the Effective Date of this Agreement, including but not limited to any and all matters arising out of or related to the Action, the facts alleged in the Action, and the claims asserted in the Action. Notwithstanding the foregoing, the release of any third-party lead generators or third-party callers shall be limited to claims arising from or relating to the communications alleged in the Action or other actions taken by or on behalf of Defendant.

C. **Released Parties.** "Released Parties" means Defendant; the CDC; either of their parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns; and each of the foregoing's past, present and future officers, directors, employees, agents, partners, principals, shareholders, investors, accountants, administrators, owners, trustees, insurers, underwriters, attorneys, representatives, vendors, and contractors.

D. **General Release.** In consideration of the covenants and agreements contained in this Agreement, each of the Releasing Parties: (1) fully and forever releases, remises, quit-claims and discharges the Released Parties from the Released Claims; and (2) shall not bring, commence, institute, maintain, prosecute or voluntarily aid in any action at law, proceeding in equity, or any other legal proceeding against any of the Released Parties based on any of the Released Claims. Should any proceeding be instituted by, or on behalf of, a Releasing Party against a Released Party with respect to a Released Claim, this Agreement shall be deemed full satisfaction of any such claim(s) and sufficient basis for the immediate dismissal thereof.

E. **Binding Effect.** The Parties acknowledge that they might hereafter discover facts in addition to or different from those they know or believe to be true with respect to the subject matter of this Agreement. Notwithstanding the discovery of any such additional or different facts that, if known, would materially affect a Party's decision to enter into this Agreement, the releases in this Agreement shall be and remain in effect. The Parties hereby waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of any statute or law which might otherwise render unenforceable a release contained in this Agreement, including but not limited to Section 1542 of the California Civil Code, which they understand states as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## III. Attorneys' Fees

Each Party shall bear its own costs and attorneys' fees incurred in connection with the Action and this Agreement except that, in any action or proceeding between the Parties to enforce this Agreement, including but not limited to this Agreement's confidentiality provisions, the prevailing Party shall be entitled to all reasonable attorneys' fees and costs incurred in connection with such an enforcement proceeding.

## IV. No Other Known Claims or Claimants

Plaintiff represents and warrants that Plaintiff:

a) does not know any person or entity other than Plaintiff that purports to have claims, complaints, charges, or lawsuits against the Defendant;

b) has not shared and will not share with any third party any information that was gathered in connection with investigating or prosecuting the Action;

c) has not encouraged and will not encourage any third party to file or consider filing any claims, complaints, charges, or lawsuits against the Defendant or any third party based on, related to, or arising from the Action;

d) has not assisted and will not assist any third party with filing or considering filing any claims, complaints, charges, or lawsuits against the Defendant or any third party based on, related to, or arising from the Action;

e) has not been represented by and are not represented by any attorneys, law firms, or legal organizations other than Plaintiff's Attorney in connection with the Action; and

f) has not consulted with or received legal advice from any attorneys, law firms, or legal organizations other than Plaintiff's Attorney in connection with the Action.

The Parties agree that the representations and warranties set forth in this section are material inducements to Defendant to enter into this Agreement.

## V. Non-Admission

The Parties enter into this Agreement in compromise of the disputed claims asserted in the Action. Nothing in this Agreement shall constitute or be construed as an admission of any issue of law, fact, or liability or an acknowledgement as to the validity of any claim asserted in the Action against Defendant or any other Released Party.

## VI. Non-Admissibility

This Agreement and all negotiations and correspondence leading up to its execution shall be deemed to be within the protection of Federal Rule of Evidence 408 and any analogous state or federal rules, statutes, or principles. Neither this Agreement, nor any terms, conditions, contents or provisions hereof, nor any negotiations leading up to the execution of this Agreement, shall constitute a precedent or be admissible for any purpose in any proceeding; provided, however, that this Agreement shall be admissible in any proceeding to enforce any of its terms. The Parties shall redact the amount of the Settlement Payment from any copy of this Agreement that is filed in any subsequent action to enforce this Agreement, unless the amount of the Settlement Payment is at issue, in which case the entire Agreement must be filed under seal.

## VII. Non-Disparagement

Plaintiff agrees that, except as may be compelled by a court of competent jurisdiction, he will not make or cause to be made to any third party any statement or comment, whether publicly, privately, orally, or in writing, that is critical of or disparaging to Defendant; the CDC; either of their parents, subsidiaries, divisions, affiliates, predecessors, successors, assigns, or business partners; or any of the foregoing's past, present, or future officers, directors, or employees. Plaintiff further agrees to remove or cause to be removed any such statements or comments on the websites or social media posts of his or his spouse, children, and other immediate family members within five (5) days of the Effective Date of this Agreement and as a condition to receiving the Settlement Payment. Plaintiff represents and warrants that neither he nor any of his immediate family members made any such statements or comments before the Effective Date of this Agreement.

## VIII. Confidentiality

A. **Confidentiality.** The Parties expressly incorporate the protections of Rule 408 of the Federal Rules of Evidence and its state equivalents. Plaintiff represents and warrants that, as of the Effective Date of this Agreement, Plaintiff and Plaintiff's Attorney have not disclosed to any third party the terms or substance of any part of the settlement negotiations between the Parties, or the terms or substance of any part of this Agreement. The Parties further expressly acknowledge, understand, and agree that, as an integral and material term of this Agreement and the consideration for this Agreement, Plaintiff and Plaintiff's Attorney will not disclose to any third party the terms or substance of any settlement negotiations or the terms or substance of any part of this Agreement except as necessary to enforce this Agreement, or as may be compelled or otherwise required by law. The Parties intend that this confidentiality provision be interpreted as broadly as possible to provide the maximum confidentiality. Notwithstanding the foregoing, nothing in this section shall be construed to prevent the Parties from disclosing amounts paid and received pursuant to this Agreement to their accountants, lenders, tax advisors, or tax authorities, or to prevent Defendant from disclosing amounts paid to its insurance carriers, regulators, auditors, vendors, or employees who have a business or legal reason to know about the Agreement. The Parties further agree that the only response to any inquiry about the amount of the Settlement Payment, the terms of this Agreement, or the disposition of the Action, shall be to the effect that there has been no admission of fault and that the Parties have agreed to an amicable resolution of the case that is satisfactory to both Parties.

B. **Essential Element.** The Confidentiality provision of this Agreement is an essential and material term of this Agreement.

C. **Agreement to Cooperate.** The Parties shall cooperate and take such reasonable steps as are necessary to protect the confidentiality of the terms and substance of this Agreement.

D. **Breach.** This Confidentiality provision and agreement is a material term of this Agreement, breach of which the Parties agree will cause the non-breaching Party irreparable harm. Breach of this provision will not affect the release of claims in Section II. Plaintiff acknowledges that Defendant may bring suit, pursuant to Section XII.J herein below, to enforce the terms of this Agreement and to recover damages for breach of this Agreement, including a suit for equitable relief and injunctive relief.

## IX. Consent to Future Calls

In exchange for the Settlement Payment and the other good and valuable consideration in this Agreement, Plaintiff expressly agrees and consents to receiving telephone calls and text messages from or on behalf of Defendant at any telephone number to which Plaintiff is subscribed or assigned or otherwise uses (including calls and text messages sent using artificial voices, prerecorded voices, and equipment that has the capacity to automatically select or dial numbers), and Plaintiff hereby waives any claims or causes of action (including under the TCPA, the MMPA, and any theory or principle of invasion of privacy) arising from or relating to any such call or text message. The foregoing consent and waiver are irrevocable and cannot be altered or withdrawn

without a written agreement to that effect signed by Defendant.

## X. Resolution of Future Disputes

A. **Arbitration of Disputes.** In exchange for the Settlement Payment and the other good and valuable consideration in this Agreement, Plaintiff agrees that any claim against Defendant arising after the Effective Date of this Agreement, except for an action to enforce any term of this Agreement (as addressed in Section XII.J), shall be resolved individually in: (a) binding arbitration with the American Arbitration Association or JAMS pursuant to the version of the applicable rules that are in effect when arbitration is commenced; or (b) small claims court if the claim is for money damages and the amount claimed is within the jurisdiction of that court. In arbitration, there is a neutral arbitrator rather than a judge. In arbitration and small claims court, there is no jury and there is less discovery and less appellate review than in court.

B. **Class Action Waiver.** In exchange for the Settlement Payment and the other good and valuable consideration in this Agreement, for any claim arising after the Effective Date of this Agreement, Plaintiff waives the right to prosecute or participate in a class action, collective action, or other representative action against the Defendant, and agrees to seek relief from the Defendant only on behalf of Plaintiff individually, and only to the extent necessary to remedy Plaintiff's individual claims.

## XI. Representations and Warranties

A. **Authorization to Execute.** The Parties represent and warrant that the persons executing this Agreement are duly authorized to do so.

B. **Sole Subscriber and Authorized User.** Plaintiff represents and warrants that he is the sole subscriber and authorized user of the (208) 390-1355 telephone number described in the Complaint in the Action. Plaintiff further represents and warrants that he has been the sole subscriber and authorized user of that number since at least May 1, 2024, through and including the Effective Date of this Agreement. Plaintiff represents and warrants that he neither requested nor caused, either directly or indirectly, the communications challenged in the Action.

C. **Assignment of Claims.** Plaintiff represents and warrants that no claim or portion of any claim referenced in this Agreement has been sold, assigned, conveyed, or otherwise transferred to any other entity or person.

D. **Reading and Understanding.** The Parties represent and warrant that they have carefully read this Agreement, have had it explained to them by attorneys of their choosing, if any, and fully understand and voluntarily accept the terms and conditions of this Agreement.

E. **Reliance on Own Judgment.** Plaintiff represents and warrants that he has relied upon his own judgment and that of his attorneys, if any, regarding the proper, sufficient, and agreed-upon consideration for this Agreement. Plaintiff further represents and warrants that no statement or representation by Defendant or its agents, employees, officers, directors, attorneys, or legal representatives influenced or induced him to execute this Agreement.

F. **Reliance on Own Counsel.** The Parties represent and warrant that they have relied upon the advice of counsel of their choosing, if any, concerning the legal consequences of this Agreement, including but not limited to the taxability of the Settlement Payment under federal, state, and local law.

## XII. Construction, Interpretation and Enforcement

A. **Choice of Law.** This Agreement is made pursuant to, and shall be construed and enforced in accordance with, the laws of the State of Illinois, without giving effect to otherwise applicable conflicts of law principles.

B. **Entire Agreement.** This Agreement constitutes the single and entire agreement between the Parties. All prior disclosures, negotiations, and agreements have been and are merged and integrated into and are superseded by this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any of the Parties to this Agreement except as specifically set forth in this Agreement.

C. **Usage.** As used in this Agreement, the masculine gender includes the masculine, feminine, and neutral, where applicable, and use of the singular includes the plural, where applicable.

D. **Joint Preparation.** This Agreement shall be construed as if the Parties jointly prepared it. Any uncertainty or ambiguity in this Agreement shall not be interpreted against a Party on the basis that the Party drafted the Agreement.

E. **Captions.** The captions used in this Agreement are for convenience and identification purposes only and are not part of this Agreement.

F. **Recitals.** The Recitals are a material part of this Agreement and are incorporated into this Agreement in their entirety.

G. **Modification.** This Agreement shall not be modified except by a writing signed by the Parties.

H. **Waiver.** No waiver of any of the promises, obligations, terms, or conditions of this Agreement shall be valid or enforceable unless it is written and signed by the Party against whom the waiver is sought to be enforced.

I. **Severability.** If the release contained in this Agreement is judicially determined to be illegal or otherwise unenforceable, then this Agreement shall be null and void. If any other provision of this Agreement is judicially determined to be illegal or otherwise unenforceable, that provision shall be severed from this Agreement and all remaining provisions shall remain in full force and effect.

J. **Enforcement.** Any action to enforce this Agreement shall be brought in the proper court embracing Chicago, Illinois. If a party breaches this Agreement, a non-breaching Party shall

be entitled, in addition to any other remedy, to a decree of specific performance. **THE PARTIES EXPRESSLY AND IRREVOCABLY WAIVE THEIR RIGHT TO A JURY TRIAL IN ANY FUTURE ACTION TO ENFORCE THE TERMS OF THIS AGREEMENT.**

**K. Binding Effect.** This Agreement, including but not limited to its releases, is for the benefit of and shall be binding upon the Parties and each of their respective agents, estates, heirs, executors, administrators, successors, personal representatives, assigns, or any other person or entity that might succeed to their rights and responsibilities under this Agreement.

## XIII. Other Terms and Conditions

**A. Acknowledgement.** Plaintiff acknowledges that he is not required to sign this Agreement, that he may consult any attorney of his choosing before signing this Agreement, and that, by signing this Agreement, he is giving up certain rights that he has.

**B. Notices.** Except as may be expressly stated otherwise in this Agreement, all notices or other communications hereunder shall be in writing and shall be sent by recognized overnight courier service (with receipt of delivery) to the receiving Party at their respective address set forth below:

| | |
|---|---|
| To Defendant: | Michael P. Daly<br>Faegre Drinker Biddle & Reath LLP<br>One Logan Square, Suite 2000<br>Philadelphia, PA 19103 |
| To Plaintiff: | James A. Marks<br>Will Craft Legal Services<br>22 East Frisco Avenue, Suite 200<br>Webster Groves, MO 63119 |

**C. Execution.** This Agreement may be executed in one or more counterparts, each of which shall be an original as against any Party who signed it, and all of which shall constitute one and the same document. A facsimile, photostatic or electronic (e.g., PDF format) copy of this Agreement as executed shall be deemed an original.

**D. Effective Date.** The Effective Date of this Agreement shall be the date on which the last counterpart of this Agreement is signed.

**E. Taxability of Settlement Payment.** This Agreement is enforceable regardless of the tax consequences of the Agreement or taxability of the Settlement Payment. Neither Defendant nor its attorneys have made any representations or warranties regarding the tax consequences of the Agreement or taxability of the Settlement Payment. Plaintiff represents and warrants that he has not relied upon any representations or warranties of Defendant or its attorneys regarding the tax consequences of the Agreement or taxability of the Settlement Payment. Plaintiff understands and expressly agrees that any income tax or other tax payable by him under tax laws, including any interest or penalties ultimately determined to be payable from the Settlement Payment, as well

as any state or federal reporting or payment obligations on his part arising from or attributable to the Settlement Payment, are Plaintiff's sole and exclusive responsibility.

**F. Further Assurances.** The Parties agree to do all acts and things and to make, execute, acknowledge and deliver such written documents, instructions, and/or instruments in such forms as shall from time to time be reasonably required to carry out the terms and provisions of this Agreement, including but not limited to the execution, filing or recording of any reporting documents, affidavits, deeds, or agreements.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties have made and executed this Agreement as of the date(s) set forth below.

| **Plaintiff** | **Defendant** |
|---|---|
| By: Daniel Human (signature)<br>Daniel Angelo Human | By: ______________________<br>Michael W. Boyer |
| | Title: Vice President & General Counsel<br>NORC at the University of Chicago |
| Dated: August 14th, 2024 | Dated: ______________________ |

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Confidential Settlement Agreement and Release (this "Agreement") is made effective as of the date of the final execution of this Agreement (the "Effective Date") by and between Plaintiff, Daniel Human ("Plaintiff"), on the one hand, and Defendant, Alleviate Tax, LLC, and its affiliated entities (collectively "Defendant") on the other hand for the purpose of resolving by compromise and settlement of all claims, controversies, alleged liabilities, and disputes between them. For the purposes of this Agreement, Plaintiff and Defendant are referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, Plaintiff filed a lawsuit on June 10, 2024, in the Circuit Court of St. Louis County, State of Missouri, that on July 17, 2024, was removed to the Eastern District of Missouri, Eastern Division, Case No.: 4:24-cv-00981-SRC, alleging violations of the Missouri No Call List and Telemarketing prohibitions set forth in §407.102&.l and Mo. Rev. Stat.§ 407.1076 and Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and 47 U.S.C. § 227(b)(l)(A) ("Claims"), against Defendant, (the "Complaint") arising out of alleged unsolicited calls to Plaintiff (the "Calls");

WHEREAS, Defendant denies Plaintiff's claims and has denied, and continues to deny, that it has any liability to Plaintiff for any such claims.

WHEREAS, the Parties hereto desire to compromise, settle, and release any and all claims which exist or which may exist between and among them, or their agents, assigns, and predecessors or successors, arising out of or relating to the facts, matters, events, or alleged violations of the TCPA and Missouri No Call List and Telemarketing prohibitions, without any admission of wrongdoing by either Party.

NOW, THEREFORE, in consideration of the foregoing recitals, the mutual promises, covenants, representations, and undertakings contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1. Payment and Consideration

(i) Within five (5) business days of Plaintiff providing (a) a signed copy of this Agreement and (b) a fully executed IRS Form W-9 for Plaintiff's counsel, Defendant shall pay by ACH, a total amount of Five Thousand Dollars ($5,000.00) ("Settlement Payment") to Daniel Human via wire to Butler Law Group, LLC. ACH instructions to be supplied in a separate email.

(ii) The Parties will each bear their own attorneys' fees and costs expended in connection with the Complaint. Plaintiff agrees not to make any further demand for attorneys' fees, interest, costs, or expenses of any kind.

2. General Release and Waiver

(i) Except as expressly set forth in this Agreement, for and in consideration of the mutual covenants set forth herein, which are hereby excluded from and survive this general release and waiver, Plaintiff, on his own behalf, and on behalf of his grantees, agents, representatives, heirs, devisees, trustees, assigns, assignors, attorneys, affiliates or any other entities in which Plaintiff has an interest (collectively, the "Releasing Parties"), hereby agrees to release and forever discharge Defendant and each of their respective affiliates and subsidiaries, and each of its respective past and present agents, employees, representatives, officers, directors, shareholders, attorneys, accountants, insurers, receivers, advisors, consultants, parents, divisions, successors, heirs, predecessors in interest, corporate parent, contractors, and commonly-controlled corporations including, but not limited to, its owners, affiliates, employees, and agents (collectively "Released Parties"), from all liabilities, causes of action, charges, complaints, suits, claims, obligations, costs, losses, damages, rights, judgments, attorneys' fees, expenses, bonds, bills, penalties, fines, and all other legal responsibilities of any form whatsoever, whether known or unknown, whether presently existing, whether suspected or unsuspected, whether fixed or contingent, including those arising under any theory of law, whether common, constitutional, statutory or other of any jurisdiction, foreign or domestic, whether in law or in equity, which they had or may claim to have against any of them, including, without limitation, those arising out of or relating to: (a) the subject matter of this Agreement and the Complaint; (b) any acts or omissions by the Released Parties, including any alleged violations of the TCPA and/or federal or state laws or regulations related to telemarketing; and (c) any costs, attorneys' fees, or expenses incurred by the Releasing Parties in connection with the subject matter hereof (collectively, the "Released Claims"). The Releasing Parties hereby acknowledge and agree that, except as expressly set forth in this Agreement, the Released Parties have no other liabilities or obligations, of any kind or nature, owed to the Releasing Parties, in connection with or relating to the Released Claims or otherwise. It is further understood and agreed that this Agreement and the Settlement Payment made hereunder constitute, full and final satisfaction of all claims of every nature, direct or indirect, against all persons or entities, including those who are or might be held to be joint and/or successor tortfeasors with any of the parties released hereby, as well as those to whom any of the parties released are, or may be held to be, liable by way of contribution or indemnity for the payment of all or any part of any claim arising out of, or directly or indirectly related to, the facts and circumstances that were alleged in connection with the Complaint. It is expressly understood and agreed that this release is intended to cover, and does cover, not only known injuries and damages.

(ii) Plaintiff acknowledges the following: (a) he is represented by counsel or has had the opportunity to retain and consult with counsel; and (b) he has been specifically advised by his counsel of the consequences of the above waiver and this Agreement generally or has otherwise had the opportunity to consult with counsel and knowingly elected not to.

(iii) Plaintiff represents and warrants that: (a) Plaintiff is duly authorized to enter into this Agreement and may lawfully bind Releasing Parties and all persons or entities on whose behalf Plaintiff have agreed herein; (b) Plaintiff has not sold, pledged, encumbered, or otherwise disposed of, in whole or in part, voluntarily or involuntarily, any of the claims released in the

general release above; (c) Plaintiff did not instigate or cause to instigate the Complaint and represents and warrants that his Claims are not fraudulent; and (d) Plaintiff is not the subject of any bankruptcy filing.

(iv) Plaintiff further agrees, promises, and covenants that he will not, nor will any person, organization, or any other entity acting on their behalf, file, charge, claim, sue, participate in, join or cause or permit to be filed, charged or claimed, any action for damages or other relief (including injunctive, declaratory, monetary or other) against the Released Parties with respect to any Released Claims. The Parties agree that this Agreement may be pleaded as a full and complete defense to any and all Released Claims and causes of action being released pursuant to this Agreement. Each Party acknowledges and consents that the Agreement may be used as the basis for an injunction to halt any action, suit or other proceeding based upon the Released Claims. This covenant not to sue applies to any claims that could be brought in any forum or jurisdiction and is intended to be a full and complete bar to any such claims.

3. Covenant Not To Sue

Unless otherwise prohibited by law, Human further covenants and acknowledges that neither Human nor anyone claiming through Human has or will sue or cause or permit suit against the Released Parties upon any claim released or purported to be released herein or to participate in any way in any suit or proceeding or to execute, seek to impose, collect, or recover upon or otherwise enforce or accept any judgment, decision, award, warranty, or attachment upon any claim released or purported to be released herein.

4. Intent Not To Sue

Unless otherwise prohibited by law, Human's counsel, Butler Law Group LLC represents that neither Butler Law Group LLC nor anyone claiming through Butler Law Group LLC has the present intent to sue and will not sue or cause or permit suit against Alleviate upon any claim released or purported to be released herein or to participate in any way in any suit or proceeding or to execute, seek to impose, collect, or recover upon or otherwise enforce or accept any judgment, decision, award, warranty, or attachment upon any claim released or purported to be released herein.

5. Confidentiality and Non-Disparagement

The Parties shall not discuss, publish, or share any copy of, or any details relating to, this Agreement with any person or entity not a party to this Agreement, in any form, which may include, but are not limited to, media materials, print, digital, social media, community forums, and other public and private publications, except that the Plaintiff may state that the matter has been "fully and amicably resolved without any admission of fault." Plaintiff agrees the terms and existence of this Agreement, and all information and communications exchanged during discussions and settlement negotiations leading up to this Agreement (collectively "Confidential

Information"), is strictly confidential, and they shall not reveal Confidential Information or the names of the Parties to this Agreement to any other person or entity, except: (i) as required by law or order of the court or the other government authority; (ii) as is reasonably necessary to be disclosed to any Party's accountants, tax advisors, or attorneys (provided the disclosing Party notifies such recipient of the disclosing Party's confidentiality obligations hereunder and obtains assurances that such recipient will ensure that Confidential Information is only disclosed in accordance with the terms of this Agreement); (iii) or as is reasonably necessary to the defense of any action or enforcement of any rights to which the terms of this Agreement may apply.

This confidentiality provision and agreement is a material term of this Agreement, breach of which the Parties hereby agree will cause the Parties irreparable harm. In the event of a breach of this provision by of this provision by either party, the non-breaching party shall be entitled to equitable relief to protect its interests. Such equitable relief shall in no way limit the non-breaching party's right to obtain other remedies available under applicable law. All releases read under this paragraph are limited to those which have accrued as of the date of this Agreement. The terms and existence of this Agreement may be disclosed if required by law or subpoena

The Parties agree to not make any statements, written or oral, or cause or encourage others to make any statements, written or oral, that defame, disparage or in any way criticize the personal or business reputation, practices, or conduct of either Party or any of their affiliates, subsidiaries, employees, directors, and/or officers.

6. Injunctive Relief; Remedies

The Parties expressly acknowledge and agree that the confidentiality agreements set forth in Section 3 ("Confidentiality and Non-Disparagement") are material inducements to each Party to enter into this Agreement and to release the Released Claims. Furthermore, the Parties acknowledge and agree that the disclosure of information related to the terms of this Agreement as prohibited by Section 3 would cause the non-breaching Party to suffer immediate, irreparable injury for which money damages would be an inadequate remedy, and that the non-breaching Party will be entitled to injunctive relief, as provided for under applicable law or equity, without being required to post any bond or other security, in the event of any such breach. Injunctive relief will not be deemed the exclusive remedy for any such breach but will be in addition to all other remedies available under applicable law.

7. Representations and Warranties

(i) As a material inducement for Defendant entering into this Agreement, Plaintiff represents and warrants that he is the subscriber and user of the number allegedly called, were the contacted Party with respect to the Calls alleged in the Complaint; he did not induce, solicit, or provide prior express consent or prior express written consent for the Calls alleged in the Complaint and is unaware of how the Calls alleged were generated; and he has full authority to enter into this Agreement to fully and finally resolve claims related to any Calls or future calls received. Defendant further represents and warrants that he will not induce, solicit, or provide

consent or prior express written consent to Released Parties or in any way elicit calls from Released Parties.

(ii) As a material inducement for entering into this Agreement, the Parties represent and warrant to each other that:

(a) they are entering into this Agreement solely of their own judgment and free will, and after the opportunity for consultation with their own legal counsel;

(b) this Agreement is fair, reasonable, and in their best interest;

(c) they have relied upon nothing said by anyone connected with this dispute, other than their own legal counsel, either as to liability, as to the extent of damages, chances of success in the trial court or on appeal, insurance coverage available, or as to any other matter, except as expressly set forth in this Agreement;

(d) they and their attorneys, accountants, agents, representatives and other advisors have had sufficient disclosure of information and knowledge of all material facts and legal rights and remedies necessary to evaluate the conduct of the other Parties, which is sufficient to make an informed decision to enter into and approve the terms of this Agreement;

(e) they have full authority to execute this Agreement in the capacities noted so as to bind each such Party to this Agreement; and

(f) no oral understanding, statement, promises or inducements contrary to the terms of this Agreement exist.

8. No Admission of Fault or Liability

It is understood and agreed that this Agreement and the performance of other obligations herein, are for the sole purpose of compromising the disputed Released Claims, and that this Agreement shall not be construed as an admission of liability or wrongdoing by Defendant or any of the Released Parties.

9. Investigation

Each of the Parties has made such investigation of the facts pertaining to this Agreement, as it deems necessary. The Parties understand that if any fact with respect to any matter covered by this Agreement is found hereafter to be other than, or different from, the facts now believed by the parties to be true, each Party expressly accepts and assumes the risk of such possible difference in facts and agrees that this Agreement shall become and remain effective notwithstanding such different facts.

10. Integration Clause

This Agreement contains the entire agreement of the Parties and supersedes any and all prior, written or oral, agreements among them concerning the subject matter hereof. There are no

representations, agreements, arrangements or understandings, oral or written, among the Parties relating to the subject matter of this Agreement that are not fully expressed herein.

11. Consultation With Counsel

The Parties represent and warrant that they have had the opportunity to present this Agreement to counsel, if any, with this Agreement and that they are executing this Agreement of their own free will after having had to opportunity to receive advice from counsel regarding execution of this Agreement.

