WATSTEIN TEREPKA LLP

Alex Terepka
Alex@wtlaw.com
404-782-9821

June 23, 2025

***VIA ECF***
Hon. Matthew T. Schelp
U.S. District Court for the Eastern District of Missouri
111 South 10th Street
Courtroom 14 South
St. Louis, MO 63102

**Re: *Daniel Human v. Fisher Investments, Inc.*, Case No. 4:24-cv-01177-MTS**
**Fisher's Supplemental Evidence from Mr. Human's Deposition**

Dear Judge Schelp:

Fisher files this supplemental statement to advise the Court regarding new evidence from Mr. Human's deposition that was previously unavailable.[1] This new evidence provides strong additional support for the relief Fisher seeks in its pending motions, including monetary sanctions, terminating sanctions, and default on its counterclaim. The new evidence also bears on "the veracity of statements made by Plaintiff and his counsel" to this Court and shows they made false statements in this matter. ECF No. 98. Fisher summarizes several key points below.

- **Mr. Human admitted that the desktop he destroyed contained crucial evidence.** He testified at the March 28 hearing that he threw a desktop computer in the trash two days before the court-ordered device inspection. ECF No. 82 at 19:21–20:2, 20:12–17, 23:5–14, 24:13–18. At deposition, he admitted that he owned that desktop computer for at least a year and used it as his "primary device" for his TCPA cases. Ex. A at 129:23–25. On the desktop, he prepared Word documents and emails to various TCPA defendants. *Id.* at 129:20–25. Mr. Human thus intentionally destroyed the computer that contained the most important information in the case that would further expose his fraud right before the court-ordered device inspection. ECF No. 82 at 19:21–20:17. Mr. Human's destruction of this computer alone warrants the most severe sanctions.

[1] Mr. Human's counsel confirmed in writing that Mr. Human "will not be designating any portion of the deposition testimony or exhibits as confidential" under the protective order. Fisher therefore files Mr. Human's deposition transcript and exhibits publicly in compliance with the Court's order. ECF 112 ¶ 4.

- **Mr. Human admitted he still had custody of the desktop computer at the time of the court-ordered device inspection but refused to produce it anyway.** Mr. Human previously testified that on Saturday, January 25, 2025—two days before the court ordered device inspection—he threw his desktop computer in the trash. ECF No. 82 at 19:21–20:2, 20:12–17, 23:5–14, 24:13–18. At deposition, he testified that he threw the computer into a trash bin at the house where he lives. Ex. A at 130:23–131:2. But his weekly trash collection is on Fridays. *Id.* at 131:3–9; *see also* Exhibit B (trash collection schedule showing Friday pickup at Mr. Human's house). In other words, when Mr. Human went to the court-ordered device inspection on Monday, January 27, his desktop computer was still within his possession, custody, or control and he chose to leave it in his trash bin that weekend instead of producing it.

    - Saturday, January 25, 2025: Mr. Human "kicked" his desktop computer, "hurt [his] foot," and "threw it in the trash." Ex. A at 130:18–24.

    - Monday, January 27, 2025: Mr. Human attended the device inspection with only a decoy laptop and only one of his cell phones while his desktop computer sat in the trash bin at his house. ECF No. 82 at 19:23–20:2, 20:12–21:13, 23:5–14, 24:15–18.

    - Friday, January 31, 2025: Trash collection day at Mr. Human's house. https://www.cityoffrontenac.org/egov/documents/1576264654_42529.pdf (last visited June 16, 2025); *see also* Ex. B.[2]

  Mr. Human's intentional refusal to produce a device with critical information at the court-ordered device inspection warrants the most severe sanctions. That is especially true because if Mr. Human brought the device, in whatever damaged state, it may have been possible to recover data from the computer. Herfordt Decl., ECF No. 66-3 at 4, ¶ 12. Mr. Human denied Fisher that opportunity.

- **Mr. Human destroyed key documents during this case.** Fisher seeks to compel the production of documents it asked for in its damages discovery and Mr. Human refused to produce. ECF Nos. 65–66, 70, 109. Mr. Human admitted that he never provided any documents responsive to several of Fisher's requests to his counsel for production in this case. Ex. A at 122:18–22, 124:1–7, 124:12–17, 124:24–125:2, 125:10–13, 126:13–22, 127:3–12, 127:17–22. He also repeatedly admitted that he deleted crucial responsive documents during this litigation *while sending preservation notices to defendants demanding that they preserve documents*. *Id.* at 24:24–25:22, 122:1–3, 124:5–7, 124:16–17, 125:3–4, Ex. 1 (Mr. Human's preservation notice to Fisher).

