# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Susan E. Bindler**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

August 13, 2025

Edwin V. Butler II
BUTLER LAW GROUP
Suite 220
1650 Des Peres Road
Frontenac, MO  63131

RE:  25-2595  In re: Daniel Human

Dear Counsel:

A petition for a writ has been filed under the above referenced number. Your case will be referred to a panel of judges, and you will be advised of the Court's ruling.

On June 1, 2007, the Eighth Circuit implemented the appellate version of CM/ECF. Electronic filing is now mandatory for attorneys and voluntary for pro se litigants proceeding without an attorney. Information about electronic filing can be found at the court's web site www.ca8.uscourts.gov. In order to become an authorized Eighth Circuit filer, you must register with the PACER Service Center at https://www.pacer.gov/psco/cgi-bin/cmecf/ea-regform.pl. Questions about CM/ECF may be addressed to the Clerk's office.

Susan E. Bindler
Clerk of Court

CMH

Enclosure(s)

cc:    Clerk, U.S. District Court, Eastern District of Missouri
       Matthew D. Guletz
       Melanie Ng
       James Michael Ruley
       Alexander Donald Terepka

District Court/Agency Case Number(s):  4:24-cv-01177-MTS

**Caption For Case Number:   25-2595**

In re: Daniel Human, Individually, and on behalf of other similarly situated

      Petitioner

**Addresses For Case Participants:   25-2595**

Edwin V. Butler II
BUTLER LAW GROUP
Suite 220
1650 Des Peres Road
Frontenac, MO  63131

Clerk, U.S. District Court, Eastern District of Missouri
U.S. DISTRICT COURT
Eastern District of Missouri
111 S. Tenth Street
Saint Louis, MO  63102-0000

Matthew D. Guletz
THOMPSON & COBURN
One US Bank Plaza, Suite 2700
505 N. Seventh Street
Saint Louis, MO  63101-1693

Melanie Ng
WATSTEIN & TEREPKA
Suite 2600
75 14th Street, N.E.
Atlanta, GA  30309

James Michael Ruley
WATSTEIN & TEREPKA
Suite 2600
75 14th Street, N.E.
Atlanta, GA  30309

Alexander Donald Terepka
WATSTEIN & TEREPKA
Suite 2600
75 14th Street, N.E.
Atlanta, GA  30309

[FILED

AUG 1 2 2025

U.S. Court of Appeals
Eighth Circuit

UNITED STATES COURT OF APPEALS

FOR THE EIGHTH CIRCUIT

Petition for Writ of Mandamus

No._____    **25-2595**

In re: Daniel Human, Petitioner

V.

Fisher Investments, Inc., Respondent

---

Petition for Writ of Mandamus

---

United States District Court for the
Eastern District of Missouri Honorable Matthew T. Schelp

---

Submitted by:

Edwin V. Butler, Mo. 32489
Butler Law Group, LLC
1650 Des Peres Rd., STE 220
St. Louis, MO 63131
edbutler@butlerlawstl.com
(314) 504-0001

Attorney for Petitioner

Date: August 5, 2025



RECEIVED

AUG 1 2 2025

U.S. COURT OF APPEALS
EIGHTH CIRCUIT

RECEIVED

AUG 〈 ˀ5

U.S. COURT OF APPEALS
EIGHTH CIRCUIT

1

## Contents

**1  Jurisdictional Statement**                                                      4

**2  Summary of the Case**                                                           4

**3  Points Relied On**                                                              5

  3.1  Point I: The District Court Lacked Derivative Jurisdiction Because the State Court Filing Was a Legal Nullity ................................................................5

  3.2  Point II: The District Court Lacked Transfer Jurisdiction Because the Case Was Jurisdictionally Defective ................................................................5

  3.3  Point III: The District Court Failed to Perform Its Mandatory Duty to Dismiss the Case ................................................................5

**4  Argument**                                                                      6

  4.1  Point I: The District Court Lacked Derivative Jurisdiction Because the State Court Filing Was a Legal Nullity ................................................................6

  4.2  Point II: The District Court Lacked Transfer Jurisdiction Because the Case Was Jurisdictionally Defective ................................................................7

  4.3  Point III: The District Court Failed to Perform Its Mandatory Duty to Dismiss the Case ................................................................7

**5  Policy Considerations**                                                         8

**6  Conclusion**                                                                    9

**7  Prayer for Relief**                                                             9

Cases

Arbaugh v. Y & H Corp., 546 U.S. 500 (2006)...........................................................................7, 8

City of Kansas City, Mo. v. Yarco Co., Inc., 625 F.3d 1038 (8th Cir. 2010)..................................7

Davenport v. Lee, 72 S.W.3d 85 (Ark. 2002)..............................................................................14

Flandreau Santee Sioux Tribe v. United States, 565 F.Supp.3d 1154 (D.S.D. 2021).......................7

Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962) ..........................................................................11

Gonzalez v. Thaler, 132 S. Ct. 641 (2012)...............................................................................7, 8

Gray v. City of Valley Park, Mo., 567 F.3d 976 (8th Cir. 2009).....................................................7

Jones ex rel. Jones v. Corr. Med. Servs., Inc., 401 F.3d 950 (8th Cir. 2005)...................12, 13, 14

Joseph Sansone Co. v. Bay View Golf Course, 97 S.W.3d 531 (Mo. App. E.D. 2003).................9

Knight in interest of Knight v. Nebraska, 2025 WL 1080012 (D. Neb. Apr. 10, 2025)...............14

Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co., 258 U.S. 377 (1922)...............................10

Magee v. United States, 9 F.4th 675 (8th Cir. 2021).....................................................................7

Marine Equipment Mgmt. Co. v. United States, 4 F.3d 643 (8th Cir. 1993)..................................6

Mayer v. Lindenwood Female Coll., 453 S.W.3d 307 (Mo. Ct. App. 2014)..................................9

Morgan v. Nat'l Bank of Kan. City, 2009 WL 3592543 (E.D. Ark. Oct. 27, 2009) ....................14

Naylor v. [No Case Name Provided], 423 S.W.3d 238 (Mo. App. E.D. 2014)...............................9

Reed v. Roemer, 231 S.W.3d 307 (Mo. Ct. App. 2007)..............................................................10

Sellars By & Through Booth v. Denney, 945 S.W.2d 63 (Mo. App. S.D. 1997) ...........................9

Simon v. Hartford Life, Inc., 546 F.3d 661 (9th Cir. 2008) ........................................................11

Snow v. Known & Unknown L. Enf't Officers & Gov't Pers., 2025 WL 1779216 (D.S.D. June 27, 2025) .......................................................................................................................................7

