**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL HUMAN, *individually and on behalf of others similarly situated*, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:24-cv-01177-MTS |
| FISHER INVESTMENTS, INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

Plaintiff Daniel Human and his attorney Edwin Butler have sought to obstruct, delay, and hinder the resolution of this action by many means. Some of those means were, at best, questionable. Many, though, were downright abusive. As explained in more detail below, Plaintiff's wrongdoing in this action culminated in him purposely disposing of a computer, a key piece of evidence, mere days before a properly requested and Court-ordered device inspection was to occur. For the reasons explained herein, the Court will strike Plaintiff's pleadings as a sanction for his conduct.

## I. BACKGROUND

Plaintiff/Counter-Defendant Daniel Human is a serial Telephone Consumer Protection Act ("TCPA") litigant.[1] In the twelve-month period between April 2024 and

---

[1] *See* Pub. L. No. 102–243, 105 Stat. 2394 (1991) (codified as amended at 47 U.S.C. § 227). *See also Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 998 (11th Cir. 2020) (explaining that the TCPA "prohibits certain unsolicited communications and provides a cause of action to individuals receiving them").

- 1 -

April 2025, Plaintiff filed more than sixty-five civil actions, nearly, if not all, under the TCPA. *See In re: Daniel A. Human*, 4:25-bk-41618, ECF No. 1 at 34–41 (Bankr. E.D. Mo. Apr. 29, 2025) (listing cases). Again, those sixty-five were in a single twelve-month period. It does not include the many cases that Human filed before that period, *see, e.g.*, *Human v. SelectQuote, Inc.*, 4:23-cv-0826-SEP (E.D. Mo.), or after it, *see, e.g.*, *Human v. Bill Luke Chrysler Jeep & Dodge Inc.*, 26SL-AC03842 (21st Cir. Mo.). Nor does it include the matters that Human settled prior to filing an action.

At least up until this case, Human's *modus operandi* was to file his TCPA cases *pro se* in Missouri state court. Many of the cases would settle quickly, without an acknowledgement of wrongdoing by the defendants. *See* Doc. [93-1]. As a result, Human has pocketed thousands of dollars from settlements over the last few years. *See id.* When a defendant would not settle quickly or would remove the case to this Court under 28 U.S.C. § 1441(a), an attorney often would enter his appearance on Human's behalf. Usually, Human's attorney was Edwin V. Butler, of Butler Law Group, *see, e.g.*, *Human v. Priority Auto. Inc.*, 4:23-cv-1577-RLW (E.D. Mo.); *Human v. EZ Ins. Sols., LLC*, 4:24-cv-0625-RHH (E.D. Mo.),[2] or James A. Marks of WillCraft Legal Services, *see, e.g.*,

---

[2] Butler Law Group employs—or at least employed—Christopher Prosser as its "lead paralegal." Doc. [82] at 3. Human and Prosser met each other in prison, while Human served a lengthy sentence for a violent sexual offense. Doc. [115-1] at 49; Daniel Angelo Human, *Mo. Hwy. Ptl. Sex Offender Reg.* (https://perma.cc/4CCM-ZSMT). Prosser is a serial TCPA litigant in his own right. *See, e.g.*, *Prosser v. The CMI Group GP*, 4:23-cv-1109-HEA (E.D. Mo.); *Prosser v. Luther Auto. Grp.*, 4:24-cv-1527-JMB (E.D. Mo.); *Prosser v. Midtown Home Improvements, Inc.*, 4:25-cv-0271-JSD (E.D. Mo.). Last year, a District Judge of this Court held Prosser in contempt for Prosser's actions in a TCPA case. *Prosser v. MVF US, LLC*, 4:25-cv-0574-JAR, ECF No. 20 (E.D. Mo. July 14, 2025).

*Human v. SelectQuote, Inc.*, 4:23-cv-0826-SEP (E.D. Mo.); *Human v. Nat'l Enrollment Ctr., LLC*, 4:24-cv-1121-SPM (E.D. Mo.).

The fact that Human allegedly received so many unsolicited calls from so many different, otherwise-legitimate entities is of course itself suspicious.  The sheer number of Human's lawsuits should be enough to cause an attorney—or at least an attorney whose head was not firmly planted in the sand—to begin to question Human's veracity.  *Cf.* Fed. R. Civ. P. 11(b) (prescribing that, when signing a pleading, an attorney "certifies that to the best of [his] knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*" the "factual contentions" therein are accurate (emphasis added)). Suspicion only should have grown in 2023, when two separate litigants in federal court formally accused Human of committing fraud involving the TCPA.

In *Human v. STL Design & Build, LLC*, the defendant countersued Human for fraud.  4:23-cv-0684-MTS, ECF No. 12 (E.D. Mo. June 30, 2023).  There, the counter-plaintiff alleged that Human "invited, baited and enticed" it to make telephone calls to him "then use[d] the telephone calls he invited as a basis to sue" under the TCPA.  *Id.*  The counter-plaintiff specifically alleged not only that it had the unique Internet Protocol ("IP") address of the user who visited its website and entered Human's phone number, requesting a call, but also that the unique IP address belonged to Human himself.  *Id.* Besides providing well-pleaded factual allegations of fraud, the counter-plaintiff went further.  It also attached as exhibits a URL Certificate showing the IP address of the computer that accessed its website and the results of a reverse-IP address search that

showed the IP address belonged to Human.  *Id.*  Attorney Butler represented Human in the action, and the parties settled.  *Id.* at ECF No. 33.

