UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL HUMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-CV-01177 MTS |
| | ) | |
| FISHER INVESTMENTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MOTION HEARING

BEFORE THE HONORABLE MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

JUNE 29, 2026

APPEARANCES:

For Plaintiff: Edwin V. Butler, II, Esq.
BUTLER LAW GROUP LLC
1650 Des Peres Road, Suite 220
Des Peres, MO 63131

For Defendant: James Michael Ruley, Esq.
WATSTEIN TEREPKA LLP - Atlanta
75 14th Street NE, Suite 2600
Atlanta, GA 30309

Matthew D. Guletz, Esq.
THOMPSON COBURN LLP - St. Louis
505 N. 7th Street, 28th Floor
St. Louis, MO 63101

REPORTED BY: ANGELA K. DALEY, CSR, RMR, FCRR, CRR
Official Court Reporter
United States District Court
111 South Tenth Street, Third Floor
St. Louis, MO 63102
(314) 244-7978

PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

**(PROCEEDINGS STARTED AT 1:35 P.M.)**

THE COURT: We're here on the record in the case of Daniel Human versus Fisher Investments, Inc. This is 4:24-CV-01177 MTS. I will ask counsel for Mr. Human to make an appearance please.

MR. BUTLER: Yes, sir. This is Edwin V. Butler, and I am counsel for Daniel Human in the *Human v. Fisher* case.

THE COURT: All right. How about counsel for Fisher, who is here?

MR. RULEY: Good morning, Your Honor -- good afternoon, Your Honor, James Ruley here on behalf of Fisher Investments.

MR. GULETZ: Good afternoon, Judge, Matthew Guletz on behalf of Fisher Investments as well.

THE COURT: All right. Thank you. You can all be seated. I have called this hearing specifically in regard to a motion to withdraw as counsel of record filed by Mr. Butler and then I want to address some of the outstanding motions that are before the Court at this time.

All right. So I want to take up your motion, Mr. Butler, but first I want to take up what's going on with the ECF filing. Why is your paralegal attempting to file things like that? And again, this is how we got potentially to this spot, your paralegal and Mr. Human, so what happened and then I'd like to know you are under the threat of sanction

if you didn't file it correctly with the Court, which you did I acknowledge, but I mean what changed because the representations made by someone who apparently was submitting papers he at least claimed were signed by you was that it was an impossibility? So what was your involvement in that initial filing and the followup filing? I would like to know that answer please.

MR. BUTLER: Well, I pushed it to the very end to try to reach Mr. Human.

THE COURT: We're going to get to that point, but just tell me on the filing.

MR. BUTLER: On the filing, I was having a lot of difficulty with my own authenticator with my system. It kept coming up with a different number. I called Prosser to ask him if he had --

THE COURT: So for the purposes of today's record, is Prosser working for you as a paralegal still? I mean, certainly last week he represented that he was.

MR. BUTLER: I have several part-time and he is one of them.

THE COURT: All right, so he is. That's the answer to the question?

MR. BUTLER: Yes, sir.

THE COURT: And is he working on this case?

MR. BUTLER: He compiled --

THE COURT: Sir, Mr. Butler --

MR. BUTLER: Yeah, the answer is yes, yes.

THE COURT: Okay, so he is working on this case, and you authorized him to file those papers in whatever form they were attempted to be filed about ten days ago; is that right?

MR. BUTLER: It was getting very late and I said go ahead and send the e-mail, at least they will know we tried, yeah.

THE COURT: So that was your authorization for him to attempt to file them that way. Is that what you are stating here to the Court today?

MR. BUTLER: Yes, sir. Yes.

THE COURT: All right. And then how were you able to resolve it and actually get it filed accurately?

MR. BUTLER: I trashed everything on my phone that had anything to do with an authenticator and got new ones and that seemed to solve the problem.

THE COURT: All right. I've got a question for you before we get into your efforts to contact Mr. Human. Are you still representing Mr. Human and/or Mr. Prosser in state cases related to similar cases in this in state court?

