**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **DANIEL HUMAN**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**FISHER INVESTMENTS, INC.**,<br><br>Defendant. | **Case No. 4:24-cv-01177-MTS**<br><br>**JURY TRIAL DEMANDED** |

**NON-PARTY EDWIN V. BUTLER'S OBJECTION AND RESPONSE TO FISHER INVESTMENTS, INC.'S UNILATERAL "STATUS REPORT ON THE PROGRESS OF DISCOVERY THAT MR. BUTLER REFUSED TO SIGN" (DOC. 158) AND REQUEST TO STRIKE IMPROPER MATERIAL AND CORRECT THE RECORD**

Non-party Edwin V. Butler ("Butler") objects to Fisher Investments, Inc.'s ("Fisher") unilateral Status Report filed July 30, 2026 (Doc. 158) and requests that the Court correct the record.

## I. The Claim That Butler "Refused to Sign" Is False

The docket text and Doc. 158 assert that this is a status report "that Mr. Butler Refused to Sign." That statement is false.

Butler never refused to join a joint status report. Butler repeatedly engaged, provided detailed positions, and on July 29–30 circulated a complete redline of Fisher's draft. What Butler refused to do was consent to a document that improperly included Rule 408 settlement material,

inaccurately characterized his June 29 statements to the Court as "untrue," misrepresented the redaction history, and used a status report as a vehicle for sanctions requests.

### II. Fisher Imposed Non-Court-Ordered Deadlines

In his July 30, 2026, email (7:27 p.m.), counsel for Fisher (Mr. Ruley) wrote:

> "Your email arrived at 5:56 PM CT — nearly six hours after the **noon CT deadline**, and after five extensions over the thirteen days since we first circulated a draft on July 17." See Exhibit A'

The Court never ordered a "noon CT deadline" or any specific deadline for the joint status report. Fisher unilaterally created and enforced that deadline, then used Butler's failure to meet *Fisher's* self-imposed deadline as the basis for filing unilaterally and claiming Butler "refused to sign."

This is consistent with the pattern documented in the email chain: Fisher repeatedly imposed self-created deadlines, demanded same-day responses after business hours, and threatened unilateral filing when those deadlines were not met. See Exhibit A – entire email thread.

### III. Material Information Excluded from Fisher's Filing

Fisher's unilateral filing excluded or diluted material portions of Butler's proposed red line. Those excluded or minimized points are relevant and material to any accurate status report. They include, in substance:

#### A. Title and Framing

Butler objected to any framing of the report as focused on alleged "non-party subpoena noncompliance." The Court directed a status report on the progress of discovery. Fisher's title and content functioned as an improper vehicle for accusations and sanctions requests rather than a neutral update.

**B. Methodical Review and Production**

Butler conducted the methodical review ordered by the Court on June 29. More than 1,560 pages of responsive, non-privileged materials were produced. No additional non-privileged responsive documents exist in Butler's possession, custody, or control. Further demands are neither reasonable nor proportional.

**C. Specific Category Responses**

- Demand letters: No additional demand letters, responses, or attachments exist.
- Correspondence: Butler has not personally spoken to or seen Mr. Human for well over a year. Any limited settlement-related communication was conveyed through a staff member acting as intermediary. No further responsive correspondence exists.
- Settlement agreements: A final exhaustive search for the Dream Style agreement located none. The only settlement agreement produced (Call Trader) was previously provided. No additional settlement agreements exist.
- Duplicates: Any duplicates were inadvertent given volume and compressed timelines under an ongoing conflict of interest. The production was not "padded."
- Bank/IOLTA records: Fisher requested the records in redacted form. Redactions were limited to confidential financial information of unrelated clients and are protected by

privilege, work-product doctrine, and Missouri Rule 4-1.15. A party cannot request redacted records and then complain that they are redacted.

- Assets: Butler has no records of Mr. Human's assets. Fisher already possesses the bankruptcy filing.

**D. Rule 408 Material**

Fisher's draft improperly discusses, quotes, and attaches the May 12, 2026, settlement communication. That material is protected by Federal Rule of Evidence 408. Its use to attack credibility and support sanctions is improper and should be stricken.

Fisher's reliance on *B & B Hardware, Inc. v. Fastenal Co.*, 688 F.3d 917 (8th Cir. 2012), does not authorize the use made here. In *B & B Hardware* the evidence was offered for a purpose unrelated to impeaching counsel's representations in an ongoing discovery dispute. Here, Fisher offers the settlement email specifically to attack the credibility of Butler's June 29 statements and to support sanctions. That is an impeachment purpose. Quoting the full settlement language and attaching the email goes far beyond any legitimate collateral need.

**E. Contact with Mr. Human**

There is a material difference between (a) direct personal contact (speaking to or seeing Mr. Human) and (b) limited intermediary contact through staff that resulted in an email being sent from the firm's address. Butler's statements to the Court accurately described the absence of the former. Fisher's attempt to collapse the two into a claim of false statements is overreaching.

**F. Cost-Shifting and Pattern of Conduct**

Under FRCP 45(d)(1) and 45(d)(2)(B)(ii), the issuing party must take reasonable steps to avoid imposing undue burden or significant expense on a non-party. More than 100 hours devoted by a sole practitioner constitutes significant expense and lost earnings. *See Stecklein & Rapp Chartered v. Experian Information Solutions, Inc.*, 113 F.4th 858 (8th Cir. 2024).

Fisher's counsel repeatedly imposed self-created deadlines, threatened additional subpoenas, characterized good-faith production as deficient, and used an accusatory tone (including after-hours demands and the suggestion that "Judge Schelp will [not] look kindly" on timing). These tactics prolonged an already burdensome process while a Motion to Withdraw remained under advisement.

**G. Sanctions Request Improper in a Status Report**

A Court-ordered status report is not the proper vehicle for requesting that Butler explain his search "under oath" or for advancing sanctions. Those matters, if pursued, require a properly noticed motion.

**IV. Requested Relief**

Butler respectfully requests that the Court:

1. Note on the record that Butler did not refuse to join a joint status report and that Fisher imposed non-court-ordered deadlines;
2. Strike from Doc. 158 all references to, quotations from, and the attachment of the May 12, 2026, settlement communication (or limit any reference to a neutral statement that limited intermediary contact occurred through staff);

3. Strike or disregard the inaccurate claim that Butler "refused to sign";
4. Strike or disregard the request that Butler explain his search under oath and any sanctions-related argument contained in the status report; and
5. Grant such other relief as the Court deems just and proper.

Butler remains willing to participate in a true joint status report that accurately reflects the status of the non-party production without the improper Rule 408 material, the inaccurate characterizations, and the sanctions requests.

Respectfully submitted,

/s/ Edwin V. Butler
Edwin V. Butler Mo. Bar No. 32489
Butler Law Group, LLC
1650 Des Peres Rd., Suite 220
St. Louis, MO 63131
edbutler@butlerlawstl.com
(314) 504-0001

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2026, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ Edwin V. Butler