12. Attorneys' Fees

In the event that any action is taken to enforce the terms of this Agreement, the prevailing Party shall be entitled to recover, in addition to other damages or remedies, its reasonable attorneys' fees, court costs, and other costs and expenses reasonably incurred in connection therewith, including but not limited to any reasonable attorneys' fees, court costs and other costs and expenses incurred in connection with seeking to recover the attorneys' fees, court costs and other costs and expenses of enforcement provided for by this paragraph.

13. Taxes

Plaintiff shall be solely responsible for federal, state, and local taxes due on the Settlement Payment, if any, and he specifically agrees to indemnify and hold Defendant harmless for any claims involving federal, state, or local taxes resulting from such responsibility.

14. Severability

If any one or more of the provisions of this Agreement should be ruled wholly or partly invalid or unenforceable by a court or other government body of competent jurisdiction, then: (i) the validity and enforceability of all provisions of this Agreement not ruled to be invalid or unenforceable shall be unaffected; (ii) the effect of the ruling shall be limited to the jurisdiction of the court or other government body making the ruling; (iii) the provision(s) held wholly or partly invalid or unenforceable shall be deemed amended, and the court or other government body is authorized to reform the provision(s), to the minimum extent necessary to render them valid and enforceable in conformity with the Parties' intent as manifested herein; and (iv) if the ruling and/or the controlling principle of law or equity leading to the ruling is subsequently overruled, modified, or amended by legislature, judicial, or administrative action, then the provision(s) in question as originally set forth in this Agreement shall be deemed valid and enforceable to the maximum extent permitted by the new controlling principle of law or equity by the State of California.

15. No Waiver

The failure of any Party to insist upon compliance with any of the provisions of this Agreement or the waiver thereof, in any instance, shall not be construed as a general waiver or relinquishment by such Party of any other provision of this Agreement.

16. Modification and Amendment

This Agreement may not be waived, altered, amended, or repealed, in whole or in part, except upon written agreement executed by the Party or Parties against which enforcement is sought.

17. Agreement Obligates, Extends, and Inures

The provisions of this Agreement shall be binding upon each of the Parties and each of the Parties' directors, officers, members, shareholders, trustees, partners, successors, agents, assigns, attorneys and employees, if any, and upon those who may assume any or all of the above-described capacities subsequent to the Effective Date. The provisions of this Agreement shall inure to the benefit of each of the Parties and each of the Parties' directors, officers, members, shareholders, trustees, partners, successors, agents, assigns, attorneys and employees, if any.

18. No Reliance

Each of the Parties represents and warrants that, except for the representations and warranties specifically set forth in this Agreement, in executing this Agreement, it does not rely, and has not relied, on any representation or statement made by any other Party to this Agreement, on any representation or statement made anyone acting on behalf of any Party to this Agreement, or any representation or statement made by any other person.

19. No Assignment or Transfer of Action

Plaintiff, on behalf of himself and the Releasing Parties, represents and warrants that: (i) they own the Claims released hereby; (ii) no other person or entity has any interest in such Claims; (iii) they have not sold, assigned, conveyed or otherwise transferred any such Claim, or any other Claim or demand against any person or entity released hereby; and (iv) they have the sole right to settle and release such Claims. The undersigned represents and warrants that to the best of their information and belief, he has no knowledge of any Claims held by one against the other that are not released hereby.

20. Multiple Counterparts

This Agreement may be executed in counterparts, each of which may be executed and delivered via facsimile or PDF electronic delivery with the same validity as if it were an ink-signed document and each of which shall be effective and binding on the Parties as of the Effective Date. Each such counterpart shall be deemed an original and, when taken together with other signed counterparts, shall constitute one and the same Agreement.

21. Construction

Each Party hereto has cooperated in the drafting and preparation of this Agreement. In any construction to be made of this Agreement, the same shall not be construed against any Party on the ground that said Party drafted this Agreement. This Agreement shall be governed by, and

construed in accordance with, the laws of the United States, and to the extent not preempted, the substantive laws of California. Venue for any cause of action arising out of this Agreement shall lie in Orange County, California.

22. Mutual Drafting

This Agreement is the product of negotiations "at arm's length" between the undersigned, both of whom had ample time in which to seek legal advice, if desired. As such, the terms of this Agreement are mutually agreed upon, and no part of this Agreement will be construed against the drafter.

23. Arbitration Agreement

If a dispute arises regarding the settlement set forth herein, including, but not limited to, any breach or alleged breach of this Agreement by either of the Parties (e.g., violating the covenant not to sue requirements of this Agreement, violation of Plaintiff's Representations and Warranties, attempting to collect waived debt, violating the non-disclosure requirements of this Agreement, etc.) the aggrieved party shall initiate the resolution process by giving notice setting out, in writing and in detail, the issues in dispute and the value of the claim to the other party. A meeting (either in-person or telephonic) between the Parties, attended by individuals with decision-making authority, must take place within thirty days from the date the notice was sent in an attempt to resolve the dispute through direct negotiations. If the dispute cannot be settled by direct negotiations within thirty days of the initiation of the resolution process, the Parties may initial mediation by giving notice to the other party. Mediation shall be attended by an individual representing each party with decision-making authority and the proceeding shall take place in California. If the dispute is not resolved by mediation within sixty days from the day of the notice requiring mediation, or if the dispute is unresolved within ninety days from the date of notice requiring direct negotiations, then the dispute shall be finally settled by binding arbitration administrated by AAA or JAMS and either party may initiate arbitration by giving notice to the other party. A party who violates this section shall pay all legal and consulting fees and costs incurred by the other party in any suit, action or proceeding to enforce this section. While the procedures under this section are pending, each party shall continue to perform its obligations under this release, unless to do so would be impossible or impracticable under the circumstances.

**THE UNDERSIGNED HAVE READ THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE, FULLY UNDERSTAND IT, AND AGREE TO THE TERMS SET FORTH HEREIN.**

**DANIEL HUMAN**

_______________________

Daniel Human

Plaintiff

Date: August ___, 2024

**Alleviate Tax, LLC**

______________________________

**Authorized Representative**

**Date: August___, 2024.**

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This **CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE** (the "Agreement") is made this ____ day of September 2024 (the "Effective Date"), by and between Daniel Human ("Mr. Human") and Frubbel LLC d/b/a Valu-Pass ("Frubbel") (each a "Party" and collectively the "Parties").

### Recitals

WHEREAS, Mr. Human filed a lawsuit titled *Human v. Frubbel, LLC d/b/a Valu-Pass*, in the United States District Court for the Eastern District of Missouri (the "Lawsuit") against Frubbel in which Mr. Human alleges that he received phone calls from or on behalf of Frubbel in violation of the Telephone Consumer Protection Act;

WHEREAS, Frubbel denies any wrongdoing.

WHEREAS, the Parties wish to resolve any and all claims between them.

WHEREAS, the Parties desire to avoid the expense, inconvenience, uncertainty and distraction of litigation and any other issue or dispute between them, and the Parties have reached an agreement to settle completely all claims between them under the terms set forth below.

### Agreement

NOW, THEREFORE, in consideration of the mutual promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

**1.** **Settlement Payment.** In consideration for the release of claims and other promises by Mr. Human set out in this Agreement, Frubbel shall pay the total amount of three thousand dollars ($3,000.00) ("Settlement Payment") with seven (7) days of Mr. Human returning a signed Agreement and providing a completed W9 form from the Butler Law Group, LLC. This Settlement Payment constitutes a full and complete settlement of all claims Mr. Human may assert or rights to which Mr. Human may be entitled to, inclusive of attorneys' fees and costs against the Released Parties. Counsel for Mr. Human will provide instructions for payment via ACH.

2. **Release.** Mr. Human individually and on behalf of his agents, attorneys, and assigns, irrevocably and unconditionally releases, acquits and forever discharges Frubbel, and any of its principals, employees, officers, shareholders, agents, attorneys, assigns, franchisors, parents, subsidiaries, and affiliates (the "Released Parties") from any and all claims, rights, interests, causes of action, and/or remedies of any nature, kind, or description, whether known or unknown, as of the date of this Agreement.

3. **Covenant Not to Sue; Right to Cure.** Mr. Human agrees that he will not file a court action regarding the matters released herein. In addition, to the extent that Mr. Human believes that Frubbel engages in future conduct that would give rise to a legal claim, he must provide written notice to Frubbel at rwarren@globaltravel.com and by FedEx Overnight delivery

signature required to Frubbel LLC, 2699 Lee Road Suite 350, Winter Park, Fl 32789 , at which time, Frubbel shall have thirty (30) days from the date of notice receipt to correct or cure any alleged violation without penalty

4. **Acknowledgements, Warranties and Representations.** Mr. Human's counsel hereby represents and warrants, on behalf of himself and his law firm, that at the time of execution of the Agreement, that he is not aware of any clients currently represented by him (other than Mr. Human) who have or may have claims against Frubbel or any of the Released Parties, and that he has no present intention to solicit additional claims against Frubbel or any of the Released Parties

Acknowledged by Butler Law Group, LLC: /s/Edwin V. Butler
Edwin v. Butler, Esq.

5. **Severability.** If one or more of the provisions, or portions thereof, of this Agreement is determined to be illegal or unenforceable, the remainder of this Agreement shall not be affected thereby, and each remaining provision or portion thereof shall continue to be valid and effective and shall be enforceable to the fullest extent permitted by law.

6. **No Contra Proferentem.** The Parties have mutually negotiated this Agreement and hereby agree that it shall not be construed against any Party based upon the assertion that one or more of them was the "drafter."

7. **No Admission of Liability.** Nothing herein shall constitute an admission by Frubbel of any wrongdoing or liability, or of the truth of any allegations of Mr. Human. The negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of the Agreement: (i) are not and shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Frubbel or of the truth of any of the allegations in connection with the Lawsuit; (ii) are not and shall not be deemed to be, and may not be used as, an admission or evidence of any fault or omission on the part of Frubbel in any civil, criminal or administrative proceeding in any court, arbitration forum, administrative agency or other tribunal; and, (iii) are not and shall not be deemed to be and may not be used as an admission of the appropriateness of similar claims for class certification.

8. **Voluntary Agreement.** The Parties acknowledge and agree that they have read all the provisions of this Agreement in full, have reviewed those provisions with an attorney or had the opportunity to seek legal advice and understand the provisions of this Agreement and voluntarily agree to be bound thereby. The Parties further acknowledge and agree that they are entering into this Agreement based solely and exclusively upon their counsel's and/or their own analysis of the facts and/or information of which the Party and/or its counsel is independently aware and not based upon or in reliance upon any statements and/or representations of any other Party (except to the extent such statements and/or representations are fully and expressly set forth herein). The Parties acknowledge and agree that the consideration received pursuant to this Agreement is fair, reasonable, sufficient, just and adequate, and constitutes lawful consideration supporting the execution of this Agreement.

9. **Entire Agreement:** This Agreement contains the entire agreement between the Parties with respect to the subject matter of this Agreement and any agreement hereafter made shall be ineffective to change, modify or discharge this Agreement unless such subsequent agreement is in writing and signed by the Parties. All previous contracts, warranties, communications, covenants, commitments, representations or agreements, whether written or oral, between and among the Parties and/or their attorneys, are superseded unless expressly incorporated and made a part of this Agreement.

10. **Confidentiality:** Parties represent and warrant that they have not disclosed, nor will they disclose in the future, facts and circumstances regarding the negotiations leading up to this Agreement and the terms herein to any third party except: (a) by compulsion of a valid and enforceable subpoena; (b) by compulsion of a valid order of a court of competent jurisdiction; (c) to the extent necessary for a Party's attorneys or tax advisors to assist in the conduct of their business affairs, provided, however, that prior to disclosure under subparagraphs (a) and (b) above, the Parties will make diligent efforts to give the other Party sufficient and reasonable notice of such subpoena or order of the court to enable such other Party to object to the same and to move to quash or to take such other action as is allowed by law to prevent disclosure pursuant thereto. The Parties further agree to take such action as may be permissible and/or required under the appropriate rules of the court or administrative regulations to protect and preserve the confidentiality of this Agreement. The Parties further represent and agree that they will not make, whether directly or indirectly, either in their own name, anonymously, through employees, or agents, or under any other name, any disclosures or comments regarding the existence and terms of this Agreement or settlement negotiations and communications between the parties, on any social media site or any other site on the internet.

11. **No Media Comment:** The Parties and their attorneys and agents agree not to issue any press releases, hold any interviews with journalists, or make any other disclosures or comments to media (including to media via the internet) regarding this Agreement or the negotiations and communications between the Parties regarding settlement. If asked about the Agreement or its subject matter, the Parties and attorneys and agents will state only that all disputes between the parties have been resolved amicably.

12. **Non-Disparaging Statements:** from and after the Effective Date of this Agreement, the Party's agrees not to make any disparaging statements, comments, or insinuations about Frubbel or Mr. Human, including, and without limitation to, any communications on any social media platform, website, blog or chat room or otherwise, or any products or service that either offers, whether true or false, oral or written.

13. **Ownership of Claims.** Mr. Human hereby warrants and represents that he owns the entirety of any alleged claims in connection with the Lawsuit which is being released herein, and that he has not assigned, expressly or impliedly, any interest in such claims, nor has there been assignment by operation of law, or otherwise, nor has either assigned his rights, or entered into a subrogation agreement with any insurance carrier, nor has either filed any bankruptcy petition, made any assignment for the benefit of creditors, or engaged in any other insolvency proceedings, which would result in the claims alleged being subject to a claim of partial or total beneficial, equitable or legal ownership in the name of a trustee on behalf of such party creditors, or a similar

fiduciary able to assert such position, or have the claims be subject to an attachment, or assigned in any way or in any manner to any person or entity not a party to this Agreement, and that Mr. Human therefore has the sole and exclusive authority to enter into this Agreement in connection with the allegations contemplated herein, and no other party is required to join herein in order to fully compromise and release any claim asserted or that could have been asserted in connection with the Lawsuit against Frubbel or its affiliates.

14. **Limitations of Liability.** NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT, IN NO EVENT WILL FRUBBEL OR ITS AFFILIATES, PRINCIPALS, OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AGENTS, REPRESENTATIVES, CONTRACTORS OR SUPPLIERS BE LIABLE TO MR HUMAN FOR ANY DIRECT, INDIRECT, CONSEQUENTIAL, INCIDENTAL, PUNITIVE OR SPECIAL DAMAGES, LOST DATA, DELAYS, LOST PROFITS, LOSS OF REVENUE OR ANY OTHER ECONOMIC LOSS, COST OR EXPENSE ARISING FROM OR RELATED TO THIS AGREEMENT, WHETHER ARISING OUT OF CONTRACT, WARRANTY, NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE, EVEN IF FRUBBEL OR ITS AFFILIATES, PRINCIPALS, OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AGENTS, REPRESENTATIVES, CONTRACTORS OR SUPPLIERS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL FRUBBEL BE LIABLE FOR ANY TYPE OF LOSS TO YOU CAUSED BY AN EVENT BEYOND ITS CONTROL, INCLUDING, BUT NOT LIMITED TO, GOVERNMENT RESTRICTIONS, NATURAL DISASTERS, TERRORIST ACTS, WARS, RIOTS, STRIKES, AND OTHER ACTS OF GOD. IN NO EVENT WILL COMPANY'S TOTAL AGGREGATE LIABILITY UNDER THIS AGREEMENT, WHETHER ARISING OUT OF BREACH OF CONTRACT, WARRANTY, NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE, EXCEED FIVE HUNDRED DOLLARS ($500). IN NO EVENT WILL MR. HUMAN BRING ANY ACTION AGAINST THE FRUBBEL MORE THAN ONE (1) YEAR AFTER SUCH CAUSE OF ACTION ARISES.

15. **Choice of Law; Venue.** This Agreement shall be considered executed in the State of Florida and will be interpreted, construed, and enforced in accordance with Florida law, without regard to any conflicts of law provisions. Except for requests for injunctive relief, any dispute, claim, or controversy arising out of or relating to this Agreement, including any breach, shall be resolved through final and binding arbitration, administered by the American Arbitration Association under its Commercial Arbitration Rules. The arbitration shall take place in person at a location closest to Orlando, Florida, and any award rendered by the arbitrator(s) may be entered as a judgment in any court with proper jurisdiction. Each Party shall bear its own arbitration costs and attorneys' fees, except that the arbitrator may award attorneys' fees and costs in the event the arbitration is found to be frivolous. Any litigation not subject to arbitration shall be exclusively brought before the State or Federal Courts closest to Orange County, Florida.

16. **Multiple Counterparts.** This Agreement may be executed on separate signature pages by each of the Parties and will be deemed fully executed when each Party has signed and delivered a signature page to the other Party. Original signatures transmitted by facsimile are acceptable. All executed signature pages will be aggregated and attached to this Agreement and will constitute the entire Agreement of the Parties.

17. **Tax.** Mr. Human agrees and acknowledges that neither Frubbel nor its counsel have made any representations to him regarding the tax consequences of any payments or amounts received by him pursuant to this Agreement.

18. **Survival.** The representations, warranties, covenants, obligations releases and indemnities of the Parties set forth in this Agreement shall survive the termination of this Agreement.

9/18/2024
Date

Daniel Human

Date

Frubbel, LLC d/b/a Valu-Pass.
By: ________________
Its: ________________

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This confidential Settlement Agreement and Release ("Agreement") is made and entered into by and between American Financial Network, Inc. ("AFN") and Daniel Human ("Human" or "Complainant") (collectively, the "Parties").

The Parties have chosen to enter into this Agreement in order to avoid further proceedings with respect to certain claims Plaintiff has made against Defendant American Financial Network, Inc in the above-captioned lawsuit. The Parties understand and agree that AFN denies every allegation of wrongdoing made by Plaintiff in the above-captioned matter, initially filed in the Circuit Court of St. Louis County, State of Missouri, Case No. 24SL-CC04682 (the "Litigation"), and removed to the United States District Court, Eastern District of Missouri, Case No. 4:23-cv-01559 SEP, including but not limited to Plaintiff's claims of violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 ("TCPA"), corresponding federal regulations, and the Missouri No Call List and Telemarketing prohibitions, as set forth in Mo. Rev. Stat. § 407.1076 et seq., 407.1095(3), 407.1098.1 and 407.1101.

The Parties understand and agree that the making of this Agreement shall not, in any way, be construed or considered an admission by any Parties of guilt or non-compliance with any federal, state or local law or of any other wrongdoing whatsoever. AFN denies all material allegations set forth in the Litigation. AFN specifically disputes that it violated the TCPA, Missouri "No Call" and Telemarketing laws, or that Plaintiff is entitled to any relief from AFN. To this end, the settlement of this Litigation, this Agreement, and all acts performed or documents executed pursuant to or in furtherance of the settlement of this Litigation are not and shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing, fault, or liability on the part of AFN or of the truth of any of the allegations in the Litigation, in any civil, criminal, or administrative proceeding in any court, arbitration forum, administrative agency or other tribunal, and are not and shall not be deemed to be and may not be used as an admission of the appropriateness of these or similar claims for class certification. AFN denies that it is liable to Plaintiff or any putative class member in any manner whatsoever and denies all allegations of wrongdoing and assert that their actions have been lawful and proper in all respects.

WHEREAS, the Released Parties are engaged in certain forms of lead generation and other methods of contacting consumers, including, but not limited to, sales and marketing calls and/or text messages, either on their own behalf, through others, or on behalf of others.

WHEREAS, Human has alleged certain sales, marketing or other call and/or text message related law violations by the Released Parties.

WHEREAS, the Parties hereto desire to compromise, settle, and release any and all claims arising out of or relating to the alleged violations, without any admission of wrongdoing by either party.

***NOW THEREFORE***, in consideration of the mutual covenants, promises, terms, and conditions contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Payment:** The Released Parties shall pay the total sum of three thousand seven hundred-fifty ($3,750.00) U.S. dollars ("Settlement Amount") to the trust account of Edwin Butler Law Group, LLC through ACH within five (5) business days after this Agreement is fully executed by all Parties. The Settlement Payment shall be in full satisfaction of all monies due and owing to Human in connection with those above titled actions. The Settlement Payment is inclusive of monetary damages, attorneys' fees, and costs.

2. **Release by Complainant:**

In consideration of the promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Daniel Human, on behalf of Complainant and Complainant's heirs, successors, legal representatives and assigns, does hereby release, acquit and forever discharge AFN , along with each of its current, former and future owners, members, partners, officers, directors, shareholders, employees, agents, assigns, successors, servants, insurers, representatives, and attorneys, from all claims, liabilities, demands, suits, class actions and causes of action of every nature and kind, whether vested or contingent, past, known or unknown, in law or in equity, matured or unmatured, whether or not such claims were or could have been brought or raised in any applicable civil action, related to all telephone calls and/or text messages sent to or received by Daniel Human that were sent by, or on behalf of AFN from the beginning of time up until the date of execution of this Agreement by all parties as stated in the above litigation. Notwithstanding the foregoing, AFN shall not be released from the obligations imposed by this Agreement.[1]

3. **Confidentiality & Non-Disparagement:** The Parties agree to keep this Agreement and each and every term contained herein completely confidential and that, except as required by law, they will not hereafter disclose the terms of this Agreement to anyone (other than to their affiliates and related and constituent entities, attorneys, accountants, and corporate officers and directors). If Human or his counsel receives a subpoena or other compulsory process commanding and/or requesting production of information concerning this Agreement, the subpoenaed party may produce this Agreement, but must notify the Released Parties at least ten (10) business days before producing same. Notice shall be sent to the Released Parties attorneys, by email. Following the execution of this Agreement and receipt of the Payment: (1) Complainant shall immediately dismiss any lawsuits and class action claims filed against any of the Released Parties by Complainant; (2) Complainant shall immediately withdraw all complaints and negative reviews filed by Complainant about any Released Party; and (3) The parties shall not disparage the other parties to any third party, nor shall Complainant make any future complaint or negative review regarding any of the Released Parties, with respect to the specific allegations released under this Agreement.

---

[1] This Agreement shall not be construed in any form or fashion to release any third-party telemarketing or lead generation companies. This is a release solely releasing American Financial Network Wealth, Inc, and its owners, officers and employees.

4. **Denial of Liability:** It is expressly understood and agreed to by and among the undersigned hereto that by entering into this Agreement, none of the undersigned (nor their affiliates) hereto admit the truth of the allegations made by any other party, and this is a compromise of a disputed claim, which should not be construed as an admission of liability on the part of any party or any affiliate or the same. This Agreement is inadmissible as evidence against any party except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any party to this Agreement.

5. **Complainant's Representation:** Complainant hereby represents, agrees, warrants and assures that, as of the date of execution of this Agreement, he is not aware of any other individuals, persons or entities that have or may have any potential claims, grievances, or causes of actions against the Released Parties similar to those asserted in the Demand and resolved by this Agreement. The complainant further agrees that he has no intention to solicit or refer any such persons to his counsel or other counsel for the purpose of bringing such claims. Complainant further agrees that he will not assist or provide legal advice to any person who wishes to bring the same or similar claims against the Released Parties. Complainant further agrees that he is not personally aware of any other potential lawsuits, potential plaintiffs or potential claims against the Released Parties as of the date of this Agreement. Complainant agrees and acknowledges that the representations, warranties and assurances in this Paragraph constitute material inducements for the Released Parties to enter into this Agreement.

6. **Scope of Agreement:** It is the intent of the Parties that this Agreement cover the relationship between them as it relates to the receipt of any telephone calls and/or text messages received by Complainant up to and including the date of execution of this agreement by the Released Parties. It is agreed that Complainant does not wish to receive telephone calls and/or text messages from, or on behalf of the Released Parties and that the Released Parties do not wish for Human to receive any telephone calls and/or text messages from, or on behalf of the Released Parties. Accordingly, the Parties agree as follows:

- **A.** Human shall immediately provide a list to Released Parties of all telephone numbers that he currently owns, uses, licenses or maintains, including, but not limited to the telephone numbers at which he allegedly received telephone calls by, and/or text messages ("Current Telephone Numbers") from Released Parties, so they can act in an attempt to prevent any future telephone calls or text messages In such an event, the release remains in effect as to the initial allegations which represent the subject of this release.
- **B.** Human warrants that neither he, nor anyone on his behalf, has knowingly opted in or otherwise requested and will not knowingly opt in or otherwise request in the future, to receive any commercial telephone call or text message from the Released Parties, its parents and subsidiaries, and any Affiliates.
- **C.** Human acknowledges and agrees that the representations and warranties of this section are essential and material terms of this Agreement, and that the Released Parties would not have entered into this Agreement without such representations from Human.
- **D.** The Released Parties agree to cease and desist making, causing to be made, or assisting others in making calls, and/or sending text messages, to Complainant at the Current Telephone Numbers, and to add Human's Current Telephone Numbers to their suppression list, if such a list exists.
- **E.** Mr. Humans telephone numbers are (208) 390-1355 and (314) 915-2988.

7. **Assigns and Successors-in-Interest:** This Agreement shall be binding upon and inure to the benefit of the heirs, successors, and assigns of the undersigned hereto. Complainant represents that he has not already assigned or otherwise transferred or conveyed their claim or any interest in the same and will indemnify Released Parties if this is the case.

8. **Agreement Fully Read and Understood:** This Agreement is being executed voluntarily and without any duress or undue influence, with the full intent of settling and releasing claims as set forth herein. The Parties acknowledge that:

- **A.** This Agreement has been carefully read by the undersigned and the contents and consequences are known and understood by the undersigned.
- **B.** This Agreement is the product of negotiations "at arm's length" between the undersigned.
- **C.** They are fully aware of the legal and binding effect of this Agreement; and
- **D.** They have no other obligations, duties, and/or responsibilities other than those expressly delineated and set forth in this Agreement.
- **E.** They have each received or have had the opportunity to obtain if they so choose independent legal advice from the attorneys of their choice with respect to the preparation, review, and advisability of executing this Agreement.
- **F.** As such, the terms of this Agreement are mutually agreed-upon, and no part of this Agreement will be construed against the drafter.

9. **Applicable Law, Venue for Disputes:** The existence, validity, construction and operation of this Agreement, and all of its covenants, agreements, representations, warranties, terms, and conditions, shall be determined in accordance with the laws of the State of Missouri. The parties consent to the jurisdiction of the courts in Missouri and agree that the venue in any future dispute between them shall be proper in this forum only.

10. **Entire Agreement:** This Agreement sets forth the entire agreement between the undersigned, and fully supersedes any and all prior and/or contemporaneous agreements or understandings between the undersigned, which pertain to the subject matter hereof. The terms of this Agreement may not be contradicted by evidence of any prior or contemporaneous agreement, and no extrinsic evidence whatsoever may be introduced to vary its terms in any judicial proceeding involving this Agreement.

11. **Modification:** This Agreement may be modified, but only if the modification is in writing and signed by all parties to this Agreement.

12. **Severability:** Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be part of this Agreement.

13. **Counterparts:** This Agreement may be executed in multiple counterparts, each of which shall be treated as an original.

**14. Headings:** Headings or captions contained in this Agreement are solely for the convenience of the Parties hereto, are not a part of this Agreement, and shall not be used for the interpretation of, or determination of the validity of, this Agreement or any provision hereof.