[2] After Mr. Human realized that his testimony established he still possessed the computer at the time of the court-ordered device inspection, he tried to contradict himself to say that he may have thrown out his computer Friday. Ex. A at 131:3–133:16. That equivocal contradiction is not credible, and the Court should reject it. Mr. Human's testimony at the hearing, at deposition, and his contemporaneous emails are all clear that he threw out the computer the "weekend" *before* the device inspection, on Saturday, January 25. ECF No. 66-2 at 37–38 (Jan. 29, 2025 email from D. Human to J. Ruley noting "I had some terrible meltdown of my geriatric computer this weekend and had to replace it."); ECF No. 82 at 19:21–20:2, 20:12–17, 23:5–14; Ex. A at 131:10–132:5, 132:14–133:16, 134:21–135:23 (discussing ECF No. 66-2, marked as Ex. 8 to Mr. Human's deposition).

- Request for Production No. 1, all TCPA settlement agreements Mr. Human entered with any party: Mr. Human testified that he didn't provide any documents to counsel because he deleted them. *Id.* at 50:15–51:20, 83:2–84:7, 122:1–22.

- Request for Production No. 9, all correspondence or demand letters Mr. Human sent (including those sent on his behalf) alleging TCPA violations: Mr. Human testified that he didn't provide any documents to counsel because he deleted them. *Id.* at 123:1–7.

- Request for Production No. 10, all communications Mr. Human received in response to correspondence or demand letters alleging TCPA violations: Mr. Human testified that he didn't provide any documents to counsel because he deleted them. *Id.* at 124:12–17.

- Request for Production No. 11, all documents where a defendant or opposing party asserted that they had consent to contact Mr. Human's phone number: Mr. Human testified that he didn't provide any documents to counsel because he deleted them. *Id.* at 123:24–125:4.

- **Mr. Human has refused to produce discovery that he provided to his bankruptcy counsel.** Fisher's damages discovery requests sought information about Mr. Human's bank accounts (Interrogatory No. 6, Requests for Production Nos. 13–16) and TCPA settlements (Interrogatories Nos. 3–5, Request for Production No. 1). ECF No. 109 at 2–3; ECF No. 109-2 (Mr. Human's damages discovery responses). Mr. Human refused to produce this discovery. ECF No. 109-2; ECF No. 111 at 1–3. He conceded at deposition, however, that he has ready access to these documents and information. In fact, he provided it to his bankruptcy counsel, but inexcusably refused to provide it to his counsel in this case so he can respond to Fisher's discovery.

    - **Bank records:** Mr. Human repeatedly testified that he has easy access to his bank records for the accounts in which he deposited settlement funds. *See* Ex. A at 54:8–20. He also testified that he produced many of these documents to his bankruptcy counsel, but not to Fisher. *Id.* at 53:5–54:20, 126:13–22, 127:11–12. This strongly confirms the Court should compel Mr. Human to produce critical documents he intentionally withheldld without any basis to do so.

    - **Settlement dollars:** Mr. Human conceded at deposition that he "prepared a list of settlement dollars" he "received in the past two years" and provided it to his bankruptcy counsel. Ex. A at 105:11–106:5. Mr. Human inexcusably failed to provide that information to his counsel in this case so he could adequately respond to Fisher's interrogatories about money he obtained from TCPA settlements. *Id.* at 106:1–3. This strongly confirms the Court should compel Mr. Human to provide full answers to the interrogatories he has intentionally decided not to respond to.

- **Mr. Human's deposition testimony and amended bankruptcy filing confirm (again) that he testified falsely to this Court about his financial condition.** Mr. Human testified in a sworn declaration that his sole source of income is social security payments. That was false, as Mr. Human's settlements show. ECF No. 91 at 1–2; ECF No. 91 at 2; ECF No. 94 at 2–3, 9; ECF No. 99 at 1; ECF No. 100 at 1. His deposition testimony and amended bankruptcy filing again prove this point. Ex. A at 52:1–8; *see also In re Daniel A. Human*, Case 4:2025-bk-41618, ECF No. 21 at 6 (Bankr. E.D. Mo. June 4, 2025) (amended schedule and statement filed *after* Mr. Human's deposition concluded indicating that Mr. Human received $153,150 in TCPA settlement proceeds since January 1, 2023). He also testified that he's given away tens of thousands of dollars to family members. Ex. A at 114:10–115:6.