Spreitzer Properties, LLC v. Travelers Corp., 599 F.Supp.3d 774 (D. Iowa 2022).........................6

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998) .......................................................12

Vance v. Cnty. of Ramsey, Minnesota, 2020 WL 7490033 (D. Minn. Dec. 21, 2020) .....12, 13, 14

Wagstaff & Cartmell, LLP v. Lewis, 40 F.4th 830 (8th Cir. 2022)..................................................7

2

Winnebago Tribe of Neb. v. Babbitt, 915 F.Supp.157 (D.S.D. 1996) .........................................7

Statutes

28 U.S.C. § 1441 ...............................................................................................................10

28 u.s.c. § 1404 ................................................................................................................11

28 U.S.C. § 1406 ...............................................................................................................11

28 u.s.c.§ 1654 .................................................................................................................12

Mo. Rev. Stat. § 484.010.1 ...............................................................................................9

Mo. Rev. Stat. § 484.020.1 ...............................................................................................9

Fed. R. Civ. P. 12(h)(3) ......................................................................................................7

## 1    Jurisdictional Statement

This Court has jurisdiction to issue a writ of mandamus pursuant to 28 U.S.C. § 1651(a), which authorizes federal courts to issue all writs necessary or appropriate in aid of their jurisdiction. The Petitioner seeks a writ directing the United States District Court for the Eastern District of Missouri to dismiss the case styled *Human et al. v. Fisher Investments, Inc.,* No. 4:24-cv-01177- MTS, for lack of subject matter jurisdiction, as the underlying state court filing was a legal nullity, rendering all subsequent federal proceedings void ab initio. The Eighth Circuit has authority to issue mandamus to correct a clear abuse of discretion or to compel a district court to perform a mandatory duty, such as dismissing a case for lack of jurisdiction. See *In re Union Elec. Co.,* 787 F.3d 903, 906 (8th Cir. 2015).

## 2    Relief Sought and Summary of the Case

This petition arises from the improper removal and retention of a case that was a legal nullity when filed in the Circuit Court of St. Louis County, Missouri, on July 16, 2024, by pro se litigant Daniel Human, who attempted to initiate a class action lawsuit against Fisher Investments, Inc., alleging violations of the Missouri No Call List and the Telephone Consumer Protection Act. The state court filing was void *ab initio* under Missouri law, as a pro se litigant cannot represent others in a class action, constituting the unauthorized practice of law. See *Mayer v. Lindenwood Female Coll.,* 453 S.W.3d 307, 313 (Mo. Ct. App. 2014). Consequently, the state court lacked subject matter jurisdiction and the case was void upon filing as under Missouri law the case did not exist. See Exhibit A, State Court filing. The United States District Court for the Eastern District of Missouri acquired no derivative jurisdiction upon removal on August 28, 2024. Despite this jurisdictional defect, the district court, presided over by the Honorable Matthew T. Schelp, failed to dismiss the case, and Respondent's counsel proceeded with filings, deliberately incurring unnecessary legal fees. This Court is requested to issue a writ of mandamus directing the district court to dismiss the case and strike or seal all filings made after August 28, 2024, as they are void.

4

## 3    Reasons Why The Writ Should Issue[1]

### 3.1    Point I: The District Court Lacked Derivative Jurisdiction Because the State Court Filing Was a Legal Nullity

The United States District Court for the Eastern District of Missouri lacked derivative jurisdiction over the case because the underlying state court filing, a pro se class action complaint, was a legal nullity when filed under Missouri law, as it constituted the unauthorized practice of law. A federal court cannot acquire jurisdiction upon removal if the state court lacked jurisdiction or the case was *void ab initio*. *Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co.,* 258 U.S. 377, 382 (1922); *Lopez v. Sentrillon Corp.*, 749 F.3d 347, 350 (5th Cir. 2014).

### 3.2    Point II: The District Court Lacked Transfer Jurisdiction Because the Case Was Jurisdictionally Defective

The district court lacked authority to transfer the case under 28 U.S.C. § 1404 or §1406, as transfer jurisdiction presupposes that the transferring court has jurisdiction over a valid case. Because the state court filing was void ab initio, no valid case existed for transfer. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463,466 (1962).

### 3.3    Point III: The District Court Failed to Perform Its Mandatory Duty to Dismiss the Case

---

[1] Mr. Human provided the District Court with three separate opportunities to cure the jurisdictional defect and follow the stare decisis of *Jones ex rel. Jones*, supra. Mr. Human filed a motion to voluntarily dismiss which was denied. ECF 37; A Notice of Dismissal with Prejudice, ECF 39; and a Motion to dismiss the case as a legal nullity for practicing law without a license and lack of jurisdiction. ECF 120. In each instance the Court denied Mr. Humans Motion and Notices and improperly exercised jurisdiction ECF 37, 39, 129. These actions conflict with a Senior District Judge in another case finding a pro se litigant in contempt for practicing law without a license for filing pro se class action suits in No Call List cases.

The district court had an independent obligation to dismiss the case sua sponte upon determining the lack of subject matter jurisdiction, as required by Federal Rule of Civil Procedure 12(h)(3) and controlling Eighth Circuit precedent. *Jones ex rel. Jones v. Corr. Med. Servs., Inc.,* 401 F.3d 950, 951 (8th Cir.  2005).

**Argument**

### 3.4    Point I: The District Court Lacked Derivative Jurisdiction Because the State Court Filing Was a Legal Nullity

Federal courts are courts of limited jurisdiction, possessing only the authority granted by the United States Constitution and Congress. *Spreitzer Properties, LLC v. Travelers Corp.,* 599 F.Supp.3d 774, 778-79 (D. Iowa 2022); *Marine Equipment Mgmt. Co. v. United States,* 4 F.3d 643, 646 (8th Cir. 1993). The threshold inquiry in every federal case is whether the court has jurisdiction, and courts must independently assess this requirement. *Flandreau Santee Sioux Tribe v. United States,* 565 F.Supp.3d 1154, 1163 (D.S.D. 2021); *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006).  Subject matter jurisdiction cannot be waived or forfeited and may be raised at any time by any party or the court. *Wagstaff & Cartmell, LLP v. Lewis,* 40 F.4th 830, 838 (8th Cir. 2022); *Gonzalez v. Thaler,* 132 S. Ct. 641, 649 (2012).