Not long thereafter, another entity sued Human, alleging that he did the very same thing to it.  *PolicyScout, LLC v. Human*, 4:23-cv-1377-SEP, ECF No. 4 (E.D. Mo. Oct. 31, 2023).  In *PolicyScout*, the plaintiff alleged that Human had a "practice, or side hustle," of providing his telephone number to entities to "induce" them to call his phone number so that he could "tee up" TCPA claims.  *Id.*  Human, the plaintiff alleged, provided his information on the plaintiff's website but then demanded that it pay him money for calling him.  *Id.*  Attorney Butler represented Human in that action, too.  *See id.* at ECF No. 35. The parties likewise settled the matter.  *Id.*; *see also* Doc. [93-1] at 23–27 (settlement agreement).

With an understanding of this general background of Human's (and Attorney Butler's) experience with TCPA actions, the scene is now set for the instant action.  This case began on July 16, 2024, when Human, in keeping with his standard practice, filed a *pro se* putative class action against Fisher Investments, Inc. ("Fisher") in the Missouri Circuit Court of St. Louis County.  Doc. [2-1].  Fisher timely removed the action to this Court, Doc. [1], and filed its Answer, Doc. [10].  In its affirmative defenses, Fisher wrote that it had Human's consent to call him.  *Id.*  After Fisher filed its Answer, the Court set the matter for a Rule 16 Conference.  Doc. [11].  Shortly thereafter, Attorney Butler entered his appearance for Human.  Doc. [12].

From that point on, two constants were at play in this action.  *First*, Fisher consistently maintained that Human's TCPA claims against it were a sham.  And *second*,

- 4 -

Human and Attorney Butler consistently delayed and hindered this litigation.  From the get-go, Plaintiff refused to cooperate with creating the parties' Joint Proposed Scheduling Plan.  Plaintiff refused to allow Fisher to put forth all its positions and its reasons for those positions in the joint plan.  Docs. [16] & [17]; *see also* Fed. R. Civ. P. 26(f)(3).  This refusal included Human deleting from Fisher's section its representation that "Mr. Human submitted an online form consenting to calls from Fisher at *his phone number* but *someone else's name* ('Veronica Moreno') to manufacture a false narrative that he received unsolicited calls to a number registered on the National Do Not Call List in purported violation of the TCPA and related state law."  Doc. [17-1] at 2–3; *see also* Doc. [16] at 3.

After reviewing both sides' proposals, the Court entered a Case Management Order ("CMO") that bifurcated discovery into two phases, one on the threshold question of liability and a second on class-wide issues.  Doc. [19]; *see also Molock v. Whole Foods Mkt. Grp.*, 952 F.3d 293, 299–300 (D.C. Cir. 2020) (explaining that district courts have broad discretion in structuring discovery "including by bifurcating class and merits discovery").  The next day, on November 14, 2024, Fisher served Plaintiff document requests, interrogatories, a device inspection request, and a deposition notice, all as allowed by the Federal Rules of Civil Procedure and the CMO.  *See* Doc. [27] at 1.  Under the CMO, Human's responses and any written objections to Fisher's discovery request were due twenty-one days later, on December 05, 2024.  Doc. [19] at 1.  Plaintiff failed to provide Fisher *any* responses or objections before that deadline.  Plaintiff failed to do so even after an attorney for Fisher emailed Attorney Butler reminding him of it.  Doc. [66-1] at 61.

More than two weeks later, on December 23, 2024, Attorney Butler confirmed in an email to attorneys for Fisher that Plaintiff had yet to produce his discovery responses. Doc. [27-1] at 2. Attorney Butler also, for the first time, informed Fisher that he would be unavailable for the January 10, 2025, deposition that Fisher had noticed some forty-five days before. *Id.* at 3  On December 27, 2024, Attorney Butler finally provided Fisher Plaintiff's belated responses, which also included objections to many of the requests. Doc. [66-1] at 69–130. *But see Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."). The documents Human did produce largely were nonresponsive to Fisher's requests.  Human's production consisted of eighty-nine pages inexplicably reproducing Fisher's discovery responses to Human, fifty-five pages of publicly available documents from the websites of Fisher and Smart Asset Advisors, LLC, seven pages of heavily redacted phone logs and, two pages of advertisements from Fisher that had been emailed to Attorney Butler. *See* Doc. [66-1] at 69–130.

Just a few days later, on December 30, 2024, Plaintiff moved to stay all discovery in the matter, Doc. [21], after he (improperly) filed a First Amended Complaint, Doc. [20].[3] Since he could not amend his complaint as a matter of course, *see* Fed. R. Civ. P. 15(a)(1), the Court struck it and denied his Motion to Stay. Doc. [23]. Plaintiff then sought leave to file the First Amended Complaint, Doc. [24], and again sought to stay all

---

[3] The First Amended Complaint sought to add Smart Asset Advisors, LLC as a Defendant, which Plaintiff alleged was a lead generator and vendor for Fisher.

discovery, Doc. [25].  At this point, Human still had not sat for a deposition.  Nor had Attorney Butler provided Fisher with a date he was willing to do so though Fisher had properly noticed a deposition.