MR. BUTLER: No. We finished.

THE COURT: Well, when is the last time you represented him?

MR. BUTLER: The last time I even spoke to or saw Dan

Human was a year ago.

THE COURT: Do you have any active cases in state court on his behalf that you're counsel of record for?

MR. BUTLER: None, no.

THE COURT: Have you withdrawn from all the state cases?

MR. BUTLER: Yes.

THE COURT: Were you active -- were you counsel of record prior to that withdrawal on multiple matters for him?

MR. BUTLER: I never represented him in state court.

THE COURT: All right. So tell me about your efforts to contact him.

MR. BUTLER: I called several times a month just to make contact. After June 5th, I called every day. I sent a few e-mails and --

THE COURT: Again, just keep it to your attempts to contact him here for protection of the attorney/client privilege, but just tell me about you were unsuccessful after multiple attempts?

MR. BUTLER: I was.

THE COURT: Did you call him?

MR. BUTLER: I did.

THE COURT: Did you e-mail him?

MR. BUTLER: Yes.

THE COURT: Did you leave voice messages?

MR. BUTLER: Yes, sir.

THE COURT: Do you know where he lives? Does he live in the St. Louis area?

MR. BUTLER: I have an address. He is in the Jefferson County -- he is in Jefferson County, and I am not sure which town it is, and I know he spends a bit of time in the Lake of the Ozarks with a girlfriend, but I think his residence is in Jefferson County.

THE COURT: What's the story? You make representation that he's authorized this withdrawal. What is that based upon?

MR. BUTLER: Well, on March the 28th when -- I'm sorry, Judge, he made those statements --

THE COURT: What statements?

MR. BUTLER: About getting rid of his computer before the meeting with the Fisher people, and there was a statement about whether or not -- I think you requested it of him that he answer whether or not I knew about it, and I think he said yes. I told you immediately that that was not the case, and I asked to withdraw at that point. You wanted the depositions to take place and you wanted us to answer to some of the motions that Fisher had filed. At the deposition -- well, after he left the witness stand on the 28th, we discussed my withdrawal and he said that he thought --

THE COURT: It wasn't with me. You are talking --

again, I want to be cognizant here of the attorney/client privilege. Do we need to excuse the other attorneys or can you talk about this? It's your obligation to decide that.

MR. BUTLER: I think they are okay here.

THE COURT: Okay. Go ahead then.

MR. BUTLER: After he left the stand and we were in the hallway, you know, I discussed the conflict that had arisen.

THE COURT: I don't want to be -- I want to understand, what's that conflict in your mind?

MR. BUTLER: In my mind, I learned something at the hearing on the 28th that I had no idea about, and it seems that the Fisher attorneys did know about it, that he had gotten rid of a computer that might have been subject to their examination, and I just said that the fact that he had mentioned on the witness stand that I might have known something about that, he acknowledged that I was never told, he acknowledged that all e-mails were sent to --

THE COURT: Well, if you were never told, why is that a conflict?

MR. BUTLER: I'm sorry, Judge?

THE COURT: If you were never told as you are representing here, why is that a conflict?

MR. BUTLER: Well, I think that Mr. Human is wanting to proceed with his story concerning the computer and how it

was handled. At the deposition before --

THE COURT: Hold on a second. Okay. Let's just keep on track here because what you have said to me is that -- we have his testimony. I have the transcript of it, okay, because I am going to ask you about that, too, because you make some representations in your affidavit that -- you don't cite anything, so I am not sure what exactly it's referencing, but he testified that he destroyed the computer. We all heard that, okay? You talked with him in the hallway. So I think I can understand potentially if there is a conflict if you knew that he destroyed the computer, but you are claiming here that you didn't know, you were never told, and I'm fine with that, but I am just trying to understand how does that create a conflict because what I am trying to get to is that I need his consent -- I need something that demonstrates he is consenting to this withdrawal, so I'm not sure how I get there, but go ahead.