**15. Authority to Bind:** Signatories to this Agreement represent and warrant to be duly authorized to bind the signatories and to fully and completely resolve the disputes described in this Agreement.

**Effective Date:** The effective date shall be the date of the last signature below.

**IN WITNESS THEREOF, the Parties evidence their agreement by their signatures:**

**DANIEL HUMAN**

Signature: [signature]

Date: August 1, 2024

**American Financial Network, Inc**

Signature: ________________

Name: ________________

Title: ________________

Date: ________________

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release ("**Agreement**") is made effective as of the date of the last signature to this Agreement ("**Effective Date**"), by and between Plaintiff Daniel Human ("**Plaintiff**") and Defendant Benepath, Inc. d/b/a Benepath Insurance Agency ("**Defendant**"). Plaintiff and Defendant are sometimes each individually referred to herein as a "**Party**," and are sometimes collectively referred to herein as the "**Parties**." This Agreement is made and entered into with respect to the following facts:

## RECITALS

A. On May 16, 2023, Plaintiff filed a lawsuit in the Circuit Court of St. Louis County, Missouri, case number 23SL-CC02032, captioned *Daniel Human, individually and on behalf of all others similarly situated v. Benepath, Inc., Compare Health Quotes, Clelland Green, Mike Pennewill, Jennifer Getz, and John and Jane Does 1 through 7*, which was subsequently removed to the United States District Court for the Eastern District of Missouri, case 4:23-cv-00865-MTS (the "**Action**"). The Action generally alleges that, that between December 28, 2022 and December 29, 2022 he received a total of seven (7) calls from Benepath's agents, employees and/or vendors soliciting the purchase of insurance despite Plaintiff's telephone number being on State and Federal do not call lists (the "**Subject Incident**").

B. Defendant denies Plaintiff's allegations asserted in the Action. Defendant also denies any liability arising from those allegations, from any other aspect the Subject Incident, or from any actions taken by Defendant with regard to the Subject Incident.

C. The Parties desire to settle and compromise any and all claims relative to the Action, completely resolve their disputes concerning the issues involved in the Action, avoid the risks and expenses of further litigation, and dispense with further litigation in this Action by entering into this Agreement.

D. Therefore, in consideration of the agreements and representations made herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

## AGREEMENT

### 1. CONSIDERATION

1.1. Settlement Payment. Defendant will cause to be paid to Plaintiff the sum of Twelve-Thousand Dollars and Zero Cents ($12,000.00) (the "**Settlement Payment**"), within thirty (30) calendar days of (1) the Effective Date *and* (2) the receipt of an executed IRS W-9 form for the payee hereunder. Such Settlement Payment shall be paid by check made payable to Butler Law Group and Daniel Human which shall be forwarded to Plaintiff's counsel, Butler Law Group, LLC, 1650 Des Peres Rd., Suite 220, St. Louis, MO 63131.

1.2. No Further Payment Obligations. The Parties agree that no payments or further consideration will be made by Defendant except for the Settlement Payment. Defendant shall bear no

further expenses, costs, damages, or fees incurred or claims due by the Parties or by any of their respective attorneys, agents, or representatives.

1.3. Complete Satisfaction. The Settlement Payment shall be in complete satisfaction of any and all claims for fees, costs, and/or expenses under state or federal law which Plaintiff has or may have against Defendant arising out of or in connection the Action and/or the Subject Incident, the events underlying the dispute between the Parties, and/or negotiating and implementing this Agreement, including attorneys' fees and expenses incurred throughout, except for as otherwise specifically provided for herein. Plaintiff acknowledges and agrees that the Settlement Payment constitutes consideration beyond that which, but for the mutual covenants set forth in this Agreement, Defendant otherwise would not be obligated to provide, nor would Plaintiff otherwise be entitled to receive. In consideration of the Settlement Payment, Plaintiff agrees that she will have been fully compensated for the alleged damages and injuries stemming from the allegations set forth in the Action and all other claims arising from the Subject Incident, known or unknown, for future injury, damage claims which are the subject matter of this Agreement. Furthermore, Plaintiff agrees that she will not seek, pursue, file or otherwise attempt to obtain any further compensation or relief in any forum against Defendant, and Plaintiff hereby gives her voluntary waiver of any and all rights available to her related to the Action and/or the Subject Incident as referenced above.

1.4. Responsibility for Distribution. Other than as set forth in Section 1.1 above, neither Defendant, nor their attorneys or insurers, shall be liable in any manner whatsoever for the distribution, division or payment of any portion of the Settlement Payment paid to Plaintiff. Plaintiff and her counsel shall assume full responsibility for said distribution, division or payment, including those related to any liens.

1.5. Responsibility for Liens. Plaintiff hereby understands and agrees that Plaintiff, and not Defendant, is responsible for the payment, discharge, and/or fulfillment of any lien or charges against the Settlement Payment, including liens described in Sections 4.1 through 4.4 below. If a claim of interest in any form or in any forum is asserted, arises, or is made by any person or entity, for payment of any liens or charges against the Settlement Payment and/or Defendant, Plaintiff agrees to fully defend Defendant and/or any insurance company which provides coverage to Defendant, with regard to any such claim, lien, charge, or interest. Plaintiff agrees to fully indemnify Defendant and/or any insurance company which provides coverage to Defendant, with regard to any such claim, lien, charge, or interest for which Plaintiff would otherwise be lawfully liable.

1.6. Responsibility for Tax Consequences. Plaintiff is aware that certain State and Federal income tax consequences may be incurred as a result of the consummation of this Agreement. The Parties are independently relying on their own legal counsel and/or Tax advisors in connection with such consequences. Plaintiff acknowledges and agrees that Defendant has made no representations to her regarding the tax consequences of the Settlement Payment paid to her pursuant to this Agreement. Plaintiff understands and agrees that Plaintiff, and not Defendant, is responsible for any federal and state taxes, if any, which are required by law to be paid with respect to this settlement.

## 2. PLAINTIFF'S SETTLEMENT OBLIGATIONS

2.1. Tax Identification. Prior to any payment being due by Defendant, Plaintiff through counsel ("**Plaintiff's Counsel**") will provide to Defendant a complete and current W-9 for the Payee identified in Section 1.1.

2.2. Notice of Receipt of Settlement Payment. Plaintiff 's Counsel shall notify Defendant within five (5) days of receipt by Plaintiff's Counsel of the Settlement Payment..

2.3. Dismissal of Complaint. Plaintiff's Counsel, within five (5) calendar days of receipt of the settlement funds, shall file a Request for Dismissal of the Action as to Defendants, with prejudice. If Defendant's counsel does not automatically receive an electronic service copy at the time of filing, Plaintiff's Counsel shall provide Defendant's counsel with conformed copies, via E-mail, of the filed Request for Dismissal of the Action, and any resulting Court Order(s).

## 3. RELEASES AND WAIVERS

3.1. Plaintiff's Release of All Claims. Plaintiff, for himself and on behalf of any other person or entity which could make a claim through him, does hereby absolutely, fully and forever release, relieve, waive, relinquish, acquit, and discharge Defendant of and from any and all demands, liabilities, statutory violations, actions, causes of action of every nature, character or description whatsoever, whether known or unknown, suspected or claimed arising out of, related to, or connected with the Action, and/or the Subject Incident, or any matters directly or indirectly related thereto. Plaintiff understands and further acknowledges that Defendant shall bear no further responsibility whatsoever as to the Action and/or the Subject Incident, and that each Party shall be responsible for their own attorneys' fees and costs and expenses incurred in connection with the Action, this Agreement, and reaching this settlement. This release includes all claims existing at law or in equity, in any form or manner of any nature or related thereto, whether civil or administrative, compensatory or punitive, or available in any form of any nature, whether or not now known, suspected, claimed or alleged, or which could have been alleged, in any pleadings, briefs, records, or other papers in any way related to or occurring as a result of the Action and/or the Subject Incident.

3.2. *Civil Code* Section 1542 Waiver. This Agreement settles in full any and all claims Plaintiff may have against Defendant related to the Action and/or the Subject Incident. In addition, Plaintiff expressly waives and relinquishes, to the fullest extent permitted by law, the provisions, rights and benefits of California *Civil Code* section 1542, or any other similar provision under federal or state law, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Plaintiff is deemed to understand and acknowledge the significance of this waiver of California *Civil Code* Section 1542. Plaintiff may hereafter discover facts in addition to or different from those which she now knows or believes to be true with respect to the subject matter of the released claims, the Action and/or the Subject Incident, but Plaintiff, upon execution of this Agreement, shall have fully, finally, and forever settled and released any and all claims, known or unknown, suspected or

unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exists or heretofore have existed, without regard to the subsequent discovery or existence of such different or additional facts.

## 4. REPRESENTATIONS AND WARRANTIES

4.1. Ownership of Claims. The Parties warrant that each has standing to release each other and all related persons and entities from the claims being released under this Agreement. Plaintiff warrants and represents that she is the only person or entity which has any interest in any of the matters herein released, and that none of her claims, causes of action, costs or demands, or any part thereof, have been assigned, granted or transferred in any way to any other person or entity, except as otherwise stated herein. If such a claim of interest in any form or in any forum is asserted or arises in the future by any party claiming to have standing through Plaintiff, whether statutory or contractual, Plaintiff agrees to fully defend and indemnify Defendant and any insurance company which provides coverage to Defendant with regard to any such claim.

4.2. No Pending and Future Claims. Plaintiff represents and warrants that, prior to signing this Agreement, Plaintiff has not filed or pursued any complaint, grievance, charge, or lawsuit of any kind with any court, regulatory, governmental or administrative agency, or arbitrator against Defendant asserting any claims that are released in this Agreement, other than the Action, and will not do so at any time hereafter. Plaintiff further represents and warrants that if any agency, court, or arbitrator assumes jurisdiction of any complaint, claim, grievance, or action against Defendant, Plaintiff will direct, to the extent possible, that agency, court, or arbitrator to withdraw from or dismiss with prejudice the matter.

4.3. Authority to Enter Into Agreement. The Parties warrant and represent that each has full authority to provide the release, and to enter into a binding release agreement with respect to the allegations set forth in the Action. Plaintiff warrants and represents that she has full authority to execute the same on her behalf, and that she is acting in the course and scope of such authority, and is duly authorized to execute this Agreement.

4.4. Representations a Material Term. The Parties agree that the representations and warranties in Section 5 of this Agreement are a material part of the Agreement.

## 5. CONFIDENTIALITY

5.1 Confidentiality. Plaintiff agrees to the following: Plaintiff shall keep the existence, terms and conditions of this Settlement Agreement completely confidential, including but not limited to any conversations, correspondence and/or other documents, whether or not directly involving Benepath which culminated in this Release. This Confidentiality Provision is independent of all other terms or provisions of this Settlement Agreement. Any breach of this Confidentiality Provision shall not abridge, affect, breach, discharge, impair, void or waive any other terms or provisions of this Settlement Agreement, or any other right or obligation under this Settlement Agreement, all of which shall survive and remain in full force and effect notwithstanding any breach of this Confidentiality Provision. By execution of this Settlement Agreement, Plaintiffs affirm that they have not previously disclosed the terms of the Settlement Agreement or the value of the Settlement to any person or entity in violation of this Section.

## 6. GENERAL PROVISIONS

6.1. Full and Final Settlement. This Agreement constitutes the settlement and compromise of any and all disputes concerning the allegations set forth in the Action.

6.2. Complete Agreement. The Agreement constitutes the entire agreement between the Parties, and cancels and supersedes any prior offers of settlement, agreements, correspondence, discussions, and negotiations between the Parties which may have related to the subject matter contained in this Agreement. No agreements or representations, written or oral, have been made by any Party that are not set forth expressly in this Agreement.

6.3. Modification, Amendment, Waiver. No modification, amendment or waiver of any provision of this Agreement will be effective unless approved in writing by all Parties. The failure at any time to enforce any of the provisions of this Agreement will in no way be construed as a waiver of similar or dissimilar provisions and will not affect the right of any Party thereafter to enforce each and every provision hereof in accordance with its terms.

6.4. Construction and Use of Headings. As used in this Agreement, the term "or" shall be deemed to include the term "and/or" and the singular or plural number shall be deemed to include the other whenever the context so indicates or requires. The paragraph headings used in this Agreement are intended solely for convenience of reference and shall not in any manner amplify, limit, modify, or otherwise be used in the interpretation of any of the provisions hereof.

6.5. Severability. Whenever possible, each provision of this Agreement will be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

6.6. Successors, Heirs, Executors and Assigns. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors, heirs, executors, and assigns.

6.7. Governing Law; Conflict of Law This Agreement will be construed in accordance with the laws of the State of Missouri, without regard to principles of conflicts of law otherwise applicable to such determination; provided, however, this in no way shall prevent the application of the benefits of federal law where applicable.

6.8. No Admission of Liability. The Agreement constitutes the settlement of a disputed claim. It shall neither constitute nor be construed as an admission of liability or fault by any Party.

6.9. Admissibility of Agreement. The Agreement shall not be admissible in any legal proceeding for any purpose other than the enforcement of this Agreement. The Parties agree that this Agreement may be introduced into evidence in any subsequent proceeding to enforce the terms of this Agreement.

6.10. Agreement Jointly Prepared. This Agreement was jointly prepared and negotiated by Parties and their respective attorneys. Any uncertainty or ambiguity not removed by resorting to the rules of contractual interpretation found in California Civil Code sections 1635-1653 shall not be construed against any of Parties. Furthermore, Parties understand and agree that this Agreement is fully enforceable. The Parties agree to not challenge this Agreement as illegal, invalid, or unenforceable.

6.11. Complete Defense. This Agreement may be asserted as a complete defense to any claim that may be brought relating to any released claim made by the Parties.

6.12. Fees and Expenses for Enforcement. In the event any Party commences any action or other proceeding for legal or equitable relief to enforce the terms of the Agreement, the prevailing party shall be entitled to recover, in addition to any monetary or other relief awarded by the Court, the prevailing party's reasonable attorneys' fees and costs.

6.13. Tax Liability. Plaintiff agrees to indemnify and hold Defendant harmless from any claims, demands, deficiencies, levies, assessments, executions, judgments or recoveries by any governmental entity against Defendant for any amounts claimed due on account of this Agreement to the extent the liability is Plaintiff's and she is provided with reasonable notice giving her an opportunity to cure, or pursuant to claims made under any federal or state tax laws, and any costs, expenses or damages sustained by Defendant by reason of any such claims, including any amounts paid by Defendant as taxes, deficiencies, levies, assessments, fines, penalties, interest or otherwise.

6.14. Cooperation. The Parties agree to cooperate fully, to execute and deliver any and all supplementary documents and instruments (with acknowledgment where necessary), and take all additional actions, which reasonably may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement without the receipt of further consideration.

6.15. Advice of Counsel. The Parties acknowledge that they have been represented by counsel of their choice in the negotiations leading up to the execution of this Agreement and that they have read this Agreement and have had it fully explained to them by their counsel.

6.16. Legal Capacity. Each of the undersigned warrants that he or she is of legal age, legally competent to execute this Agreement, and has the authority of the Party for whom the undersigned is executing this Agreement.

6.17. Execution in Counterparts. The Agreement may be executed in two or more counterparts, each of which will be deemed an original, including facsimile and digital counterparts. All counterparts so executed shall constitute one agreement and instrument, binding on all the Parties to this Agreement.

**THIS SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS HAS BEEN REVIEWED AND APPROVED BY THE PARTIES**

Dated: August 7th, 2023

DANIEL HUMAN

By: [signature]

Dated: August _____, 2023

BENEPATH, INC.

By: ______________________

Name:

Title:

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This confidential Settlement Agreement and Release ("Agreement") is made and entered into by and between Facet Wealth, Inc ("Facet") and Daniel Human ("Human" or "Complainant")(collectively, the "Parties").

The Parties have chosen to enter into this Agreement in order to avoid further proceedings with respect to certain claims Plaintiff has made against Defendant Facet Wealth, Inc in the above-captioned lawsuit. The Parties understand and agree that Facet denies every allegation of wrongdoing made by Plaintiff in the above-captioned matter, initially filed in the Circuit Court of St. Louis County, State of Missouri, Case No. 24SL-CC0322 (the "Litigation"), including but not limited to Plaintiff's claims of violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 ("TCPA"), corresponding federal regulations, and the Missouri No Call List and Telemarketing prohibitions, as set forth in MO. REV. STAT. § 407.1076 et seq., 407.1095(3), and 407.1101.

The Parties understand and agree that the making of this Agreement shall not, in any way, be construed or considered an admission by any Parties of guilt or non-compliance with any federal, state or local law or of any other wrongdoing whatsoever. Facet denies all material allegations set forth in the Litigation. Facet specifically disputes that it violated the TCPA, Missouri "No Call" and Telemarketing laws, or that Plaintiff is entitled to any relief from Facet. To this end, the settlement of this Litigation, this Agreement, and all acts performed or documents executed pursuant to or in furtherance of the settlement of this Litigation are not and shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing, fault, or liability on the part of Facet or of the truth of any of the allegations in the Litigation, in any civil, criminal, or administrative proceeding in any court, arbitration forum, administrative agency or other tribunal, and are not and shall not be deemed to be and may not be used as an admission of the appropriateness of these or similar claims for class certification. Facet denies that it is liable to Plaintiff or any putative class member in any manner whatsoever and denies all allegations of wrongdoing and assert that their actions have been lawful and proper in all respects.

WHEREAS, the Released Parties are engaged in certain forms of lead generation and other methods of contacting consumers, including, but not limited to, sales and marketing calls and/or text messages, either on their own behalf, through others, or on behalf of others.

WHEREAS, Human has alleged certain sales, marketing or other call and/or text message related law violations by the Released Parties.

WHEREAS, the Parties hereto desire to compromise, settle, and release any and all claims arising out of or relating to the alleged violations, without any admission of wrongdoing by either party.

NOW THEREFORE, in consideration of the mutual covenants, promises, terms, and conditions contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Payment:** The Released Parties shall pay the total sum of twelve thousand ($12,000.00) U.S. dollars ("Settlement Amount") to Human within three (3) business days after this Agreement is fully executed by all Parties. The Settlement Amount shall be sent via wire transfer or ACH transfer payable to Daniel Human and delivered, to the following bank account: First Community Credit Union, St. Louis, Missouri, account number 920544986, routing number 281081877. The Settlement Payment shall be in full satisfaction of all monies due and owing to Human in connection with the demand, Agreement and final settlement of all claims in the case of Human v. Facet Wealth, Inc, No. 24SL-CC0322. The Settlement Payment is inclusive of monetary damages, attorneys' fees, and costs.

2. **Release by Complainant:**

In consideration of the promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Daniel Human, on behalf of Complainant and Complainant's heirs, successors, legal representatives and assigns, does hereby release, acquit and forever discharge Facet Wealth, along with each of its current, former and future owners, members, partners, officers, directors, shareholders, employees, agents, assigns, successors, servants, insurers, representatives, and attorneys, from all claims, liabilities, demands, suits, class actions and causes of action of every nature and kind, whether vested or contingent, past, known or unknown, in law or in equity, matured or unmatured, whether or not such claims were or could have been brought or raised in any applicable civil action, related to all telephone calls and/or text messages sent to or received by Daniel Human that were sent by, or on behalf of Facet Wealth, Inc. from the beginning of time up until the date of execution of this Agreement by all parties as stated in the above litigation. Notwithstanding the foregoing, Facet shall not be released from the obligations imposed by this Agreement.[1]

3. **Confidentiality & Non-Disparagement:** Human agrees to keep this Agreement completely confidential and that, except as required by law, they will not hereafter disclose the terms of this Agreement to anyone (other than to their affiliates and related and constituent entities, attorneys, accountants, and corporate officers and directors). If Human or his counsel receives a subpoena or other compulsory process commanding and/or requesting production of information concerning this Agreement, the subpoenaed party may produce this Agreement, but must notify the Released Parties at least ten (10) business days before producing same. Notice shall be sent to the Released Parties attorneys, by email. Following the execution of this Agreement and receipt of the Payment: (1) Complainant shall immediately dismiss any lawsuits and class action claims filed against any of the Released Parties by Complainant; (2) Complainant shall immediately withdraw all complaints and negative reviews filed by Complainant about any Released Party; and (3) The parties shall not disparage the other parties to any third party, nor shall Complainant make any future complaint or negative review regarding any of the Released Parties, with respect to the specific allegations released under this Agreement.

---

[1] This Agreement shall not be construed in any form or fashion to release any third party telemarketing or lead generation companies. This is a release solely focused on Facet Wealth, Inc, and its owners, officers and employees.

4. **Denial of Liability:** It is expressly understood and agreed to by and among the undersigned hereto that by entering into this Agreement, none of the undersigned (nor their affiliates) hereto admit the truth of the allegations made by any other party, and this is a compromise of a disputed claim, which should not be construed as an admission of liability on the part of any party or any affiliate or the same. This Agreement is inadmissible as evidence against any party except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any party to this Agreement.

5. **Complainant's Representation:** Complainant hereby represents, agrees, warrants and assures that, as of the date of execution of this Agreement, he is not aware of any other individuals, persons or entities that have or may have any potential claims, grievances, or causes of actions against the Released Parties similar to those asserted in the Demand and resolved by this Agreement. Complainant further agrees that he has no intention to solicit or refer any such persons to his counsel or other counsel for the purpose of bringing such claims. Complainant further agrees that he will not assist or provide legal advice to any person who wishes to bring the same or similar claims against the Released Parties. Complainant further agrees that he is not personally aware of any other potential lawsuits, potential plaintiffs or potential claims against the Released Parties as of the date of this Agreement. Complainant agrees and acknowledges that the representations, warranties and assurances in this Paragraph constitute material inducements for the Released Parties to enter into this Agreement.

6. **Scope of Agreement:** It is the intent of the Parties that this Agreement cover the relationship between them as it relates to the receipt of any telephone calls and/or text messages received by Complainant up and through the date of execution of this agreement by the Released Parties. It is agreed that Complainant does not wish to receive telephone calls and/or text messages from, or on behalf of the Released Parties and that the Released Parties do not wish for Human to receive any telephone calls and/or text messages from, or on behalf of the Released Parties. Accordingly, the Parties agree as follows:

- **A.** Human shall immediately provide a list to Released Parties of all telephone numbers that he currently owns, uses, licenses or maintains, including, but not limited to the telephone numbers at which he allegedly received telephone calls by, and/or text messages ("Current Telephone Numbers") from Released Parties, so they can act in an attempt to prevent any future telephone calls or text messages In such an event, the release remains in effect as to the initial allegations which represent the subject of this release.
- **B.** Human warrants that neither he, nor anyone on his behalf, has knowingly opted in or otherwise requested and will not knowingly opt in or otherwise request in the future, to receive any commercial telephone call or text message from the Released Parties, its parents and subsidiaries, and any Affiliates.
- **C.** Human acknowledges and agrees that the representations and warranties of this section are essential and material terms of this Agreement, and that the Released Parties would not have entered into this Agreement without such representations from Human.
- **D.** The Released Parties agree to cease and desist making, causing to be made, or assisting others in making calls, and/or sending text messages, to Complainant at the Current Telephone Numbers, and to add Human's Current Telephone Numbers to their suppression list, if such a list exists.
- **E.** Mr. Humans telephone numbers are (208) 390-1355 and (314) 915-2988.

7. **Assigns and Successors-in-Interest:** This Agreement shall be binding upon and inure to the benefit of the heirs, successors, and assigns of the undersigned hereto. Complainant represents that he has not already assigned or otherwise transferred or conveyed their claim or any interest in the same, and will indemnify Released Parties if this is the case.

8. **Agreement Fully Read and Understood:** This Agreement is being executed voluntarily and without any duress or undue influence, with the full intent of settling and releasing claims as set forth herein. The Parties acknowledge that:

A. This Agreement has been carefully read by the undersigned and the contents and consequences are known and understood by the undersigned.
B. This Agreement is the product of negotiations "at arms length" between the undersigned.
C. They are fully aware of the legal and binding effect of this Agreement; and
D. They have no other obligations, duties, and/or responsibilities other than those expressly delineated and set forth in this Agreement.
E. They have each received or have had the opportunity to obtain if they so choose, independent legal advice from the attorneys of their choice with respect to the preparation, review, and advisability of executing this Agreement.
F. As such, the terms of this Agreement are mutually agreed-upon, and no part of this Agreement will be construed against the drafter.

9. **Applicable Law, Venue for Disputes:** The existence, validity, construction and operation of this Agreement, and all of its covenants, agreements, representations, warranties, terms, and conditions, shall be determined in accordance with the laws of the State of Missouri. The parties consent to the jurisdiction of the courts in Missouri and agree that venue in any future dispute between them shall be proper in this forum only.

10. **Entire Agreement:** This Agreement sets forth the entire agreement between the undersigned, and fully supersedes any and all prior and/or contemporaneous agreements or understandings between the undersigned, which pertain to the subject matter hereof. The terms of this Agreement may not be contradicted by evidence of any prior or contemporaneous agreement, and no extrinsic evidence whatsoever may be introduced to vary its terms in any judicial proceeding involving this Agreement.

11. **Modification:** This Agreement may be modified, but only if the modification is in writing and signed by all parties to this Agreement.

12. **Severability:** Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be part of this Agreement.

13. **Counterparts:** This Agreement may be executed in multiple counterparts, each of which shall be treated as an original.

**14. Headings:** Headings or captions contained in this Agreement are solely for the convenience of the Parties hereto, are not a part of this Agreement, and shall not be used for the interpretation of, or determination of the validity of, this Agreement or any provision hereof.

**15. Authority to Bind:** Signatories to this Agreement represent and warrant to be duly authorized to bind the signatories and to fully and completely resolve the disputes described in this Agreement.

**Effective Date:** The effective date shall be the date of the last signature below.

**IN WITNESS THEREOF, the Parties evidence their agreement by their signatures:**

**DANIEL HUMAN**

Signature: [signature]

Name: Daniel Human

Date: July 19, 2024

**Facet Wealth, Inc**

Signature: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

## PARTIES

This Confidential Settlement Agreement and Release ("Release") is entered into on the date signed below ("Effective Date") by and between International Union of Police Associations AFL CIO, International Union of Police Associations, d/b/a National Police and Troopers Association, ("Defendants") a District of Columbia, Florida, and Colorado based corporation with a principal office at 5632 Bee Ridge Road, Suite 200, Sarasota, Florida 34233, and Daniel Human ("Plaintiff"), an individual represented by Edwin Butler of Butler Law Group, LLC and residing in St. Louis County, Missouri, together the ("Parties").

## RECITALS

**WHEREAS,** Plaintiff has presented a lawsuit for damages against Defendants, arising from the facts alleged and more fully set forth in the case captioned *Daniel Human v. International Union of Police Associations, et al.*, Case No. 4:24-cv-00570-SEP, United States District Court for the Eastern District of Circuit Court of Missouri, which to suit, Complaint and other pleadings and documents filed therein reference is hereby specifically made;

**WHEREAS,** this mutually desired Release and the payment of any consideration hereunder, are not, are not intended to be, and are not to be deemed to be any evidence of or any admission of liability on the part of Defendants or any other person, firm, insurer, association, corporation, or entity in any manner connected with the aforementioned allegations of Plaintiff, but this Release and the payment of any consideration hereunder constitutes a compromise and settlement of disputed claims;

**WHEREAS,** Plaintiff and Defendants are mindful of the costs and uncertainties engendered by further litigation, and wish to settle and compromise all disputes, differences, claims, and legal controversies between the Parties as hereinafter set forth;

**WHEREAS,** Defendants deny any legal liability for any damages; however, the Parties desire to enter this Release to provide certain payments in full settlement and discharge of all claims against Defendants upon the terms and conditions set forth herein; and

**WHEREAS,** Defendants have agreed to fund the entirety of the settlement in return for dismissal of all claims with prejudice against it and all Parties so funded have agreed to forego any claims for fees and costs.