- **Mr. Human repeatedly invoked the Fifth Amendment privilege against self-incrimination, which warrants an adverse inference of fraud in this civil case.** "In civil cases, a trial court may, in its discretion, draw adverse inferences," including an inference of fraud, "from the invocation" of the "Fifth Amendment right" against self-incrimination as long there is other "evidence in addition to" the adverse inference. *U.S. Commodity Futures Trading Comm'n v. Arrington*, 998 F. Supp. 2d 847, 863 (D. Neb. 2014), *aff'd sub nom. U.S. Commodity Futures Trading Comm'n v. Kratville*, 796 F.3d 873 8th Cir. 2015) (drawing adverse inference against defendant "with respect to his responses to deposition questions in which he asserted his Fifth Amendment privilege"); see also *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 521 (8th Cir. 1984) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). An adverse inference here is still another independent reason to impose the most severe sanctions on Mr. Human and his counsel. Fisher is entitled to an adverse inference based on the following:

    - Fisher has significant, independent evidence of Mr. Human's fraud in addition to his testimony invoking the Fifth Amendment privilege, including the following: Fisher's forensic examiner's declaration about the phone Mr. Human produced containing evidence of fraud (ECF No. 66-3 at 4); Mr. Human's efforts to cover up his fraud by destroying multiple sources of key evidence (including his desktop computer, as explained above) that would expose him (Ex. A at 50:15–51:20, 122:1–22, 123:1–7, 124:12–17, 123:24–125:4); Mr. Human's testimony indicating that he tried to hide the spoils of his fraud by failing to report the money obtained from TCPA settlements to the IRS and spending or giving away all of the money he made. *Id.* at 111:13–17; *see also id.* at 71:23–72:13 (Mr. Human admitting that he never reported TCPA settlement income to the IRS), 87:20–88:1 (invocation of Fifth Amendment privilege), 85:21–86:5 (same), 118:3–16 (discussing Mr. Human's gambling losses), 114:10–115:6 (Mr. Human admitting he gave away tens of thousands of dollars to family members).

- The Court should therefore infer from Mr. Human's decision to invoke the Fifth Amendment privilege that he did exactly what Fisher alleged he did. That is especially true because Mr. Human acknowledged that he took the Fifth Amendment every time he thought the answer could incriminate him. Ex. A at 145:3–6. For example:

**Q. And that when you've been invoking the Fifth Amendment privilege, you're doing that because you think the answer could be incriminating; correct?**

A. Yes.

***

**Q. Have you ever completed a form on the internet asking to receive calls from a business?**

A. On the advice of counsel, I'm going to invoke my Fifth Amendment privilege against self-incrimination and decline to answer the question.

**Q. Have you ever asked someone else to complete a form on the internet asking to receive calls from a business?**

A. On the advice of counsel, I'm going to invoke my Fifth Amendment privilege against self-incrimination, decline to answer the question.

**Q. Are you aware of anyone else submitting your phone numbers on online forms to businesses?**

A. On the advice of counsel, I'm going to invoke my Fifth Amendment privilege against self-incrimination and decline to answer the question.

*Id.* at 145:3–6, 150:7–22. Mr. Human's testimony invoking the Fifth Amendment privilege, plus the additional evidence of Mr. Human's fraud discussed above, means the Court should "draw an adverse inference against" Mr. Human "with respect to his responses to deposition questions in which he asserted his Fifth Amendment privilege." *Arrington*, 998 F. Supp. 2d at 863. That said, an adverse "inference is not crucial." *Id.* There are many independent grounds for the most severe sanctions against Mr. Human, including that he repeatedly and intentionally destroyed evidence, testified falsely, and violated the Court's orders. The adverse inference merely adds still another reason to grant Fisher the relief it seeks.

Respectfully,

*/s/ Alex Terepka*

Alex Terepka