In this case, the pro se class action complaint filed by Daniel Human on July 16, 2024, in the Circuit Court of St.  Louis County, Missouri, was a legal nullity because it constituted the unauthorized practice of law.  Missouri law prohibits non-attorneys from representing others in court, as this is considered  the core of legal practice. *Strong v. Gilster Mary Lee Corp.,* 23 S.W.3d 234, 238 (Mo.  App.  E.D. 2000); Mo.  Rev.  Stat.  § 484.010.1; § 484.020.1.  A pro se litigant attempting to represent a class engages in the unauthorized practice of law, rendering the filing void ab initio. *Mayer v. Lindenwood  Female Coll.,* 453 S.W.3d 307, 313 (Mo. Ct.  App. 2014); *Joseph Sansone Co.  v.  Bay View Golf Course,* 97 S.W.3d 531,532 (Mo.  App.  E.D. 2003).  Such filings are treated as though they were never filed and confer no jurisdiction on the state court. *Reed v. Roemer,* 231 S.W.3d 307,310 (Mo.  Ct.  App.  2007).

6

Under Missouri law, even if the state court failed to initially recognize the legal nullity, it does not relieve it of its duty as a matter of law to correct it and strike the pleading when recognized. For example, in *Mayer*, *supra*, the Court of appeals failed to recognize that *Mayer* was practicing law without a license filing pleadings on behalf of another, which was later pointed out by the Appellee in the case. *Mayer* argued unpersuasively that since the Court initially accepted its filing, it could not dismiss *post hoc* for practicing law without a license and must give effect to those filings. The Court disagreed and held that "we find, no authority for the proposition that, if this court does not promptly reject the filings of one engaged in the unauthorized practice of law, we must give effect to those filings. To the contrary, our Supreme Court is clear that it is the judiciary's duty to regulate the practice of law and a *sua sponte* strike of the filings of a non-attorney who purports to represent another in court is entirely consistent with the judiciary's duty." *Mayer v. Lindenwood Female Coll.,* 453 S.W.3d 307, 313 (Mo. Ct. App. 2014)(citing *Naylor,* 423 S.W.3d at 245, 251 n.10). Based on Missouri law, the initial court was obligated to strike the case as it was void ab initio when Daniel Human filed it pro se  as a class action in the St. Louis County Circuit Court.

Under 28 U.S.C. § 1441, a federal court's jurisdiction upon removal is derivative of the state court's jurisdiction.  If the state court lacked jurisdiction, the federal court acquires none. *Lambert Run Coal Co. v. Baltimore* & *Ohio R.R. Co.,* 258 U.S. 377, 382 (1922).  Because the state court filing was a legal nullity, the Circuit Court of St. Louis County had no jurisdiction, and the United States District Court for the Eastern District of Missouri acquired no derivative jurisdiction upon removal on August 28, 2024.  The burden to prove jurisdiction lies with the party invoking it, here the Respondent, Fisher Investments, Inc. *Magee v.  United States,* 9 F.4th 675, 680 (8th Cir.  2021). Respondents have failed to demonstrate that the state court had jurisdiction over a void filing, and thus, the district court's jurisdiction is defective. In fact, the district court failed to even recognize the Missouri State law mandate as required when examining its jurisdiction in a transfer proceeding.

**3.5    Point II: The District Court Lacked Transfer Jurisdiction  Because  the  Case  Was**

**Jurisdictionally Defective**

Transfer jurisdiction under 28 U.S.C. § 1404 or § 1406 requires that the transferring court have jurisdiction over the case. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466 (1962). Because the state court lacked jurisdiction over the null filing, and the federal court acquired no jurisdiction upon removal. Transferring a case that is void ab initio would not cure the jurisdictional defect but would instead prolong litigation unnecessarily. Federal courts have consistently dismissed, rather than transferred, cases filed by non-attorneys attempting to represent others. *Jones ex rel. Jones v. Corr. Med. Servs., Inc.,* 401 F.3d 950, 951 (8th Cir. 2005); *Simon v. Hartford Life, Inc.,* 546 F.3d 661, 664-65 (9th Cir. 2008). The district court's retention of this case, rather than its immediate dismissal, was erroneous.

### 3.6    Point III: The District Court Failed to Perform Its Mandatory Duty to Dismiss the Case

Federal courts have an independent obligation to dismiss a case *sua sponte* when subject matter jurisdiction is lacking, as mandated by Federal Rule of Civil Procedure 12(h)(3). *Gonzalez v. Thaler,* 132 S. Ct. 641,649 (2012). In this case, the district court, presided over by the Honorable Matthew T. Schelp and initially assigned to Magistrate Judge John M. Bodenhausen, failed to dismiss the case upon removal on August 28, 2024, despite the clear jurisdictional defect. The pro se class action complaint was a nullity under Missouri law and Eighth Circuit precedent, and no amendment, even by counsel, could cure this defect. *Jones ex rel. Jones v. Corr. Med. Servs., Inc.,* 401 F.3d 950, 951 (8th Cir. 2005); *Vance v. Cnty. of Ramsey, Minnesota,* 2020 WL 7490033, at *2 (D. Minn. Dec. 21, 2020).

In *Jones ex rel. Jones v. Corr. Med. Servs., Inc., supra,* Jones argued that the Court should permit the amendment of the pleading as an alternative to dismissal. This Court, adopting the reasoning of the Arkansas Supreme Court in Davenport, 72 S.W.3d at 94, rejected *Jones* argument and refused any "subsequent pleadings that might relate back to the original complaint, again following the Arkansas Supreme Court in *Davenport:*

> In light of our duty to ensure that parties are represented by people knowledgeable and trained in the law, we cannot say that the unauthorized practice of law simply results in an amendable defect. Where a party not licensed to practice law in this state attempts to represent the interests of others by submitting himself or herself to jurisdiction of a court, those actions such as the filing of pleadings, are rendered a nullity.

> ... [B]ecause the original complaint, as a nullity never existed, ... an amended complaint cannot relate back to something that never existed, nor can a nonexistent complaint be corrected.

*Davenport,* 72 S.W.3d at 94.'

*Jones ex rel. Jones v. Corr. Med. Servs., Inc.,* 401 F.3d 950, 952 (8th Cir. 2005). This reasoning is consistent with Missouri State Court precedent in *Mayer* and a string of other decisions, which hold these "actions constituting the unauthorized practice of law *must not be recognized or given effect*." *Naylor,* 423 S.W.3d at 247; *Mayer v. Lindenwood Female Coll.*, 453 S.W.3d 307, 313 (Mo. Ct. App. 2014). The pleadings are null and void. S*ee Joseph Sansone Co. v. Bay View Golf Course,* 97 S.W.3d 531, 532 (Mo.App.E.D.2003); *Sellars By & Through Booth v. Denney,* 945 S.W.2d 63, 66 (Mo.App.S.D.1997).