In the meantime, Fisher repeatedly requested new deposition dates from Attorney Butler.  Doc. [27] at 3.  For example, Fisher's attorneys emailed Attorney Butler about the matter on January 07, 2025, then followed up on the morning of January 09, the evening of January 09, and the morning of January 13, all without a response.  Doc. [28-3].  Finally, Christopher Prosser, Butler's "lead paralegal," *see supra* note 2, emailed Fisher's counsel on January 14, claiming, for the first time, that Attorney Butler was "on vacation until January 20."  Doc. [27-2] at 2.  The Case Management Order, though, required that the parties complete phase one discovery by January 24, 2025.  Doc. [19].  Plaintiff had tried, and largely succeeded, running out the clock on phase-one discovery without having to sit for a deposition.  *But see* 26B C.J.S. *Depositions* § 6 (2026) (noting the right to a discovery deposition is "basic and fundamental in the adversary system").  For this reason, and because of the other discovery delays caused by Human, Fisher filed a Motion for Extension of Time to Complete Discovery.  Doc. [28].  The Motion, with supporting exhibits, detailed the difficulties Fisher's attorneys encountered in securing Attorney Butler's good-faith participation in the discovery dispute process.  *See id.*

In response to Fisher's Motion raising these issues, the Court set a status conference for January 22, 2025.  Doc. [30].  The Court held the conference, heard from the parties, and made clear that it expected Plaintiff—like any litigant—to participate in discovery in good faith, an obligation the Court found Plaintiff had not been meeting.  *See* Doc. [31]

- 7 -

(minute entry).  That same day, the Court memorialized its orders from the conference in a couple of written orders.  The Court issued an order granting Plaintiff leave to file the First Amended Complaint, denying Plaintiff's Second Motion to Stay, and granting Fisher's Motion to Extend Discovery.  Doc. [32].  The Court also issued a First Amended CMO.  Doc.  [34].  The First Amended CMO ordered Human to comply with Fisher's device inspection request by January 27, 2025.  *Id.*  It also required Plaintiff, *inter alia*, to sit for a deposition by oral examination no later than February 14, 2025, and to participate in a "meet and confer on the remaining discovery disputes" by January 27, 2025.  *Id.*  The Court warned that the "[t]**he failure to comply with any part of this Order may result in the imposition of sanctions**" including "**treating the failure to obey** . . . **as contempt of court**."  *Id.* at 4.

After the conference, the parties agreed to conduct Human's device inspection—requested by Fisher approximately ten weeks earlier—at 10:00 a.m. on January 27, 2025, the Court-ordered deadline.  Doc. [82] at 21–22.  For the inspection, Fisher had an expert fly into St. Louis from Nebraska.  Doc. [66-3] at 6.  At 7:50 a.m. on the morning of the inspection, Attorney Butler wrote to Fisher's attorneys confirming that Human "w[ould] appear" at the inspection.  Doc. [66-1] at 598.  But, less than one hour later, at 8:48 a.m., without prior notice to Fisher, Plaintiff filed with the Court what he called a Notice of Voluntary Dismissal.  Doc. [37] (citing Fed. R. Civ. P. 41(a)(1)(A)(i)).  After CM/ECF automatically served the filing on Fisher, its attorneys emailed Attorney Butler at 9:02 a.m. asking whether Human still intended to appear at the scheduled device inspection.

Doc. [66-1] at 636.  About two hours later, Attorney Butler responded that Human would not appear.  *Id.*

Cognizant of the deadlines it had ordered, the Court reviewed the purported Notice of Voluntary Dismissal, and, at 11:07 a.m., struck the Notice from the record via a Memorandum and Order.  Doc. [38] (2025 WL 304580).  In it, the Court explained, with citation to relevant case law, that Plaintiff could not unilaterally dismiss the action because Fisher had filed an answer.  *Id.*  At 12:11 p.m., Attorney Butler's paralegal, Christopher Prosser, emailed Fisher's attorneys.  Doc. [66-2] at 12.  Noting that he could not get ahold of Attorney Butler, and with the hollow caveat that he was "not attempting to . . . practice law," Prosser asked Fisher's counsel whether Fisher would "stipulate to the dismissal." *Id.  See also* Fed. R. Civ. P. 41(a)(1)(A)(ii) (governing stipulations of dismissal).  Just over a half-an-hour later, though, and without yet hearing back from Fisher, Plaintiff took the remarkable step of filing a "Notice of Voluntary Dismissal with Prejudice."  Doc. [39]. The Court had just explained that he could not unilaterally dismiss his action under the Federal Rules of Civil Procedure.  Doc. [38] (2025 WL 304580).  Nevertheless, Human was so desperate to avoid the device inspection and be out from under his discovery obligations that he, having been told he lacked the ability to do so, still tried to unilaterally dismiss his action with the added inducement that he would forever forfeit his claims against Fisher and Smart Asset Advisors, LLC.[4]

---

[4] Human's attempt to dismiss his action *with* prejudice just before the device inspection also contradicts his explanation for why he filed the original dismissal in the first place.  He said he chose to dismiss the action because his Amended Complaint "included another party" in his Amended Complaint, which "changed the landscape."  Doc. [115-1] at 143–44.  Even assuming

At 1:28 p.m., seeming to understand that he was unable to unilaterally dismiss Human's action even with prejudice, Prosser emailed Fisher's counsel again, this time saying Human was willing to stipulate to a dismissal *with* prejudice "if that [would] make[] Fisher more comfortable about it."  Doc. [66-2] at 11.  At 1:54 p.m., Fisher informed Prosser and Butler that it was not willing to stipulate to the dismissal of the action.  *Id.*  At 2:27 p.m., the Court struck Human's second attempt to unilaterally dismiss the action, his Notice of Voluntary Dismissal with Prejudice, for the same reasons explained in the Court's Memorandum and Order from that same morning.  Doc. [40].[5]

With his dismissal gambit in ruins, Plaintiff's case remained open, and it was the last day for him to comply with the Court's order to attend the device inspection or risk being held in contempt of Court.  *See* Doc. [34] at 2, 4.  Around five hours after the parties had agreed for the inspection to begin, Human finally appeared for it.  Doc. [66-3] at 3.  At the device inspection, Plaintiff produced a cellular phone and a laptop computer.  As for his phone, the forensic review revealed something unusual.  Human's phone had received text messages addressed to at least a dozen different names.  Doc. [66-3] ¶ 11.