MR. BUTLER: Well, Judge, to take up the consent first, in addition to the hallway, when we came here for the deposition, we discussed it again and he said that he did want me to withdraw, he was in favor of me withdrawing, he was going to get his own lawyer, and that --

THE COURT: But again -- and I want to just give you your warning. It's not mine to worry about, but again, keeping in mind the attorney/client privilege here, was that a

private conversation you had or is that something that is documented somewhere that I can look to independently to determine that he does want you to withdraw?

MR. BUTLER: I would say it's primarily private, though the conversation, part of it, did take place at the counsel table where the deposition was taking place. I'm not sure that that ended up in the deposition.

THE COURT: Well, presumably you would have -- and I am not trying to argue with you. I'm just trying to get a record here that I can move forward with this case. Presumably though if it made it in the deposition, did you review the deposition?

MR. BUTLER: Yes, I very quickly was able to review it.

THE COURT: All right. So now I'm going to get a little -- okay. Paragraph 8 of document number 154-1, case number 4:24-CR-01177 MTS, you make a sworn statement to the Court: "Specifically during the deposition, Mr. Human acknowledged that his testimony had created an irreconcilable conflict that I had not been informed of, the computer destruction issue, that the communication had gone to opposing counsel in unrelated matters and that this situation made continued representation ethically impossible for me."

MR. BUTLER: Yes, sir.

THE COURT: This is important because you are citing

to this deposition and now you just told me that you didn't read the deposition. Did you order a transcript of it? We could find that out.

MR. BUTLER: I did not order a transcript. Judge, about citing it to the deposition --

THE COURT: Look, I'm just reading what you wrote to the Court under oath, "Specifically during the deposition," and now you haven't ordered a transcript and you haven't reviewed it, so there is nothing you could point to me in the deposition where this happened.

MR. BUTLER: I completely understand how that might read, but I would tell you, Judge, that when I said "during the deposition," that was a private conversation between he and I.

THE COURT: Okay. All right. That's fine. You have answered the question. So there is no record to cite because that wasn't part of the deposition. We are clear on that; correct?

MR. BUTLER: Yes.

THE COURT: All right. What other -- is that -- that's it, that's the basis by which you are seeking to withdraw?

MR. BUTLER: Well, I have no contact with him. You know, I haven't spoken to him in a year. I don't think he wants me to represent him. He has told me that he, you know,

did want me to withdraw. And, you know, the conflict that arises is some matters that might be collateral to that destruction and the timing and things like that, but I think to go much further would be to get into attorney/client.

THE COURT: Do you need to make more of a record before the Court? I will ask counsel for Fisher to exit the room briefly if you think that would be helpful.

MR. BUTLER: Well, Judge, I don't think I would have to take it much further, but, you know, maybe to just exhaust all the avenues, maybe we should do that.

THE COURT: Okay. If you guys would please step out.

(Counsel for Defendants Exit the Courtroom)

**(AN EX PARTE HEARING WAS HELD ON THE RECORD BUT IS NOT TRANSCRIBED HEREIN.)**

(Counsel for Defendants Return to Courtroom)

THE COURT: Okay. Please let the record reflect that we have concluded our ex parte portion of the hearing and that we have members of the public and counsel back in the courtroom.

Let me ask Fisher when you are seated there, I will ask you, do you have any information -- well, I guess I could ask you, I don't know if you were there, but do you have any information about whether Mr. Human has consented to the withdrawal of Mr. Butler? Do you have any information that you are aware of?

MR. RULEY: Thank you, Your Honor. I don't have any information.

THE COURT: Anything?

MR. GULETZ: I don't either. I have spoken with Mr. Human on other cases but not on that topic.

THE COURT: So he is representing himself in other cases?

MR. GULETZ: Yeah, he has filed a number of --

THE COURT: Tell me where you have spoken to Mr. Human because I would like to maybe understand the mode by which you have communicated with him and whether we issue an order for him to appear at a hearing, but go ahead.