## AGREEMENT

Plaintiff and Defendants agree as follows:

### 1.0 GENERAL RELEASE AND DISCHARGE OF ANY AND ALL CLAIMS

In consideration of the sum of Fifteen Hundred dollars ($1,500.00)("Payment"), paid entirely by Defendants, the sufficiency of which consideration is hereby acknowledged, Plaintiff hereby releases, settles,

cancels, discharges, and acknowledges to be fully satisfied any and all claims, demands, rights, actions, and causes of action, of every kind or description whatsoever, whether known or unknown, knowable or unknowable, past, present, and future, including but not limited to any claim for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, Mo. Rev. Stat. §§ 407.1098.1, 407.1076, trespass to chattels, invasion of privacy, negligence, negligence *per se*, other statutory or regulatory violations, duress, improper conduct of any type, physical or bodily injuries, mental anguish or injury of any type, emotional distress, pain and suffering, loss of enjoyment of life, loss of services, consortium or companionship, economic loss claims of any type, consumer relief claims, attorney claims for rights to all or part of the proceeds of this settlement, punitive or exemplary damages, interest of any type, any other related damages, and all other tangible or intangible losses, without exception, whether based on a tort, intentional tort, contract, statute, regulation or any other theory of recovery, which Plaintiff now has, previously had, or may hereafter have or assert against Defendants or any other person, firm, association, corporation or entity, arising out of or by reason of or in any manner connected with the incidents and alleged events set forth in the pleadings described herein, from the beginning of the world to the Effective Date of this Release, except for the agreements and promises contained in this Release.

**REPLACE PARAGRAPH IN ITS ENTIRETY BY:**

**1.0 Plaintiff relinquishes any and all claims against Defendant of any kind or nature whatsoever which are in any way related to or arise from those matters pleaded in this Litigation, whether class, individual, or otherwise, including any claim for costs, expenses, pre or post judgment interest, post-judgment relief, penalties, fees (including attorneys' fees, expert fees and consulting fees) for any kind of relief whatsoever, including injunctive relief, monetary relief, damages, punitive damages, restitution, reimbursement, disgorgement, and economic injury. Plaintiff, on behalf of himself and his respective past, present, or future heirs, successors, assigns, agents, representatives and attorneys, hereby settle compromise, release, remit, acquit, discharge Defendant and each of their past and present owners, members, officers, directors, stockholders, insurers, attorneys (including, but not limited to, the attorneys of The Bernhoft Law Firm, S.C.), agents, servants, representatives, employees, parent companies, subsidiaries, affiliates, partners, fiduciaries, administrators, predecessors, successors in interest, assigns and all other persons, firms, representatives or corporations acting by, through or for the benefit of any of the Defendant (the "Defendant's Released Parties"), from any and all claims, demands, actions and causes of action, whether arising in contract, tort, law, equity or otherwise, in common law or statute, whether now known or unknown, suspected or unsuspected, from the beginning of time through the Effective Date of this Agreement, including but not limited to claims and/or causes of action that were alleged or that could have been alleged by Plaintiff, including, without limitation: (i) any and all claims directly or indirectly arising out of, or in any way connected with the matters raised or that may have been raised by Plaintiff; (ii) any and all claims or demands for attorney's fees and costs arising out of, or any way connected with the Action, (iii) any claims which arise from or are related to alleged TCPA or state law telemarketing violations; and (iv) any other matters, whether or not related to the Claim, accrued or existing as of the Effective Date. Notwithstanding any provision to the contrary, the release does not apply to relief either party may seek to enforce the Agreement as provided in paragraph 11 herein**

**1.1 Plaintiff further agrees and understands that he hereby waives and give up any right to become, and promise not to consent to become, a member or class representative of any class in**

**a case in which claims are asserted against the Defendant in regard to the released claims. If, without any of the Plaintiffs' prior knowledge and consent, he/she is made a member or representative of a class in any such proceeding, he/she hereby agrees to either decline to submit a claim to such class proceeding or to opt out of the class at the first opportunity upon receiving notice of his class member status. In the event that Plaintiff submits a claim to such class proceeding or does not request exclusion, Defendant may refuse payment to such Plaintiff in connection with any recovery in such class proceeding.**

1.2 This Release is a general release and Plaintiff further expressly assumes the risk of any and all claims for damages which exist as of the Effective Date or which the Plaintiff may or may not know exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect Plaintiff's decision to enter into this Release.

1.2 The consideration recited herein is the sole and only consideration, and there have been no promises or representations made except as herein contained.

1.4 This settlement is a compromise of a disputed claim and the Payment made hereunder are not intended to be and are not to be deemed to be any evidence of or an admission of liability or wrongdoing on the part of Defendants, by whom liability is expressly denied.

2.0 **PAYMENT**

In consideration for this Release set forth above, Plaintiff agrees to provide a Form W-9 and to Defendants within three (3) days of the Effective Date of this Release. Defendants agree to pay the sum specified above within ten (10) days of the Effective Date of this Release: Payment shall be paid to paid to Butler Law Group, LLC, 1650 Des Peres Road, Suite 220, St. Louis, Missouri 63131 via ACH bank transfer or through a check received within the above time proscribed.

3.0 **ENTIRE AGREEMENT AND APPLICABILITY**

This Release contains the entire agreement between Plaintiff and Defendants regarding the matters set forth herein and shall be binding. There are no other understandings or agreements, verbal or otherwise, between the Parties except as herein expressly set forth.

4.0 **REPRESENTATION OF COMPREHENSION OF DOCUMENT**

Plaintiff represents that all aspects of this Release, including the legal consequences of this Release, have been understood; and that the terms of this Release have been completely read and understood; and, further, that the terms of this Release are fully understood and voluntarily accepted by Plaintiff. Accordingly, Plaintiff hereby releases and holds harmless Defendants and any and all counsel or consultants for Defendants from any claim, cause of action, or other right of any kind which Plaintiff may assert because of the legal, income tax, or other consequences of this Release are other than those anticipated by Plaintiff.

5.0 **DELIVERY OF DISMISSAL WITH PREJUDICE**

Within three (3) days of receipt of the consideration described herein above, Plaintiff shall inform the court that the matter has been settled or satisfied, both of which have the effect of making the lawsuit captioned above res adjudicate and provide a copy of the dismissal with prejudice to Defendants.

6.0 **WARRANTY OF CAPACITY TO EXECUTE AGREEMENT**

Plaintiff represents and warrants that no other person or entity has or has had, any interest in the claims, demands, obligations, or causes of action referred to in this Release, that Plaintiff has the sole right and exclusive authority to execute this Release and to receive, or direct payment of, the Payment specified in it; and, also, that none of the claims, demands, or obligations referred to in this Release have been sold, assigned, subrogated, transferred, or otherwise disposed of by Plaintiff. Plaintiff further warrants that Plaintiff is the sole entity which may have a potential cause of action against Defendants relative to Plaintiff's claims as recited herein.

7.0 **GOVERNING LAW AND SEVERABILITY**

This Release shall be construed in accordance with the laws of Missouri. Should any portion of this Release be deemed invalid or unenforceable as a matter of law, all other sections shall nonetheless be deemed valid and enforceable.

8.0 **CONFIDENTIALITY**

Plaintiff and Defendants mutually desire that this Release be confidential. The Parties have since the date that this Release was reached kept the terms of this Release confidential and shall keep the terms of this Release and all the underlying facts, terms, conditions, and Payment of this Release strictly confidential. The Parties shall not expressly or implicitly reveal any of the terms, conditions, or Payment of this Release, whether as an anonymous case report, using fictitious names, in generic form, or otherwise, to any person or entity including but not limited to legal trade journals, reporting services, government agencies, the media, internal newsletters, law firm marketing materials, web sites, or the Internet, and the Parties shall not take any action or inaction calculated to lead to such a revelation or disclosure to another, other than as lawfully required to legal beneficiaries, legal representatives, tax preparers, financial advisors, or to effect this Release and the distribution of the Payment or to carry out the terms of this Release. Plaintiff shall use discretion in limiting the amount of case specific detail filed with any court which might need to approve this Release and shall not otherwise publicize any court filing or the contents of this Release. The Parties shall not respond either expressly, anonymously, "off the record," "not for attribution," or otherwise to any inquiries by the media or any other person or entity in respect to this Release or any fact involved in the matter recited herein. Plaintiff shall not object to or otherwise resist efforts by Defendants or its attorneys to seal or otherwise protect the records of any court where filings regarding this Release might be required. Plaintiff also warrants that no disclosure has been made prior to or in anticipation of the Effective Date of this Release. All Parties desire confidentiality, thus mutual consideration is given.

8.1 If any of the permitted disclosures are to be made, Plaintiff and Defendants and its attorneys shall all make good faith efforts to assist and cooperate with each other so that any such allowable disclosure shall be specifically tailored and as narrow as possible, only disclosing the minimum information required by law.

8.2 The Parties acknowledge that this confidentiality provision is a material term of this Release, and that this provision is contractual in nature and not a mere recital. The breach of this confidentiality provision will provide Defendants and Plaintiff with a right of action against the breaching Party or Parties on all theories and causes of action recognized by law and the Disciplinary Rules of the Bar.

9.0 **GOOD FAITH SETTLEMENT**

The Parties agree and represents that this Release set forth herein was entered into in good faith and to the satisfaction of the Parties.

10.0 **TAX ADVICE**

Neither Defendants nor its counsel have made any representation concerning, nor shall they be responsible in any manner, for any tax consequences to the Plaintiff, or any other person because of the execution of this Release, or of Payment made pursuant to this Release.

11.0 **ACTION TO ENFORCE OR INTERPRET AGREEMENT**

If any suit or action or other proceeding is commenced to enforce or interpret any of the terms or provisions of this Release, the prevailing Party in such suit, action, or other proceeding shall be entitled to an award against the other Party for the prevailing Party's reasonable attorney's fees and costs incurred both at trial and on any appeal.

12.0 **EXECUTION/ACKNOWLEDGEMENT/SIGNATURES**

This Release consists of four (4) pages. By signing below, the Parties fully and voluntarily agree to all the foregoing provisions.

| | |
|---|---|
| [signature] | [signature] |
| Daniel Human | International Union of Police Associations, et al. |
| August 26, 2024 | 8·26·24 |
| Date | Date |

Electronically Filed - ST LOUIS COUNTY - October 09, 2024 - 06:48 AM

IN THE
CIRCUIT COURT OF ST LOUIS COUNTY
STATE OF MISSOURI

FILED
01/16/25
JOAN M. GILMER
CIRCUIT CLERK
ST. LOUIS COUNTY, MO

Daniel Human, individually and on behalf of all others similarly situated,

Plaintiffs.

Vs.

No. 23SL-CC05215

Health IQ Insurance Services, Inc.,

Defendants.

## CORRECTED JUDGMENT BY DEFAULT

The Plaintiff, Daniel Human, moved for entry of judgment by default pursuant to Missouri Supreme Court Rule 74.05(a) against Defendant Health IQ Insurance Services, Inc. for their failure to answer or otherwise defend against their ten (10) violations of the Missouri and federal no call lists, and for Judgment against the individual defendants based on their vicarious liability, and for attorney fees and costs. The Court Granted the Plaintiff's request for Default Judgment on August 9, 2024. Plaintiff has now moved to correct the Court's prior Judgment Nunc Pro Tunc due to a scrivenor's error. The Court take Judicial Notice that the Defendant has not engaged or defended the Plaintiff's Complaint. The Court will therefore correct the original Judgment.

***NOW, THEREFORE***, the Court finds that Process was perfected on Defendant Health IQ Insurance Services, Inc. on January 29, 2024. Defendant Health IQ Insurance Services, Inc. has failed to plead, answer or otherwise defend against the Complaint within thirty (30) days thereby entitling the Plaintiff to entry of judgment by default pursuant to Missouri Supreme Court Rule 74.05(b). Pursuant to Missouri Supreme Court Rule 74.05(c), a Default Judgement may include and award of damages for each of the ten (10) violations.

Electronically Filed - ST LOUIS COUNTY - October 09, 2024 - 06:48 AM

As such, in accord with § 407.1107 RSMo., the Plaintiff is entitled to $5,000 in damages for each known violation, or $50,000.00. Pursuant to 47 U.S.C. 227(c) (5); 47 C.F.R. 64.1200 (c)(2), Plaintiff is entitled to separate and distinct damages for the ten (10) independent TCPA violations of $1,500.00 per call – or $15,000.00. Plaintiff is also entitled to recover his reasonable attorney fees and costs in the sum of $2,750.50.

***JUDGEMENT BY DEFAULT*** is therefore granted in Plaintiff's favor against Defendant Health IQ Insurance Services, Inc. in the amount of $67,500.50, as well as all applicable post-judgment interest.

SO ORDERED:

Judge Division 13

January 14, 2025

Honorable Bruce Hilton
Circuit Court Judge

This ___ day of October 2024.

_______________________
Clerk of the Court

Cc: all parties

Not an Official Court Document

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

**THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE** (the "Agreement") is entered into this 18th day of April, 2024 by and between DANIEL HUMAN ("HUMAN" or "Plaintiff") and DREAMSTYLE REMODELING OF IDAHO, LLC ("DSRL" or the "Defendant"). Plaintiff and Defendant shall be referred to as "Parties."

## RECITALS

A. On December 22, 2023, HUMAN filed suit against DREAM STYLE REMODELING OF IDAHO, INC., in the case styled as *Human v. Dream Style Remodeling of Idaho, Inc., and John and Jane Does 1 through 4*, in the Circuit Court of St. Louis County, Missouri, Case No. 23SL-CC05459, which was thereafter removed to the Eastern District of Missouri, Class Action Complaint, Case No. 4:24-cv-00226 ("Lawsuit"), alleging violations of the Telephone Consumer Protection Act (Violations of 47 U.S.C. § 227) and the Missouri No Call and Anti Telemarketing statutes, based on alleged telemarketing calls in violation of (i) the national do not call registry, (ii) violations of the statutes concerning robocall and automatic telephone dialing calls, and (iii) violations of the Missouri Do Not Call registry. Plaintiff also filed to represent a putative class in the Lawsuit, seeking to represent the foregoing three sets of classes. In addition, Plaintiff filed a count against Defendant for vicarious liability for violations involving third party marketing agents. Plaintiff filed an amended complaint to name the entity "DREAM STYLE REMODELING OF IDAHO, LLC"[1] as the Defendant instead of "DREAM STYLE REMODELING OF IDAHO, INC."

[1] The correct name of the entity is "DREAMSTYLE REMODELING OF IDAHO, LLC."

B. The Defendant denies any and all liability and damages hereunder; however, is entering into this agreement to resolve the disputes between the Parties in an effort to avoid the cost and time involved in litigation.

**NOW, THEREFORE**, in consideration of the mutual promises, covenants and conditions contained herein, and intending to be legally bound, the Parties hereby agree as follows:

1. **Recitals**. The foregoing recitals are correct and are incorporated in this Agreement.

2. **Payment from DSRL to HUMAN**. Within ten (10) days from the date this Agreement is fully executed, DSRL shall deliver to HUMAN, the sum of **Seven Thousand Five Dollars and 00/100 ($7,500.00)("Settlement Sum")**, made payable by ACT, wire transfer to "BUTLER LAW GROUP, LLC TRUST ACCOUNT," and ACH information to follow to Edwin V. Butler, Esq., Butler Law Group, LLC, 1650 Des Peres Rd., Suite 220, St. Louis, MO 63131. Prior to issuance of payment, HUMAN's attorney shall submit a completed W-9 to DSRL, and any 1099 forms issued by DSRL will be consistent with the amounts included in this paragraph.

3. **Release**. Effective upon HUMAN'S receipt of the payment and clearance of funds described and set forth above in Paragraph 2 of this Agreement, HUMAN, including his heirs, administrators, successors, assigns, representatives, attorneys and agents, hereby releases, waives, acquits and forever discharges DSRL, and its affiliates, successors, subsidiaries, related entities, parent or sister companies, distributors, telemarketing providers, lead generators, service providers, employees, independent contractors, direct sellers, manufacturers, installers, officers, directors, shareholders, members, partners, owners, agents, representatives, lenders, financing entities, current and former retailers, and insurers, from any and all claims that HUMAN now has or ever had against DSRL, whether the facts giving rise to such claims are now known or unknown, including without limitation, (i) any claims that were asserted, (ii) claims that could have been

asserted, (iii) or claims against parties who could have been added as defendants, in the Lawsuit, including but not limited to those claims and damages that arise directly or indirectly out of or related in any way to any telephone calls or marketing HUMAN received from or on behalf of DSRL, or parties who participated in such marketing, including claims for attorneys' fees and costs. The parties expressly agree and acknowledge, without limitation, that this release applies equally to the following entities as it does to DSRL: Dreamstyle Remodeling, LLC, HomeRenew Buyer, Inc., HomeRenew Intermediate Holdings, Inc., and HomeRenew Group Holdings, L.P. as well as the entities named in the Complaint and Amended Complaint, Dream Style Remodeling of Idaho, Inc. and Dream Style Remodeling of Idaho, LLC.

Notwithstanding the foregoing, the parties expressly acknowledge that this Release excludes any claims, rights or causes of action arising from or out of or related to the obligations under this Agreement.

4. **Dismissal of Lawsuit**. Within five (5) days of receipt of payment from DSRL, the parties shall file in the Lawsuit a stipulation for dismissal with prejudice of the Lawsuit, each party to bear its own attorneys' fees and costs. A copy of the Stipulation for Dismissal to be executed by the Parties and filed in the Lawsuit is attached as Exhibit "A."

5. **Non-Admission Clause**. By entering into this Agreement, the parties do not admit any liability whatsoever to one another or to any other party including any non-parties arising out of any claims asserted in the Lawsuit, or that could have been asserted in the Lawsuit, and expressly deny and all such liability.

6. **Confidentiality**.

The Parties agree not to divulge the contents of this Agreement, or the existence of any such settlement, including, but not limited to the manner, amount and source of payment. The

settlement of the above referenced Lawsuit shall not be characterized by the Parties as a victory or defeat, or as a substantial or insubstantial resolution, or in any similar fashion whatsoever. The Plaintiff agrees that the existence and terms of the Agreement shall remain in the strictest of confidences, and that his Agreement to keep the terms confidential is the essence of this Agreement.

Notwithstanding the foregoing, the Parties are permitted to disclose the terms of this Agreement to their (1) attorneys, (2) accountants and income tax preparers, or (3) banking institution either paying or receiving such settlement funds. In addition, DSRL is entitled to communicate the terms of this Agreement to its affiliates, subsidiaries, parents, retailers, and telemarketing providers, including the following entities: Dreamstyle Remodeling, LLC, HomeRenew Buyer, Inc., HomeRenew Intermediate Holdings, Inc., and HomeRenew Group Holdings, L.P. as well as the entities named in the Complaint and Amended Complaint, Dream Style Remodeling of Idaho, Inc. and Dream Style Remodeling of Idaho, LLC. Should any Party disclose the settlement or Agreement to any such Parties identified above, then such Party will instruct that person or entity receiving such information, to maintain the Agreement and settlement terms in confidence, except as required to comply with applicable rules, statutes, or regulations of any governmental agency, and then only to the extent necessary to comply with such law, regulation or agreement with legal authorities.

The Parties represent and warrant that they have not disclosed or disseminated to any person the terms or conditions of settlement or this Agreement, other than to those they are entitled to disclose or disseminate to under this Paragraph of the Agreement. Plaintiff represents that she is not currently aware and does not know or has not communicated with any other potential class members concerning the allegations in the Action, nor encouraged any third party to serve a

demand or file a lawsuit against Defendant. Plaintiff agrees not to encourage or solicit any other third parties who received calls from Defendant to serve a demand or file a lawsuit against Defendant for violation of the Federal and/or state telemarketing laws.

This confidentiality provisions shall survive and be given effect separately from any other provision of this Agreement to the extent it may later be determined to be invalid, unenforceable or inoperative.

7. **Non-Disparagement**.

The Parties agree not to make any statements or representations, or otherwise communicate, directly or indirectly, in writing, orally, or otherwise, or take any action which may, directly or indirectly, disparage the other or any of its subsidiaries, affiliates, retailers, marketing providers, consultants or their respective officers, directors, employees, advisors, or businesses. This includes, but is not limited to, statements or communications made in any public forum, social media or website. Plaintiff expressly acknowledges that this paragraph applies to statements made regarding DSRL as well as the following entities: Dreamstyle Remodeling, LLC, HomeRenew Buyer, Inc., HomeRenew Intermediate Holdings, Inc., and HomeRenew Group Holdings, L.P. as well as the entities named in the Complaint and Amended Complaint, Dream Style Remodeling of Idaho, Inc. and Dream Style Remodeling of Idaho, LLC.

This non-disparagement provision shall survive and be given effect separately from any provision of this Agreement to the extent it may later be determined to be invalid, unenforceable or inoperative.

7. **Entire Agreement**. This Agreement constitutes and represents the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior

understandings, negotiations and agreements. This Agreement shall not be altered or amended in any manner, except in writing and signed by each of the Parties.

8. **Review and Interpretation**. The Parties acknowledge and agree that each has been given the opportunity to review independently this Agreement and agree to the language set forth in this Agreement. In the event of any ambiguity or dispute regarding the interpretation of any part of the Agreement, the interpretation of this Agreement shall not be resolved by any rule of construction or interpretation against the Party who causes the uncertainty or against the drafter, and all Parties expressly agree that in the event of any ambiguity or dispute regarding the interpretation and construction of this Agreement, this Agreement shall be interpreted as if each party participated in the drafting. Both parties are entering into this Agreement knowingly and voluntarily.

9. **Authority to Execute and to Enter Into Agreement**. The undersigned individuals executing this Agreement on behalf of their respective Parties represent and warrant that the individuals are authorized to enter into and execute this Agreement on behalf of such Parties and that this Agreement shall be binding on the Parties, their successors, assigns, affiliates, related parties, officers, agents, and consultants.

10. **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same instrument. A counterpart may include a PDF, document signed on DocuSign, scan or facsimile of this Agreement.

11. **Dispute Resolution and Governing Law**. This Agreement and all issues and questions relating to the validity, interpretation, performance and enforcement shall be governed, construed and interpreted in accordance with the laws of the State of Idaho, notwithstanding any

conflicts-of-laws doctrines to the contrary. If any dispute arises from this Agreement, venue shall be in the state courts of Idaho.

12. **Attorneys' Fees and Costs**. Each party shall bear their own attorneys' fees and costs for resolution of this dispute and preparation of this Agreement; however, if there is any breach of this Agreement, the prevailing party shall be entitled to recovery of its attorneys' fees and costs for any efforts made in the collection of funds, enforcement of this Agreement, whether those amounts are incurred in pre-litigation, litigation or on appeal. Notwithstanding the foregoing, the first time Defendant is in default for non-payment of any of the sums stated in Paragraph 2. above, Plaintiff shall notify Defendant's counsel at djz@berensonllp.com, and provide a five (5) day notice and opportunity to cure the default prior to proceeding with any action to enforce of this Agreement.

13. **Severability**. Upon mutual agreement of the Parties to this Agreement, if any provision of this Agreement shall be held to be invalid, unenforceable or inoperative, then the provision found to be invalid, unenforceable or inoperative shall be considered severed from this Agreement, and such holding shall not effect the validity, enforceability or operation of any other provision of this Agreement.

14. **Waiver**. No breach of any provision hereof can be waived unless done in writing. Waiver of any one breach shall not be deemed a waiver of any other breach of this Agreement or any provisions of this Agreement.

15. **Time**. Time is of essence to this Agreement. This Agreement shall be executed no later than April 16, 2024.

**IN WITNESS WHEREOF**, each of the Parties has caused this Agreement to be executed and delivered by its duly authorized officers.

**THE UNDERSIGNED HAVE READ THE FOREGOING SETTLEMENT AND RELEASE AGREEMENT AND FULLY UNDERSTAND IT.**

[signature] 4/10/2024
DANIEL HUMAN, Individually

By: DREAMSTYLE REMODELING OF IDAHO, LLC

______________________________
Printed Name:____________________
Title:__________________________

**Exhibit "A"**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

DANIEL HUMAN, on behalf of himself and others similarly situated,
CASE NO. 2:24-cv-00226

Plaintiff,

vs.

DREAM STYLE REMODELING OF IDAHO, LLC, and John and Jane Does 1 through 4,

Defendants.

---

**JOINT STIPULATION FOR DISMISSAL WITH PREJUDICE**

---

Plaintiff, DANIEL HUMAN, and Defendant, DREAM STYLE REMODELING OF IDAHO, LLC, stipulate to the dismissal of all the claims brought, or which could have been brought in the above-styled case, by DANIEL HUMAN, individually on behalf of himself against all Defendants, are dismissed *with prejudice*, each party to bear its own attorney's fees and costs.

| | |
|---|---|
| /s/ Edwin V. Butler<br>Edwin V, Butler Mo. 32489<br>Butler Law Group, LLC<br>1650 Des Peres Rd., Suite 220<br>St. Louis, MO 63131<br>Email: ebutler@butlerlawstl.com<br>314-504-0001<br>*Attorneys for Plaintiff and proposed class* | LEWIS RICE LLC<br><br>/s/ Jeremy P. Brummond<br>Jeremy P. Brummond, #50940(MO)<br>600 Washington Avenue, Suite 2500<br>St. Louis, Missouri 6310<br>Tel: (314) 444-7600 (Telephone)<br>Fax: (314) 241-6058 (Facsimile)<br>jbrummond@lewisrice.com<br>*Counsel for Defendant, Dream Style Remodeling of Idaho, LLC*<br><br>Diane J. Zelmer, Esq. (*pro hac vice*) |

| | |
|---|---|
| | FL Bar No: 27251<br>E-mail: djz@berensonllp.com<br>Secondary: hac@berensonllp.com<br>BERENSON LLP<br>4495 Military Trail, Suite 203<br>Jupiter FL 33458<br>Phone: 561-429-4496<br>Facsimile: (703) 991-2195<br>*Counsel for Defendant, Dream Style Remodeling of Idaho, LLC* |

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement") is entered into by and among Daniel Human ("Plaintiff" or "Human"), on the one hand, and Great Day Improvements, LLC, and its direct and indirect subsidiaries (together "GDI"), on the other hand. Human and GDI are collectively referred to in this Settlement Agreement as the "Parties."