Respondent's counsel failed to inform both the state court and the district court of the pro se nullity, instead proceeding with filings that incurred substantial legal fees.  This omission does not confer jurisdiction, as consent cannot cure a jurisdictional defect. *Wagstaff & Cartmell, LLP v. Lewis,* 40 F.4th 830, 838 (8th Cir. 2022). The district court's failure to

9

dismiss the case violated its mandatory duty under *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94 (1998), which holds that a court without jurisdiction must dismiss the case without proceeding further. All filings and orders in this case, including those after August 28, 2024, are void *ab initio*. *Morgan v. Nat'l Bank of Kan. City,* 2009 WL 3592543, at *1 (E.D. Ark. Oct. 27, 2009); *Nelson v. Santander Consumer USA, Inc.,* 2020 WL 2110829, at *4 (W.D. Ark. May 4, 2020).

## 4    Policy Considerations

Permitting a federal court to assume jurisdiction over a legally null state court filing undermines the principles of federalism and the integrity of state court processes. Missouri's prohibition on the unauthorized practice of law, as codified in Mo. Rev. Stat. § 484.020.1, protects the public from unqualified representation, particularly in complex proceedings like class actions. Allowing a federal court to exercise jurisdiction over such a case would bypass this state law protection, creating a loophole for unauthorized filings to gain legitimacy through removal. This would also burden federal courts with cases lacking a valid jurisdictional foundation, contrary to their limited jurisdiction under Article III of the U.S. Constitution. *Marine Equipment Mgmt. Co. v. United States,* 4 F.3d 643, 646 (8th Cir. 1993). Dismissing this case and striking or sealing void filings upholds the integrity of both state and federal judicial systems and ensures compliance with established jurisdictional principles.

## 5    Conclusion

The United States District Court for the Eastern District of Missouri lacked derivative and transfer jurisdiction over the case styled *Human et al. v. Fisher Investments, Inc.,* No. 4:24-cv-01177-MTS, because the underlying state court filing was a legal nullity under Missouri law, void ab initio due to the unauthorized practice of law by a pro se litigant attempting to represent a class. The district court's failure to dismiss the case upon removal on August 28, 2024, violated its mandatory duty to ensure subject matter jurisdiction, as required by Federal Rule of

Civil Procedure 12(h)(3) and controlling Eighth Circuit precedent. All filings and orders in this case are void, and Respondent's counsel's failure to disclose the nullity does not cure the jurisdictional defect. This Court should issue a writ of mandamus to correct this clear error and restore jurisdictional integrity.

### Prayer for Relief

**WHEREFORE**, Petitioner respectfully prays that this Court issue a writ of mandamus directing the United States District Court for the Eastern District of Missouri to: (1) dismiss the case styled *Human et al. v. Fisher Investments, Inc.,* No. 4:24-cv-01177-MTS, for lack of derivative jurisdiction and subject matter jurisdiction; (2) strike or seal all filings and orders entered after August 28, 2024, as void ab initio; and (3) grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Edwin V. Butler
Edwin V. Butler, Mo. 32489
Attorney at Law
Butler Law Group, LLC
1650 Des Peres Rd., STE 220
St. Louis, MO 63131
edbutler@butlerlawstl.com
(314) 504-0001
Attorney for Petitioner

### Certificate of Service
A true copy of the above and foregoing was served on all counsel of record and United States District Court Judge Matthew Schelp, via his clerks email, Brittany Porter Brittany_Porter@moed.uscourts.gov; and Defendants Counsel, Melanie Ng Silva mngsilva@wtlaw.com; Alex Terepka Alex@wtlaw.com; Guletz, Matthew D. mguletz@thompsoncoburn.com; upon filing through the Court's ECF/CM system on this 11th day of August, 2025.

/s/ Edwin V. Butler
Edwin V. Butler

11

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
## STATE OF MISSOURI

DANIEL HUMAN, Individually, and
on behalf of other similarly situated,

       Plaintiffs,

Vs

Fisher Investments, Inc.
6500 International Parkway
Plano, TX 75093

       Defendant.

No. 24SL-CC03265

COMPLAINT CLASS ACTION

JURY TRIAL DEMANDED

**FILED**

JUL 1 6 2024

**JOAN M. GILMER**
CIRCUIT CLERK, ST. LOUIS COUNTY

## COMPLAINT CLASS ACTION

Plaintiff, Daniel Human, appearing both individually and on behalf of all others similarly situated, brings this class action against Fisher Investments, Inc. ("Fisher") based upon personal knowledge as to his own acts and experiences and, as to all other matters, based upon information and belief, and states, alleges, and avers as follows:

### I. Nature of the Action

1.    This is a class action under the Missouri No Call List and Telemarketing prohibitions set forth in §407.1098.1 and Mo. Rev. Stat. § 407.1076.

2.    This is also a class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), and 47 U.S.C. § 227(b)(1)(A), and a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012).

3.    Defendant Fisher Investments, Inc. ("Fisher") offers a service where they solicit individuals to provide advice on financial investments.

1

4.    Defendant Fisher uses robocalling, artificial intelligence automated systems, area code spoofing technology and technology to block or otherwise circumvent a consumer's use of a caller identification service, to make outbound telemarketing calls/texts to thousands, if not millions of consumers across U.S., to harass and annoy individuals in an effort to market their services.

5.    By doing so, Defendant Fisher violated the Missouri No Call List and Telemarketing prohibitions set forth in §407.1076(3)(11), §407.1098.1 RSMo., and violated 47 U.S.C. § 227(c)(5) and 47 U.S.C. § 227(b)(1)(A) of the Telephone Consumers Protection Act ("TCPA") when it contacted numbers on the Missouri and National Do Not Call Registries without their express written consent.

6.    Defendants have caused Plaintiff and Class Members to suffer injuries as a result of placing unwanted robotic, Automatic Telephone Dialing Systems ("ATDS"), artificial intelligence generated and direct dialed telephonic calls/texts to their private residential telephones.

7.    Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful telemarketing calls. Plaintiff additionally seeks damages as authorized by the MDNC and TCPA on behalf of Plaintiff and the Class Members, and any other available legal or equitable remedies resulting from the actions of Defendant described herein.

8.    Because telemarketing calls typically use technology capable of generating thousands of similar calls per day, the Plaintiff sues on behalf of a proposed nationwide class of other people who received similar calls.

9:    A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the

fairness and efficiency goals of Missouri Supreme Court Rule 52.08 and pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3).

## II.   Parties

10.   Plaintiff Daniel Human (hereinafter referred to as "Plaintiff" or "Mr. Human") is an individual and Missouri resident residing in this District.

11.   Defendant Fisher Investments, Inc. (hereinafter "Fisher") is a financial investment and advice company that solicits customers all over the country to purchase their services.