---

that was Plaintiff's reasoning, which the Court does not believe it was, it does not follow that then he would irrevocably extinguish his claims against both Defendants simply because he believed a second entity also to be liable.

[5] Later Human would invoke his Fifth Amendment privilege against self-incrimination when asked under oath about his timing of "wait[ing] until less than two hours before" the device inspection to try to dismiss the action.  Doc. [115-1] at 142.  For his part, Attorney Butler stated in open court that he "was not in agreement with . . . [f]iling the dismissal," Doc. [82] at 38, though it was filed with his electronic signature and with his electronic-filing account, Docs. [37] & [39].  Based on everything the Court has seen, the Court finds that Human filed the notices to avoid the device inspection and that he intentionally timed them to inflict the maximum cost and inconvenience to Fisher that he could.

And it contained "hardly any text messages" addressed to Human himself.  *Id.*  Though the expert examiner had "analyzed data from thousands of cell phones over the course of [his] career," he had "never seen a phone like this one receiving communications addressed to more than a dozen different people."  *Id.*[6]

As to the laptop, the examiner believed that Human never used it.  *Id.* ¶ 8.  The examiner formed this conclusion because, *first*, there were user accounts for two individuals, neither of whom was Human.  *Id.*  *Second*, it appeared that nobody had used the device since 2022.  *Id.* ¶ 9.  Though Human admitted that he "rarely" used the laptop, Doc. [49-1] ¶ 15, it was the only computer he produced at the inspection.  That laptop, though, was <u>not</u> the only computer Human owned.  It came to light that Human owned a desktop computer, one that he used frequently.

By happenstance, Human had been communicating with an attorney at Watstein Terepka LLP via email from his desktop computer about a separate TCPA case.  Doc. [66-2] at 37–38.  That law firm also happened to represent Fisher in this matter.  On January 29, 2025, Human wrote to that attorney mentioning his "geriatric computer" that he just "had to replace."  *Id.*  In another email from February 04, 2025, Human again referenced his "old desktop," worrying that the attorney may not have received Human's other email.  *Id.*

---

[6] It is not lost on the Court that this finding fits perfectly with Fisher's theory that it asserted from the beginning of the case: Human submitted online forms consenting to calls from entities with his phone number and someone else's name to manufacture the narrative that he received unsolicited calls.  See Doc. [17-1] at 2–3.

- 11 -

Human failed to produce his desktop computer at the device inspection, though it was subject to the inspection request.  He failed even to inform Fisher or the examiner about the mere existence of the desktop.  The Court finds that Human never intended to produce the actual computer he used, the desktop, at the device inspection.  In an email Attorney Butler sent Fisher's counsel on January 23, 2025, Attorney Butler confirmed that Human would "produce his phone and *laptop*."  Doc. [66-1] at 594 (emphasis added).  The Court finds that Plaintiff intentionally brought the laptop as a decoy to make it appear that he was complying with Fisher's request and the Court's order.  Only after Human was confronted with his own emails referencing his desktop computer did he admit that he did in fact own a desktop computer and that he disposed of it in the garbage less than forty-eight hours before the Court-ordered device inspection.  Doc. [82] at 19–20.  It seems that he may not even have told Attorney Butler, who, without prompting, volunteered in open Court that he "did not know about" the desktop computer and "was not involved in" its disposal.  *Id.* at 24–25.

Though Human had the device inspection behind him—or at least the inspection of the devices he did not discard behind him—he still faced the looming deadline to sit for a deposition, under oath, by February 14, 2025.  *See* Doc. [34] at 2.  That was the deadline the Court included in the First Amended Case Management Order after Human's and Attorney Butler's evasive conduct surrounding Human forthcoming deposition.  Human also faced a deadline to provide Fisher with the documents it requested and to complete his interrogatory responses.  *Id.* at 2–3.  At the meet-and-confer that the Court had ordered take place, *see id.*, the parties agreed that Human's deadline to produce the response would

- 12 -

be February 03, 2025.  Doc. [66-2] at 3, ¶ 5.  True to form, Human did not produce them.

Instead, on that day, Attorney Butler began the process of filing Human's Notice of

Appeal.

On February 05, 2025, Attorney Butler officially filed the Notice of Appeal,[7]

appealing this Court's striking of the Notice of Voluntary Dismissal and the Notice of

Voluntary Dismissal with Prejudice, to the U.S. Court of Appeals for the Eighth Circuit.

Doc. [43].  The Notice also said that Plaintiff was appealing this Court's "final Order of

January 22, 2025, forcing Plaintiff to undergo discovery under the threat of sanctions."