MR. GULETZ: Yes, Judge. My understanding is that Mr. Human is continuing to file a large volume of cases out in St. Louis County, mostly in the associate circuit court.

THE COURT: Only state claims; correct?

MR. GULETZ: Correct, and often in associate circuit court. My presumption would be to prevent removal. I had been retained to handle a couple of those cases including one that is new that I spoke to Mr. Human last week. I sent him an e-mail and asked for a call. We set a time and we talked. I think that was maybe Thursday.

THE COURT: All right. Okay. But in those conversations, I presume there was nothing to indicate as to this case, number 4:24-CV-1177, that he was authorizing the

withdrawal of Mr. Butler; is that correct?

MR. GULETZ: And nor did I feel comfortable asking him because he is currently represented, so I didn't get into that point.

THE COURT: That's a good point. Is he representing himself pro se in those matters out there?

MR. GULETZ: He is. He includes an allegation in the complaint about how he'll amend for class action and hire counsel, but he's filed them pro se individually at this point.

THE COURT: All right. And what is the volume of those cases to your knowledge? Go ahead.

MR. RULEY: Your Honor, I looked last night and he had 20 cases filed this year. I didn't tally up from last year, but 20 since the start of 2026.

THE COURT: All right. And the allegations are the exact same, unwanted calls?

MR. GULETZ: He has evolved some, Judge. The ones that I have had or seen recently, he is now filing MMPA claims on like product-related issues. So like the one I have is the deodorant he purchased did not last as long as advertised. So there is no federal claim and the amount in controversy is more minimal than his old...

MR. RULEY: Your Honor, if I may add to that just briefly. I know last year at least in 2025, he was still

bringing the Missouri telemarketing state law claims though. I don't know when exactly that switched over, but he was at least in the latter part of last year.

THE COURT: All right. Thank you for that.

All right. Okay. Well, and by the way, as to this motion to withdraw, do you have a position? Do you have any objection to it or what's your position?

MR. RULEY: Thank you, Your Honor. Fisher does not have -- we don't object to the motion to withdraw. We just want to clarify on the record that we think even if Mr. Butler is permitted to withdraw, we are still permitted to seek fees and sanctions against him and Mr. Human jointly and severally as we have requested in our prior pleadings.

THE COURT: You understand that, right, Mr. Butler?

MR. BUTLER: No, sir, I couldn't hear everything.

THE COURT: Okay. Well, let me make sure you hear this. Even if I do grant this motion for you to withdraw as counsel of record for Mr. Human, you are still subject -- which I agree with, that's what they said, Fisher just said, you are still subject to the sanctions and fees motions that they filed against you and Mr. Human. Do you understand that?

MR. BUTLER: Yes, sir.

THE COURT: Okay. And so the point is, while you may be -- and I am probably going to take it under advisement here -- while you may be allowed to withdraw as counsel of

record, it's not as if that action by the Court would free you from any potential liability as to attorney's fees and sanctions should I grant those motions. Do you understand?

MR. BUTLER: Yes, I do. Question. If I'm out of the case, I'm not representing him and the case moves forward, I will be subpoenaed or noticed, I will be given a chance to defend?

THE COURT: Yes.

Okay. I mean, I agree with that statement. We are looking at those trying to finalize those, our rulings, in that regard. I'm going to take this under advisement, and I will be very straightforward as to why I'm taking it under advisement. I am going to make a decision as to whether I find it necessary to compel Mr. Human's attendance at a hearing to resolve this issue or whether I will potentially grant it on the record before the Court at this time. Do you understand?

MR. BUTLER: Yes, sir.

THE COURT: So that's the reason I am giving it some consideration. I do note there is no objections from Fisher Investments, Inc. with the caveat -- and I agree with that -- that that doesn't potentially -- or that does not guarantee that you will be disentangled from your representation of him and you are still responsible for every pleading and every action that happen to the case until the point where I allow

for your withdrawal if I do as counsel of record. Do you understand?