## RECITALS:

Whereas, on November 29, 2023, Human filed a Complaint in the Circuit Court of St. Louis County against GDI entitled Human v. Great Day Improvements, LLC, No 23SL-CC05158 (the "Complaint") alleging that GDI violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") and the Missouri Do Not Call List telemarketing laws § 407.010 (the "MDNC"), *et seq.* by placing phone calls to him (the "Action");

Whereas, the Complaint alleges that marketing calls were placed to Human by or on behalf of GDI on several dates, including but not limited to November 23, 2022 and December 7, 2022;

Whereas, GDI denies and disputes every allegation in the Complaint and in the Action; and

Whereas, without any admission as to fault, liability, or wrongdoing, or as to the validity of the other party's positions, the Parties desire to avoid the further expense and uncertainties attendant with litigation and to settle and voluntarily compromise any and all claims or causes of action that Human has, or may have, against GDI, which in any way relate to the allegations set forth in the Complaint and/or Action, including, but not limited to any claims or causes of action under the TCPA, the MDNC, or any other legal theory;

NOW, THEREFORE, the Parties, in consideration of the facts, acknowledgements, agreements, general release, and promises contained in this Settlement Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged by each of the Parties, with the intent to be legally bound, do hereby promise and agree as follows:

## AGREEMENT:

1. Recitals. The Parties incorporate the Recitals herein by reference.

2. Dismissal of the Action with Prejudice. Within five (5) business days from the date Plaintiff receives the Settlement Payment and as material consideration for this Agreement, Plaintiff shall cause to be filed a voluntary dismissal of all claims with prejudice.

3. Payment. GDI, within five (5) business days after delivery of a copy of the Settlement Agreement executed by Human to GDI, GDI, shall deliver a wire transfer payable to his Counsel, James Marks Trust Account in the amount of $5,000.00 (the "Settlement Payment") as full and complete consideration for the settlement agreed herein ACH instructions will be provided in a separate email or text by Human's attorney.

4. <u>Representations and Warranties by Human</u>: Human represents and warrants the following:

   a. That he has not received any payment or compensation from any source other than GDI under this Settlement Agreement, related to any of the alleged phone calls from or on behalf of GDI.

   b. That he did not give consent for any of the alleged phone calls.

   c. That he has not shared and will not share with any third-party any recordings made of calls between him and GDI.

   d. That any complaint which he may file against any other party, or their respective officers, directors, employees, agents, or representatives will not publicly name GDI as having any involvement in any alleged unwanted calls made by them to Human.

   e. That he is the sole and current owner of the claims being released in this Agreement and that any such claims have not been assigned or otherwise transferred to any other person or entity.

5. <u>Release of Claims</u>.

   a. Human, as well as his assigns, heirs, executors, administrators, successors, representatives, agents, partners, attorneys, predecessors-in-interest, and any (past or present) authorized users of any cellular, landline, or voice over internet protocol telephones for which he is the owner, user or subscriber, hereby release, resolve, relinquish, and discharge each and every one of the Released Parties (as defined in Section 4.c below) from each of the Released Claims (as defined in Section 4.b below). Human further agrees that he will not institute any action or cause of action (in law, in equity or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have, in state or federal court, in arbitration, or with any state, federal or local government agency or with any administrative or advisory body, arising from or related in any way to the Released Claims against the Released Parties as detailed above.

   b. "Released Claims" means any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the effective date of this agreement, that arise out of or relate in any way to the allegations against the Released Parties in the Complaint or the Action or any other claim that Human

might have under the TCPA, the MDNC, or any other legal theories for any calls placed by or on behalf of GDI or its direct or indirect subsidiaries to any cellular, landline, or voice over internet protocol phone for which Human is the owner, user, or subscriber through January 11, 2024.

c. "Released Parties" means GDI and each of its respective past, present, and future parents, subsidiaries, affiliated companies, corporations, and independent contractor agents, and each of their respective past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint ventures, assigns, or related entities, and each of their respective executors, successors, assigns, and legal representatives, the defendants identified in the correspondence, and/or any other party acting on behalf of GDI or its direct or indirect subsidiaries. "Released Parties" specifically includes current and former GDI. Notwithstanding any other language contained in the first sentence of this section 4(c), the "Released Parties" do not include any GDI marketing partners, and each of their respective past, present, and future parents, subsidiaries, affiliated companies, corporations, and independent contractor agents, and each of their respective past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint ventures, assigns, or related entities.

d. The release in this Settlement Agreement shall be interpreted to the fullest extent of res judicata principles.

7. Confidentiality.

The Parties expressly incorporate the protections of Rule 408 of the Federal Rules of Evidence and any other applicable state and/or federal law. Plaintiff and Plaintiff's Counsel represent that to date, neither has disclosed to any third party the terms or substance of any part of the settlement negotiations between the Parties, or the terms or substance of any part of this Agreement. The Parties to this Agreement further expressly acknowledge, understand, and agree that, as an integral and material term of this Agreement and the consideration for this Agreement, the Parties and their counsel will not disclose to any third party the terms or substance of any settlement negotiation or the terms or substance of any part of this Agreement, except as necessary to enforce this Agreement, as required by any governmental agency, or as otherwise required by law. Among other things, this provision prohibits Plaintiff, Plaintiff's Counsel, or any other representative, agent, attorney, or associate of Plaintiff from issuing a press release, holding a press conference, responding to press or other inquiries from non-parties about the settlement, or otherwise initiating any publicity with newspapers, publications, mass media, social media, or posting to internet websites information concerning this litigation or the terms of the Agreement. In addition, if the Parties are ever asked about the resolution of this matter, they (and their counsel, auditors, and/or tax advisors) may say only that "the matter is over"

or "no comment" without elaboration, except to enforce this Agreement or as may be compelled or otherwise required by law. The Parties intend that this confidentiality provision be interpreted as broadly as possible in order to provide the maximum confidentiality.

8. Representations: The Parties represent that, respectively, they (a) have read this entire Agreement and understand its terms; (b) have been given a reasonable and adequate period of time to consider this Agreement before signing it; (c) fully understand the terms and effects of this Agreement; (d) fully understand their right to discuss all aspects of this Agreement with an attorney of their choice, and have availed themselves of this right; (e) are voluntarily executing this Agreement by their own free act and deed; and (f) understand that no payment or consideration has been promised to Plaintiff for entering into and signing this Agreement which is not specified in this Agreement. Plaintiff further represents that he does not have any claims against Quest or any of the Released Parties, of any kind or nature, other than those asserted in the Complaint and/or Action, and acknowledges that this representation is a material part of the Agreement.

8. No Admission of Liability. This Agreement is executed by the Parties for the sole purpose of compromising and forever resolving all claims asserted, or that could have been asserted, in the Complaint and/or Action, and it is expressly understood and agreed as a condition hereof, that this Agreement shall not constitute or be construed as an admission of liability, negligence, or fault of GDI or any of the Released Parties, or as evidencing or indicating an admission of the truth or correctness of any of the claims asserted in the Complaint and/or Action.

9. Other Plaintiffs: Plaintiff and Plaintiff's counsel represent that as of the date of execution of this Agreement for the purpose of making the representations set forth in this paragraph, they have not been retained by, and have no knowledge of, any individuals or entities, other than Human, that have or may have any potential claims, grievances, or causes of actions against GDI or any of the Released Parties similar to those asserted in the Action or that have sought to or considered retaining Plaintiff's Counsel. Plaintiff and Plaintiff's counsel further represent that they will not solicit such persons or refer such persons to other counsel for the purpose of bringing claims similar to those asserted in the Action; provided, however, that nothing in this paragraph shall be construed as a restriction of Plaintiff's Counsel's right to practice in contravention of the applicable rules of professional responsibility.

10. Non-Disparagement. Human agrees not to disparage GDI, as to the issues being settled and released by this Settlement Agreement or any other issue. GDI agrees not to disparage Human as to any issue.

11. Governing Law. This Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of Missouri without reference to choice of law principles.

12. Entire Agreement and Successors in Interest. This Agreement contains the entire agreement and understanding concerning the subject matter of the agreement among the Parties and

supersedes and replaces all prior negotiations or proposed settlement agreements, written or oral. Each of the Parties to this Agreement acknowledges that no other Party to this Agreement, nor any agent or attorney of any such Party, has made any promise, representation, or warranty, express or implied, not contained in this Agreement to induce either Party to execute this Agreement. The Parties further acknowledge that they are not executing this Agreement in reliance on any promise, representation, or warranty not contained in this Agreement. It is expressly understood and agreed that this Agreement may not be altered, amended, modified, or otherwise changed in any respect, except by a writing duly executed by the Parties, their successors or assigns in interest, or their authorized representatives. This Agreement is a fully integrated contract.

13. Effective Date. This Agreement shall be effective when the Agreement is fully executed by all Parties. To the extent the Parties or their counsel execute this Agreement on different days, the Effective Date shall be the date of the last signature of the Parties and/or their counsel.

14. No Construction Against Drafter. This Settlement Agreement was drafted jointly by the Parties and all Parties have had the opportunity to consult with and be represented by counsel. In construing and interpreting this Settlement Agreement, no provision of this Settlement Agreement will be construed or interpreted against any Party based upon the contention that this Settlement Agreement or a portion of it was purportedly drafted or prepared by that Party.

15. Agreement Constitutes a Complete Defense: To the extent permitted by law, this Agreement may be pled as a full and complete defense to any action, suit, or other proceedings that may be instituted, prosecuted or attempted against Quest or any of the Release, Parties contrary to this Agreement.

16. Counterparts. This Settlement Agreement may be signed in counterparts and the separate signature pages executed by the Parties may be combined to create a document binding on all of the Parties and together will constitute one and the same instrument.

17. Authority. Each person executing this Settlement Agreement on behalf of any of the Parties hereto represents that such person has the authority to so execute this Settlement Agreement.

18. No Oral Modification. This Settlement Agreement shall not be altered, amended, or modified by any oral representation made before or after the execution of this Settlement Agreement. All modifications must be in writing and duly executed by all Parties.

19. No Fine or Penalty: The Parties agree that no part of any payments by GDI pursuant to this Agreement constitutes (i) a fine or penalty under any law or (ii) a payment to settle any actual or potential liability for a fine or penalty under any law.

20. Responsibility for Tax Liability: The Settlement Payment is a gross payment that may be subject to applicable taxes. Plaintiff understands and agrees that GDI assumes no liability whatsoever to any local, state, or federal taxing authority for the consequences or treatment of settlement proceeds, including attorneys' fees and costs, paid in resolution of the Action. Plaintiff therefore agrees to make no claim against GDI for any payment or non-payment of taxes or regarding or relating to the reporting of the payment described in this Agreement, if any, to any taxing authorities. Plaintiff acknowledges that GDI has not made any representations about the tax consequences of the payment set forth herein.

IN WITNESS WHEREOF, the Parties hereto have caused this document to be executed on the 10th day of January 10, 2024.

Great Day Improvements, LLC

By: ______________________________

Its: ______________

Dated: ______________

[signature]

DANIEL HUMAN
JANUARY 10, 2024

Dated: January 11, 2024

James Marks, Attorney for Plaintiff

/s/ James Marks, Attorney at Law
James Marks

**APPROVED BY ALL PARTIES**

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS (hereinafter referred to as the "Agreement") is made and entered into as of the 25th day of October, 2023, by and between DANIEL HUMAN (hereinafter referred to as "**HUMAN**"), on the one hand, and NEW AMERICAN FUNDING, LLC, f/k/a Broker Solutions, Inc. (hereinafter referred to as "**NAF**"), on the other hand. In this Agreement, **HUMAN** and **NAF** shall be collectively referred to as the "Parties."

**RECITALS**

A. On or about September 1, 2023, **HUMAN** filed a lawsuit against **NAF** in the Circuit Court of St. Louis County, Missouri, styled *Daniel Human, individually and on behalf of all those similarly situated v. Broker Solutions, Inc., et al.*, Case Number 23SL-CC03724 (hereinafter the "Lawsuit").

In the Lawsuit, **HUMAN** alleges claims against **NAF** (i) for violations of Missouri's Telemarketer Laws, including but not limited to Mo. Rev. Stat. 407.1076, 407.1104 and 407.1082 (Count I), and (ii) for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (Count II), with said claims arising out of alleged unsolicited, non-consensual phone calls **NAF**, by and through its agents and employees, made to **HUMAN**.

B. On or about October 10, 2023, **NAF** timely removed the Lawsuit to the United States District Court for the Eastern District of Missouri where it was assigned case number 4:23-cv-01271.

C. **NAF** denies all allegations of wrongdoing asserted against it in the Lawsuit, denies it is liable to **HUMAN** under any theory or claim, and specifically denies it is liable to **HUMAN** for violations of Missouri's Telemarketer Laws, the Telephone Consumer Protection Act, or any other law or rule of law, whether by statute, the common law, or otherwise.

D. The Parties desire to resolve and settle all disputes between them, without any Party admitting any liability whatsoever to the other Party.

**NOW, THEREFORE,** in consideration of the promises, mutual covenants and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby covenant and agree as follows:

**APPROVED BY ALL PARTIES**

1. **Recitals**: The foregoing recitals are incorporated in this Agreement as an integral part hereof.

2. **Payment and Conditions Relating Thereto**:

a. **NAF** shall pay to **HUMAN** the gross sum total of Eleven Thousand Dollars ($11,000.00), as provided herein. This payment shall be referred to as the "Settlement Funds".

b. The Settlement Funds shall be in the form of a check made payable to "Butler Law Group, LLC" only. **HUMAN** understands and agrees that any portion of the Settlement Funds that he is entitled to as a result of this Agreement will be paid to him from the settlement check made payable to "Butler Law Group, LLC" as referenced in the preceding sentence. **NAF** shall provide the check to its attorneys who will then provide said check to **HUMAN's** attorney.

c. The Settlement Funds shall be paid within ten (10) days after this Agreement has been signed by **HUMAN**, and counsel for **NAF** receives a copy of the signed Agreement by email.

d. **HUMAN** understands and agrees that the Settlement Funds referenced herein shall constitute the entire amount of compensation provided to him under this Agreement, and **HUMAN**, including any successors and/or assigns, shall not seek any further compensation or damages from **NAF** or any other employees or agents of **NAF** for any other claimed damages, costs, or attorney's fees in connection with the matters encompassed in this Agreement, including those which **HUMAN** could have brought in the Lawsuit or which in any way, directly or indirectly, arise out of or relate to the claims alleged in the Lawsuit, including but not limited to any claims **HUMAN** could have asserted in any Amended Complaint or in any way arising out of any actual or attempted communications or interactions between **HUMAN** and **NAF**, or any alleged business relationship or attempted business relationship between **HUMAN** and **NAF**.

3. **Global Release**: In consideration of the Settlement Funds described above, and of other good and valuable consideration, receipt of which is hereby acknowledged, **HUMAN** presently, generally, fully, finally, and forever releases, acquits, and discharges **NAF**, and its insurers, and any other current or former employee or agent of **NAF**, from any and all claims, and from any and all damages, directly or indirectly arising from or in connection with any of the following: (i) all acts or omissions or other conduct, or the breach of any legal duty occurring prior to the effective date of this Agreement concerning the occurrences that form the basis of the Lawsuit and/or **HUMAN's** alleged damages; (ii) all allegations made or that might or could have been made by **HUMAN** with respect to the occurrences that form the basis of the Lawsuit; and/or (iii) any other acts and/or omissions of **NAF** and/or any current or former employee or agent of **NAF** relating in any way to actual or attempted communications or interactions between **HUMAN** and **NAF**, or any alleged business relationship or attempted business relationship between **HUMAN** and **NAF**. It is the Parties' express intent that this global release shall be construed broadly in favor of the extinguishment of any and all claims and/or potential claims, known or unknown by **HUMAN** (a) which in any way relate to the Lawsuit, (b) which in any way, directly or indirectly, arise out of or relate to the claims alleged against **NAF** in the Lawsuit, and/or (c) which have accrued as of the date **HUMAN** signs this Agreement.

4. **Dismissal**: **HUMAN** shall dismiss with prejudice any and all claims brought against **NAF** in the Lawsuit within ten (10) days of the receipt of the Settlement Funds, and any dismissal shall be in a format provided by **NAF's** counsel to **HUMAN's** counsel.

5. **No Solicitation of Future Class Members**: As a material inducement for **NAF** to enter into this Agreement, **HUMAN** agrees that he will not solicit alleged potential class members, as identified in the Lawsuit, either directly or indirectly, or recruit or encourage alleged potential

putative class members to file suit against **NAF** regarding the claims and allegations at issue in the Lawsuit.

6. **Taxes**: **HUMAN** shall be solely responsible for, and is legally bound to pay any taxes determined to be due and owing, including penalties and interest related thereto, to any federal, state, local, or regional taxing authority resulting from payment of the Settlement Funds. **HUMAN** understands that **NAF** has not made any representations to him regarding the tax treatment of the Settlement Funds paid pursuant to this Agreement. Moreover, **HUMAN** agrees to indemnify and hold **NAF** harmless in the event any governmental taxing authority asserts against **NAF** and/or any of its insurers, any claim for unpaid taxes, failure to withhold taxes, penalties, or interest based upon the payment of the Settlement Funds.

7. **No Outstanding or Known Future Claims/Causes of Action other than those identified**: **HUMAN** affirms that other than the Lawsuit, he has not filed any other civil complaints, claims, charges, or actions against **NAF** or against any of **NAF's** current or former partners, officers, directors, assigns, agents or employees with any local, state or federal agency or local, state or federal court based on conduct, misconduct, or any other acts or omissions occurring prior to the date of this Agreement and that he will not do so at any time hereinafter.

8. **Warranties**: The Parties agree, represent, and warrant that:

a. The Settlement Funds described above, paid in consideration for this Agreement, is the sole consideration for its execution and is paid by or on behalf of **NAF** in full satisfaction of all damages accruing to **HUMAN** and of all claims of **HUMAN**, in all possible capacities, against **NAF**, as described in the release provision detailed above.

b. The individuals signing this Agreement are legally and mentally competent to sign this Agreement, are duly authorized and empowered to bind any individuals or entities for which

he or she has signed this Agreement, and possess all requisite consents, approvals, authorizations to execute and deliver this instrument in all capacities stated herein.

c. The Parties agree this Agreement is entered into in good faith after arduous arms-length negotiations and that the Parties believe this Agreement is in their best interest.

d. **HUMAN** presently own 100% of the damages and of the claims released by this Agreement, and no other person or entity owns any interest therein by assignment, lien, subrogation or otherwise; **HUMAN** has not in any way assigned or otherwise transferred to any person or entity any interest in the damages or claims released by this Agreement; and **HUMAN** presently possesses the exclusive right to receive all of the consideration paid for this Agreement.

9. **No Admission of Liability**: This Agreement and compliance with this Agreement shall not be construed as an admission by **NAF** of any liability whatsoever, or as an admission by **NAF** of any violations of the rights of **HUMAN**, including but not limited to any rights derived from any statute, contract, and/or the common law. To the contrary, **NAF** unconditionally and without qualification denies all liability to **HUMAN**, including but not limited to liability for any of the acts and/or omissions alleged in the Lawsuit or in any way, directly or indirectly, arising out of actual or attempted communications or interactions between **HUMAN** and **NAF**, or any alleged business relationship or attempted business relationship between **HUMAN** and **NAF**. The foregoing specifically includes, but is not limited to, any acts and/or omissions of **NAF's** current or former agents or employees and/or any other persons acting or purporting to act on behalf of **NAF**.

10. **Confidentiality of Agreement**: The Parties agree they will keep the fact of, terms of, and amount reflected in this Agreement confidential and they will not hereinafter disclose any information concerning this Agreement to anyone, provided the Parties may make such disclosures

as are required by law and as are necessary for legitimate law enforcement, tax, or compliance purposes.

11. **Agreement is Legally Binding**: The Parties intend this Agreement to be legally binding upon and shall inure to the benefit of each of them and their respective successors, assigns, executors, administrators, heirs, and estates.

12. **Entire Agreement**: This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral, concerning the subject matter hereof. Furthermore, no modification of this Agreement shall be binding unless in writing and signed by each of the Parties hereto.

13. **New or Different Facts: No Effect**: Absent fraud and except as provided herein, this Agreement shall be, and remain, in effect despite any alleged breach of this Agreement or the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true. Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute, a release of any Parties' rights to enforce the terms of this Agreement.

14. **Interpretation**: Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement. The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation. All of the definitions, provisions, and terms hereof are contractual and not mere recitals.

15. **Governing Law**: This Agreement is made and entered into within and shall be governed by, construed, interpreted, and enforced in accordance with Missouri law.

**APPROVED BY ALL PARTIES**

16. **Reliance on Own Counsel**: In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Parties. The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied upon any representation or statement, whether oral or written, made by the other Parties or by the other Parties' agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

17. **Effective Date**: The terms of the Agreement will be effective upon the date signed by **HUMAN**.

**READ THE FOREGOING DOCUMENT CAREFULLY. IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

**IN WITNESS WHEREOF**, and intending to be legally bound, the undersigned individuals have caused this Agreement to be executed as of the date set forth below.

**DANIEL HUMAN**

[signature]

**Printed Name**: Daniel Human

**Date**: October 25, 2023

**NEW AMERICAN FUNDING, LLC,**
**(by an authorized representative)**

_______________________________

**Printed Name**: ______________________

**Date**: ______________________

# COMPROMISE SETTLEMENT AGREEMENT AND RELEASE

This Compromise Settlement Agreement and Release ("Agreement") is hereby entered into by and between Plaintiff Daniel Human ("Plaintiff") and Defendants Alleviate Tax, LCC ("Defendant"). The above-stated parties are sometimes collectively referred to as the Parties. This agreement is effective as of the date of the first signature affixed below (the "Effective Date").

## I.
## ATTORNEYS

The attorneys for the Parties are as follows:

Plaintiff:
Daniel Human

Edwin V. Butler Esq.
Butler Law Group, LLC
1650 Des Peres Rd.
Suite 220
St.Louis, MO 63131
*Counsel for Plaintiff*

Defendants:
Alleviate Tax, LLC

Brittany Andres
400 Spectrum Center, Ste. 1550
Irvine, CA 92618
www.troutmanamin.com
P: (949) 350-5612 (No ATDS)
F: (949) 203-8689.COM
*Counsel for Defendant*

## II.
## RECITALS

WHEREAS, Plaintiff filed certain lawsuit styled *Daniel Human v. Alleviate Tax, LLC*, No. 4:24-cv-981 in the United States District Court for the Eastern District of Missouri (the "Lawsuit"), alleging violations of the Telephone Consumer Protection Act and related statutes.

WHEREAS, the Parties, acknowledging the disputed nature of the claims, and further acknowledging the uncertainty of litigation, and recognizing the costs, including without limitation, legal fees and other opportunity costs, and without admitting liability, desire to

compromise and settle this dispute and to fully, finally, and completely dispose of all matters in controversy between the Parties.

## III.
## COVENANTS

NOW, THEREFORE, the Parties covenant and agree as follows:

1. **Consideration.** Parties agree to dismiss and or waive all claims they may have against each other. Defendants agree to send to Plaintiff the total sum of five thousand dollars ($5000.00) within five (5) days of receipt of this signed Settlement Agreement and Mutual Release. ***Payment will be made payable to and sent to Edwin Butler and the Butler Law Group, LLC, 1650 Des Peres Rd., Ste 220, St. Louis, Mo. 63131.***

2. **Attorneys' Fees.** All of the Parties agree to bear their own attorney's fees.

3. **No Admission.** This Agreement is entered into for the purpose of settling all disputed civil claims that the Parties may have now or in the future against one another arising from Defendants' alleged phone calls directed to Plaintiff. The Parties agree that neither the giving of any consideration hereunder nor its acceptance shall operate as or be evidence of any admission, either liability for, merit in or lack of merit in, any claim hereby released, and agree that by the execution of this Agreement, Defendants do not admit to the truthfulness of any of the claims made in the Lawsuit; rather such claims and liability have been and are hereby expressly denied by Defendants.

4. **Release by Plaintiff.** Upon the execution of this Agreement, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, Plaintiff for themselves and all of Plaintiff's respective agents, administrators, personal representatives, insurers, predecessors, successors, assigns, attorneys, and all persons or entities claiming by, through, for, or under them, do hereby absolutely, irrevocably, and unconditionally

acquit and release and forever discharge Defendants, all current and former owners of the account(s) relating to the Lawsuit, and all of Defendants' respective partners, agents, executors, clients, administrators, personal representatives, insurers, heirs, predecessors, attorneys, and all persons or entities claiming by, through, for, or under them, from any and all liability, claims, demands, causes of action, or suits, both at law or in equity, and from all debts, expenses, and costs liquidated or unliquidated, absolute or contingent and whether known or unknown which Plaintiff has or may hereafter have in whole or in part, as a result of, whether directly or indirectly, concerning or otherwise pertaining in any form or fashion to the transactions, events, circumstances, or agreements arising from the alleged phone calls of Defendants directed to Plaintiff, from the beginning of time through the execution of this release.

5. **Confidentiality.** The terms and conditions of this settlement are confidential. The Parties may make a limited disclosure for the purpose of responding to any administrative agency or entity they may be required to respond to as a matter of law. Defendants may disclose the amount and terms of the Agreement in reporting to licensing boards, certification boards or insurance carriers. The Parties may also make a limited disclosure as required to their accountants. The parties and their counsel may disclose the settlement to their tax professional for tax purposes. The Parties further acknowledge and agree that, in the event any other questions or inquiries are made or directed to them or to their attorneys concerning this Agreement, no other statement shall be made except that the matter was disposed of by mutual agreement and release.

6. **Additional Warranties and Representations.** All of the Parties to this Agreement warrant and represent that (1) no promise or agreement not herein expressed has been made, (2) this Agreement and any other instruments referenced in this Agreement are not executed in reliance upon any statement, representation, omission, and/or conduct of any other party or attorney of any

other party, (3) the provisions of this Agreement are contractual and not merely recital, (4) all parties have authority to enter into this Agreement, and (5) the Parties represent and warrant that no other person or entity has any interest in the claims, demands, obligations, actions, causes of action, or the Lawsuit referred to in this Agreement, and any alleged oral or written contracts described herein.

7. **Binding Effect.** This Agreement will inure to the benefit of and be binding upon all Parties hereto and their executors, administrators, personal representatives, heirs, officers, directors, shareholders, employees, successors, assigns, attorneys, and all persons or entities claiming by, through, for, or under them. In the event a party to this Agreement is a corporation or partnership, each such party represents it has full authority to execute this Agreement and to perform the obligations required herein.

8. **Governing Law.** This Agreement shall be governed by the laws of the State of Missouri, and in any lawsuit, action, or proceeding instituted by any party hereto directly arising out of or with respect to this Agreement, proper venue shall be deemed to be exclusively in Missouri.

9. **Modification.** This Agreement may not be modified, amended, superseded, or cancelled orally or in any manner other than by written instrument signed by the Parties to this Agreement.

10. **No Prior Agreements.** This Agreement constitutes the entire Agreement and understanding of the Parties and supersedes any and all other prior agreements of the Parties, whether oral or written, relating to the subject matter of the Lawsuit and this Agreement.

11. **Severability.** If any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term hereof, such provision will

be fully severable, and this Agreement will be construed and enforced as if such illegal, invalid, or unenforceable provision never compromised a part hereof, and the remaining provisions hereof will remain in full force and effect and will not be effected by the illegal, invalid, or unenforceable provision or by its severance here from.