12.   Fisher is a Texas based company, with its corporate headquarters located at 6500 International Parkway Plano, TX 75093, and is a company that makes telemarketing calls, or employs its agents to make telemarketing calls within and into this District, to persons on the Federal and Missouri do not call registries, just as it did with the Plaintiff.

### Jurisdiction and Venue

13.   This Court has jurisdiction for violations of the Missouri do not call registries under Chapter 407.010 et seq. *RSMo.* As stated in *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012), the Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5) and 47 U.S.C. § 227(b)(1)(A) of the TCPA.

14.   This Court has personal jurisdiction over Defendant Fisher because they either reside in this District and/or made the calls into this District, and/or they promulgated the policies and procedures and/or had the right to do so for Defendant Fisher which encourages, entices, condones, and ratifies illegal telemarketing calls into this District to persons on the no call lists. Moreover, Defendant Fisher has sufficient minimum contacts with the State of Missouri and this District in that they transact business in Missouri, profit personally from Defendant Fisher's sales made in Missouri, they send their products to Missouri and advertise in

3

Missouri, are registered with the Missouri Secretary of State and the extraterritorial tortious acts complained of within this complaint occurred in Missouri and to a Missouri resident, thereby subjecting them to Missouri's long arm statute, Section 506.500.1. See *Human v. Frubbel, et al.*, 2024 WL 2048865 (E.D. Mo. May 8, 2024); *Prosser v. USHealth Advisors, LLC*, 2023 WL 5093872 (E.D. Mo. August 9, 2023); *UMB Bank, N.A. v. Kraft CPAs, PLLC*, 2023 WL 3666879 (U.S. Dist. Ct, W.D. Mo. May 25, 2023); *Hand v. Beach KC, LCC*, 425 F.Supp.1096 (W.D. Mo. 2019).

15.    Venue is proper because the calls at issue were made into this District and/or from this District.

**THE MISSOURI NO-CALL LAWS**

16.    The Missouri Do Not Call Registry, Mo. Rev. Stat. § 407.1098.1 provides:

> No person or entity shall make or cause to be made any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the attorney general, in accordance with rules promulgated pursuant to section 407.1101 of the subscriber's objection to receiving telephone solicitations.

17.    A "residential subscriber" is defined as, "a person who has subscribed to residential telephone service from a local exchange company or the other persons living or residing with such person." Mo. Rev. Stat. § 407.1095(2).

18.    Defendant's calls to a telephone subscriber on the Missouri Do Not Call List is an unfair practice, because it violates public policy, and because it forced Plaintiff to incur time and expense without any consideration in return.

19.    Defendant's practice effectively forced Plaintiff to listen to Defendant's unlawful, harassing, and annoying sales campaign.

4

20.    Defendant violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri statutory public policy, which public policy violations in the aggregate caused substantial concrete injury to hundreds of thousands of persons.

21.    Defendant's actions prevented the Plaintiff's telephone from being used for other purposes during the time Defendant was illegally occupying the Plaintiff's telephone for Defendant's unlawful purpose.

22.    Mo. Rev. Stat. § 407.1076 provides in pertinent part:

It is an unlawful telemarketing act or practice for any seller or telemarketer to engage in the following conduct:

(3)    Cause the telephone to ring or engage any consumer in telephone conversation repeatedly or continuously in a manner a reasonable consumer would deem to be annoying, abusive or harassing;

(4)    Knowingly and willfully initiate a telemarketing call to a consumer, or transfer or make available to others for telemarketing purposes a consumer's telephone number when that consumer has stated previously that he or she does not wish to receive solicitation calls . . .

(10)    Knowingly provide assistance or support to any telemarketer when that person knows or consciously avoids knowing that the telemarketer is engaged in any act in violation of sections 407.1070 to 407.1085; or

(11)    Knowingly utilize any method to block or otherwise circumvent a consumer's use of a caller identification service.

23.    Chapter 407.1107(2) provides for up to $5,000 in damages for each knowingly violation.

### TCPA Background

24.    In 1991 Congress enacted the TCPA to regulate explosive growth of the telemarketing industry. In so doing, Congress recognized that "[un]restricted telemarketing . . .

5

can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. 102-243 § 2(5) (1991)(codified at 47 U.S.C. § 227(b)(1)(A)).

25.    The National Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone calls at those numbers. *See* 47 U.S.C. § 227(b)(1)(A).

26.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

27.    The TCPA and implementing regulations prohibit the initiation of telephone calls to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(b)(1)(A). Damages under this code are up to $1,500 per call or text.

### III.    Factual Allegations

28.    Defendant Fisher and their agents, employees and/or vendors, advertise and sell financial services which target senior citizens and others.

29.    To generate leads, Defendant Fisher, and their agents, employees and/or vendors, and other unknown marketing firms and call centers, uses random, robocall and automated dialing system generated telemarketing calls/texts capable of storing and deploying randomly generated and sequentially numbered calls to reach the maximum number of consumers who have never had a relationship with any of the Defendants, and who never consented to receive their calls.

6

30.    Defendant Fisher also utilizes area code spoofing technology and computer systems to block or otherwise circumvent called numbers caller identification functions.[1] By "spoofing" area codes to show as a local area code to increase the likelihood that the Plaintiff would believe that it was a local call for legitimate purposes, instead of an unsolicited marketing or solicitation call from Defendant Fisher and its employees, vendors and/or agents.

31.    Plaintiff is and was at all times mentioned herein, a "person" as defined by 47 U.S.C. §153(39) and a qualified Missouri subscriber who has lodged his objections to the Missouri Attorney General over receiving any telemarketer calls, whatsoever.

32.    The Plaintiff, a residential subscriber, personally registered his residential cellular telephone number (the "Number"), 208-390-XXXX, on the National and Missouri State Do Not Call Registries in 2022 to cease all telemarketing calls to his phone, where they have remained continuously since and lodged his objection to receiving these calls with the Missouri Attorney General contemporaneously with the registration.

33.    Despite this, Defendant Fisher and their agents, employees and/or vendors, as approved, encouraged, enticed and ratified by Defendant Fisher's policies, practices and procedures, placed more than six (6) telemarketing calls and texts to Plaintiff beginning in June of 2024, when the first call was made from telephone numbers (208) 795-0847.[2]

---

[1] Telemarketers cause a local areas code and number to appear on the recipients' caller ID in order to deceptively increase the likelihood that the recipient will pick up the call. For example, Velocify, offers automated outbound dialer software that gives users the ability to "[o]perate like a local business and boost contact rates by calling prospects from their own area code." *See* http://pages.velocify.com/rs/522-DJL-243/images/velocify-pulsecommunication.

[2] The material fact that the Defendant disables the caller I.D. function when deploying its illegal telemarketing calls whereon, they commit a tort upon each resident on the no call list who answers the phone, providing express jurisdiction over each illegal call within this Court.