Doc. [43]; *Human v. Fisher Investments, Inc.*, No. 25-1248 (8th Cir.).  That same day,

Attorney Butler, in violation of the Local Rules, emailed the Court.[8]  Doc. [66-1] at 643.

Attorney Butler wrote that Human "would have honored" his discovery commitments

"had we not filed a notice of appeal," which, Attorney Butler said, "divest[ed] the Court

of jurisdiction in this matter." *Id.  But see State ex rel. Nixon v. Coeur D'Alene Tribe*, 164

F.3d 1102, 1106 (8th Cir. 1999) ("To prevent parties from using frivolous appeals to delay

or interrupt proceedings in the district court, that court does not normally lose jurisdiction

---

[7] Court records show that Human paid the appellate filing fee on Monday, February 03, 2025, but he did not properly complete the filing process of the Notice until Wednesday, February 05. *See also* Doc. [43] (Notice dated the 3rd but file-stamped the 5th).

[8] Local Rule 4.04(A) provides that attorneys and self-represented litigants "shall not communicate in writing with the Court concerning any pending case except by motion or memorandum, unless otherwise directed by the Court."  In all cases, the undersigned requires that before seeking any order related to discovery, a "moving party must request an informal conference with the Court" by emailing a designated inbox an email "convey[ing] the general issue in three or fewer sentences and include opposing counsel on the email communication." *See, e.g.*, Doc. [19] at 2. *See also* Fed. R. Civ. P. 16(b)(3)(B)(v).  Multiple times, Attorney Butler failed to abide by this requirement by improperly communicating with the Court via email outside of this very limited requirement.

to proceed with the case when one party appeals a non-appealable order."). Only eight days later, without requesting any briefing from the parties, a three-judge panel of the Eighth Circuit summarily dismissed Human's premature appeal for lack of jurisdiction. Doc. [47].

The same day that Human filed his improper Notice of Appeal, Fisher had filed its answer to Human's First Amended Complaint. Doc. [45]. In it, Fisher included a counterclaim against Human for fraud, alleging that Human "or someone acting on his behalf submitted an online form consenting to the calls at issue for the purpose of manufacturing a TCPA lawsuit," and that, "[o]nce he received the calls he asked for, he began making extortionate settlement demands to resolve his false TCPA claims." *Id.* ¶ 2. The same day that the Court of Appeals *sua sponte* dismissed Human's appeal, Human filed a Motion to Dismiss Fisher's Counterclaim. Doc. [49].[9] And just a few days later, he filed a Motion for Partial Summary Judgment, seeking summary judgment on "Fisher's liability as to Mr. Human's claims." Doc. [53] at 6.

After the Court of Appeals issued its mandate, *see* Fed. R. App. P. 41(b), this Court summarily denied Human's meritless Motion to Dismiss Fisher's counterclaim, Doc. [58], and denied Human's Motion for Partial Summary Judgment without prejudice because

---

[9] When it helped him, Human declared that his appeal divested this Court of jurisdiction, such that he could no longer participate in the discovery process. *See* Doc. [66-1] at 643. Yet, once the Court of Appeals had entered a judgment unfavorable to him, Human immediately began filing motions with this Court seeking relief without waiting for the Court of Appeals to issue its mandate. *But see Rsrv. Mining Co. v. Env't Prot. Agency*, 514 F.2d 492, 541 (8th Cir. 1975) (en banc) (explaining that a district court "lacks jurisdiction" until the Court of Appeals "issue[s] [its] mandate").

Human relied solely on unsworn statements, Doc. [59] (2025 WL 752881). The Court also noted that Human's Motion for Summary Judgment did not follow the Court's Local Rules nor the relevant provisions of the First Amended Case Management Order. *Id.* The next day, Human filed his Second Motion for Partial Summary Judgment. Doc. [60]. It did not correct his errors. *See id.* The Court, therefore, denied that Motion too. Doc. [62] (2025 WL 785777) (describing the "troubling pattern of Plaintiff's careless disregard for Court Rules and directives even after they explicitly are called to his attention").

Properly following the Court's requirements, *see supra* note 8, Fisher emailed the Court, copying Attorney Butler, informing the Court that the discovery disputes Fisher raised in the last informal conference in January, *see* Doc. [31], remained. The Court authorized Fisher to formally move for relief. Doc. [63]; *see also* Fed. R. Civ. P. 16(b)(3)(B)(v). On March 19, 2025, Fisher filed a Motion to Compel, Doc. [65], and a Motion for Sanctions, Doc. [67]. Human filed his opposition brief, Doc. [69], and the Court held a hearing on the Motions on March 28, 2025, *see* Doc. [82] (hearing transcript). At the hearing, Human acknowledged that he failed to produce his desktop computer at the Court-ordered device inspection, and he admitted that he disposed of that computer less than forty-eight hours before the inspection. *Id.* at 19–20. He testified that he threw it in the trash. *Id.* at 21. Given this egregious conduct, the Court announced at the hearing that it intended to enter a written order striking Plaintiff's pleadings. *Id.* at 41. The Court also issued a written order requiring Attorney Butler and Human to show cause why they should not be sanctioned under Rule 11 for conduct that the Court specifically described. Doc. [78]; *see also* Fed. R. Civ. P. 11(c)(3).