MR. BUTLER: I do.

THE COURT: All right. Is that good enough for today?

MR. RULEY: Thank you, Your Honor.

THE COURT: Okay. So I want to say, I just want to make sure the record is clear, we've got number 67, a Motion for Sanctions Related to Unnecessary January 22nd Hearing. That's under advisement by the Court. Motion for Attorney Fees from the motion to compel, that's under consideration by the Court. Motion to Withdraw, we are addressing that here today. Technically that remains under consideration by the Court until the Court decides. And then the one I want to talk to you about is where are we on 109, Motion to Compel Further Response to Mr. Human's Inadequate Damages Discovery Document Production? Is that still pending?

MR. RULEY: Your Honor, my understanding is that that is still pending.

THE COURT: Well, hold on. I know it's still pending because I have a little symbol that says it's still pending, but is that information that you still need the Court's intervention on? That's the question I guess.

MR. RULEY: We have a little bit of additional discovery that we still need to get from Mr. Human that would

be responsive to those requests, yes, Your Honor.

THE COURT: Did you serve that on Mr. Butler since he is the counsel of record?

MR. RULEY: We previously have, yes, Your Honor.

THE COURT: All right. And what's the result of that, Mr. Butler?

MR. BUTLER: Well, we turned over 1462 pages.

THE COURT: Okay. Well, that means nothing. Okay. Let's just go ahead and take that up.

MR. BUTLER: I received an e-mail midweek --

THE COURT: What, this week?

MR. BUTLER: This past week.

THE COURT: From whom?

MR. BUTLER: Melanie in Georgia. Her name is NG. Melanie, she works for Alex.

THE COURT: Oh, it's Melanie Silva.

MR. BUTLER: Uh-huh, yeah.

THE COURT: Gotcha. Melanie Silva from the -- I can't remember what they are now called.

MR. RULEY: Watstein Terepka, Your Honor.

THE COURT: Yeah, there you go. Thank you. Yes?

MR. BUTLER: And she asked me to review my records for some specific things that they were looking for, and I have already started that process.

THE COURT: Okay. So that's important information

and that's why I brought up these other motions. So if I understand that request -- and I am asking this open-endedly for both sides -- I think part of that request is part of to see what's happening in other cases; is that correct?

MR. RULEY: Yes, Your Honor. We think that would at least speak to the damages discovery. And then just to close the loop on my colleague's e-mail, that also seeks additional production in response to the subpoena that compliance was compelled because we believe there is some missing production.

THE COURT: All right. So you have some parts of -- if I recall from the last hearing, you have some discovery items that I have ruled you are required to produce. I say you are, but Mr. Human is, but some of those records are in your possession. You are in the process of providing those. Is that where we are?

MR. BUTLER: Yes, sir. I think that I have produced just about everything I have, but I will go back -- it's an enormous file. I will go back and review the specific request.

THE COURT: How many cases did you represent Mr. Human in in federal court to your knowledge?

MR. BUTLER: I don't know, but I will give you a guess. Fifteen.

THE COURT: Okay. So when you say it's an enormous file, you are looking through those 15 cases?

MR. BUTLER: Yes.

THE COURT: Okay. All right. How much time -- because I am not ruling on this motion until you complete your obligations under the previous order of the Court. So how long do you need to get that fully produced and for you to provide a statement that you have fully complied with the subpoena?

MR. BUTLER: Well, that's myself fully complying, right, not Mr. Human?

THE COURT: I mean, you represented to me you are not talking to Mr. Human; right?

MR. BUTLER: Right.

THE COURT: I am saying that you have from your attorney files.

MR. BUTLER: Right.

THE COURT: That's what they are looking for; right?

MR. BUTLER: Okay. Yes, I understand, and I would say if the judge --

THE COURT: That's me.