12. **Execution of Documents.** Each of the Parties hereto shall execute such further documents and writings that may be necessary to effectuate the terms and conditions of this Agreement, including and not limited to Motion to Dismiss with Prejudice. Each of the Parties hereto represent and warrant that they have authorized the persons whose signatures appear upon this Agreement to execute such Agreement on their behalf and for the consideration stated.

13. **Extensive Negotiations.** The Parties hereto agree that this Agreement is the result of extensive negotiations by and between the Parties and represents the agreement of the Parties. The Parties acknowledge that this Agreement has been revised and critiqued by all Parties for language, and all parts of the Agreement shall in all cases be construed as a whole, according to its form, meaning, and not strictly for or against any one of the Parties.

14. **Multiple Counterparts and Faxed Signatures.** This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any of the Parties may execute this Agreement by signing any such counterpart. Faxed or electronic copies of signatures will be treated the same as original signatures for purposes of this Agreement.

15. **Miscellaneous.** The Parties declare that this Agreement is given in good faith and that the terms hereof have been completely read, are fully understood, and voluntarily accepted for the purposes stated herein.

EXECUTED this 13th day of August, 2024, but effective as of the terms of this Agreement.

Daniel Human

EXECUTED this ____ day of August, 2024, but effective as of the terms of this Agreement.

*Alleviate Tax, LLC*

By: ______________________________

Name: ______________________________

Title: ______________________________

# SETTLEMENT AGREEMENT AND RELEASE

This confidential Settlement Agreement and Release (the "Agreement") is made this 5th day of January, 2024, by and between Great Resort Vacations LLP ("Company"), and Daniel Human, ("Complainant").

WHEREAS, Company is engaged in certain forms of sales, marketing or other calling, either on its own behalf, through others, or on behalf of others,

WHEREAS, Complainant has alleged certain sales, marketing or other call related law violations by Company and/or the affiliates or partners of the same,

WHEREAS, the parties hereto desire to compromise, settle, and release any and all claims arising out of or relating to the alleged violations, without any admission of wrongdoing by either party.

1. Payment. Company shall pay the sum of nine thousand U.S. dollars ($9,000.00) ("Settlement Amount") to Complainant. The settlement Amount shall be made in three payments; the first payment of $5,000 due no later than January 14, 2024, the second payment of $2,000 due 30 days thereafter and the final payment of $2,000 due 30 days thereafter. In the event Complainant alleges any default in the timing of any payment hereunder, Complainant shall provide written notice to Company, or its counsel and Company shall be afforded one week to cure said default. The Settlement Amount shall be sent via electronic funds transfer to James A. Marks, Attorney for Plaintiff and wire instructions will be provided to Defendant's Counsel via email with the executed settlement Agreement.

2. Release by Complainant. In consideration of the promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Complainant, on behalf of Complainant and Complainant's heirs, successors, legal representatives and assigns, does hereby release, acquit and forever discharge Company, and all their respective corporate parent, subsidiary and affiliated entities, along with each of their current, and former owners, members, partners, officers, directors, shareholders, employees, agents, marketers, vendors, contractors, assigns, successors, servants, insurers, representatives, and attorneys, together with any and all other persons and entities who are or might be liable (collectively, the "Released Parties"), from any and all claims, liabilities, demands, suits, class actions and causes of action of every nature and kind, whether vested or contingent, past or current, accrued or unaccrued, known or unknown, in law or in equity, matured or unmatured, whether or not such claims were or could have been brought or raised in any applicable civil action, or as a result of the alleged conduct which gave rise to the instant dispute, including without limiting the generality of the foregoing, those claims and allegations expressly raised, and solely in any previous correspondence between Complainant and Company, in any court pleading filed by Complainant, those arising out of or relating to the facts, circumstances, or occurrences surrounding the above-mentioned correspondence, and those arising out of, relating to or resulting from the facts, circumstances, or occurrences concerning the alleged conduct which gave rise to this dispute. This Agreement covers and includes all claims that Complainant

has against the Released Parties whether known or not, despite the fact that any applicable state and/or federal law may provide otherwise. This Agreement also covers any claims assigned to Complaint by other parties which relate in any way to the subject telemarketing calls. Notwithstanding the foregoing, the Released Parties shall not be released from the obligations imposed by this Agreement.

3. Dismissal of Claims, Confidentiality & Non-Disparagement. The Parties shall not discuss, publish or share any copy of, or any details relating to, this Agreement with any person or entity not a party to this Agreement, except that the Parties may state that the matter has been "fully and amicably resolved without any admission of fault." Following the execution of this Agreement: (1) Complainant shall immediately dismiss any lawsuits and class action claims filed against Company by Complainant; (2) Complainant shall immediately withdraw all complaints and negative reviews filed by Complainant about Company; (3) Complainant shall immediately inform any regulator investigating Company at Complainant's request that the matter has been fully and amicably resolved to Complainant's satisfaction; (4) the Parties shall not disparage Company to any third party, nor make any future complaint or negative review regarding Company; and (5) If Complainant has not already done so, Complainant shall immediately provide a list of all of Complainant's telephone numbers so Company can act in an attempt to prevent future calls/messages to such numbers. In the event of a breach of this provision by Complainant, Complainant shall forfeit Complainant's settlement amount and shall be liable to Company for an immediate return of the settlement amount, plus all reasonable court costs and attorney's fees required in order for Company to enforce this provision—in such a case, Complainant's claims against Company shall remain waived.

4. Denial of Liability. It is expressly understood and agreed to by and among the undersigned hereto that by entering into this Agreement, none of the undersigned (nor their affiliates) hereto admit the truth of the allegations made by any other party, and this is a compromise of a disputed claim, which should not be construed as an admission of liability on the part of any party or any affiliate or the same.

5. Assigns and Successors-in-Interest. This Agreement shall be binding upon and inure to the benefit of the heirs, successors, and assigns of the undersigned hereto. The claimant represents that they have not already assigned or otherwise transferred or conveyed their claim or any interest in the same, and will indemnify Company if this is the case.

6. Agreement Fully Read and Understood. This Agreement has been carefully read by the undersigned and the contents are known and understood by the undersigned. The undersigned have each received or have had the opportunity to obtain if they so choose independent legal advice from the attorneys of their choice with respect to the preparation, review, and advisability of executing this Agreement. The undersigned acknowledge that they have executed this Agreement after independent investigation and without fraud, duress, or undue influence.

7. Applicable Law, Venue for Disputes. The existence, validity, construction and operation of this Agreement, and all of its covenants, agreements, representations, warranties,

terms, and conditions, shall be determined in accordance with the laws of the State of Missouri. The parties consent to the jurisdiction of the courts in Missouri and agree that venue in any future dispute between them shall be proper in this forum only.

8. Entire Agreement. This Agreement sets forth the entire agreement between the undersigned, and fully supersedes any and all prior and/or contemporaneous agreements or understandings between the undersigned, which pertain to the subject matter hereof. The terms of this Agreement may not be contradicted by evidence of any prior or contemporaneous agreement, and no extrinsic evidence whatsoever may be introduced to vary its terms in any judicial proceeding involving this Agreement.

9. Modification. This Agreement may be modified, but only if the modification is in writing and signed by the undersigned to this Agreement.

10. Severability. Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be part of this Agreement.

11. Counterparts. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. Faxed and scanned signatures may be accepted as originals.

12. Mutual Drafting. This Agreement is the product of negotiations "at arm's length" between the undersigned, both of whom had ample time in which to seek legal advice, if desired. As such, the terms of this Agreement are mutually agreed-upon, and no part of this Agreement will be construed against the drafter.

In accordance with Mr. Human's satisfaction of paragraph 3 above, he discloses that he presently owns two phones with the identifying numbers: 314-915-2988 and 208-390-1355. Mr. Human owns no other phones.

Accepted and agreed to by:

Daniel Human (Complainant):

Date: January 6, 2024

Great Resort Vacations LLP (Company):

Authorized Signature:

Date:

**Sort Date Entries: Descending Ascending**

**Display Options:** All Entries

**01/31/2025**

**Judge/Clerk - Note**

NO TAX

**01/30/2025**

**Judgment Entered**

JUDGMENT BY DEFAULT IS THEREFORE GRANTED IN PLAINTIFF'S FAVOR AGAINST DEFENDANT IDAHO ROOFING CONTRACTORS IN THE AMOUNT OF $46,500.50 AS WELL S ALL APPLICABLE POST-JUDGMENT INTEREST. SO ORDERED: JUDGE DAVID LEE VINCENT, III

**Default Judgment**

**Civil Motion Hearing Held**

**Associated Entries: 12/17/2024 - Civil Motion Hearing Scheduled**
**Scheduled For:** 01/30/2025; 9:00 AM; DAVID L VINCENT III ; St Louis County

**12/17/2024**

**Civil Motion Hearing Scheduled**

**Associated Entries: 01/30/2025 - Civil Motion Hearing Held**
**Scheduled For:** 01/30/2025; 9:00 AM; DAVID L VINCENT III ; St Louis County

**Notice of Hearing Filed**

Notice of Hearing
**Filed By:** DANIEL HUMAN

**12/11/2024**

**Motion for Default Judgment**

**10/31/2024**

**Agent Served**

Document ID - 24-SMCC-10154; Served To - IDAHO ROOFING CONTRACTORS; Served Date - 10/24/2024; Served Time - 00:00:00; Service Type - SP; Reason Description - SERV; Service Text -

**10/22/2024**

**Confid Filing Info Sheet Filed**

**Summons Issued-Circuit**

Document ID: 24-SMCC-10154, for IDAHO ROOFING CONTRACTORS

**Pet Filed in Circuit Ct**

FILED
FEB 05 2025
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

**IN THE**
**CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

Daniel Human, individually and on behalf of others similarly situated,
Plaintiff,

Vs

Vacation Ownership Brokerage, LLC d/b/a Timeshare Broker Services
Defendant.

Case No. 24SL-CC05237

FILED
FEB 13 2025
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

**JUDGMENT BY DEFAULT**

The Plaintiff, Daniel Human, moved for entry of Judgment by Default pursuant to Missouri Supreme Court Rule 74.05(a) against Defendant Vacation Ownership Brokerage, LLC for their failure to answer or otherwise defend against their three (3) violations of the Missouri and Federal do not call lists, and for Judgment against the defendants based on their vicarious liability, and for costs and fees.

NOW, THEREFORE, the Court finds that Process was perfected on the defendants on October 30, 2024. Defendant Vacation Ownership Brokerage, LLC failed to plead, answer or defend against the Complaint within thirty (30) days thereby entitling the Plaintiff to entry of Judgment by default pursuant to Missouri Supreme Court Rule 74.05(b). Pursuant to Missouri Supreme Court Rule 74.05(c), a Default Judgment may include an award of damages for each of the three (3) violations.

As such, in accord with 407.1107 RSMo, the Plaintiff is entitled to $5,000 in damages for each known violation, or $15,000. Pursuant to 47 U.S.C. 227(c)(5); 47 C.F.R. 64.1200 (c)(2), Plaintiff is entitled to separate and distinct damages for the three (3) independent TCPA violations of $1,500 per call-or $4,500. The individual Defendant's ratification of the illegal calls further warrants a judgment in Plaintiff's favor equal to the maximum penalties of $19,500. Plaintiff is also entitled to recover his reasonable fees and costs in the sum of $1,000.50.

***JUDGMENT BY DEFAULT*** is therefore granted in Plaintiff's favor against Defendant Vacation Ownership Brokerage, LLC in the amount of $40,000.50. as well as all applicable post-judgment interest.

SO ORDERED:

Honorable John N. Borbonus III

This 13th day of February, 2025

______________________

Clerk of the Court

Cc: all parties

Not an Official Court Document

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

This Confidential Settlement Agreement and Release of All Claims (hereinafter the "Agreement") is made and effective as of March 24, 2025 (the "Effective Date") by, between, and among DANIEL HUMAN (hereinafter "Releasor") and GENERAL MOTORS LLC (hereinafter "GM"). Hereinafter, Releasor and GM may be referred to collectively as the "Parties" or individually as a "party." This Agreement is made and entered into with reference to the following facts:

a. Releasor claims that in 2024, he received several telephone calls from someone purportedly calling on behalf of GM ("the Telephone Calls").

b. In March 2024, Releasor filed a putative class action lawsuit against GM in the Twenty-First Judicial Circuit Court of St. Louis County, Missouri, asserting various claims arising from the Telephone Calls. On August 30, 2024, GM removed the lawsuit to the United States District Court for the Eastern District of Missouri (the "Lawsuit").

c. The Parties enter into this Agreement to settle all claims and disputes that Releasor may have against the Releasees (defined below) through the Effective Date, including without limitation those arising out of or relating to the Telephone Calls and/or other damages and/or any other actions, conduct, omissions, or events alleged in the Lawsuit (including in all complaints and proposed amended complaints), or which could have been made a part of the Lawsuit.

d. Without admitting any liability or wrongdoing whatsoever, it is the Parties' intention to affect a full and final settlement and resolution of all existing disputes and claims as set forth herein.

NOW, THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Recitals</u>

The recitals set forth in paragraphs a through d above are incorporated into this Agreement by reference.

2. <u>General Release and Discharge</u>

Releasor, along with his heirs, executors, nominees, next-of-kin, attorneys, personal representatives, administrators, and assigns, does hereby fully and forever remise, release, and discharge GM and S&P Global, Inc. and Morley Companies, Incorporated, as well as

all of their predecessors, successors, parent corporations, subsidiaries, affiliates, directors, officers, partners, heirs, executors, administrators, attorneys, agents, employees, and assigns (collectively, "Releasees"), and each of them, from any and all past, present, or future claims, demands, rights, damages, costs, attorneys' fees, expenses, compensation of any nature whatsoever, and causes of action of whatsoever kind and nature, whether known or unknown, accrued and not yet accrued, no matter what theory of recovery may exist, that Releasor may now have, or may ever obtain, arising out of or in any way related to any act committed or omission allegedly made before the date of this Agreement, including without limitation the Telephone Calls and/or any other actions, conduct, omissions, or events alleged in the Lawsuit (including in all complaints and proposed amended complaints), that have been, or could have been brought, by Releasor against Releasees, including without limitation any and all known or unknown claims of personal, property, economic and non-economic injuries, and the consequences thereof, which have resulted or may result from the alleged acts or omissions of Releasees arising out of or in any way related to the Telephone Calls, and/or any other actions, conduct, omissions, or events alleged in the Lawsuit (including in all complaints and proposed amended complaints), that have been, or could have been brought, by Releasor against Releasees.

The foregoing Release and Discharge includes any liability whatsoever between the parties hereto: (a) which arises directly or indirectly out of or is in any manner related to the alleged acts or omissions of Releasees alleged in the Lawsuit (including in all complaints and proposed amended complaints); or (b) which arises directly or indirectly out of or is in any manner related to the injuries or damages alleged by Releasor in the Lawsuit (including in all complaints and proposed amended complaints), including, without limitation, those, if any, which may hereafter be acquired, directly or indirectly, from such injuries or damages.

Releasor hereby acknowledges and agrees that this Agreement is a general release and a compromise of matters involving disputed issues of law and fact. Releasor further expressly waives and assumes the risk of any and all claims for damages which exist as of this date but which the parties do not know or suspect to exist, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into this Agreement.

This is a release of Releasor's individual claims with prejudice.

3. GM's Waiver of Claims for Fees and Costs

In exchange for the releases and agreements and representations from Releasor and Releasor's counsel set forth in this Agreement, GM waives any claims it may have to recover costs (taxable or non-taxable) or fees or sanctions arising from the Lawsuit.

4. Notice of Dismissal

Releasor agrees to dismiss the Lawsuit by filing a Notice of Dismissal With Prejudice within five calendar days after Releasor's Counsel receives a copy of this Agreement fully executed by GM and GM's Counsel. The dismissal will provide that the

Parties shall bear their respective costs and attorneys' fees.

5. Representation by Releasor's Counsel.

Releasor's counsel agrees that as of the date of execution of this Agreement they have not been retained by any individuals or entities, other than Releasor, that have or may have any potential claims, grievances, or causes of actions against Releasees similar to those asserted in the Lawsuit (including in all complaints and proposed amended complaints), and resolved by this Agreement. Releasor's counsel further agree that they have no present intention to solicit or refer such persons to other counsel for the purpose of bringing such claims; provided, however, that nothing in this Paragraph shall be construed as a restriction of Releasor's counsel's right to practice law in contravention of any applicable rules governing professional conduct.

6. Confidentiality & Non-Disparagement Clause.

The Parties and their respective counsel represent and agree that each will keep the terms, value, and nature of the consideration given to Releasor and Releasor's Counsel, and the terms of this Agreement completely confidential. The Parties may only disclose these details to their professional (financial and legal) representatives, or as may otherwise be required by law through a subpoena, or a Court Order. Any professional representative must also be bound by the confidentially provisions herein. The Parties and their counsel each further represent and agree that they will not hereafter disclose any information concerning this Agreement in any way, including, but not limited to the Internet, the World Wide Web, social media of any kind, or in any other personal or electronic media. In addition to the obligation of confidentiality, the Parties and their counsel agree that they will not disparage Releasees, or their employees, officers, owners, or Board Members, nor seek to negatively influence Releasees' reputations or their employees', officers', owners', or Board Members' reputation(s) by making negative claims or comments to anyone in any way concerning the events that gave rise to the Lawsuit. Releasor agrees not to provide anyone with any information arising out of or in any way related to the Telephone Calls and/or other damage or matter relating to any other actions, conduct, omissions, or events alleged in the Lawsuit (including in all complaints and proposed amended complaints) prior to the entry of this Agreement. Breach or violation of any provision in this Paragraph will severely diminish GM's purposes for entering into this Agreement, as the Parties agree that these provisions, among others, are material and essential provisions of this Agreement. Should there be a breach of any provision in this Paragraph, either party shall be entitled to bring an action for either or both a restraining order/injunction and monetary damages.

No party will initiate contact with the press regarding the Lawsuit, and if a party is contacted by the press, the only statement that can be made is that the matter has been resolved. If Releasor or his counsel or GM receive a subpoena or other legal process requiring the disclosure of this Agreement or any of its terms, the recipient shall notify the other party promptly enough to permit the other party time to seek an order preventing

disclosure.

7. Disclaimer of Liability

It is understood and agreed that this Agreement and settlement is a compromise of doubtful and disputed claims, and that neither entry into this Agreement, nor the negotiation of this Agreement shall be considered an admission of liability whatsoever by any party to this Agreement. It is understood that GM has denied, and presently denies, the allegations contained in the Lawsuit (including in all complaints and proposed amended complaints) and that no past or present wrongdoing on the part of Releasees shall be implied from any negotiations or entry into this Agreement.

8. Hold Harmless

Releasor further covenants and agrees on his behalf and on behalf of his successors, assigns, representatives, heirs, administrators, and executors that they will not, at any time hereafter, commence, maintain, or prosecute any action or serve any claim against Releasees or any of their agents, representatives, affiliates, directors, officers, partners, attorneys, administrators, executors, successors, employees, parent corporations, or subsidiaries for damages, losses, liens, or other damages or losses of any kind or amount arising out of or in any way related to the Telephone Calls and/or any other actions, conduct, omissions, or events alleged in the Lawsuit (including in all complaints and proposed amended complaints).

Releasor further agrees to release, discharge, and hold harmless, on his own behalf and on behalf of his successors, assigns, representatives, heirs, administrators, and executors, Releasees and their agents, representatives, affiliates, directors, officers, partners, attorneys, administrators, executors, successors, employees, parent corporations, or subsidiaries from any and all past, present, or future claims, demands, obligations, actions, causes of action, damages, costs, attorney's fees, or any other expense or costs of any nature arising in any manner out of or in any way related to the Telephone Calls and/or any other actions, conduct, omissions, or events alleged in the Lawsuit (including in all complaints and proposed amended complaints) that hereafter may be commenced, maintained, or prosecuted by or on behalf of Releasor.

9. Representation of Comprehension of Document

In entering into this Agreement, each of the parties hereto represents that they have read the contents of this Agreement, that the terms contained herein have been fully explained to them by their attorneys, and that those terms are fully understood and voluntarily accepted by them, that they have relied solely upon legal advice of their respective attorneys, who are the attorneys of their own choosing, and the advice of any other legal or other professional as they or their attorneys may have deemed appropriate, and they have not relied upon the representations of the opposing party, or that party's attorneys or representatives, in evaluating the parties' claims or defenses or damages, or in deciding whether to accept this settlement; and hereafter no such party shall deny the validity of this Agreement on the ground that it did not have advice of counsel. Releasor

further represents that he has personally and/or through his attorneys of record fully investigated, to Releasor's full satisfaction, all the facts surrounding the various claims, controversies and disputes, and is fully satisfied with the terms and effects of this Agreement.

10. Miscellaneous Provisions

a. This Agreement shall be binding upon, and inure to the benefit of, the executors, administrators, heirs, assigns, and successors of each party hereto.

b. Each party to this Agreement warrants and represents that they are fully and properly authorized to enter into this Agreement, they have not assigned any claim to a third party, that no other person or entity has or has had any interest in the claims, demands, obligations or causes of action referred to in this Agreement and that all necessary corporate, administrative, or governmental approvals have been obtained prior to execution of this Agreement.

c. The parties shall promptly execute any and all further or additional instruments and will perform any acts which may become necessary in order to effectuate and carry out the purposes of this Agreement.

d. Neither any failure nor any delay on the part of any party in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any right.

e. This Agreement constitutes the entire agreement of compromise and settlement between the parties. This Agreement supersedes all prior agreements or understandings between the parties, whether written or oral, relating to the subject matter hereof and incorporates the entire understanding of the parties with respect thereto. This Agreement shall not be altered or amended except by a writing signed by the party or parties to be charged with such alteration or amendment.

f. This Agreement is being executed and delivered, and is intended to be performed, in the State of Missouri, and to the extent permitted by law, the execution, validity, construction and performance of this Agreement shall be construed and enforced in accordance with the laws of the state of Michigan.

g. This Agreement shall not be construed against any party on the basis that that party's attorney drafted this Agreement.

h. If a provision of this Agreement is held to be illegal or invalid by a Court of competent jurisdiction, such provision shall either be rewritten by the Court

to be legal and valid—as long as the rewritten provision remains consistent with the intent of the parties expressed herein—or deemed to be severed and deleted. Neither such revision nor such severance and deletion shall affect the validity of the remaining provisions.

i. This Agreement may be executed in one or more counterparts and delivered by facsimile or electronically, all of which together shall constitute one and the same Agreement which shall be binding upon all parties hereto, notwithstanding that the signatures of the parties' designated representatives do not appear on the same page.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS THEREOF, each of the undersigned has executed this Confidential Settlement Agreement and Release of All Claims.

Dated: March 24, 25

DANIEL HUMAN
RELEASOR

RELEASOR'S COUNSEL (Approving Agreement as to Form and Content, and Agreeing to be Bound By Paragraphs 5 and 6):

Dated: 3/24/2025

Edwin V. Butler
Butler Law Group, LLC
1650 Des Peres Rd., Suite 220
St. Louis, MO 63131
edbutler@butlerlawstl.com
T: (314) 504-0001

*Attorney for Releasor*

RELEASEE GENERAL MOTORS LLC:

Dated: April 10, 2025

GENERAL MOTORS LLC
RELEASEE

BY: Todd Miller, Assistant Secretary

RELEASEE GENERAL MOTORS LLC'S COUNSEL (Approving Agreement as to Form and Content, and Agreeing to be Bound By Paragraph 6):

Dated: March 24, 2025

*/s/ Krista L. Lenart*
Krista L. Lenart (59601 MI)
Theodore W. Seitz (60320 MI)
DYKEMA GOSSETT PLLC
2723 S. State St., Ste. 400
Ann Arbor, MI 48104
klenart@dykema.com
tseitz@dykema.com
T: (734) 214-7660

*Attorneys for General Motors LLC*

FILED
JAN 30 2025
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

IN THE
CIRCUIT COURT OF ST LOUIS COUNTY
STATE OF MISSOURI

FILED
DEC 11 2024
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

Daniel Human, individually and on behalf of all others similarly situated,

Plaintiffs,

V

Idaho Roofing Contractors,

Defendant.

No. 24SL-CC05499

## JUDGMENT BY DEFAULT

The Plaintiff, Daniel Human, moved for entry of judgment by default pursuant to Missouri Supreme Court Rule 74.05(a) against Defendant Idaho Roofing Contractors for their failure to answer or otherwise defend against their seven (7) violations of the Missouri and Federal no call lists, and for Judgment against the Defendant for their vicarious liability, and for fees and costs.

NOW THEREFORE, the Court finds that process was perfected on Defendant Idaho Roofing Contractors on October 24, 2024. Defendant Idaho Roofing Contractors has failed to plead, answer or otherwise defend against the Complaint withing thirty (30) days thereby entitling the Plaintiff to entry of judgment by default pursuant to Missouri Supreme Court Rule 74.05(b). Pursuant to Missouri Supreme Court Rule 74.05(c), a Default Judgment may include an award of damages for each of the seven (7) violations.

As such, in accordance with 407.1107 RSMo., the Plaintiff is entitled to $5,000 in damages for each known violation, or $35,000.00. Pursuant to 47 U.S.C. 227(c); 47

C.F.R. 64.1200(c)(2), Plaintiff is entitled to separate and distinct damages for the seven (7) independent TCPA violations of $1,500 per call-or $10,500.00. The individual Defendants ratification of the illegal calls further warrants a judgment in Plaintiff's favor for their vicarious liability equal to the maximum penalties herein of $$45,500.00 Plaintiff is also entitled to recover his reasonable fees and costs in the sum of $1,000.50

JUDGMENT BY DEFAULT is therefore granted in Plaintiff's favor against Defendant Idaho Roofing Contractors in the amount of $46,500.50, as well as all applicable post-judgment interest.

SO ORDERED:

Honorable David L. Vincent III
Circuit Court Judge

This 6th Day of December 2024

Clerk of the Court

Cc: all parties

Not an Official Court Document

Facet Wealth, Inc.
Reg. Agent
Cogency Global, Inc.
850 New Burton Rd. Ste 201
Dover Kent, DE 19904

SETTLEMENT NEGOTIATIONS UNDER RULE 408

Legal Dept.

The purpose of this email is to advise you that I have filed suit today against your company in *Human v. Facet Wealth, Inc.* No. 24SL-CC-03226 in St. Louis County, Missouri. Your employees, agents, vendors, or telemarketers contacted me illegally, eight (8) times on my personal cell phone, which I personally registered on the Federal and Missouri State Do Not Call lists. The callers identified your company and address. This is a clear violation of the TCPA and Missouri Do Not Call statute.

In lieu of the $52,000 in total damages, ( $6,500 per call) I am willing to discuss settling the case for $20,000 provided we do so before I send a process to effect service on your company. Solely for the purpose of settling the matter, you may contact me at the phone number or email below. I will leave this offer open until the close of business Friday, July 19, 2024. If we cannot discuss or resolve this issue, I will send it to a process server and begin the litigation process.

Additionally, please preserve any call log records, phone contact with employees, vendors or telemarketers, or ESI for discovery as this will need to be provided. The suit is filed as a Class Action, and we will also need to provide the information for other Putative Class members.