34.    During this series of calls, the telemarketers stated they were agents for Fisher Investments, Inc and identified the Texas company with the address, and solicited Plaintiff to purchase investment related services and all calls received by the Plaintiff had the caller identification functioned blocked or otherwise circumvented so the Plaintiff could not identify the caller and was deceived into believing that there was a problem with family or friends in Missouri and answered the unsolicited telemarketing calls.

35.    Just prior to being connected to the telemarketer, Plaintiff Human heard a click, a pause, some dead air space, some various robotic and artificial sounds and squealing noises and the call was then transferred and connected, and though Plaintiff indicated that they were interrupting his family time and was extremely busy and could not take the call, Defendant Fisher, and their agents, employees and/or vendors, made another voluminous series of telemarketing calls to the Plaintiff over the next several days on behalf of the Defendant.

36.    Each of the illegal telemarketing calls were condoned, encouraged, enticed, and ratified by Defendant Fisher and their agents, employees and/or vendors, as detailed supra:

a.  6/24/24      10:32 am      (800) 681-1312
b.  6/24/24      1:11 pm       (800) 681-1312
c.  6/27/24      2:44 pm       (800) 681-1312
d.  7/1/24       4:51 pm       (800) 682-8096
e.  7/9/24       10:27 am      (800) 682-8096
f.  7/12/24      2:06 pm       (800) 682-8096

37.    The Defendants persistently harassed and solicited Mr. Human to purchase investment services through Fisher and their agents, employees and/or vendors, even though he is registered on the Federal and Missouri Do Not Call registry and has been for years prior to

8

their unsolicited marketing calls to his private, personal residential cell phone and the Plaintiff had no prior business relationship with the Defendant.

38.    Plaintiffs' privacy and right to seclusion have been grossly, deliberately, and repeatedly violated by the above-described telemarketing calls and the Plaintiff was severely annoyed, harassed, frustrated and humiliated by a myriad telemarketing calls made to his private residential phone.

39.    The Plaintiff never provided his prior express written consent to receive nor requested these calls and has no prior business relationship with the Defendant.

40.    Defendants' aggravating, frustrating and annoying phone calls/texts trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, caused him to incur provider fees, the depletion of his battery life, wear and tear on his phone equipment and by intruding upon Plaintiff's right to seclusion.

41.    Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy and right to seclusion have been violated, they were annoyed, harassed, frustrated, and caused severe physical injuries, including chest pain, anxiety, and incurring telephone service provider fees, wear and tear on phones, damage and disruption to the phone's battery life, and other injuries and costs.

42.    Defendant's phone calls/texts harmed Plaintiff and class members by wasting their time and forcing them to unwillingly listen to their unlawful sales pitch and violated their rights to privacy, solace and seclusion..

43.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of

action against any entity that makes those calls or texts, or "on whose behalf" such calls/texts are promoted. 47 U.S.C. § 227(c)(5).

44.    Defendants made, and continue to make, these telemarketing calls to individuals nationwide without prior written express consent to do so.

45.    During all the calls after the initial call was answered it was obvious that they were made by automatic yet random equipment by the Defendant as each prefaced by automated clicks, computer squeals, pauses, and dead air space before the telemarketer began speaking. This artificial intelligence and automated computer use of randomly generated phone numbers are akin to the illegal calls made using predictive dialers:

> Predictive dialers initiate phone calls while telemarketers are talking to
> other consumers . . . In attempting to "predict" the average time it takes
> for a consumer to answer the phone and when a telemarketer will be free
> to take the next call, predictive dialers may either "hang-up" on consumers
> or keep the consumer on hold until connecting the call to a sales representative, resulting
> in what has been referred to as "dead air."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 Report and Order*, CG Docket No. 02-278, FCC 03-153, ¶ 146, 18 FCC Rcd. 14014, 14101, 2003 WL 21517853, *51 (July 3, 2003), *available at* http://hraunfoss.fcc.gov/edocs _public/attachmatch/FCC-03-153A1.pdf ("*2003 Report and Order*").

46.    Defendant Fisher and their agents, employees and/or vendors placed numerous calls alleged in this complaint with one or more ATDS and predictive dialers.

47.    Predictive dialers constitute an automatic telephone dialing system; they are capable of storing, producing, randomly and sequentially generating and dialing any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. Further, no human manually entered Plaintiff and Class members'

10

cellular telephone number when Defendants made the calls alleged below. Rather, the predictive dialer(s) electronically and sequentially generated and dialed Plaintiff and Class members' cellular telephones in an automated fashion. The predictive dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(a)(1); and 47 U.S.C. § 227(b)(1)(A) et seq.

48.    None of the telephone calls alleged in this complaint constituted calls for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i) and they occupied their telephone lines, rendering them unavailable for legitimate communication and personal family affairs and caused the Plaintiff to incur provider fees, suffer the wear and tear on his phone equipment, and the degradation of his battery life, invaded his rights to privacy and seclusion, and the calls were harassing, frustrating, annoying and abusive.

## CLASS ALLEGATIONS

49.    Class Definition: Plaintiff seeks to certify a class and brings this Complaint against the Defendant, as authorized by Missouri Supreme Court Rule 52.08 and pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), on behalf of himself and the following Classes:

**Missouri Do Not Call Class ("MDNC Class"):**
All persons in the State of Missouri (1) who had his or her telephone number(s) registered with the Missouri Do-Not-Call registry for at least thirty days; (2) who received more than one telephone call or text made by or on behalf of Defendants that engaged their telemarketing activities and services; (3) within a 12-month period; and (4) for whom Defendants had no current record of consent to place such calls to him or her since June 1, 2020.

**Robocall Class and Automatic Telephone Dialing System Class:**

All persons in the United States who received any unsolicited telephone calls from Defendants or their agents on their cellular phone service using any automatic telephone dialing system, predictive dialing system, or artificial or pre-

recorded voice system, which telephone calls by Defendants or their agents were not made for emergency purposes or with the recipients' prior express written consent, within four years prior to the filing of this Complaint.

**Do Not Call Class ("DNC Class")**:
All persons in the United States (1) who had his or her telephone number(s) registered with the national Do-Not-Call registry for at least thirty days; (2) who received more than one telephone call made by or on behalf of Defendants in the course of marketing their services; (3) within a 12-month period; and (4) for whom Defendants had no current record of consent to place such calls to him or her.

50.     Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded from the Classes are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise the Class definitions based on facts learned during discovery. Plaintiff is a member of each Class.

51.     The Class as defined above are identifiable through phone records and phone number databases, the Defendants records of consent and prior identifiable business relationships with potential putative class members and number at least in the thousands and individual joinder of these persons is impracticable. Plaintiff is a member of the Class.