- 15 -

Because the issue of Fisher's damages would remain, the Court ordered that Human must still sit for a deposition in the case, which he had consistently avoided. Doc. [82] at 43. On March 31, 2025, the Court entered a written order requiring Human to personally appear for a deposition by oral examination on May 09, 2025. Doc. [77] at 1–2; *see also* Doc. [83] at 2 (ordering same). But on April 29, 2025, Human filed for Chapter 13 Bankruptcy. *See In re: Daniel A. Human*, 4:25-bk-41618 (Bankr. E.D. Mo.). The federal automatic stay therefore prevented his deposition from going forward as ordered in this case. *See* 11 U.S.C. § 362(a). Attorney Butler failed to file a notice with this Court informing it and Fisher of the bankruptcy. Rather, Fisher itself notified the Court of Human's bankruptcy on May 07, 2025, after it learned of the matter elsewhere. Doc. [101]. Fisher filed a Motion for Relief from Stay in Human's bankruptcy case. *See In re: Daniel A. Human*, ECF No. 11; *see also* 11 U.S.C. § 362(d)(1) (providing that a bankruptcy court "shall" lift the automatic stay "for cause"). On May 22, 2025, the Honorable Kathy Surratt-States granted Fisher's Motion, *id.* at ECF No. 17, which meant the litigation of Fisher's counterclaim could continue. Just a short time later after Judge Surratt-States lifted the automatic stay, Human voluntarily dismissed his bankruptcy case, without the discharge of any of his debt. *Id.* at ECF No. 23.[10]

---

[10] Human's perfectly timed filing of his bankruptcy petition and his quick voluntary dismissal of his petition shortly after Judge Surratt-States granted Fisher's motion plainly raises the appearance that Human filed bankruptcy for an improper purpose. *Cf. Furness v. Lilienfield*, 35 B.R. 1006, 1009 (D. Md. 1983) (noting it is "a gross abuse of the bankruptcy proceedings" "to invoke the automatic stay provision to evade pending litigation" because "[t]he automatic stay was not intended to grant defendants a last-minute escape chute out of pending civil litigation"). Given his pattern of conduct in this case, the Court finds that the principal reason for Human filing his bankruptcy was to take advantage of the federal automatic stay to avoid his deposition.

With the automatic stay lifted, the Court held a status conference, where the parties came up with an agreeable date for Human's deposition. Doc. [104]. The Court ordered that the deposition take place on the parties' chosen date of June 04, 2025. Doc. [105]. After six months of successful avoidance, Human finally sat for his deposition on that day. At the deposition, Human repeatedly invoked his Fifth Amendment privilege against self-incrimination, refusing to answer dozens of questions. *See generally* Doc. [115-1]. Among other topics, Human invoked his Fifth Amendment privilege when asked about: his cellphone and internet providers, *see, e.g.*, *id.* at 13–14, how he decided to "start bringing TCPA lawsuits," *id.* at 18, his relationship with Attorney Butler's paralegal Christopher Prosser, *id.* at 21, and whether there was malicious timing of Human's filings in the case, *see, e.g.*, *id.* at 143–146. Human acknowledged that he invoked his Fifth Amendment privilege because he thought his answers to those questions "could be incriminating." *Id.* at 146. *See also Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1480 (8th Cir. 1987) (noting that the Fifth Amendment "privilege 'applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it'" (quoting *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924))).

Human was not finished with trying to get out from under this case, though. On July 09, 2025, he filed a Motion to Dismiss for Lack of Jurisdiction, which asked the Court to dismiss the case and seal or strike all the filings in it. Doc. [120]. The argument was clearly conceived by someone untrained in the law. Plaintiff argued that this Court lacked subject-matter jurisdiction over the case because his case was "void *ab initio*." *Id.* Since

he was *pro se* when he filed the case as a putative class action, the case was a "legal nullity," he argued. *Id.* Plaintiff also sought a stay of the case pending a ruling on his Motion. Doc. [122]. The Court denied the stay, Doc. [123], and denied the Motion to Dismiss in a Memorandum and Order that explained the frivolousness of Plaintiff's argument, Doc. [129] (2025 WL 2106979).

Plaintiff filed a Petition for Writ of Mandamus with the U.S. Court of Appeals for the Eighth Circuit. Doc. [136]; *In re: Daniel Human*, No. 25-2595 (8th Cir.). *But see In re Ashcroft*, 888 F.2d 546, 547 (8th Cir. 1989) (per curiam) (noting mandamus is appropriate "only when the right to relief is indisputably clear"). In his Petition, Plaintiff asked the Court of Appeals to direct this Court to dismiss this case and to "strike or seal all the filings and orders" therein. Doc. [136] at 15. Only two days later, a panel of the Eighth Circuit summarily denied the Petition. Doc. [139]. Undeterred, Plaintiff sought rehearing en banc. *But see* Fed. R. App. P. 40(a) (noting "rehearing en banc is not favored"). The Court of Appeals denied Human's request for rehearing; none of the eleven Circuit Judges noted a dissent from the denial of rehearing en banc. Doc. [147].

## II.   DISCUSSION

Federal courts have multiple avenues available to them to address the spoliation of evidence through sanctions. After deliberate consideration, for the reasons explained below, the Court finds that, under both Rule 37 and the Court's inherent authority, Plaintiff's conduct warrants the harsh sanction of striking his pleadings.