MR. BUTLER: -- thought that it was -- yes, sir, if you thought that it was --

THE COURT: Responsive?

MR. BUTLER: Sixty days.

THE COURT: Okay. That's too long. 15 files, no way, I'm not giving you 60 days.

MR. BUTLER: Forty-five.

THE COURT: No. Too long.

MR. BUTLER: All right, sir.

THE COURT: I mean, these cases are -- what information -- remind me, I'm sorry, for the record what are you seeking?

MR. RULEY: Thank you, Your Honor. So we believe -- it's difficult to audit a production that we don't know what's in the file, but I will just give you a bullet list of what we sent to Mr. Butler. We think we are missing demand letters that were sent on behalf of Mr. Human. We didn't receive any.

THE COURT: Okay. So let's just take this bit-by-bit. Mr. Butler, you have the complete files; correct? Yes? You need to speak.

MR. BUTLER: Yes, sir.

THE COURT: Okay. So you can look through 15 cases and find out if you sent a demand letter in the case; correct?

MR. BUTLER: I have, and yes, I will again.

THE COURT: Okay. So that's not too complicated. What else?

MR. RULEY: We asked for the written retainer contingency fee agreement between the parties. That was a subject of the subpoena.

MR. BUTLER: Does not exist.

THE COURT: You never signed a written agreement with

Mr. Human?

MR. BUTLER: No.

THE COURT: How did you know how much money you got?

MR. BUTLER: We had a long interview and conversation and we came to an agreement.

THE COURT: So that's also -- so what was your agreement?

MR. BUTLER: The agreement was that I would take one-third of his recovery.

THE COURT: All right. Okay. So what else do you need, Counsel?

MR. RULEY: We also requested the complete correspondence records for those cases. We received a random spattering of e-mails about the final stages of settlement, many of which were missing attachments. We spelled this out in more detail in our e-mail, but that's a high level on that one.

THE COURT: So you need to produce the correspondence you had with the defendants.

MR. BUTLER: Yeah, there would have not been a lot of correspondence with the defendant. There would have been much more with the opposing counsel.

THE COURT: Okay. Sorry. All right. I can't tell if you are being coy with me or not. I'm going to assume you are not for the sake of everything.

MR. BUTLER: Judge, I am not, and I apologize to appear that way.

THE COURT: Okay. Well, when I say defendants, you think I am just talking about the actual defendant or you think that I am talking about their counsel? I am talking about their counsel. I'm talking about the normal correspondence in a case where to get you a third, you write a letter to the other side and say we want $20,000, for example, because you made an improper contact with us that violated the no call list, okay?

MR. BUTLER: I understand.

THE COURT: That's what I want.

MR. BUTLER: I understand. And many of those have gone and I will find some more.

THE COURT: Okay. But this is the point I'm making. It's not just like sending whatever you find. You need to do a methodical review of everything that you have and produce it all; otherwise, you will be under further potential sanction from the Court. Do you understand that?

MR. BUTLER: I do.

THE COURT: Okay. This isn't -- this is one of the problems I am having, okay? Like you need to take this a lot more seriously. I will give you that advice from my perspective, okay? I feel like, as I have openly stated and I think that we have already heard in open testimony, these

cases -- particularly this case and potentially others that are before the federal court -- represent an abuse in my judgment of the civil justice system of the United States of America. Do you understand what I'm saying? And you have an obligation as an attorney to have complete candor and truthfulness with the Court, and I can't tell what you are doing, but I want to be very clear here today that you have an obligation to -- this should be priority number one. Do you understand that?

MR. BUTLER: Yes.

THE COURT: Okay. Because I don't know what you think the possibilities of this are, but what I have heard in terms of some of the conduct are very stark and concerning, both from a standpoint of whether the Court's going to have the obligation to impose sanctions and as I openly stated in the hearing whether crimes were committed, okay? So you need to demonstrate that you are being responsive to these requests and do it in short order. Are we on the same page?

MR. BUTLER: We are.