I look forward to hearing from you to avoid the expense of litigating the matter, however, if we cannot reach a reasonable settlement, I am willing to take the matter to trial.

Cordially,

Dan Human
10423 Conway Rd.
St. Louis, MO 63131
(208) 390-1355
danh11polo@gmail.com

Case.net: 24SL-CC05231 - DANIEL HUMAN V VACATION OWNERSHIP BROKERAGE (E-CASE) - Docket Entries

**Sort Date Entries: Descending Ascending**

**Display Options:** All Entries

**02/13/2025**

**Judge/Clerk - Note**
NO TAX

**Judgment Entered**
JUDGMENT BY DEFAULT It is there granted in Plaintiff's favor against Defendant Vacation Ownership Brokerage, LLC in the amount of $40,000.50 as well as all applicable post-judgment interest. SO ORDERED: JUDGE JOHN N. BORBONUS

**Tried by Court-Civil**

**Associated Entries: 02/10/2025 - Motion Hearing Scheduled**
**Scheduled For:** 02/13/2025; 8:00 AM; JOHN N. BORBONUS III ; St Louis County

**02/10/2025**

**Motion Hearing Scheduled**

**Associated Entries: 02/07/2025 -**
**Notice of Hearing Filed**
**+**
**Associated Entries: 02/13/2025 - Tried by Court-Civil**
**Scheduled For: 02/13/2025; 8:00 AM; JOHN N. BORBONUS III ; St Louis County**

**02/07/2025**

**Notice of Hearing Filed**
NOTICE OF HEARING
**Filed By:** DANIEL HUMAN
**Associated Entries: 02/10/2025 - Motion Hearing Scheduled**

**02/05/2025**

**Proposed Judmt/Dec Dis Filed**
JUDGMENT BY DEFAULT
**Filed By:** DANIEL HUMAN

**Affidavit Filed**
AFFIDAVIT OF DANIEL HUMAN IN SUPPORT OF BILL OF COST AND ATTORNEY FEES
**Filed By:** DANIEL HUMAN

**Request Filed**
REQUEST FOR DEFAULT JUDGMENT
**Filed By:** DANIEL HUMAN

**12/05/2024**

**Motion for Extension of Time**
DEFENDANTS 1ST MOTION FOR EXTENSION OF TIME
**Filed By:** VACATION OWNERSHIP BROKERAGE

**11/12/2024**

**Corporation Served**
Document ID - 24-SMCC-9836; Served To - VACATION OWNERSHIP BROKERAGE; Server - ; Served Date - 30-OCT-24; Served Time - 00:00:00; Service Type - Sheriff Department; Reason Description - Served

**10/16/2024**

**Confid Filing Info Sheet Filed**

**Redaction Certification Filed**

**Judge Assigned**
DIV 06

**Summons Issued-Circuit**
Document ID: 24-SMCC-9836, for VACATION OWNERSHIP BROKERAGE

**Pet Filed in Circuit Ct**

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This confidential Settlement Agreement and Release (the "Agreement") is hereby made by and between Plaintiff Daniel Human ("Plaintiff") and Defendant DiCarlo Insurance, LLC ("Defendant"). Plaintiff and Defendant shall be collectively referred to as the "Parties."

WHEREAS, Defendant is engaged in certain forms of sales and marketing either on its own behalf, through others, or on behalf of others;

WHEREAS, Plaintiff has alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* by Defendant and/or the affiliates or partners of the same through a Complaint, which would be filed in the Circuit Court of St. Louis County, State of Missouri on December 11, 2023 (the "Complaint");

WHEREAS, Defendant denies any and all liability related to the Complaint;

THEREFORE, for and in consideration of the foregoing promises, the covenants set forth herein, and other good and valuable consideration, the Parties to this Agreement desire to compromise, settle, and release any and all claims arising out of or relating to the alleged violations, without any admission of wrongdoing by Defendant, and hereby agree and warrant as follows:

1. Effective Date. By completing and signing this Agreement, the Parties agree to be bound by its terms once it is signed by all Parties hereto. All Parties must execute this Agreement for it to be effective. The "Effective Date" is the date on which the last party hereto signs the Agreement.

2. Consideration. In exchange for the promises and releases herein, Defendant agrees to pay Plaintiff six thousand dollars ($6,000) via ACH electronic bank transfer, in two payments of three thousand ($3,000) each to Plaintiff's attorney's account as enumerated below, the first three-thousand-dollar ($3,000) payment no later than three (3) days after signing of this agreement. The second payment of three thousand dollars ($3,000) to be made within thirty (30) days of the first payment, to the Trust account of attorney James Marks, information which will be sent by email immediately upon the execution of this Agreement.

3. Release of Claims.

   a. Human, as well as his assigns, heirs, executors, administrators, successors, representatives, agents, partners, attorneys, predecessors-in-interest, and any (past or present) authorized users of any cellular, landline, or voice over internet protocol telephones for which he is the owner, user or subscriber, hereby release, resolve, relinquish, and discharge each and every one of the Released Parties (as defined in Section 3.c below) from each of the Released Claims (as defined in Section 4.b below). Human further agrees that he will not institute any action or cause of action (in law, in equity or administratively), suits, debts, liens, or claims, known or

unknown, fixed or contingent, which they may have or claim to have, in state or federal court, in arbitration, or with any state, federal or local government agency or with any administrative or advisory body, arising from or related in any way to the Released Claims against the Released Parties as detailed above.

b. "Released Claims" means any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the effective date of this agreement, that arise out of or relate in any way to the allegations against the Released Parties as alleged, other claims that Human might have under the TCPA, the MDNC, or any other legal theories for any calls placed by or on behalf of DiCarlo Insurance LLC or its direct or indirect subsidiaries to any cellular, landline, or voice over internet protocol phone for which Human is the owner, user, or subscriber between the dates of December 4, 2023 and December 8, 2023.

c. "Released Parties" means DiCarlo Insurance LLC and each of its respective past, present, and future parents, subsidiaries, affiliated companies, corporations, and independent contractor agents, and each of their respective past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint ventures, assigns, or related entities, and each of their respective executors, successors, assigns, and legal representatives, the defendants identified in the correspondence. Notwithstanding any other language contained in the first sentence of this section 3(c), the "Released Parties" do not include any DiCarlo Insurance LLC's marketing partners or lead providers, and each of their respective past, present, and future parents, subsidiaries, affiliated companies, corporations, and independent contractor agents, and each of their respective past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint ventures, assigns, or related entities.

d. The release in this Settlement Agreement shall be interpreted to the fullest extent of res judicata principles.

4. Confidentiality and Non-Disparagement. The Parties shall not discuss, publish or share any copy of, or any details relating to, this Agreement with any person or entity not a party to this Agreement. The Parties shall not make any comments that disparage, or attempt to disparage, Defendant or Plaintiff. As to Defendant, the terms in Paragraph 3 shall only apply to

Defendant's officers, directors, employees or representatives who have knowledge of the terms of the settlement of this Complaint.

5. Dismissal with prejudice. In consideration of the terms of this Settlement, if Plaintiff has already filed the Complaint, Plaintiff shall dismiss the potential lawsuit with prejudice within five (5) business days of receiving the final Payment. All causes of action that were brought or could have been brought in the Complaint are dismissed with prejudice.

6. Agreement Fully Read and Understood. This Agreement has been carefully read by the undersigned and the contents are known and understood by the undersigned. The undersigned have each received or have had the opportunity to obtain independent legal advice from the attorneys of their choice with respect to the preparation, review, and advisability of executing this Agreement. The undersigned acknowledge that they have executed this Agreement after independent investigation and without fraud, duress, or undue influence.

7. Applicable Law. The existence, validity, construction, and operation of this Agreement, and all of its covenants, agreements, representations, warranties, terms, and conditions, shall be determined in accordance with the substantive laws of the State of Missouri.

8. Entire Agreement. This Agreement sets forth the entire agreement between the undersigned, and fully supersedes any and all prior and/or contemporaneous agreements or understandings between the undersigned, which pertain to the subject matter hereof.

9. Modification. This Agreement may be modified, but only if the modification is in writing and signed by the undersigned to this Agreement.

10. Severability. Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be part of this Agreement.

11. Counterparts. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. Faxed and scanned signatures may be accepted as originals.

12. Mutual Drafting. This Agreement is the product of "arms-length" negotiations between the Parties, both of whom had ample time in which to seek legal advice, if desired. As such, the terms of this Agreement are mutually agreed-upon, and no part of this Agreement will be construed against the drafter.

13. Representations and Warranties. The Plaintiff represents and warrants to Defendant that Plaintiff has not assigned, transferred, pledged, or otherwise conveyed any of his interest in any claims or causes of action released herein. Plaintiff has actual authority to enter into this Agreement on behalf of himself and any others bound by this agreement. Additionally, Plaintiff represents and warrants that he has not and will not encourage any other individuals regarding bringing claims against Defendant and is not aware of any other individuals who have or may have claims against Defendant. Plaintiff also represents that he does not have any other

known claims against Defendant. The representations made in this Paragraph are a material term of this agreement.

14. Attorneys' Fees. The prevailing party in any lawsuit over an alleged breach of this agreement shall recover reasonable attorneys' fees and costs.

IN WITNESS WHEREOF, the Parties hereto have caused this document to be executed on the 5th day of April, 2024.

Accepted and agreed to by:

Daniel Human

Daniel Human
10423 Conway Rd.
St. Louis Mo. 63131

Date: April 5, 2024

DiCarlo Insurance, LLC

Authorized Representative for
DiCarlo Insurance, LLC

Print Name:
Title:
Date: April 5, 2024

# SETTLEMENT AGREEMENT, RELEASE, AND GENERAL WAIVER

This Settlement Agreement, Release and Waiver of All Claims ("Agreement") is entered into this 22nd day of January 2024 ("Effective Date"). The Parties to this Agreement are PolicyScout, LLC ("PolicyScout") on the one hand, and Dan Human ("Human") on the other hand. The parties to this Agreement are collectively referred to herein as the "Parties."

## RECITALS

PolicyScout filed a lawsuit against Human on October 11, 2023, in Utah Third District Court, Case No. 2309070677. The case was remanded to Utah Federal Court and assigned Case No. 2:23-cv-00934-CMR. Hereinafter, the "PolicyScout Lawsuit";

Human filed a *Counterclaim* in Missouri Federal Court, Case No. 4:23-cv-01377-SEP. That case was remanded to Utah and became part of the PolicyScout Lawsuit. Hereinafter, the "Human Lawsuit").

Each party denies all allegations of wrongdoing and denies each other Party's claims for relief;

NOW THEREFORE, consistent with the above promises, and for good and valuable consideration, the sufficiency of which is acknowledged, the Parties agree as follows:

## TERMS AND CONDITIONS

1. **Releases and Waivers.**

Except as to rights and obligations created by this Agreement, and subject to the parties compliance with their obligations under this Agreement, for value received, the receipt and adequacy of which is hereby acknowledged, each party hereby generally and mutually releases, waives, relinquishes and forever disavows and discharges any and all claims, demands, liabilities, obligations, debts, losses, injuries, costs, remedies, damages (including general, special, consequential, incidental, exemplary, punitive, etc.) and causes of action of any kind or character, in law or in equity, whether direct or indirect, known or unknown, presently existing or arising in the future, that each of them may have against one another, with respect to (a) the PolicyScout Lawsuit; (b) the Human Lawsuit; (c) any communications, telephonic or otherwise, between them; (d) any claims or controversies regarding any statements published or spoken against the other party; and (e) any costs, attorneys' fees or expenses incurred with respect to the claims identified herein. The foregoing releases and waivers shall extend to the PolicyScout and its shareholders, officers, directors, employees, attorneys, agents and assigns. This release and waiver is intended to be construed as broadly as possible.

It is agreed and understood that as to the matters released herein, the releases being provided apply to all injuries and damages, whether now known or unknown, and whether now existing or which may result in the future.

The Parties acknowledge that after they sign the Agreement, they may discover facts in addition to or different from those the Parties now know or believe to exist with respect to the claims released above and that if known or suspected at the time of executing this Agreement may have materially affected this Agreement. Nonetheless, the Parties agree to, and do hereby, waive and relinquish all rights afforded to them under California Civil Code section 1542, or any similar law of any State or territory of the United States or other jurisdiction.

The foregoing releases and waivers shall extend to PolicyScout and its shareholders, officers, directors, employees, attorneys, agents and assigns. This release and waiver are intended to be construed as broadly as possible.

Additionally, the Parties agree that this Agreement may be pleaded as a full and complete defense to any and all claims and causes of action being released in accordance with this Agreement, and the Parties hereto consent that it may be used as the basis for an injunction to halt any action, suit or other proceeding based upon claims released by this Agreement.

2. **Consideration.**

a. Dismissal With Prejudice. Within three (3) days of Human's filing Notice of Settlement, the Parties shall jointly move the Missouri and Utah courts for dismissal of the Human Lawsuit and the PolicyScout Lawsuit with prejudice, and each party will bear their own costs and attorney fees, to include waiver of the attorney fee award based on the improper removal to Missouri under Case No. 4:23-cv-01377-SEP.

b. Representations and Warranties. As material inducement for PolicyScout's entering into this Agreement, Human represents and warrants as follows: (1) Human does not submit his contact information through websites with the intent of generating calls for purposes of pursuing demands or lawsuits under TCPA or similar state laws; (2) Human did not intentionally submit his information to PolicyScout; and (3) Human will never in the future submit any contact information to any website owned, operated, or controlled by PolicyScout, or that otherwise identifies PolicyScout as a party who may contact Mr. Human.

3. **Notice and Cure.**

a. Within three (3) days of the execution of this Agreement, Human shall provide to PolicyScout a list of each and every phone number he presently has. PolicyScout will only use the phone numbers to ensure they are added to PolicyScout's internal Do Not Call List.

b. In the event Human receives any telephonic communication from, or on behalf of, PolicyScout in the future, to any phone number produced pursuant to 3.a. herein above, or any other phone number Human has not disclosed ("Future Communication"), Human may provide details of the Future Communication, including date, time, caller phone number, caller name, and recipient phone number, to PolicyScout within ten (10) days of Human's receipt of the Future Communication. ("Communication Notice").

c. Upon its receipt of a Communication Notice, PolicyScout thereafter has fourteen (14) days to add the phone number to PolicyScout's internal Do Not Call List. If PolicyScout adds the phone number to its Do Not Call List, and provides notice to Human regarding the same, the Releases and Waivers set forth herein above apply to Future Communications.

d. If Human elects not to provide a Communication Notice for any Future Communication to PolicyScout, he is forever precluded from pursuing claims against any party or otherwise complaining of the Future Communication in any manner.

4. **Costs and Fees.**

Each party to this Agreement shall bear its own costs and fees incurred in relation to this Agreement and all the claims and counterclaims which are released.

5. **Notice.**

a. To PolicyScout: PolicyScout
Attn: Compliance Officer
18080 S River Front Parkway, Suite 500
South Jordan, UT 84095

AND with a copy by email to:

Jordan Cameron
jordan@cameronringwood.com

b. To Human:

Edwin V. Butler
edbutler@butlerlawstl.com

6. **Choice of Law and Venue.**

This Agreement shall be interpreted and construed pursuant to the laws of the State of Utah. In the event any party hereto commences an action to enforce the terms hereof, the only proper venue for such action shall be the courts location in Utah. Each party submits to the jurisdiction of the courts located in Utah.

7. **No Admission of Fault, Liability and Non-Disparagement.**

It is understood and agreed that this Agreement and the performance of other obligations herein are made and entered into for the sole purpose of compromising disputed claims and this Agreement shall not be construed as an admission of liability by any party, liability being expressly denied by each party. Human agrees not to disparage PolicyScout, as to the issues being settled and released by this Settlement Agreement or any other issue. PolicyScout agrees not to disparage Human as to any issue being settled or any other issue. Each Party agrees not to

publicly publish this agreement to any other party in any other pending or future litigation or proceeding or on the internet unless required by the Court. If asked about this matter, the Parties are free to state that the matter settled without the payment of money or monetary consideration of any kind.

8. **Binding Agreement.**

This Agreement shall be binding upon each the parties hereto and shall inure to the benefit of each of the parties and their respective heirs, successors, attorneys, accountants, agents, partners, servants, employees, administrators, directors, officers, shareholders, trustees, insurers, representatives, and assigns.

9. **Enforcement.**

If any legal action or other proceeding is brought for the enforcement of this Agreement or because of any alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this agreement, the prevailing party shall be entitled to recover his, her or its reasonable attorney's fees and other fees and costs incurred in any such action or proceeding in addition to any other relief to which such party may be entitled.

10. **No Reliance.**

The Parties represent and warrant that, in executing and entering into this Agreement, they are not relying and have not relied upon any representation, promise or statement made by anyone which is not recited, contained or embodied in this Agreement. Furthermore, each of the parties to this Agreement has received independent legal advice or has had the opportunity to receive independent legal advice, from such Party's respective attorneys with respect to the advisability of executing this Agreement. The Parties are entering into this Agreement wholly of their own free will and volition.

11. **Entire Agreement.**

This Agreement comprises and contains the entire agreement between the Parties respecting the matters set forth in this Agreement, and supersedes and replaces all prior negotiations, understandings, proposed agreements and agreements between the Parties, written or oral. Neither Party has made any statement, representation or promise, other than as expressly set forth herein, to any other Party in entering into this Agreement, which has been relied upon by any other Party entering into this Agreement.

12. **Modification and Amendment.**

This Agreement may not be modified or amended in any way, except by a writing signed by the Party to be charged therewith.

13. **Construction of this Agreement.**

The language of this Agreement shall be construed as a whole according to its fair meaning and not strictly for or against any Party hereto. Both Parties have participated in drafting this Agreement, which is the result of negotiations between the Parties, all of which have been represented by counsel during such negotiations or have had the opportunity to be represented by counsel. Accordingly, for purposes of interpreting this Agreement, it shall be considered that this Agreement was jointly drafted by all of the Parties. The Parties understand and expressly assume the risk that any fact not recited, contained or embodied herein may turn out hereafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true. Nevertheless, the Parties intend by this Agreement to release finally, fully and forever, all matters released hereunder and agree that this Agreement shall be effective in all respects notwithstanding any such difference in facts, and shall not be subject to termination, modification or rescission by reason of any such difference in facts.

14. **Assignment.**

Unless otherwise disclosed by either Party, the Parties have not made or suffered any assignment, subrogation, hypothecation or other disposition of any claim, right, title, interest, demand or obligation it may possess relating to the matters set forth herein.

15. **Authority of Signatories.**

Each of the Parties to this Agreement represents and warrants that he/she/it is authorized to enter into this Agreement and that any required consents, authorizations, or approvals have been obtained.

16. **Counterparts; Facsimile and PDF Signatures.**

This Agreement may be executed in counterparts, each of which shall be deemed an original, and all such counterparts shall constitute one and the same Agreement. Facsimile and PDF signatures shall have the same force and effect as original signature.

**PLEASE READ CAREFULLY. THIS SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

IN WITNESS WHEREOF, the undersigned do hereby execute this agreement on the date first referenced above.

| POLICYSCOUT, LLC | DAN HUMAN |
| --- | --- |
| | Dan Human 1.22.24 |
| By: | By: Dan Human |
| Title: | |

# CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

**THIS CONFIDENTIAL SETTLEMENT AGREEMENT and GENERAL RELEASE** ("Agreement") executed on and as of the date set forth in the signature block below, by and between, on one side, DANIEL HUMAN, his spouses and his heirs, successors and/or assigns ("Plaintiff" or "Human"), and on the other side, HEALTHMARKETS INSURANCE AGENCY, INC. ("HealthMarkets") and USHEALTH ADVISORS, LLC ("USHA"), including any of their respective parents, subsidiaries, affiliates, predecessors, successors, future acquisitions, assigns, officers, directors, attorneys, agents, representatives, independent contractors, and employees, including but not limited to, any UnitedHealth Group related entities and all of its parents, subsidiaries, affiliates, predecessors, successors, future acquisitions, assigns, officers, directors, attorneys, agents, representatives, independent contractors, and employees (collectively, "Defendants")[1] ("Human" and "Defendants" may be referred to singularly as a "Party" or collectively as the "Parties").

WHEREAS, on November 8, 2023, Human filed a Complaint against USHA in the Circuit Court of the Twenty-First Judicial Circuit in and for St. Louis County, Missouri, which USHA removed to the United States District Court for the Eastern District of Missouri on December 11, 2023, *Human v. USHEALTH Advisors, LLC*, Case No. 4:23-cv-01586, asserting individual and class claims against USHA under the Missouri Revised Statutes § 407.1098.1 and § 407.1076 ("RSMo") and Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), based upon calls and text messages that Human purportedly received that were allegedly placed by or at the direction of USHA.

WHEREAS, on December 21, 2023, Human filed a Complaint against HealthMarkets in the Circuit Court of the Twenty-First Judicial Circuit in and for St. Louis County, Missouri, which HealthMarkets removed to the United States District Court for the Eastern District of Missouri on February 2, 2023, *Human v. HealthMarkets Insurance Services, Inc.*, Case No. 4:24-cv-00187-MTS, asserting individual and class claims against HealthMarkets under the Missouri Revised Statutes § 407.1098.1 and § 407.1076 ("RSMo") and Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), based upon calls and text messages that Human purportedly received that were allegedly placed by or at the direction of HealthMarkets (Case No. 4:23-cv-01586 and Case No. 4:24-cv-00187-MTS will be referred to collectively as the "Lawsuits").

WHEREAS, Defendants expressly denied and disputed, and continue to deny and dispute, each of the allegations in the Lawsuits and any and all liability to Human or to the putative class members, and admit no wrongdoing of any kind nor any liability, nor acknowledge any breach of any agreement, warranty, statute, or law; and

---

[1] For the avoidance of doubt, the term "Defendants" includes for all purposes of this Agreement UnitedHealth Group Incorporated ("UHG") and all entities identified as subsidiaries of UHG in UHG's most recent Form 10-K Annual Report filed with the Securities and Exchange Commission, at Exhibit 21.1 (available at https://www.sec.gov/Archives/edgar/data/731766/000073176622000008/0000731766-22-000008-index.htm and https://www.sec.gov/Archives/edgar/data/731766/000073176622000008/unhex21112312021.htm).

WHEREAS, without any admission as to fault, liability or wrongdoing or as to the validity of the other Party's positions or allegations, Parties desire to avoid the further expense and uncertainties of litigation and to settle and voluntarily compromise any and all claims or causes of action that Human had, has, or may have had at any time against Defendants, including those that relate in any way to Human's claims or allegations set forth in the Lawsuits;

NOW, THEREFORE, for and in consideration of the promises, covenants, and agreements contained herein, and other good and valuable consideration, the adequacy and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. Affirmation of Recitals. The Parties agree, represent, and warrant that the recitals set forth above are true and correct. The recitals are incorporated herein by this reference.

2. Payment. The Parties have agreed to settle the Lawsuits for a total payment by Defendants to Human in the amount of Ten Thousand U.S. Dollars (US $10,000.00) (the "Total Settlement Payment"). The Total Settlement Payment shall resolve any and all claims or causes of action that Human had, has, or may seek to assert in the future against Defendants, which in any way are based upon, arise out of, or otherwise relate to Human's claims or allegations set forth in the Lawsuits or that could have been set forth in the Lawsuits, inclusive of attorneys' fees, costs, or other monies. The Total Settlement Payment shall be made by check mailed to the payee, Butler Law Group, LLC, at [insert address], within 21 days upon receipt by counsel for Defendants of the later of both a completed and fully executed Settlement Agreement, a Form w9 completed by Human, and a Form W9 completed by the Butler Law Group, LLC.

3. Notice of Settlement and Dismissal. The Parties agree that a Stipulation of Dismissal with Prejudice of the Lawsuits shall be filed by Human within five (5) calendar days of the execution of this Agreement. The provisions of this Paragraph are in furtherance of and not in limitation to this Settlement Agreement. For Case No. 4:23-cv-01586, the Stipulation of Dismissal shall be worded as follows: "The Plaintiff Daniel Human, and Defendant, USHEALTH Advisors, LLC, by and through their respective attorneys, and pursuant to Fed. R. Civ. P. 41(a), hereby stipulate and agree to the dismissal with prejudice of Human's claims against Defendant. Each Party shall bear their own respective costs and attorneys' fees. This Stipulation for Dismissal disposes of the entire action." For Case No. 4:24-cv-00187-MTS, the Stipulation of Dismissal shall be worded as follows: "The Plaintiff Daniel Human, and Defendant, HealthMarkets Insurance Services, Inc., by and through their respective attorneys, and pursuant to Fed. R. Civ. P. 41(a), hereby stipulate and agree to the dismissal with prejudice of Human's claims against Defendant. Each Party shall bear their own respective costs and attorneys' fees. This Stipulation for Dismissal disposes of the entire action."

4. Release. The Parties hereby release, acquit, satisfy, and forever discharge each other and, for Defendants, including their past, present, and future officers, representatives, directors, managers, shareholders, members, employees, predecessors, successors, assigns, affiliates, subsidiaries, parent and sister entities, trusts, beneficiaries, heirs, attorneys, principals, partners, joint venturers, insurers, agents, vendors, independent contractors, estates, and

any entities in which they may have a controlling interest (the Defendants released parties are collectively referred to as the "Defendants Released Parties") from any and all liabilities, claims, actions, causes of action, suits, debts, liens, rights, duties, obligations, agreements, promises, representations, damages, sums of money, accounts, reckonings, costs (including costs of suit and attorneys' fees and expenses), claims for attorneys' fees, claims for costs, claims for any distributions (including without limitation distributions for taxes), or demands, of whatever nature, character, type, or description, whether known or unknown, existing or potential, accrued or unaccrued, or suspected or unsuspected, which the Parties may have or assert, or may hereafter have or assert, against each other. This Release does not include a release of the Parties' obligations under the terms of this Agreement.

Human expressly waives and relinquishes any and all rights and benefits that he may have under, or that may be conferred upon him by the laws of the state of Missouri, or any other law, including but not limited to any other law of any state or territory that is similar, comparable, or equivalent to the laws of the state of Missouri, to the fullest extent that he may lawfully waive such rights or benefits pertaining to the released claims and/or Lawsuit.

Human further understands, acknowledges, has been advised by his own independent attorneys, and agrees that the Release set forth in this Section 4 of this Settlement Agreement applies to all claims for all types of injuries, damages, penalties, attorneys' fees, costs, or any other losses of any kind to Human, whether they are known or unknown, foreseen or unforeseen, or patent or latent, which Human may have against the Defendants Released Parties. Accordingly, the Release set forth in this Section 4 of this Settlement Agreement specifically extends to claims Human does not know of or suspects to exist in his favor as of the date of this Settlement Agreement.

Human is aware that there are pending, or may be filed in the future, class action lawsuits against some or all of the Defendants and/or Defendants Released Parties regarding purported violations of the TCPA, and claims similar to those alleged by Human in the Lawsuits. Human agrees to, and understands that, this Settlement Agreement and Release bars him from participating as a class member in any class action(s) against any of the Defendants and/or Defendants Released Parties under any purported violation of the TCPA, the Federal Trade Commission's Telemarketing Sales Rule ("TSR"), or any other federal, state, common law, or statutory claims. Plaintiffs expressly waive and relinquish any and all rights and benefits that they may have to participate in any putative and/or actual class action against any of the Defendants and/or Defendant Released Parties.