52.     Class Numerosity: The exact number of members of each Class is unknown and is not available to Plaintiff currently, but such information is readily ascertainable by Defendant and their agents. The Classes are so numerous that joining all members is impractical. Plaintiff alleges that there are more than 40 members of each Class.

53.     Class Commonality: Common questions of fact and law exist as to all members of the Classes and predominate over the questions affecting only individual members of the Classes. Identification of the individuals who qualify as a member of the Class will be sufficient

12

to establish liability to the Class member. The predominant common questions include:

     a.   Whether Defendant's used an "automatic telephone dialing system" or as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

     b.   Whether Defendant had written prior express consent to call Class members prior to making telemarketing calls;

     c.   Whether Defendants systematically made telephone calls to members of the DNC and MDNC Classes whose telephone numbers were registered with the Missouri and national Do-Not-Call registries;

     d.   Whether Defendant systematically made telephone calls/texts to members of the DNC and MDNC Classes where Defendants did not have a current record of consent to make such telephone calls/texts;

     e.   Whether Plaintiff and Class Members are entitled to damages, including whether Defendant's violations were performed willfully or knowingly such that Plaintiff and Class Members are entitled to treble damages; and

     f.   Whether Plaintiff and Class Members are entitled to injunctive relief for violations of their privacy and attorney's fees and costs.

54.   The Plaintiffs' claims are typical of the claims of members of the Class and Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he and other class members have access to attorneys experienced in class actions, including TCPA class actions.

13

55.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns the identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents, vendors, and sub-contractors.

56.    Predominance and Superiority: The Classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendant's misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

57.    Injunctive Relief is Appropriate: Based on information and belief, Defendant Fisher and their agents, employees and/or vendors continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendant's conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

58.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**COUNT I**
**Violations of the MDNC Against All Defendants**
**by Plaintiff Individually and on Behalf of the MDNC Class**

59.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 58 as though set forth herein.

60.     Plaintiff brings this claim individually and on behalf of the Missouri No Call and Anti Telemarketing Class Members ("MDNC") against Defendants.

61.     The Defendants' acts and omissions of making more than six (6) illegal calls/texts to Plaintiffs private residential cellular phone constitute multiple violations of the MDNC in that No person or entity shall make or cause any telephone to ring and make any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the attorney general, in accordance with rules promulgated pursuant to section § 407.1073, § 407.1076, §407.1090, §407.1098.1 of the subscriber's objection to receiving telephone calls.60.

62.     Defendant failed to secure prior express written consent from Plaintiff and the Class Members prior to making these and other unsolicited telemarketing calls.

63.     In violation of the MDNC, Defendant made and/or knowingly allowed telephonic sales calls/texts to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent or invitation and after notice to the Missouri Attorney General was given that they did not want to receive said calls.

64.     Defendants made and/or knowingly allowed the telephonic calls/texts to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers, used a robotic interface with the Plaintiff, disabled the Caller I.D. function so

15

Plaintiff could not identify the caller prior to answering the call/text, spoofed the area codes to deceive Plaintiff to answer the unsolicited calls.

65.     The Defendants' violations were negligent, willful, or knowing and calculated to violate the Plaintiffs rights to privacy, and seclusion, as well as to harass, annoy, and frustrate the Plaintiffs, and Defendant's aggravating, illegal phone calls/texts trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, caused him to incur provider fees, the depletion of his battery life, wear and tear on his phone equipment and by intruding upon Plaintiff's right to seclusion.

66.     As a result of Defendant's conduct, and pursuant to §407.1076(3)(11), §407.1098.1 § 407.1073 of the MDNC, Plaintiff and Class members were harmed and are each entitled to a maximum of $5,000.00 in damages for each violation and Plaintiff and the Class members are also entitled to an injunction against future calls.

*WHEREFORE*, Plaintiff Human and all members of the MDNC class prays for judgment against Defendant Fisher, for $5,000.00 per violation totaling thirty thousand dollars ($30,000.00) for calls/texts to Plaintiff Human, and additional damages per call/text to each class member, for their attorney's fees and costs, appropriate injunctive relief, and for such further relief deemed just and equitable in the premises.

<u>**Count II**</u>
<u>**Telephone Consumer Protection Act (Violations of 47 U.S.C. § 227)**</u>
<u>**(On behalf of Plaintiff and the Robocall and ATDS)**</u>

67.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 66 as if fully set forth herein.

68.     The foregoing acts and omissions of Defendant Fisher, and its affiliates, agents, and/or other persons or entities acting on Defendant's behalf using an automated dialing system

constitute numerous and multiple violations of the TCPA by making telemarketing calls/texts, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

69.    The Defendant's violations were negligent, willful, or knowing and harmed the Plaintiff's and violated their rights to privacy and seclusion..

70.    As a result of the knowing and willful illegal acts of the Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $1,500 in damages for each call/text made.

71.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Human individually and on behalf of all others similarly situated, seeks judgment against Defendant Fisher, as follows:

(a)    For an order certifying the Classes and naming Plaintiff as the representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)    For an award of statutory damages for Plaintiff Human in the amount nine thousand ($9,000.00) dollars and additional damages for each member of the Classes;

(c)    For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(d)    For an order finding in favor of Plaintiff and the Classes on all Counts asserted herein;

17

(e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and

(h)    Such further and other relief as the Court deems necessary.

### COUNT III
### Violations of the TCPA Against All Defendants
### by Plaintiff Individually and on Behalf of the DNC Class

72.    Plaintiff hereby incorporates by reference as though set forth fully herein paragraphs 1 through 71. Plaintiff asserts this claim on behalf of himself and members of the Do Not Call Registry Class

73.    47 U.S.C. §227(c) provides that any "person who has received more than one telephone call/text within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

74.    The foregoing acts and omissions of Defendant Fisher and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf by illegally calling/texting the Plaintiff's residential cell phone more than six (6) times within a twelve (12) month period constitute numerous and deliberate violations of the TCPA, 47 U.S.C. § 227 et seq., by making telemarketing calls/texts, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

75.    Defendant Fisher's violations were negligent, willful, and knowing and harmed the Plaintiffs by violating their rights to privacy and seclusion.

18

76.     As a result of Defendant Fisher's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, Plaintiff and members of the Class presumptively are entitled to an award of $1,500 in damages for each call made.

77.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant Fisher, from making calls/texts to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Human individually and on behalf of all others similarly situated, seeks judgment against Defendant Fisher, as follows:

(a)     For an order certifying the Classes and naming Plaintiff as the representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)     For an award of statutory damages for Plaintiff Human in the amount nine thousand ($9,000.00) dollars and each damages for each call made to members of the Classes;

(c)     For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(d)     For an order finding in favor of Plaintiff and the Classes on all Counts asserted herein;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     Such further and other relief as the Court deems necessary.