### a.   Rule 37(b)

Federal Rule of 37(b)(2)(A) provides that a district court may sanction a party who fails to obey a discovery order.  It specifically allows for harsh sanctions including the striking of pleadings, the dismissing of actions, and rendering default judgments against disobedient parties. Fed. R. Civ. P. 37(b)(2)(A)(iii), (v)–(vi); *In re O'Brien*, 351 F.3d 832, 839 (8th Cir. 2003) (calling "dismissal under Rule 37" an "admittedly harsh sanction"). Courts have phrased the common-sense notion in a variety of ways, but all agree that the harshest sanctions under Rule 37 should be reserved for extreme situations.  *See, e.g.*, *Omaha Indian Tribe, Treaty of 1854 with U.S. v. Tract I-Blackbird Bend Area*, 933 F.2d 1462, 1468 (8th Cir. 1991); *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 734 (2d Cir. 1987).  "To justify a sanction of dismissal, Rule 37 requires: '(1) an order compelling discovery, (2) a willful violation of that order, and (3) prejudice to the other party.'" *Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 899 (8th Cir. 2009) ("*Sentis I*") (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000)). Those three elements are met here, and the situation certainly is extreme.

Fisher served on Plaintiff a device inspection request.  Doc. [66-1] at 55.  He failed to raise any timely objection to that request but resisted complying with it.  Doc. [28] at 3. His refusal to comply with that discovery request and Fisher's other requests required the Court to have a conference with the parties.  *See* Docs. [30] & [31].  At the conference, the Court verbally ordered Human to fully comply with the device inspection.  And, for good measure, the Court entered a written order requiring him to "comply with Defendant

- 19 -

Fisher Investments, Inc.'s device inspection request no later than **Monday**, **January 27, 2025**." Doc. [34] at 2.

Even then, as discussed above, Plaintiff went to great lengths to avoid the device inspection. He improperly sought to unilaterally dismiss his action. When that failed, he tried to unilaterally dismiss his action *with* prejudice. That too was procedurally improper. Facing the impending deadline, and the possibility of contempt, Human appeared at the device inspection hours late. But he failed to comply with the Court's Order because he failed to provide at the inspection all the responsive devices. *See* Doc. [66-1] at 55. He did not produce his desktop computer. Human purchased the desktop computer in "early '23 or late '22." Doc. [115-1] at 129–30. He admitted that he used it for his work on TCPA cases. *Id.* at 130–31. Indeed, he was using it for his TCPA cases until mere days before the device inspection and his intentional destruction of it. Doc. [66-2] at 37–38.

Instead of bringing his desktop computer, which was responsive to the request, Human brought a decoy laptop computer that was not responsive to the request because he did not use the laptop. Worse still, not only did Human fail to comply with the Court's Order, he ensured that he never could do so because he threw the computer into the garbage. *See* Doc. [82] at 21 (Q: "So the computer you used in 2024 that would have been responsive to the device inspection you threw away 2 days before; is that correct?" A: "That's correct, Your Honor."). It is also worth noting that Human did not inform the Court or Fisher of his destruction of the computer or even of its existence. His actions came to light only by happenstance when he mentioned his desktop computer in an email to an attorney on another matter who happened to work at the same law firm as Fisher's

- 20 -

attorneys in this matter. *See* Doc. [66-2] at 37–38. With these facts, the Court concludes that Human willfully violated the Court's Order and that he did so in bad faith.

The Court further concludes that Human's violation of the order prejudiced Fisher because the computer was a central piece of evidence in this case. From the very beginning of this case, Human was on notice that Fisher denied the allegations he levied against it. Doc. [10]. More specifically, he was on notice that Fisher maintained that he "submitted an online form consenting to calls from Fisher at *his phone number* but *someone else's name* ('Veronica Moreno') to manufacture a false narrative that he received unsolicited calls to a number registered on the National Do Not Call List in purported violation of the TCPA and related state law." Doc. [17-1] at 2–3.

The Court also concludes as a finding of fact that the computer would have contained evidence of the fraud Fisher alleges in this matter. Human likes to repeat in his filings that there is not a "scintilla" of evidence of fraud here. *See, e.g.*, Doc. [87] at 5; Doc. [96] at 6. Putting aside for a moment the fact that Human destroyed a key piece of evidence that would have demonstrated his fraud, the record still contains significant evidence of Human's fraud. *See Scallen v. Comm'r of Internal Revenue*, 877 F.2d 1364, 1370 (8th Cir. 1989) ("Since direct evidence of fraud rarely is available, fraud may be proved by circumstantial evidence.").

First, the sheer number of TCPA cases Human has filed is indicative of fraud. *Cf.* 1 *McCormick on Evidence* § 190.4 (9th ed.) (discussing the "intuitive reasoning" of "rejecting a hypothesis that attributes all the events to coincidence when the probability of so many such surprising outcomes arising purely by coincidence is small"). Next, the

- 21 -

forensic review of Human's cellular phone revealed that it received text messages addressed to at least a dozen different names and contained "hardly any text messages addressed to" Human. Doc. [66-3] ¶ 11. Fisher's expert declared that he had never seen anything like it. *Id.* This finding perfectly fits Fisher's allegation that Human, or someone acting at his request, provided his contact information, along with a fake name, to entities to solicit calls from them, which then appear to be unsolicited by Human himself.[11] And at his deposition, Human invoked his Fifth Amendment privilege against self-incrimination dozens of times when questioned about the fraud Fisher alleges. *See generally* Doc. [115-1]. That invocation plainly warrants an adverse inference here. *See Acad. Bank, N.A. v. AmGuard Ins. Co.*, 116 F.4th 768, 785 (8th Cir. 2024) ("[A]n adverse inference may be drawn against a party who invokes the Fifth Amendment privilege and refuses to testify in a civil proceeding . . . ." (quoting *Koester v. Am. Republic Invs., Inc.*, 11 F.3d 818, 823–24 (8th Cir. 1993))).