THE COURT: Okay. What else do you need, Counsel?

MR. RULEY: Thank you, Your Honor. We are also missing multiple settlement agreements that we identified for cases that appear from the public docket to have been settled.

THE COURT: So listen, do you understand that? That's not hard.

MR. BUTLER: Again, Judge, I couldn't really hear everything.

THE COURT: Okay. Well, I will make sure you hear it. Do you want the headphones or do you want me to speak louder?

MR. BUTLER: No, I can hear you.

THE COURT: Okay. They are saying you filed cases in federal court --

(Cell Phone Interruption)

THE COURT: They are saying they looked at the public record, which I have, too, the cases where you presumably signed the pleadings and represented Mr. Human in the federal court system, largely in the Eastern District of Missouri. You understand that; right?

MR. BUTLER: Yes.

THE COURT: Do you know the cases you represented him in?

MR. BUTLER: I'd have to look it up, but yes.

THE COURT: Okay. They did. It's on the public record. That's one of the things; right?

MR. BUTLER: Yes.

THE COURT: And so if there is a settlement agreement, you need to produce it. Got it?

MR. BUTLER: Yes, Judge.

THE COURT: I mean, you are acting like -- is that

confusing?

MR. BUTLER: Well --

THE COURT: Did you have settlement agreements?

MR. BUTLER: My confused look is just I have sent so many. I will go and look for the specific ones they are mentioning.

THE COURT: What?

MR. BUTLER: I have sent so many of the settlement agreements. I will go and look for the specifics they are asking for.

THE COURT: Well, here's the thing: I'm sure they will be happy to send you an e-mail to say here's the ones that we see on the public record that appear to be settled that we don't have a settlement agreement for. Can you do that?

MR. RULEY: Your Honor, we already have.

THE COURT: Okay. See, they have done that. So you need to look at those that they highlighted. You understand?

MR. BUTLER: Yes, sir.

THE COURT: They are just looking at the public record. Do you understand that?

All right. What else?

MR. RULEY: I will lump these last three together. They are a complete record of payments for Mr. Human including the checks that were sent to him, the evidence of his assets,

and then the tax records reflecting these settlement payments.

THE COURT: So that is common documents for anyone representing plaintiffs. You understand that; right? If you have copies of payments, checks, wire transfers, whatever that remained, you got the money first; right?

MR. BUTLER: Yes, sir.

THE COURT: Okay. So I hope for the sake of your IOLTA and your Missouri Bar ethics that you can document that, can't you?

MR. BUTLER: Yes, sir.

THE COURT: Can you look at the bank statement and give it to them?

MR. BUTLER: Yes, sir. It's an old one. I'd have to go and dig it up.

THE COURT: Well, who do you bank with?

MR. BUTLER: The trust is at Commerce.

THE COURT: Okay. Well, I mean, I guess if you want to get -- but you need to do that. It's under your custody and control. You understand that? And if not, you might want to back up your response by telling them the account number, the bank, the location so if they want to issue a third-party subpoena under Rule 45, they can. Do you understand?

MR. BUTLER: Yes.

THE COURT: And I know that was your previous position, that they should just do that, but that's not the

way it works. You understand that; right?

MR. BUTLER: Yes. I do have a question.

THE COURT: Hold on a second. I am not asking for questions yet, okay? Is there anything else?

MR. RULEY: That's it, Your Honor.

THE COURT: Okay. What's your question?

MR. BUTLER: When it comes to how Mr. Human handled his taxes, I wouldn't have any idea how he does that.

THE COURT: Okay. What they are requesting is --

MR. RULEY: We are seeking information that you have about whether you or Mr. Human reported that tax income to the IRS, and we don't have a response one way or the other. We haven't received anything. We don't know.

THE COURT: Right. So you know what you did with the proceeds, right, whether you reported them? You can answer that question, can't you?

MR. BUTLER: Yes.