5. <u>Representations and Warranties</u>. Human represents and warrants that:

   a. He is, and has been at all times relevant here, the subscriber and regular user of all telephone number(s) at issue in the Lawsuits and at all times has retained the legal rights relative to the use of the telephone number(s) at issue in this Lawsuits.

b. Has never transferred the right to primary use of the telephone number(s) at issue in the Lawsuits to anyone else, including but not limited to any of his employees and/or agents.

All warranties and representations made herein are not mere recitals and survive the execution of the Agreement.

6. Counsel Representations and Warranties. On behalf of themselves and their respective law firms, counsel of record for Human represent, warrant and agree that:

   a. They do not currently represent any other client, clients or individuals in connection with any claims against Defendants;

   b. They have no present intention to solicit or represent new clients for the purpose of bringing claims against Defendants relating to the subject matter of the Lawsuits;

   c. They do not currently have, and are not currently aware of any additional individuals or entities with any claims against Defendants; and

   d. They have not referred to any attorney, law firm, or agent thereof any actual or potential claim against Defendants.

   Counsel for Human make these representations freely and voluntarily. All Parties acknowledge and agree that the foregoing terms do not, and shall not be construed to, limit Human's counsel's right or ability to practice law going forward.

7. Covenants and Provision of Telephone Numbers; Right to Cure. Human agrees to provide Defendants with all of his and any member of his household's current telephone numbers, including, but not limited to, cellular, landline, call-forwarding, ring/master (or similar technology), Google Voice and Internet telephone numbers etc., within five (5) business days of the execution date of this Agreement. Human further agrees to notify Defendants within 30 days upon his acquisition of any new telephone numbers, including, but not limited to, cellular, landline, call-forwarding, ring/master (or similar technology), Google Voice and Internet telephone numbers etc. Defendants agree to place all of Human's current telephone numbers on any internal Do Not Call Lists within 31 days upon Defendants' receipt of any such telephone numbers from Human. To the extent Human or any member of his household subsequently request to be called by any person or entity associated with Defendants, then any such calls from Defendants would not be subject to the provisions of this Paragraph. In the event Human or a member of his household alleges they received a call from any Defendants to any of their telephone numbers, they shall provide notice to Defendants alleging same and providing all necessary information requested by Defendants to substantiate the circumstances relating to any alleged telephone calls or text messages, and Defendants shall have thirty (30) days from receipt of notice from Human or the member of his household to allow Defendants to ensure no further calls are made. Neither Human nor any member of his household shall have a legal claim for any telephone call or text message sent prior to the expiration of the 30 day cure period;

and neither Human nor any member of his household shall have a legal claim for any telephone call or text message unless the process set forth in this Paragraph 7 is first followed and only if he or the member of his household then receive another call or text message after the 30 day cure period (and only if Human and/or the member of this household did not otherwise request to receive a telephone call or text message).

8. No Admission of Liability. Nothing in this Settlement Agreement, nor any act (including, but not limited to, the execution of this Settlement Agreement) of Human or Defendants, nor any transaction occurring between Human and Defendants prior to the date hereof is or shall be treated, construed, or deemed as an admission by any Party hereto of any liability, fault, responsibility, or guilt of any kind to any other Party hereto or to any person, as to any allegation or claim, or otherwise, for any purpose whatsoever; all such liability, fault, responsibility, and guilt of any kind being expressly denied.

9. Legal Capacity. Human acknowledges that he has entered into this Settlement Agreement voluntarily and of his own free will, and has the legal capacity to execute this Settlement Agreement. Human further acknowledges that he has been represented by counsel in connection with the negotiation of this Settlement Agreement.

   Defendants acknowledge that they have entered into this Settlement Agreement voluntarily and of their own free will, and that the representative(s) signing for Defendants, respectively, has the legal capacity to execute this Settlement Agreement on behalf of Defendants, respectively. Defendants further acknowledge that they have been represented by counsel in connection with the negotiation of this Settlement Agreement.

10. Confidentiality. As a material condition of this Settlement Agreement, the Parties expressly agree that except as otherwise expressly provided herein or as may be required by applicable law, regulation, court order or order of governmental authority, or as may be required to effectuate the terms of this Settlement Agreement, the settlement reached in this Settlement Agreement as stated herein, the terms and/or matters stated in this Settlement Agreement, and any discovery produced in the Lawsuits by any Party or nonparty (the "Confidential Information") is and shall remain confidential. Notwithstanding the foregoing, the terms of this Settlement Agreement may be disclosed by the Parties to their respective legal advisors, financial advisors, accountants, and other third-party professionals to the extent necessary to fulfill or comply with legal, corporate, or regulatory obligations. A breach of this confidentiality may result in a lawsuit filed against the breaching party for damages and/or injunctive relief; and, in the event such a lawsuit is required, the breaching party shall be responsible for attorneys' fees and costs incurred in bringing the action, including any appeals that may be necessary. If asked, the Parties shall state only that "the matter has settled".

11. Nondisparagement. The Parties shall not disparage each other in any way. If asked, the Parties shall state only that "the matter has settled".

12. Entire Agreement. This Settlement Agreement supersedes all prior discussions and agreements among the Parties hereto with respect to the subject matter hereof and with

respect to the transactions set forth in this Settlement Agreement, and constitutes the sole and entire agreement of the Parties with respect thereto. Any representation, inducement, promise, or agreement, whether oral or written, among the Parties hereto with respect to the transactions described herein that are not embodied herein shall be of no force and effect. The terms of this Settlement Agreement are contractual and not merely a recital.

13. Modifications. No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by the Parties. No waiver of any provisions of this Agreement shall be deemed or constitute a continuing waiver. No waiver shall be binding unless set forth in writing and signed by the Party making the waiver.

14. Severability. If any provision of this Settlement Agreement shall be found by a court to be void, voidable, invalid, or unenforceable, the remaining portions shall remain in full force and effect.

15. Counterparts. This Settlement Agreement may be executed by facsimile transmission and in counterpart originals by each Party that together shall constitute one single agreement as between the Parties. True and correct copies of the fully executed Settlement Agreement will be effective to enforce the terms and conditions set forth herein.

16. Choice of Law and Venue. The Parties agree that this Settlement Agreement shall be interpreted in accordance with the laws of the State of Texas, without regard to any choice of laws principles. The exclusive venue for any disputes arising out of or relating to this Settlement Agreement shall be a court of competent jurisdiction sitting in Tarrant County, Texas. The Parties further agree to irrevocably waive any right to a jury trial in any action for breach of the provisions of this Agreement, including, but not limited to, the enforcement of this Agreement.

17. Taxable Consequences. Each Party agrees to be responsible for his/its own tax consequences arising out of or related to this Settlement Agreement, if any; each Party agrees that he/it is not relying upon any representation, opinion, or statement by any other Party to this Settlement Agreement. This provision constitutes part of the consideration for the Settlement Agreement.

18. Binding Effect. This Settlement Agreement shall be binding upon, and inure to the benefit of all Parties, including, but not limited to, the past, present, or future legal successors, subrogees, assigns, transferees, grantees, and/or heirs of each Party, and, to the extent expressly provided, shall obligate, extend to, and inure to the benefit of the Released Parties.

19. No Presumption Against Drafter. Should any provision of this Settlement Agreement require interpretation or construction, then this Settlement Agreement shall be interpreted and construed without any presumption that the provisions of this Agreement are to be construed against the Party which itself or through its agents or attorneys prepared this Agreement. The Parties and their attorneys have fully and equally participated in the preparation, negotiation, review and approval of this Agreement.

20. Authority. Each of the Parties represents that the person signing this Settlement Agreement on its behalf has the authority to execute this document and thereby bind it, and each of the persons signing this Agreement represents that he or she has the authority to execute this document on behalf of the entity for which he or she is signing.

21. Representation of Counsel. The Parties acknowledge that they have received or had the opportunity to receive the advice of independent counsel with respect to all matters concerning this Settlement Agreement, and that the terms of this Settlement Agreement are fully understood and voluntarily accepted by each Party.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

**SIGNATURE PAGE**

IN WITNESS WHEREOF, this Settlement Agreement has been executed by the undersigned on the dates below indicated.

Dated: April ___, 2024

______________________________
USHEALTH Advisors, LLC
Print Name: ______________________
Title: ______________________

Dated: April ___, 2024

______________________________
HealthMarkets Insurance Agency, Inc.
Print Name: ______________________
Title: ______________________

Dated: April 16, 2024

[signature]
Daniel Human
Plaintiff

Dated: April 16th, 2024

[signature]
Edwin V. Butler
(As to Paragraph 6 only)
Print Name: Edwin V. Butler
Title: Attorney

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE (the "Agreement") is made and entered into as of the date of the last signature below, by and between Daniel Human ("Human") and Call Trader, LLC, d/b/a thehealthscout.com, Brook Whitmore, Shivani Gupta, John Dougherty, and Kiran Mathew (collectively the "Defendants" or "Call Trader") (Human and Defendants are collectively referred to as the "Parties").

## RECITALS

The following recitals are confirmed by the Parties as true and correct and are a substantive and contractual part of this Agreement.

**WHEREAS,** Human asserted claims against Defendants for specific violation(s) of the Telephone Consumer Protection Act, Missouri Telemarketing and No Call List Law, among other claims asserted in written correspondence and a complaint sent to the Defendants (collectively, "Allegations"). The case was removed to the United States District Court for the Eastern District of Missouri and was styled as Human v. Call Trader, et al., 4:23-cv-00843.

**WHEREAS,** Defendants deny the Allegations in their entirety.

**WHEREAS,** the Parties now wish to resolve all disputes between them without the further costs of litigation and without admission of any liability. This includes any and all disputes or claims that Human may have against the Defendant Released Parties (defined below), known or unknown, or asserted, unasserted, or assertable by him at the time he executes this Agreement, including, without limitation, including the allegations in the First Amended complaint and concrete injuries to his rights to privacy and seclusion evinced therein.

**NOW, THEREFORE,** in consideration of the mutual promises and payment set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. ***Payment and Other Consideration***. Defendants will pay the total sum of Six Thousand Dollars and No Cents ($6,000.00) (the "Payment") to Human inclusive of all damages for personal injuries stated, statutory penalties, costs, expenses, and attorneys' fees, within 5 days of receipt by Defendants of Human's execution of this Agreement and for each party. The funds are to be ACH transferred into the Butler Law Group's trust account within that time frame, or a settlement check is to be delivered to Plaintiff's counsel's office within that period. Counsel will provide all ACH instructions upon request.

2. ***Mutual Release.*** UPON EXECUTION OF THIS AGREEMENT, HUMAN ON BEHALF OF HIMSELF IN CONSIDERATION OF THE ACTS AND PROMISES DESCRIBED HEREIN AND FOR OTHER GOOD AND VALUABLE CONSIDERATION, HEREBY RELEASES AND FOREVER DISCHARGES ON BEHALF OF HIMSELF AND ON BEHALF OF ANY OF HIS CURRENT AND FORMER LEGAL REPRESENTATIVES AND HEIRS, DEFENDANTS CALL TRADER, LLC D/B/A THEHEALTHSCOUT.COM, BROOK

WHITMORE, SHIVASNI GUPTA, JOHN DOUGHTERY, AND KIRAN MATHEW AND EACH OF THEIR RESPECTIVE AND CURRENT AND FORMER LEGAL REPRESENTATIVES, OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS, ATTORNEYS, INSURERS, EMPLOYEES, MANAGERS, AGENTS, AFFILIATES, PARENTS, ASSIGNS, SUCCESSORS, AND OTHERS ACTING ON THEIR BEHALF, WHETHER NAMED IN THIS AGREEMENT OR NOT (COLLECTIVELY "DEFENDANT RELEASED PARTIES"), FROM ANY AND ALL KNOWN OR UNKNOWN CLAIMS, LAWSUITS, LIABILITIES, DEMANDS AND CAUSES OF ACTION OF ANY SORT AND ALL DAMAGES, IN LAW, EQUITY OR CONTRACT, WHICH HUMAN NOW HAS OR MAY HAVE, INCLUDING, WITHOUT LIMITATION, THOSE RELATING TO OR ASSERTABLE IN CONNECTION WITH THE ALLEGATIONS, AND ANY AND ALL CLAIMS WHICH WERE OR COULD HAVE BEEN ASSERTED AGAINST THE DEFENDANT RELEASED PARTIES AS OF THE DATE HUMAN SIGNS THIS AGREEMENT.

HUMAN INTENDS, IN EXECUTING THIS AGREEMENT, AND DOING THE ACTS CALLED FOR HEREIN, THAT THIS AGREEMENT CONSTITUTES A FULL AND FINAL ACCORD AND SATISFACTION AND SETTLEMENT OF AND A BAR TO EACH AND EVERY ITEM HEREBY RELEASED. IN CONNECTION WITH SUCH SETTLEMENT, RELEASE AND WAIVER, HUMAN ACKNOWLEDGES THAT HE IS AWARE THAT HE MAY DISCOVER FACTS DIFFERENT FROM OR IN ADDITION TO THE FACTS HE NOW KNOWS OR BELIEVES TO BE TRUE.

3. ***Dismissal.*** Human represents and warrants that he has filed a lawsuit or other legal proceeding regarding the subject matter of this Agreement and he agrees file a motion to dismiss the lawsuit with prejudice or other legal proceeding as long as the terms of the Agreement are satisfied by Defendants. If Claimant has filed a lawsuit, then he agrees to file a joint stipulation of dismissal with prejudice of the lawsuit within 5 days of his receipt of the Payment.

4. ***Admissions.*** It is expressly understood and agreed to by and between the Parties hereto that by entering into this Agreement, none of the Parties hereto admit the truth of any allegations made by any other party. This Agreement, and the compromise of disputed claims herein, shall not constitute a confession of judgment by any party.

5. ***Confidentiality Covenant*.** From the date of this Agreement, except as otherwise specifically provided in this Agreement, neither the Parties nor anyone on their behalf shall disclose (in whole or in part) any of the terms or provisions of this Agreement to any other person or entity, unless and to the extent disclosure is compelled by an order from a court of competent jurisdiction, required by law, to secure advice from a legal or tax advisor, as necessary to disclose to lenders, auditors, potential successors, successors, or regulators, or as necessary to enforce this Agreement. The Parties may tell third parties that the Parties have amicably resolved their disputes.

6. ***Miscellaneous.*** The Parties acknowledge that each has had the assistance of counsel in this matter and that each has a full understanding of the above settlement and the

contents, meaning and effect of this Agreement, and it is their intent to enter herein, and that this Agreement is contractual in nature and not a mere recital, and that the settlement, discharge and release embodied in this Agreement shall inure to the benefit of the successors and assigns of each party.

7. ***Governing Law.*** This Agreement is governed by Missouri law without reference to its conflicts of laws provisions.

8. ***Effect of this Agreement.*** This Agreement is the entire Agreement between the Parties with respect to the subject matter hereof. It may be amended only by an agreement in writing, signed by the parties hereto.

9. ***Binding Effect.*** This Agreement is binding upon, and shall inure to the benefit of, the Parties hereto and the Defendant Released Parties and Human Released Parties.

10. ***Preparation of Agreement.*** Each party has cooperated in the preparation of this Agreement, and if any construction is made of this Agreement, each party shall be deemed to have cooperated in the drafting and preparation of this Agreement.

11. ***Captions.*** The captions and headings in this Agreement are for convenience of reference only and in no way define, limit or describe the scope or intent of any provisions or sections of this Agreement.

12. ***Execution in Counterparts.*** This Agreement may be simultaneously executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument. The Parties further agree that facsimile or electronic signatures shall be deemed sufficient to bind the Parties.

13. ***Severability.*** The invalidity, in whole or in part, of any term of this Agreement does not affect the validity of the remainder of this Agreement.

14. It is agreed by the parties, that any Call Trader LLC or legal representative can execute his/her signature on behalf of the collective Defendants, which is binding upon both Human and the collective Defendants to settle these disputes finally and fully.

IN WITNESS HEREOF, and intending to be legally bound hereby, the Parties hereto have executed this Agreement.

______________________________
Daniel Human

This 4th day of August, 2023.

By:

______________________________
Authorized Representative
Call Trader LLC, on Behalf of All Defendants.

Date: This __ day of August, 2023.

**CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS**

This CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS (this "Agreement") is made effective as of the date of the final execution and delivery of this Agreement (the "Effective Date") by and between Daniel A. Human ("Plaintiff"), on the one hand, and STL Design and Build, LLC ("STLDB") and Thomas Levinson (collectively, "the STLDB Defendants"), on the other hand. For the purposes of this Agreement, Plaintiff and the STLDB Defendants each are referred to individually as a "Party" and collectively as the "Parties."

**RECITALS**

WHEREAS, a dispute has arisen between the Parties regarding alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*., and regulations promulgated thereunder, 47 C.F.R. § 64.1200(c)(2) ("DNC"), and the Missouri Merchandising Practices Act, Mo. Rev. Stat. 407.1076, *et seq*. ("MMPA"), that Plaintiff alleges were made by or on behalf of the STLDB Defendants (the "Calls"); and

WHEREAS, Plaintiff filed a lawsuit against the STLDB Defendants and two Doe Defendants in the Missouri Circuit Court, County of St. Louis, captioned *Daniel Human v. STL Design and Build, LLC, et al.*, and denominated 23SL-CC00932; which lawsuit was removed by the STLDB Defendants to the United States District Court for the Eastern District of Missouri, where it now is denominated as Case No. 4:23-cv-00684-MTS ("the Lawsuit"), alleging that the STLDB Defendants violated the TCPA, the DNC and the MMPA as a result of the alleged Calls; and

WHEREAS, Defendant STLDB thereafter filed a counterclaim for fraud against Plaintiff ("the Counterclaim");

WHEREAS, the STLDB Defendants deny Plaintiff's allegations and deny that they, or either of them, violated the TCPA, the DNC, the MMPA or any other law; and

WHEREAS, Plaintiff denies STLDB's allegations of fraud; and

WHEREAS, solely for purposes of settlement and compromise and avoiding the burden, expense, and uncertainty of contested litigation, and without any admission of fault, wrongdoing or liability, the Parties now wish to resolve the dispute between them;

THEREFORE, the Parties, in consideration of the promises contained in this Agreement and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agree as follows:

**AGREEMENT**

1. Payment by the STLDB Defendants. Within ten (10) business days of Plaintiff providing a signed copy of this Agreement and counsel's W-9 to the STLDB Defendants' counsel, Mary Ann L. Wymore, the STLDB Defendants shall send a valid check payable to BUTLER LAW GROUP LLC in the total amount of Seven Thousand Five Hundred Dollars and No Cents ($7,500.00) ("Settlement Sum"), via overnight mail to plaintiff's counsel of record in the Lawsuit,

Edwin V. Butler, Butler Law Group, LLC, 1650 Des Peres Rd., Suite 220, St. Louis, Missouri 63131.

2. Dismissal. Immediately upon receipt by Plaintiff's counsel of the Settlement Sum, the Parties shall file a stipulation of dismissal of the Lawsuit and Counterclaim with prejudice, in a form attached hereto as Exhibit A, with all parties to bear their own costs and attorneys' fees.

3. General Release and Waiver. Upon timely receipt and clearing of the Settlement Sum, Plaintiff, individually, and on behalf of his agents, attorneys, representatives, insurers, trustees, heirs, devisees, successors, and assigns, and all those owning or sharing any interest in the telephone number (314) 915-2988, and/or any other telephone number for which Plaintiff is an accountholder or in which Plaintiff has an interest, unconditionally releases and forever discharges the STLDB Defendants and their respective past, present and future members, officers, owners, directors, agents, employees, attorneys, representatives, insurers, parents, subsidiaries, affiliates and commonly-controlled companies, if any, successors and assigns ("the STLDB Releasees") from any and all of Plaintiff's known and unknown claims, demands, liabilities, debts, accounts, obligations, actions and causes of action, at law or in equity or arbitration, that now exist or that may arise in the future based upon or arising out of omissions, acts, or events occurring prior to Plaintiff's execution of this Agreement whether suspected or unsuspected, including those arising under any theory of law, whether common, constitutional, statutory or other of any jurisdiction, foreign or domestic, which he had or may claim to have against any of them, including, without limitation, those arising out of or relating to: (i) the subject matter of this Agreement and the Calls; (ii) any acts or omissions by the STLDB Releasees occurring prior to the Effective Date, including any alleged violations of the TCPA, DNC, MMPA or other state or federal laws or regulations related to telemarketing; and (iii) any costs, attorneys' fees or expenses incurred by or on behalf of Plaintiff in connection with the subject matter hereof prior to the Effective Date (collectively, the "Released Claims").

4. Understanding of Release. Plaintiff acknowledges that he is aware that he may discover facts in addition to or different from those which he currently knows or believes to be true with respect to the subject matters of this Agreement, but that it is his intention hereby, fully, finally and forever to settle and release all matters which now exist, may exist, or previously existed by Plaintiff against the STLDB Defendants or any of the STLDB Releasees, whether or not now known or unknown, suspected or unsuspected. In furtherance of such intent, the releases given herein shall be and shall remain in effect as a full and complete release, notwithstanding the discovery or existence of any such additional or different facts.

5. Plaintiff's Covenant Not To Sue.

a. Plaintiff covenants not to sue or bring, or voluntarily assist others in suing or bringing, any type of claim, action, proceeding or investigation against the STLDB Releasees in connection with any matter covered by this Agreement and occurring before the Parties' complete execution of this Agreement.

b. Plaintiff warrants and represents that, with the exception of the Lawsuit, neither he nor any other person or entity acting for or on his behalf, is a party against any of

the STLDB Releasees in any currently pending lawsuit, charge, complaint, petition, or accusatory pleading with any federal, state or local governmental agency or in any court. In the event Plaintiff or anyone acting for or on his behalf has made any such lawsuit, complaint, charge, petition, or accusatory pleading with any federal, state or local governmental agency or in any court, Plaintiff hereby agrees to withdraw or cause to be withdrawn such lawsuit, complaint, charge, petition, or accusatory pleading immediately upon receipt of the Settlement Sum.

6. Telephone Numbers. Plaintiff agrees, represents, and warrants that his current telephone number, (314) 915-2988, is his sole current telephone number and that such telephone number is the only telephone number associated with the Calls at issue in the Lawsuit.

7. Counsel's Warranty: Plaintiff's attorney, Butler Law Group, LLC, hereby represents and warrants that at this time it is not aware of any other resolved or unresolved claims of any other individual or entity which can be asserted against any of the STLDB Releasees.

8. Confidentiality. Plaintiff agrees to keep the terms and existence of this Agreement, and all information and communications exchanged during settlement discussions and negotiations leading up to this Agreement (collectively "Confidential Information"), as strictly confidential, and shall not reveal Confidential Information to any other person or entity, except: (i) as required by law or order of the court or other government authority; (ii) as is reasonably necessary to be disclosed to Plaintiff's spouse, or to Plaintiff's accountants, tax advisors, or attorneys (provided the disclosing Party notifies such recipient of the disclosing Party's confidentiality obligations hereunder and obtains assurances that such recipient will ensure that Confidential Information is only disclosed in accordance with the terms of this Agreement); or (iii) as is reasonably necessary to the defense of any action to which the terms of this Agreement may apply.

9. No Admission of Fault or Liability. It is understood and agreed that this Agreement and the performance of other obligations herein, are for the sole purpose of compromising the disputed Released Claims, and that this Agreement shall not be construed as an admission of liability or wrongdoing by the STLDB Defendants or by Plaintiff.

10. Investigation. Each of the Parties has made such investigation of the facts pertaining to this Agreement, as it deems necessary. The Parties understand that if any fact with respect to any matter covered by this Agreement is found hereafter to be other than, or different from, the facts now believed by the parties to be true, each Party expressly accepts and assumes the risk of such possible difference in facts and agrees that this Agreement shall become and remain effective notwithstanding such different facts.

11. Consultation With Counsel. The Parties each hereby acknowledge that they have had an adequate opportunity to have this document reviewed by their attorneys, that the contents of this document have been explained to them by counsel, and that they understand the document in full.

12. Ownership of Claims. Plaintiff represents and warrants that: (i) Plaintiff is duly authorized to enter into this Agreement; (ii) Plaintiff is the subscriber of the telephone number alleged to have received the Calls; and (iii) Plaintiff has not sold, pledged, encumbered, or otherwise disposed of, in whole or in part, voluntarily or involuntarily, any of the Released Claims.

13. Attorneys' Fees. In the event that any action is taken to enforce the terms of this Agreement, the prevailing party shall be entitled to recover, in addition to other damages or remedies, its reasonable attorneys' fees, court costs, and other costs and expenses reasonably incurred in connection therewith.

14. Severability. Should any provision of the Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and any illegal or invalid part, term or provision shall be deemed not to be part of this Agreement.

15. No Waiver. The failure of any Party to insist upon compliance with any of the provisions of this Agreement or the waiver thereof, in any instance, shall not be construed as a general waiver or relinquishment by such Party of any other provision of this Agreement.

16. Modification and Amendment. This Agreement may not be waived, altered, changed, modified, amended or repealed, in whole or in part, except upon written agreement executed by all Parties to this Agreement.

17. Binding Effect. This Agreement shall be binding upon and benefit the Parties and their heirs, successors, and assigns.

18. No Reliance. The Parties each warrant that except as expressly set forth herein, no representations of any kind or character has been made to him or it by the other Party or his or its agents, representatives, employees or attorneys, or any other person, to induce him or it to execute this Agreement.

19. Multiple Counterparts. This Agreement may be executed in counterparts, each of which may be executed and delivered via facsimile or PDF electronic delivery with the same validity as if it were an ink-signed document and each of which shall be effective and binding on the Parties as of the Effective Date. Each such counterpart shall be deemed an original and, when taken together with other signed counterparts, shall constitute one and the same Agreement.

20. Miscellaneous.

a. The language of all parts of this Agreement shall, in all cases, be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

b. This Agreement shall be construed as drafted by the Parties jointly.

c. The titles of the various paragraphs are intended solely for convenience or reference, and are not intended and shall not be deemed for any purpose whatsoever to modify, explain or place any construction upon any of the provisions of this Agreement and shall not affect the meaning or interpretation of this Agreement.

d. All warranties and representations made herein are not mere recitals and shall survive the execution of this Agreement.

e. The Recitals set forth in the "WHEREAS" clauses above shall form a part of this Agreement as though fully incorporated in the body of this Agreement.

f. This Agreement contains the entire agreement of the Parties and supersedes any and all prior, written or oral, agreements among them concerning the subject matter hereof. There are no representations, agreements, arrangements or understandings, oral or written, among the Parties relating to the subject matter of this Agreement that are not fully expressed herein.

IN WITNESS WHEREOF the undersigned Parties do hereby execute this Agreement as of the date written below.

**DANIEL A. HUMAN**

Daniel A. Human

Date: October 26, 2023

**STL DESIGN AND BUILD, LLC**

Thomas Levinson,
its Managing Member

Date: October 30, 2023

**THOMAS LEVINSON**

Thomas Levinson

Date: October 30 2023



4885-8558-5546, v. 2