## COUNT IV
## Defendants' Vicarious Liability

19

**COMES NOW,** Plaintiff and for his fourth cause of action against Defendant Fisher, states:

78.    Plaintiff reasserts and incorporates fully herein by reference paragraphs 1 through 77 as though fully set forth herein.

79.    For 28 years now, the FCC has made clear that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the TeL Consumer Prot. Act of 1991,* 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

80.    In 2013 the FCC explained again in detail that a defendant "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC,* 28 F.C.C. Rcd. 6574 (2013). Both actual and apparent authority, and ratification, can be a basis for a finding of vicarious liability. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

81.    The FCC has instructed that defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers have thousands of `independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

82.    The FCC has rejected a narrow view of TCPA liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the

third-party who placed the telemarketing call. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D.

NM 2019).

83.    A direct connection exists between all Defendants herein and the calls/texts

complained of by Plaintiff because the calls were directly made on behalf of Defendant Fisher

(their employees, agents or telemarketers) so they could all profit from a common enterprise in

which they all substantially participated.

84.    "As the FTC has explained in its Compliance Guide, `taking deliberate steps to

ensure one's own ignorance of a seller or telemarketer's Rule violations is an ineffective strategy

to avoid liability.'" *FTC v. Chapman,* 714 F.3d 1211, 1216-1219 (10th Cir. 2013).

85.    Defendant Fisher is vicariously liable for the calls/texts complained of by Plaintiff

herein because they:

a)    authorized or caused telemarketers to initiate the phone calls/texts or initiated the

calls and texts themselves.

b)    directly or indirectly controlled the persons who actually made or initiated the

calls/texts;

c)    allowed the employees, telemarketers and independent agents access to

information and operating systems within Defendant's control for the purpose of

selling goods and services, without which they would not be able to sell their

services using robocalling and direct dialing;

d)    allowed the telemarketers and independent agents to enter or provide consumer

information into Defendant's sales or operational systems;

e)    approved, wrote, reviewed, or participated in developing the telemarketing sales

scripts and automated text messages;

f)     Defendant reasonably should have known or consciously avoided knowing that the actual telemarketers were violating the law and Defendant failed to take effective steps within their power to require compliance; or

g)     Defendant Fisher gave substantial assistance or support to the telemarketers and each other while knowing, consciously avoiding knowing, or being recklessly indifferent to the fact the telemarketers were engaged in acts or practices that violated the TCPA and MDNC

86.     Defendant Fisher and their telemarketers apparently had authority to engage in the direct dialing, autodialing, texting and robocalling at issue herein because after Plaintiff patiently listened and read to the scripted sales pitch the Defendants would have all profited from each sale.

87.     Defendant Fisher ratified the illegal robocalls, ATDS, and direct dialing DNC and MDNC violations to Plaintiff described above because they accepted and intended the benefits to them of the calls/texts while knowing or consciously avoiding knowing their telemarketer-agents were robocalling and automated texting cell phones and phone numbers listed on the Federal and Missouri State Registry without complying with the Registry and without prior express written consent of the robocalled, called, and texted consumers.

88.     Defendant Fisher's actions or inactions were deliberate, knowing and willing.

89.     As a direct and proximate result of the six (6) illegal calls/texts by the above Defendants, Plaintiff suffered the gross violation of his rights to privacy, solace and seclusion as set forth above, and were frustrated, harassed, annoyed, as well as suffered monetary loss in phone provider service fees, wear and tear on his phone equipment, and the degradation of his battery life.

22

**WHEREFORE**, Plaintiff prays for entry of judgment against Defendant Fisher for their vicarious liability for an additional $39,000.00 and for his statutory, actual and/or other treble damages sufficient in size to set a stern example and deter in the future like conduct complained of by Defendants or others, and for additional damages for each call made to class members. Plaintiff prays for such other and further relief as the court finds proper. Plaintiff requests an award of his attorney fees and costs.

Respectfully submitted,

Daniel Human
10423 Conway Rd.
St. Louis, Mo. 63131
(208) 390-XXXX
danh11polo@gmail.com
Plaintiff

This 16th day of July, 2024.

COUNTY OF ST. LOUIS    )
                        ) SS.
STATE OF MISSOURI       )

      Now, on this 16th day of July, 2024, a person personally known and identified to me as Daniel Human, did personally appear before me, and being first duly sworn upon his oath, deposed and stated that the facts contained in the above class action petition were true and correct to the best of his knowledge and belief.

Daniel Human

7-16-2024
Date

Notary Public

DEBOISE SHARON BROWN-WARE
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
MY COMMISSION EXPIRES FEBRUARY 6, 2028
ST. LOUIS COUNTY
COMMISSION #24227956

23

IN THE

# CIRCUIT COURT

OF SAINT LOUIS COUNTY, MISSOURI

For File Stamp Only

Daniel Human

Plaintiff(s)

Date

vs.

Case Number

Fisher Investments, Inc.

13

Defendant(s)

Division

**FILED**

JUL 1 6 2024

JOAN M. GILMER
CIRCUIT CLERK. ST LOUIS COUNTY

## SERVICE INSTRUCTIONS

Defendant Name: Fisher Investments, Inc.

Address: 6800 International Parkway

City, State, & ZIP: Plano, TX 75093

Defendant Name: _____

Address: _____

City, State, & ZIP: _____

Defendant Name: _____

Address: _____

City, State, & ZIP: _____

Daniel Human          pro se

Plaintiff(s)/Attorney          Bar No.

10823 Conway Rd.

Address

ST. Louis, MO 63131

(314) 915-2988

Phone Number

CIRCUIT COURT OF ST.LOUIS CO
105 SOUTH CENTRAL AVENUE
CLAYTON, MO  63105
314-615-8035

Invoice No: 3424
Date: 07/16/24

Page: 1

Customer No: 11
Phone No:

DANIEL HUMAN

Cust. Order #: 24SL-CC03265          Salesperson: #28 - DARLENE

| Product Code | Item Description | Qty | Unit Price | Amount |
|---|---|---|---|---|
| 110 | CIVIL & EQUITY FILING | 1 | 105.50 | 105.50 |

|  |  |
|---|---|
| Sub-Total: | 105.50 |
| Shipping: | 0.00 |
| Tax [    0]: | EXEMPT * |
| Total: | 105.50 |
| : | 105.50 |
| Amount Paid: | 105.50 |
| Amount Due: | 0.00 |
| Change: | 0.00 |

T h a n k
Y o u