Given that the Court finds that Human's conduct was both deliberate and in bad faith, the Court need not "investigate whether a sanction less extreme than dismissal would suffice." *See Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992). Nevertheless, it has done so. It is difficult to overstate the egregiousness of purposefully disposing of a key piece of evidence on the eve of a court-ordered device inspection. *See Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 906 (5th Cir. 2010) (per

---

[11] This finding also harmonizes with the allegations formally levied against Human, under penalty of Federal Rule of Civil Procedure 11(b), and with accompanying exhibits, by the counter-defendant in *Human v. STL Design & Build, LLC*, 4:23-cv-0684-MTS, ECF No. 12 (E.D. Mo. June 30, 2023).

curiam) (noting a party's "intentional destruction of relevant evidence threatens the sanctity and spirit of the judicial process").  For that reason, the Court concludes that no lesser sanction under Rule 37(b) than dismissing his claim and striking his pleading would suffice for Human's willful, bad-faith conduct.[12]

### b. Rule 37(e)

Another provision of Rule 37 calls for sanctions here.  *See* Fed. R. Civ. P. 37(e).  When "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the Rule allows federal district courts to respond in a few ways.  The Rule provides that if, but only if, a court finds that a party "acted with the intent to deprive another party of the information's use in the litigation," the court is authorized to "dismiss the action or enter a default judgment."  Fed. R. Civ. P. 37(e)(2)(C).  The Court finds that Human acted with the intent to deprive Fisher of the use in this litigation of the electronically stored information on the computer.  And for the reasons above explaining the egregiousness of this situation, the Court finds that no lesser sanction would be sufficient to address the loss of this key piece of evidence in this case.  *See Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024) ("To dismiss a case under Rule 37(e)(2), a district court need only find

---

[12] Human, though, could hardly complain about the dismissal of his claim when he himself, albeit improperly, tried to dismiss his action *with* prejudice.  Indeed, he has twice already gone to the Court of Appeals with requests to require that this Court dismiss his case.

that the Rule 37(e) prerequisites are met, the spoliating party acted with the intent required under Rule 37(e)(2), and lesser sanctions are insufficient to address the loss of the ESI.”).

### c. Inherent Authority

A federal court's “inherent power includes the discretionary 'ability to fashion an appropriate sanction for conduct which abuses the judicial process.'” *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). For this reason, that inherent power “include[s] broad discretion to craft proper sanctions for spoliated evidence.” *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009) (en banc). The Eighth Circuit has explained that “whether the extent of a sanction is appropriate is a question peculiarly committed to the district court.” *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 745–46 (8th Cir. 2004) (quoting *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 268 (8th Cir. 1993)). In crafting a sanction, district courts “must give 'thoughtful consideration' to all the relevant factors presented in the case.” *Frumkin v. Mayo Clinic*, 965 F.2d 620, 626–27 (8th Cir. 1992) (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (joined by Breyer, J.)). And courts have noted that “the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.” *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).

A district court's inherent powers are sufficient to justify the sanction of dismissal in an appropriate case if a court makes an express finding of bad faith. *See Sentis I*, 559 F.3d at 899. The Court has concluded that Human acted in bad faith when he did not

- 24 -

comply with the Court-ordered device inspection request and when he disposed of the desktop computer. The Court concludes that this is an appropriate case for dismissal for that abusive conduct alone. What is more, though, Plaintiff has abused the judicial process in multiple other ways. *See Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 924 (8th Cir. 2014) ("*Sentis II*") (noting "the district court directed its sanction toward a litany of conduct that it deemed abusive of the judicial process"). As discussed at length in the facts above, Human has abusively used the judicial process to avoid the Court's lawful orders and deadlines, and he has done so by seeking to maximize the inconvenience and cost to Fisher as well as the Court.

\* \* \*

Under any one of these three avenues, dismissing Human's claim and striking his answer to Fisher's Counterclaim is appropriate. The Court does not impose this harsh sanction on Plaintiff lightly. But his disposal of his computer on the eve of a properly requested and Court-ordered device inspection is nothing short of extreme. Moreover, the Court is utterly convinced that he intentionally disposed of it to impede justice here and that the disposal has severely prejudiced Fisher. The willful, bad-faith disposal of the computer, and its prejudice to Fisher, alone merit this severe sanction. However, when framed in the broader context of his repeated pattern of abusing the judicial process through intentionally timed maneuvers, it makes it almost impossible to imagine the sufficiency of imposing any lighter sanction. The Court therefore finds that the sanction of dismissal of his claim and striking of his pleadings is warranted under the avenues available to this Court.

- 25 -

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Daniel Human's action is **DISMISSED** as a sanction for his misconduct.

**IT IS FURTHER ORDERED** that Counter-Defendant Daniel Human's Answer to Counter-Plaintiff Fisher Investments, Inc.'s Counter Claim is **STRICKEN** as a sanction for his misconduct.

**IT IS FINALLY ORDERED** that Counter-Plaintiff Fisher Investments, Inc.'s Motion to Compel, Doc. [65], is **DENIED** without prejudice as moot.[13]

Dated this 31st day of March 2026

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

---

[13] *See* Doc. [82] at 40–41 (noting the striking of the pleadings would moot Fisher's Motion to Compel).