THE COURT: Okay. I don't know if you can answer whether Mr. Human. I don't know if you issued a 1099. That's probably what they are asking, if there is any sort of tax treatment that you're aware of either that came from your firm or came that you're aware of from Mr. Human. You understand that?

MR. BUTLER: Yes, sir.

THE COURT: What's the asset one, I'm sorry?

MR. RULEY: The asset one was just asking any evidence he has of Mr. Human's assets that he can provide because that's information we've also sought from Mr. Human.

THE COURT: So that's a question, that's an open question for you. Do you understand -- I hope you do given your long career as an attorney -- that you have an obligation to say I don't know, here are the responsive documents, I have no other documents. You need to close the loop. So again, they can't audit the unknown with the idea being that you are answering the question fully; right? So you're answering the question fully, and once the question is answered fully, then if they discover something where you are not being truthful or not being complete in your response, then that would be where you would run into some problems. Do you understand that?

MR. BUTLER: Yes, sir.

THE COURT: Okay. So this doesn't sound like an overwhelming burden to you, so I am going to give you two weeks for a complete response. Jointly file an update with the Court that you both sign -- you, too -- that you agree with it where the discovery is and only then will I then fully consider the motion to withdraw. You got it?

MR. BUTLER: I do.

THE COURT: Okay. Do we have anything else we need to take up today?

MR. RULEY: Nothing on our behalf. Thank you, Your

Honor.

THE COURT: All right. And so I want to ask you, in terms of the Court's progress on these other motions, do you feel that any of this discovery you are seeking will be necessary for you to supplement any of your filings or papers, and if so, I'm happy to hold our ruling in abeyance pending your review of any other information that's produced through these discovery efforts? So it's up to you.

MR. RULEY: Thank you, Your Honor. I don't believe that any of this will be necessary for the pending motions; although we think it is obviously relevant to the ultimate issue of damages and our additional fee requests that we put on record that we'll make at the appropriate time.

THE COURT: I understand. I just wanted to make sure.

MR. RULEY: Thank you, Your Honor.

THE COURT: So we are going to go forward with the pending motions. And, Mr. Butler, we are on the same page; right?

MR. BUTLER: We are, Judge.

THE COURT: You know what you are supposed to do?

MR. BUTLER: I do.

THE COURT: Okay. Are you going to do it?

MR. BUTLER: I am.

THE COURT: Okay. And in the meantime, if you can

have any contact with Mr. Human, I guess you are free to -- I don't know that you are free to, but if you talk to him on one of his other cases about his deodorants, you can say the Court's kind of curious about what his position is.

But if you have any contact that's relevant to the consideration of your motion to withdraw as counsel of record, that would be helpful as well.

MR. BUTLER: I will keep looking for it.

THE COURT: And I think I want to be clear on this. If you happen to talk to your client, this isn't going to go away. We are going to resolve this case and move forward with all the pending motions from the defendant and we are going to go forward in the case in its entirety, okay? And so ultimately whether it's you or him pro se or him with another lawyer, he is going to be at some point required to participate in this process. Do you understand that?

MR. BUTLER: I do. And if I have the opportunity, I will make sure he does.

THE COURT: All right. Well, I'd suggest issuing some correspondence to him that's reflecting your observations and experience in this hearing and letting him know so that at least you are on the record trying to protect him potentially from himself, okay?

MR. BUTLER: Yes, sir.

THE COURT: All right. If there is nothing else --

anything further?

MR. RULEY: Nothing further, Your Honor.

THE COURT: Anything further, Mr. Butler?

MR. BUTLER: Nothing further.

THE COURT: All right. We are in temporary recess. Thank you.

**(PROCEEDINGS CONCLUDED AT 2:22 P.M.)**

CERTIFICATE

I, Angela K. Daley, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 31 inclusive and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

Dated at St. Louis, Missouri, this 7th day of JULY, 2026.

/S/Angela K. Daley
Angela K. Daley, CSR, RMR, FCRR, CRR
Official Court Reporter